**EXHIBIT A**
**Hughes Declaration**

#124672231v2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------- x
In re:                                : Chapter 11
                                      :
CarePoint Health Systems Inc. d/b/a Just Health : Case No. 24-12534 (JKS)
Foundation, et al.,¹                  :
                                      : (Joint Administration Requested)
           Debtors.                   :
------------------------------------- x

## DECLARATION OF PETER C. HUGHES

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 2014-1(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), I, Peter C. Hughes, declare that the following is true to the best of my knowledge, information, and belief:

1. I am an attorney at law admitted and in good standing to practice in the Commonwealth of Pennsylvania and the State of Delaware.

2. I am a partner in the law firm Dilworth Paxson LLP ("Dilworth") or the "Firm"), located at, among other locations, 1500 Market Street, Suite 3500E, Philadelphia, PA 19102, and 800 King Street, Suite 202, Wilmington, DE 19801, am duly authorized to make this declaration

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

#124672231v2

on behalf of Dilworth (the "Declaration"). I make this Declaration in support of the *Application of the Debtors for Entry of an Order (I) Authorizing the Debtors to Retain and Employ Dilworth Paxson LLP as Counsel, Effective as of the Petition Date and (II) Granting Related Relief* (the "Application").[2] The facts set forth in this Declaration are based upon my personal knowledge, discussions with other Dilworth attorneys and the Firm's client/matter records that were reviewed by me or other Dilworth attorneys acting under my supervision and direction. To the extent any information disclosed in this Declaration requires amendment or modification upon Dilworth's completion of further review or as additional information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

3. Dilworth is well qualified to serve as Debtors' counsel in these Chapter 11 Cases. Dilworth has substantial experience in bankruptcy and restructuring, insolvency, corporate, mergers and acquisitions, corporate governance, litigation and other issues likely to arise in connection with these bankruptcy cases.

4. Dilworth's bankruptcy and insolvency group is one of the largest bankruptcy debtor and creditor rights and insolvency groups in the Philadelphia region and provides an array of services to assist financially distressed businesses and their creditors in maximizing values and ultimate recoveries in a broad range of challenging circumstances. Dilworth's lawyers have played significant roles in many substantial cases under the Bankruptcy Code, including, among others, the Chapter 11 Cases of the following entities and certain of their affiliates: The National Museum of American Jewish History, the Philadelphia Orchestra, the Please Touch Museum, Wordsworth Academy, the publisher of the Philadelphia Inquirer and Philadelphia Daily News, and Prestige Industries, LLC.

---

[2] Capitalized terms not otherwise defined in this Declaration have the meanings given to them in the Application.

## DILWORTH'S DISCLOSURE PROCEDURES

5. In preparing this Declaration, I used a set of procedures developed by Dilworth to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals. Pursuant to these procedures, I performed, or caused to be performed, the actions described below to identify Dilworth's connections to parties in interest in these cases.

6. In preparing this Declaration, I submitted or caused to be submitted for review under the Firm's regularly updated conflicts check system the names of various parties in interest in these Chapter 11 Cases (collectively, the "Interested Parties"), as received from the Debtors. A list of the Interested Parties is attached to this Declaration as **Schedule 1**. The results of the conflicts check were compiled and analyzed by Dilworth attorneys acting under my supervision; the results of the conflicts check are set forth in **Schedule 2** attached to this Declaration.

## DILWORTH'S CONNECTIONS WITH INTERESTED PARTIES

7. To the best of my knowledge, based on the review procedures described above, Dilworth does not have any "connections" to the Interested Parties, except as described in this Declaration. Neither the term "connection," as used in Bankruptcy Rule 2014, nor the proper scope of a professional's search for a "connection" has been defined, and I am, therefore, uncertain what this Court may consider a "connection" requiring disclosure. Out of an abundance of caution, I am disclosing many representations that are not, to my understanding, disqualifying or problematic under either the Bankruptcy Code or applicable standards of professional ethics.

