## EXHIBIT D

[Engagement Letter]

#124672231v2



DIRECT DIAL NUMBER:
(215) 575-7268

Lawrence G. McMichael
lmcmichael@dilworthlaw.com

October 10, 2024

VIA EMAIL ONLY [*achintya.moulick@carepointhealth.org*]

Dr. Achintya Moulick
c/o CarePoint Health Management Associates
10 Exchange Place, 15th Floor
Jersey City, NJ 07302

      Re:  **Engagement Letter**

Dear Dr. Moulick:

Thank you for asking Dilworth Paxson LLP (the "Firm") to represent CarePoint Health Systems Inc., Hudson Hospital Opco LLC d/b/a CarePoint Health-Christ Hospital, HUMC Opco LLC d/b/a/ CarePoint Health -Hoboken University Medical Center, IJKG Opco LLC d/b/a CarePoint Health- Bayonne Medical Center and certain of their affiliates (collectively "You" or "Client") with respect to preparation for, filing, and prosecution of Chapter 11 bankruptcy cases. The complete list of entities to be included in the Chapter 11 filing has not yet been determined, but will be determined in the next few weeks. Dilworth will represent the interests of each of the debtor entities with respect to the preparation, filing and prosecution of Chapter 11 bankruptcy cases and the terms of this engagement letter will apply to its representation of each of those entities. Dilworth will not represent any individuals or non-debtor entities with respect to any aspects of the Chapter 11 bankruptcy cases. This letter and the attachment set forth the terms of our engagement by you.

The Rules of Professional Conduct regulating the practice of law suggest a written fee agreement between attorneys and their clients, and require that clients be informed of our billing practices in writing. This letter explains the scope of our engagement as legal counsel and sets forth the financial arrangements regarding our engagement and verifies our mutual agreement to the following:

1500 Market Street, Suite 3500E  •  Philadelphia, PA 19102-2101  •  215-575-7000  •  Fax: 215-754-4603
Cherry Hill, NJ • Freehold, NJ • Harrisburg, PA • Philadelphia, PA • Princeton, NJ • New York, NY • Wilmington, DE
www.dilworthlaw.com

123903152-1

Dr. Achintya Moulick
October 10, 2024
Page 2

1.    Scope of Engagement.

You have asked us to represent CarePoint Health Systems Inc., Hudson Hospital Opco LLC d/b/a CarePoint Health-Christ Hospital, HUMC Opco LLC d/b/a/ CarePoint Health - Hoboken University Medical Center, IJKG Opco LLC d/b/a CarePoint Health- Bayonne Medical Center and certain of their affiliates as counsel in connection with the preparation, filing, and prosecution of Chapter 11 bankruptcy cases.

Our representation of you is limited to the matter noted above, and unless specifically agreed between us, our engagement will end at the conclusion of such matter.

2.    Fees and Hourly Rates.

We will use the amount of time devoted to your matter at our hourly rates in determining fees. These hourly rates are based upon the experience, expertise and standing of our attorneys. Please note, unless we mutually agree otherwise, we bill in minimum tenth-hour increments, rounded to the nearest tenth. Our hourly rates are adjusted from time to time, usually on an annual basis. Unless we specifically agree with you to the contrary, the rates applicable to your matter will be adjusted accordingly. My current hourly rate is $1,200. Others who will be involved in the representation include Peter C. Hughes (partner), with an hourly rate of $775, Anne Marie Aaronson (partner), with an hourly rate of $720, Jack Small (associate) with an hourly rate of $395, and Christine Tomlin (paralegal) with an hourly rate of $270. When appropriate, we may use other legal personnel to provide services as effectively and efficiently as possible.

3.    Costs and Expenses.

The performance of legal services involves costs and expenses, some of which must be paid to third parties. These expenses may include, but are not limited to, those set forth in Section XII of our Standard Terms and Conditions. For items we purchase in bulk or through fixed fee arrangements, such as computer research services, we will charge you a rate reasonably apportioned to you.