8. Neither I, nor any partner, of counsel, or associate of Dilworth, as far as I have been able to ascertain, have any connection with the Debtors, their creditors, the Debtors' respective attorneys and accountants, or any other Interested Party, except as set forth below or otherwise in this Declaration:

(a) Attached to this Declaration as **Schedule 1** and incorporated in this Declaration by reference, is a list of Interested Parties in these Chapter 11 Cases; and attached to this Declaration as **Schedule 2** and incorporated in this Declaration by reference is a list of Interested Parties whom Dilworth currently represents, has represented in the previous two years, and may in the future represent in matters **unrelated** to the Debtors' Chapter 11 Cases. The parties set forth on Schedule 2 are in addition to the parties disclosed in the paragraphs below in this Declaration. Although Dilworth has represented, currently represents, and may continue to represent certain entities and individuals listed on **Schedule 2** to this Declaration, Dilworth will not represent any such entity or individual in these Chapter 11 Cases.

(b) Dilworth does not represent, and has not represented, any entities other than the Debtors in matters related to these Chapter 11 Cases.

(c) Dilworth personnel may have business associations with certain creditors of the Debtors, counsel, or other professionals involved in these Chapter 11 Cases. In the ordinary course of business, Dilworth may engage counsel or other professionals in unrelated matters, who now represent, or in the future may represent, creditors or other interested parties in these Chapter 11 Cases.

9. Over the past several years, Dilworth has occasionally represented Dr. Achintya Moulick, chairman of the Board of Trustees of the Debtors, in matters which have no connection to the Debtors.

10. In addition, Dilworth has represented the Debtors in over 40 prepetition collection actions, several of which name Dr. Moulick as a defendant. In those actions, Dilworth has represented all defendants, including Dr. Moulick. Going forward, to the extent any of these actions are not stayed by the automatic stay, Dilworth will represent the interests of Debtor entities only in these actions, and will not represent Dr. Moulick or any other individual in these actions or in any matter having a connection to the Debtors.

11. Further, Insight Management and Consulting Services, Inc. ("Insight") has provided certain management and administration services with respect to the Debtors' three hospitals pursuant to a Hospital Facilities Management Services Agreement dated as of March 12, 2024. Dilworth represented Dr. Moulick with respect to a consulting agreement between Insight

4

#124672231v2

and Dr. Moulick.  The Debtors consented to Dilworth's representation of Dr. Moulick with respect to that agreement, and the Debtors were not a party to that agreement.  Going forward, Dilworth will represent the interests of Debtor entities only in any matter having a connection to the Debtors, and will not represent Dr. Moulick or any other individual in such matters.

12. Prior to the Petition Date, Dilworth represented the Debtors in connection with litigation matters and in connection with the preparation for the bankruptcy cases.  A copy of Dilworth's Engagement Letter with respect to restructuring issues, dated as of October 10, 2024 (the "Engagement Letter"), is attached to the Application as **Exhibit D**.

13. Attorneys at Dilworth may have professional, working, or social relationships with firms or professionals at firms that may be adverse to the Debtors. In addition, attorneys at Dilworth may have spouses, parents, children, siblings, fiancés or fiancées, who are attorneys at other law firms or companies.  Also, certain attorneys at Dilworth may have spouses, parents, children, siblings, fiancés or fiancées, who are employees of one or more of the parties in interest.  Dilworth has strict policies against disclosing confidential information to anyone outside of Dilworth, including spouses, parents, children, siblings, fiancés and fiancées.

14. Despite the efforts described above to identify and disclose Dilworth's connections with parties in interest in these Chapter 11 Cases, Dilworth is unable to state with certainty that every client representation or other connection has been disclosed. In this regard, if Dilworth discovers additional information requiring disclosure, Dilworth will file a supplemental disclosure with the Court.

15. Dilworth's search regarding conflicts is limited to a search with respect to the Interested Parties, and did not include every unsecured creditor of the Debtors.

#124672231v2

16. To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor Dilworth, nor any partner, of counsel, or associate thereof holds or represents an interest adverse to the Debtors or their respective estates, and Dilworth is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, in that: (a) Dilworth has no connection with the Debtors, their creditors, the U.S. Trustee, any person employed in the Office of the U.S. Trustee or any other party with an actual or potential interest in these Chapter 11 Cases or their respective attorneys or accountants, except as set forth in this Declaration, (b) Dilworth is not a creditor, equity security holder, or insider of the Debtors, (c) Dilworth is not and was not, within two years of the Petition Date, a director, officer, or employee of the Debtors, and (d) Dilworth neither holds nor represents an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors, or for any other reason. Accordingly, I believe that Dilworth is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

## DILWORTH'S RATES AND BILLING PRACTICES

17. Dilworth has not received any promises as to payment or compensation in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the U.S. Trustee Guidelines, and as disclosed in this Declaration.