We expect that you will either pay the vendor directly or pay us for such costs. Our standard charges for certain services, which will apply absent an express agreement to the contrary, are also set forth on the attached Terms and Conditions. If such costs can be determined beforehand and appear to be substantial, we may ask you to advance us those sums before we expend them, or to pay the vendor directly.

4.    Monthly Statements and Payment Terms.

We expect to request that you pay a retainer prior to the filing of the bankrupty cases. Such retainer will be applied to any of the Firm's fees and expenses which remain unpaid as of the time

123903152-1

Dr. Achintya Moulick
October 10, 2024
Page 3

just before the bankruptcy filing.  You will be billed monthly for all additional amounts for fees and expenses, and expected to make payments once the retainer has been fully credited and the bankruptcy court has approved payment of the additional amounts.

We reserve the right to request that you replenish the retainer amount in part, and that such amount remain on deposit with the Firm, subject to the Firm's right to satisfy overdue invoices, until the conclusion of the matter.  Any unused balance will be returned to you at that time, provided that all outstanding invoices have been satisfied.

Our practice is to send a monthly statement for services rendered and costs and expenses incurred on our client's behalf during the previous month.  The detail in the monthly statement will inform you not only of the fees and expenses incurred, but also of the nature of the work performed. These statements are due and payable upon receipt but, in any event, no later than thirty (30) days thereafter.  We reserve the right to charge interest at an appropriate rate (currently 0.75% per month) calculated monthly starting forty-five (45) days after the issuance of the statement and continuing until fully paid.

We do our best to see that our clients are satisfied not only with our services but also with the reasonableness of the fees, costs and expenses charged for these services.  Therefore, if you have any questions or objections to a statement or the basis for our fees, you should raise it with us promptly for discussion.  If you object only to a portion of a statement, we ask that you pay the remainder, which will not constitute a waiver of your objections.

5.    Conflict of Interest.

We have checked our records to determine that we do not have any conflict of interest under the Pennsylvania Rules of Professional Conduct with respect to this matter.  If we find that other parties whom we presently represent do have a conflicting interest, we may be required to withdraw our representation in this matter.  In addition, to the extent permitted by the Pennsylvania Rules of Professional Conduct, we reserve the right to represent clients with competing interests, as long as such representation will not be directly adverse to our representation of you and that our representation of you will not be materially limited.  The Pennsylvania Rules of Professional Conduct may require that we disclose such engagements and obtain your informed written consent. We ask that you do not unreasonably withhold your consent to our representation of future clients with competing interests, should such circumstances arise.

6.    Arbitration Clause.

Any dispute involving the relationship between the client and this Firm will be arbitrated in Philadelphia by a neutral arbitrator selected by the parties.  If the parties are unable to reach agreement regarding the selection of the arbitrator, the arbitrator shall be appointed by the United

123903152-1

Dr. Achintya Moulick
October 10, 2024
Page 4

States District Court for the Eastern District of Pennsylvania or the Court of Common Pleas of Philadelphia County in a proceeding to enforce this arbitration provision. To the extent that the dispute is a fee dispute within the limits of the Philadelphia Bar Association's client fee dispute procedures, the parties agree to arbitrate in that forum. Any arbitration between the client and this Firm shall be final, binding and not appealable.

You further understand and agree that in any dispute arising out of or relating to this engagement, both parties waive their right to a trial by jury. In connection with any such dispute, all claims by either party will be strictly limited to actual and direct economic loss. The parties waive any right to claim consequential or punitive damages. The prevailing party in the resolution of any dispute shall have the right to be reimbursed by the other party for all fees and expenses, including reasonable attorney's fees, incurred in the dispute.

    7.    <u>Withdrawal from Representation</u>.