18. It is Dilworth's policy to charge its clients in all areas of practice for expenses incurred in connection with a client's matter. The expenses charged to clients include, among other things, photocopying, witness fees, travel and lodging expenses, certain secretarial and other overtime expenses, filing and recording fees, postage, computerized research, electronic

management services, other electronic services, vendor charges, express mail and messenger charges and expenses for "working meals". Dilworth will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to its other clients, subject to this Court's approval of such expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and Local Rules as may from time to time be applicable, such procedures as may be fixed by Order of this Court and consistent with the Engagement Letter. Dilworth believes that failure to charge these expenses would require the Firm to increase its current hourly rates.

19.     Subject to the Court's approval, Dilworth intends to (a) charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered, and (b) seek reimbursement of actual and necessary out-of-pocket expenses. Dilworth will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the legal services described in the Application by category and nature of the services rendered.

20.     Dilworth intends to apply to the Court for allowance and payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, as well as any additional procedures that may be established by the Court in these Chapter 11 Cases.

21.     Dilworth's hourly rates are set at a level designed to compensate it fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. I believe that these rates are commensurate with or lower than the hourly rates of other firms of similar size and expertise. The Dilworth professionals and paraprofessionals expected to be most active in the Debtors' Chapter 11 Cases, and their current standard hourly rates, include:

| | |
|---|---|
| Lawrence G. McMichael (Partner), Philadelphia, PA | 1,200.00 per hour |
| Peter C. Hughes (Partner), Wilmington. DE/Philadelphia, PA | 775.00 per hour |

7

#124672231v2

| | |
|---|---|
| Anne M. Aaronson (Partner), Philadelphia, PA | 720.00 per hour |
| Jack Small (Associate), Philadelphia, PA | 395.00 per hour |
| Christine A. Tomlin (Paralegal), Cherry Hill, NJ | 270.00 per hour |
| Miriam L. Dolan (Paralegal), Philadelphia, PA | 300.00 per hour |

22.     Dilworth's hourly rates may change from time to time (typically effective as of January 1st of each year) in accordance with Dilworth's established billing practices and procedures.

23.     Dilworth has not agreed to share any of its compensation from these Chapter 11 Cases with any other person, other than a partner, counsel, associate, or staff person employed by Dilworth, as permitted by section 504 of the Bankruptcy Code.

### STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

24.     Dilworth intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Dilworth also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and the interim and final fee applications to be filed by Dilworth in these Chapter 11 Cases.

25.     The following information is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Guidelines:

**Question:**     Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

**Response:**     No. The hourly rates set forth in the Disclosure of Compensation are Dilworth's standard hourly rates.

**Question:**     Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

**Response:**     No.

8

| | |
|---|---|
| **Question:** | If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. |
| **Response:** | Prior to the Petition Date, Dilworth provided services to the Debtors unrelated to these Chapter 11 Cases as well as services preparing for the Chapter 11 Cases. For work performed pursuant to Dilworth's engagement, Dilworth charged its standard hourly rates, which are substantially similar to the billing rates and financial terms that Dilworth intends to charge for postpetition work, provided that Dilworth's rates were adjusted as of January 1, 2024. Such annual adjustment of rates as of January 1 of each year is Dilworth's custom. Dilworth has not agreed to cap its fees for postpetition services. |
| **Question:** | Has your client approved your prospective budget and staffing plan, and, if so for what budget period? |
| **Response:** | The Debtors have provided an estimated budget pursuant to the Cash Collateral budget, recognizing that in the course of large chapter 11 cases, unforeseeable issues resulting in unanticipated fees and expenses may arise that will need to be addressed by the Debtors and Dilworth. Dilworth intends to provide an appropriate staffing plan to the Debtors. |

To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 4, 2024

By: */s/ Peter C. Hughes*
Peter C. Hughes
Partner, Dilworth Paxson LLP

9

#124672231v2