The attorney/client relationship is one of mutual trust and confidence. If you have any questions at all about the provisions of this engagement, we invite inquiries. We encourage our clients to inquire about any matter relating to our engagement or monthly statements that are in any way unclear or appear unsatisfactory. Conversely, any failure on your part to meet your obligation of timely payments under this agreement will constitute authorization for the Firm to withdraw from representing you and to reveal this agreement and any other necessary documents to any court or agency if the same should prove necessary to effect withdrawal.

This engagement is also subject to termination by either party at its sole discretion, subject to the Rules of Professional Conduct and any applicable court rules. Upon such termination, however, you will remain liable for any unpaid fees and costs, whether or not billed.

    8.    <u>Privacy</u>.

In the course of providing you with legal services, we may receive significant nonpublic personal financial information from you or from other financial advisors at your specific instruction. All information that we receive from you or from others at your direction will be held in confidence and not released to people outside the Firm, except as required in the performance of our services, as agreed to by you, or as required under an applicable law. We consider all information relating to representation of our clients to be confidential, and it is treated accordingly, as required by the Rules of Professional Conduct.

    9.    <u>Communications</u>.

The Firm regularly communicates with its clients and with third parties, on behalf of its clients, through the use of a variety of technologies, including landline, digital and cellular telephones, unencrypted e-mail, cloud-based and internet-based communications platforms, and

123903152-1

Dr. Achintya Moulick
October 10, 2024
Page 5

fax machines. Each of these means of communication is practically and technologically susceptible to varying risks of interception by (or misdelivery to) unintended recipients. By executing this letter, you consent to the Firm's utilization of the above-referenced means of communication.

If you are not fully versed in the risks inherent in each of the aforementioned means of communication, please contact the undersigned to discuss them before executing this letter. If you would prefer that the Firm refrain from using one or more of the above-referenced means of communication please refrain from executing this letter, communicate that preference to us in writing, and we will revise this letter accordingly.

10.     Future Services.

The terms of this letter will also apply to services rendered for such future matters that we mutually agree will be handled by the Firm. If, however, such services are substantially different from those to which this letter applies, either party may request that a new Engagement Agreement be executed, or that this agreement be reacknowledged together with payment of an additional retainer and satisfaction of outstanding invoices. Our undertaking to perform additional services in the future is subject to our Firm's customary intake procedures, including conflict checks.

11.     Acknowledgement of Terms.

If this letter correctly sets forth your understanding of the scope of the services to be rendered to you by the Firm, and if the terms of the engagement are satisfactory, please execute the enclosed copy of this letter and return it to us. If the scope of the services described is incorrect or if the terms of the engagement set forth in this letter are not satisfactory to you, please let us know in writing in order that we can discuss either aspect.

By executing this letter, you acknowledge that there is uncertainty concerning the outcome of this matter and that the Firm and the undersigned attorneys have made no guarantees as to the disposition of any phase of this matter. Any representation or expression that the Firm or its attorneys express from time-to-time relative to the outcome of this matter is only an expression of opinion based on information available to the Firm at the time and does not constitute a promise or guarantee. The Firm shall not be responsible for the performance of any legal service under this Engagement Agreement until this letter is returned to the Firm, whereupon our engagement by you is accepted per the stated terms, subject to the approval of the Firm's New Business Committee.

123903152-1

Dr. Achintya Moulick
October 10, 2024
Page 6


       We look forward to working with you and thank you once again for the opportunity to serve you.

Very truly yours,

Lawrence G. McMichael

LGM:def


Accepted and acknowledged on behalf of each of the Chapter 11 debtor entities:

BY: _____
Dr. Achintya Moulick
Chief Executive Officer
CHAIRMAN

DATE: OCT 10, 2024

# DILWORTH PAXSON LLP

## Standard Terms and Conditions of Engagement

Dilworth Paxson LLP (the "Firm") bills for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for external charges at the actual cost billed by the vendor except in the few cases noted below.

I. Overview. These Standard Terms and Conditions of Engagement ("Standard Terms"), along with the Engagement Letter ("Letter"), comprise the Engagement Agreement between you and the Firm and explain the terms under which the Firm will provide legal services. Any defined term in the Letter shall have the same definition in the Standard Terms. In the event of a conflict, the provisions of the Letter shall control.

II. Affiliations by Client. Client agrees and acknowledges that, unless specifically stated otherwise in the Letter, the Firm has not been engaged to represent any of client's affiliates, subsidiaries, constituents, parents or related individuals, officers, directors, partners, members, shareholders or employees (collectively, "Affiliates"). Client agrees that the Firm's representation of client does not give rise to an attorney-client relationship between the Firm and any of client's Affiliates and will not give rise to any conflict of interest in the event other clients of the Firm are adverse to any of client's Affiliates.

III. Research Services. Use of on-line computerized research (primarily Westlaw) and use of outside research services are billed either at the supplier's standard charges for such services, or, if we purchase them through fixed fee arrangements, we will charge you a rate we reasonably apportion to you.

IV. Travel-Related Expenses. Travel expenses are billed at cost and include air or rail travel, lodging, car rental, taxis or car service, tips and other reasonable miscellaneous items associated with travel.

V. Reproduction. Photocopying performed in-house is charged at 23 cents per page. Photocopying projects performed by outside vendors are billed at the actual invoice amount. Special arrangements can be made for unusually large projects.

VI. Special Services, Items and Equipment. If, due to the nature of a client's legal needs, special services, items or equipment are purchased and/or used, such as case-specific software or computer equipment, the costs thereof may be charged to the client; provided, however, prior to incurring such costs the client will be notified of the need for and cost of such items.

VII. Postage and Courier Services. Outside messenger and express carrier services are charged at the actual vendor invoice amount which frequently involves discounts negotiated by the Firm. For bulk mailings, registered and/or certified mail, postage is charged at actual U.S. mail rates. On certain occasions, internal staff may be required to act as messengers; a standard rate is charged for their time.

VIII. Meals. Business meals with a client are charged at actual cost. Breakfast, lunch and dinner meetings with the client at the Firm are charged based on the actual costs of such meals. Beverage and snack services at the Firm's offices are not charged.

When overtime, weekend or holiday work is required, clients are charged for the actual, reasonable cost of meals for the attorneys and staff who so work specifically for the client.

IX. Staff Overtime. Non-attorney staff are paid time and one-half for every hour of overtime worked on weekdays, and double time on weekends and holidays, when such staff are required to work overtime specifically for the client.

X. Fee and Cost Estimates. If requested, we will provide our best estimate of anticipated fees and costs related to our engagement, and we will gladly update those estimates at any time. However, unless we explicitly state otherwise, any such estimates are based only on our assumptions at the time and do not represent either a minimum or a maximum of the amount you will be required to pay. We do not undertake any obligation to provide you with an estimate or an update of a previous estimate unless you so request.

XI. File Retention. Our firm generally maintains its files electronically, and therefore we retain the tangible copy of only certain original documents. We retain such tangible copies as long as needed for our representation and will return them upon request. We are able to provide electronic copies of your electronic client file upon request. Unless you request otherwise, we normally retain files and corporate records for seven years. After that time, we will dispose of the file content unless you have informed us that you wish to make the file's contents available to you at the end of that period.

XII. Direct Payment by Clients of Other Disbursements. Other major disbursements incurred in connection with an engagement will be paid directly by the client. (Those which are incurred and paid by the Firm will be charged to the client at the actual vendor's invoice amount). Examples of such major disbursements that clients will pay directly include:

- Professional Fees (including disbursements for outside professional services such as local counsel, accountants, expert witness and other professionals).

- Filing/Court Fees (including disbursements for agency fees for filing documents, standard witness fees, juror fees).

- Transcription Fees (including disbursements for outside transcribing agencies and courtroom stenographer transcripts).

- Transactional and Due Diligence Fees (including recording charges, search fees, good standing certificates and service fees).

- Other Disbursements (including any other required out-of-pocket expenses).

123903152-1