## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CarePoint Health Systems Inc. d/b/a Just Health Foundation, et al. [1] | : | Case No. 24-12534 (JKS) |
| | : | Joint Administration Requested |
| Debtors. | : | **Re D.I. 10, 87** |

---------------------------------------------------------------x

### INTERIM ORDER (I) AUTHORIZING CERTAIN DEBTORS TO OBTAIN POSTPETITION FINANCING FROM BAYONNE MEDICAL CENTER OPCO, LLC AND GRANTING SENIOR SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO THE LENDER; (II) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

This matter having come before the Court upon the motion (the "Motion")[2] of the above-captioned debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 4001-2 of the Local Rules

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Credit Agreement (as defined below), as applicable.

#124676776v4

of the Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an interim order (this "Interim Order") granting, *inter alia*, authority, pursuant to sections 105, 363, 364(c) and 364(d)(1) of the Bankruptcy Code, for (i) Debtors CarePoint Health Systems Inc., HUMC OPCO LLC and HUDSON HOSPITAL OPCO, LLC (collectively, the "Debtor Borrowers") to enter into that certain Super-Priority Senior Secured Debtor-in-Possession Credit and Security Agreement, among the Debtor Borrowers, as borrowers, and Bayonne Medical Center Opco, LLC (the "DIP Lender"), as lender, in substantially the form attached to the Motion as Exhibit B (as amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement" and, together with all documents ancillary thereto or executed or delivered in connection therewith, including this Interim Order, the "DIP Loan Documents") and obtain thereunder senior secured post-petition financing in an aggregate principal amount of up to $25.0 million (the "DIP Facility"), inclusive of $10.0 million available for funding upon entry of this Interim Order and $15.0 million available for funding upon entry of a Final Order, in each case pursuant to and subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order and the Budget attached to the Motion as Exhibit C (as amended from time to time, the "Budget") and (ii) the Debtors (excluding Debtor IJKG Opco, LLC, which is not authorized to use Cash Collateral (as defined below) under this Interim Order) to use Cash Collateral in accordance with the Budget and this Interim Order; and the Court having considered the Motion and all exhibits thereto, the *Declaration of Shamiq Syed in Support of First Day Pleadings* [D.I. 23] (the "First Day Declaration"), and the evidence submitted and arguments proffered or adduced at the interim hearings held before this Court on November 6, 2024 and November 8, 2024 (the "Interim Hearings"); and upon the record of these Chapter 11 Cases; and due and proper notice of the Interim Hearings having been given in accordance with Bankruptcy Rules 4001 and 9014 and

#124676776v4

Local Rule 2002-1; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor Borrowers and their estates and is essential for the continued operation of the Debtor Borrowers' business; and after due consideration and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL, AND THE PROFFERS MADE AND EVIDENCE SUBMITTED DURING THE INTERIM HEARINGS**:[3]

A.      *Petition Date*.  On November 3, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Chapter 11 Cases.

B.      *Debtors in Possession*.  The Debtors are continuing in the management and operation of their business and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, subject to that certain Collateral Surrender and Operations Transfer Agreement.

C.      *Committee Formation*. As of the date hereof, the Office of the United States Trustee (the "U.S. Trustee") has not appointed an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Official Committee").

D.      *Notice*.  Notice of the Interim Hearings and the relief requested in the Motion has been provided by the Debtors in compliance with Bankruptcy Rule 4001(c), whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, including:  (i) counsel to the U.S. Trustee; (ii) the New Jersey Department of Health; (iii) counsel to the DIP Lender; (iv)

---

[3] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

#124676776v4

any duly appointed patient care ombudsman in these Chapter 11 Cases; (vi) the United States

Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) the

Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (ix) counsel to the Senior

Agents (as defined below); (x) counsel to the Maple-Hudson Secured Parties (as defined below);

and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E.      *Jurisdiction and Venue*.  This Court has core jurisdiction over the persons and property

affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes

a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and proceedings

on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

F.      *Debtors' Stipulations and Releases.*  Subject only to the rights of parties in interest

specifically set forth in paragraph 19 of this Interim Order and subject to the limitations contained

therein, the Debtors stipulate and agree as to the following (collectively, the "Debtors' Stipulations

and Releases"):

(a)      *Prepetition Maple Loan Documents*. Prior to the Petition Date:

(i)      Debtor HUMC Opco LLC is obligated and indebted to Maple Healthcare, LLC (in its capacity as holder of the Maple-HUMC Demand Notes, the "Maple Lender") under and pursuant to (A) that certain Demand Promissory Note, dated as of June 1, 2019 in the original principal amount of $3,706,553, (B) that certain Amended and Restated Demand Promissory Note, dated as of July 25, 2019 in the original principal amount of $646,723.50; and (c) that certain Amended and Restated Demand Promissory Note, dated as of July 25, 2019 in the original principal amount of $4,353,276.50 (such demand notes, collectively, the "Maple-HUMC Demand Notes").

(ii)      Debtor Hudson Hospital Opco LLC the lenders from time to time party thereto (the "Maple-Hudson Lenders") and Maple Healthcare, LLC, as administrative agent and collateral agent for the Maple-Hudson Lenders (as successor to BRF Finance Co., LLC in such capacities) (in such capacities, the "Maple-Hudson Agent"; the Maple-Hudson Agent, together with the Maple-Hudson Lenders, the "Maple-Hudson Secured Parties") entered into that certain Amended and Restated Loan and Security Agreement, dated as of June 26, 2019 (as amended, supplemented or otherwise modified form time to time, the "Maple-Hudson Loan Agreement"; and, together with the "Loan Documents" as defined in

the Maple-Hudson Loan Agreement, the "Maple-Hudson Loan Documents"), which provided for the term loan facilities in the aggregate principal amount of $17,951,721 (the "Maple-Hudson Facility" and the loans thereunder, the "Maple-Hudson Loans"). The Maple-Hudson Loans are secured by liens (the "Maple Liens") on substantially all of Hudson Hospital Opco LLC's assets in accordance with the terms of the Maple-Hudson Loan Documents (the "Maple Collateral").

(b) *Prepetition Senior Loan Documents*. Prior to the Petition Date:

(i) Debtor HUMC Opco, LLC, as borrower, HUMC Holdco, LLC, the lenders from time to time party thereto (the "Senior HUMC Lenders") and Capitala Private Advisors, LLC, in its capacities as administrative agent and collateral agent for the Senior HUMC Lenders (in such capacities, the "Senior HUMC Agent" and, together with the Senior HUMC Lenders, the "Senior HUMC Secured Parties") entered into that certain Amended and Restated Loan and Security Agreement, dated as of August 8, 2019 (as amended, supplemented or otherwise modified from time to time, the "Senior HUMC Loan Agreement"; and, together with the "Loan Documents" as defined in the Senior HUMC Loan Agreement, the "Senior HUMC Loan Documents"), which provided for a term loan facility in the aggregate principal amount of $30,000,000 (the "Senior HUMC Facility" and the loans thereunder, the "Senior HUMC Loans"). The Senior HUMC Loans are secured by liens (the "Senior HUMC Liens") on substantially all of Debtor HUMC Opco, LLC's assets in accordance with the terms of the Senior HUMC Loan Documents and subject to customary exceptions and permitted liens as set forth therein (the "Senior HUMC Collateral").

(ii) Debtor Hudson Hospital Opco, LLC, as borrower, the lenders from time to time party thereto (the "Senior Hudson Lenders") and Capitala Private Advisors, LLC, in its capacities as administrative agent and collateral agent for the Senior Hudson Lenders (in such capacities, the "Senior Hudson Agent" and, together with the Senior Hudson Lenders, the "Senior Hudson Secured Parties") entered into that certain Loan and Security Agreement, dated as of November 4, 2022 (as amended, supplemented or otherwise modified from time to time, the "Senior Hudson Loan Agreement"; and, together with the "Loan Documents" as defined in the Senior Hudson Loan Agreement, the "Senior Hudson Loan Documents"), which provided for term loan facilities in the aggregate principal amount of $9,000,000 (the "Senior Hudson Facility" and the loans thereunder, the "Senior Hudson Loans"). The Senior Hudson Loans are secured by liens (the "Senior Hudson Liens") on substantially all of Debtor Hudson Hospital Opco, LLC's assets in accordance with the terms of the Senior Hudson Loan Documents and subject to customary exceptions and permitted liens as set forth therein (the "Senior Hudson Collateral").

(iii) Debtors Carepoint Health Management Associates Intermediate Holdco, LLC, Bayonne Intermediate Holdco, LLC, Hoboken Intermediate Holdco, LLC, Christ Intermediate Holdco, LLC, Sequoia Healthcare Management, LLC (collectively with Carepoint Health Management Associates Intermediate Holdco, LLC, Bayonne Intermediate Holdco, LLC, Hoboken Intermediate Holdco, LLC

and Christ Intermediate Holdco, LLC, the "Senior Holdco Borrowers") the lenders from time to time party thereto (the "Senior Holdco Lenders") and Capitala Specialty Lending Corp., as administrative agent and collateral agent for the Senior Holdco Lenders (in such capacities, the "Senior Holdco Agent" and, together with the Senior Holdco Lenders, the "Senior Holdco Secured Parties") entered into that certain Credit Agreement, dated as of August 21, 2018 (as amended, supplemented or otherwise modified from time to time, the "Senior Holdco Loan Agreement"); and, together with the "Loan Documents" as defined in the Senior Holdco Loan Agreement, the "Senior Holdco Loan Documents"), which provided for term loan facilities in the aggregate principal amount of $50,000,000 (the "Senior Holdco Facility" and the loans thereunder, the "Senior Holdco Loans"). The Senior Holdco Loans are secured by liens (the "Senior Holdco Liens" and, collectively with the Senior Hudson Liens and the Senior HUMC Liens, the "Senior Liens") on substantially all of the Senior Holdco Borrowers' assets in accordance with the terms of the Senior Holdco Loan Documents and subject to customary exception and permitted liens as set forth therein (the "Senior Holdco Collateral").

(c)     *Prepetition Senior Secured Obligations*.  As of the Petition Date:

(i)     Debtor HUMC Opco, LLC was justly and lawfully indebted and liable to the Senior HUMC Secured Parties under the Senior HUMC Loan Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $14,817,160.69, plus all accrued and unpaid interest and any fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations (including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable to or reimbursable by HUMC Opco, LLC), and all other "Obligations" under and as defined in the Senior HUMC Loan Agreement (the "Senior HUMC Obligations").

(ii)     Debtor Hudson Hospital Opco, LLC was justly and lawfully indebted and liable to the Senior Hudson Secured Parties under the Senior Hudson Loan Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $4,893,647.93, plus all accrued and unpaid interest and any fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations (including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable to or reimbursable by Hudson Hospital Opco, LLC), and all other "Obligations" under and as defined in the Senior Hudson Loan Agreement (the "Senior Hudson Obligations").

(iii)     The Senior Holdco Borrowers were justly and lawfully indebted and liable to the Senior Holdco Secured Parties under the Senior Holdco Loan Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $35,805,850.00, plus all accrued and unpaid interest and any fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations (including, without limitation, any attorneys',

accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable to or reimbursable by the Senior Holdco Borrowers), and all other "Obligations" under and as defined in the Senior Holdco Loan Agreement (the "Senior Holdco Obligations").

(d)    *Prepetition Maple Obligations*.

(i)    Debtor Hudson Hospital Opco, LLC was indebted and liable to the Maple-Hudson Secured Parties under the Maple-Hudson Loan Documents in the aggregate principal amount of not less than $17,951,721, plus all accrued and unpaid interest and any fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations (including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable to or reimbursable by Hudson Hospital Opco, LLC), and all other "Obligations" under and as defined in the Maple-Hudson Loan Agreement (the "Maple-Hudson Obligations"). The Maple-Hudson Obligations are subordinate and junior in right of payment to the Senior Hudson Obligations pursuant to the Maple-Hudson Subordination Agreement (as defined below).

(ii)    Debtor HUMC Opco, LLC was indebted and liable to Maple Lender under the Maple-HUMC Demand Notes in the aggregate principal amount of not less than $8,706,553, plus all accrued and unpaid interest thereon, and all other obligations of HUMC Opco, LLC thereunder (the "Maple-HUMC Obligations"). The Maple-HUMC Obligations are subordinate and junior in right of payment to the Senior HUMC Obligations pursuant to the Maple-HUMC Subordination Agreement (as defined below).

(e)    *Prepetition Senior Liens*. As of the Petition Date:

(i)    (A) The Senior HUMC Liens on the Senior HUMC Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Senior HUMC Secured Parties for fair consideration and reasonably equivalent value; (B) the Senior HUMC Liens are senior in priority over any and all other liens on the Senior HUMC Collateral, subject only to certain liens otherwise permitted by the Senior HUMC Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Senior HUMC Liens as of the Petition Date); (C) the Senior HUMC Obligations constitute legal, valid, binding, and non-avoidable obligations of the HUMC Opco, LLC enforceable in accordance with the terms of the Senior HUMC Loan Documents; (D) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Senior HUMC Liens or Senior HUMC Obligations exist, and no portion of the Senior HUMC Liens or Senior HUMC Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or any other applicable law; (E) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of

the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Senior HUMC Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Senior HUMC Facility; (F) the Debtors have waived, discharged, and released any right to challenge any of the Senior HUMC Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, perfection and priority of the liens securing the Senior HUMC Obligations; and (G) the Senior HUMC Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(ii)    (A) The Senior Hudson Liens on the Senior Hudson Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Senior Hudson Secured Parties for fair consideration and reasonably equivalent value; (B) the Senior Hudson Liens are senior in priority over any and all other liens on the Senior Hudson Collateral, subject only to certain liens otherwise permitted by the Senior Hudson Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Senior Hudson Liens as of the Petition Date); (C) the Senior Hudson Obligations constitute legal, valid, binding, and non-avoidable obligations of Hudson Hospital Opco, LLC, enforceable in accordance with the terms of the Senior Hudson Loan Documents; (D) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Senior Hudson Liens or Senior Hudson Obligations exist, and no portion of the Senior Hudson Liens or Senior Hudson Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or any other applicable law; (E) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Senior Hudson Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Senior Hudson Facility; (F) the Debtors have waived, discharged, and released any right to challenge any of the Senior Hudson Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, perfection and priority of the liens securing the Senior Hudson Obligations; and (G) the Senior Hudson Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(iii)    (A) The Senior Holdco Liens on the Senior Holdco Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Senior Holdco Secured Parties for fair consideration and reasonably equivalent value; (B) the Senior Holdco Liens are senior in priority over any and all other liens on the Senior Holdco Collateral, subject only to certain liens otherwise permitted by the Senior Holdco Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior

in priority to the Senior Holdco Liens as of the Petition Date); (C) the Senior Holdco Obligations constitute legal, valid, binding, and non-avoidable obligations of the Senior Holdco Borrowers, enforceable in accordance with the terms of the Senior Holdco Loan Documents; (D) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Senior Holdco Liens or Senior Holdco Obligations exist, and no portion of Senior Holdco Liens or Senior Holdco Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or any other applicable law; (E) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Senior Holdco Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Senior Holdco Facility; (F) the Debtors have waived, discharged, and released any right to challenge any of the Senior Holdco Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, perfection and priority of the liens securing the Senior Holdco Obligations; and (G) the Senior Holdco Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(iv)      Pursuant to the terms of that certain Collateral Sharing Agreement, dated as of November 4, 2022 (as amended, supplemented or otherwise modified from time to time, the "Collateral Sharing Agreement"), each Debtor and certain of their affiliates granted to Capitala Private Advisors, LLC, as control agent for the benefit of the "First Lien Secured Parties" (as defined therein), each Senior Agent (for the benefit of the applicable Senior Secured Parties), the Maple-Hudson Agent (for the benefit of the Maple-Hudson Secured Parties), the Maple-Bayonne Agent (as defined therein) (for the benefit of itself and the Maple-Bayonne Lenders (as defined therein) and the Noteholders (as defined therein) a lien on the Excluded Prepetition Collateral (as defined below), which liens are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the foregoing grantees for fair consideration and reasonably equivalent value, and the Debtors have waived, discharged, and released any right to challenge the validity, extent, perfection and priority of the liens granted under the Collateral Sharing Agreement.

(f)      *Prepetition Maple Liens.*  As of the Petition Date:

(i)      (A) The Maple Liens on the Maple Collateral are valid, enforceable and properly perfected and were granted to, or for the benefit of, the Maple-Hudson Secured Parties for fair consideration and reasonably equivalent value; (B) subject to the Maple-Hudson Subordination Agreement, the Maple Liens are senior in priority over any and all other liens on the Maple Collateral, subject only to certain liens otherwise permitted by the Maple-Hudson Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and

#124676776v4

senior in priority to the Maple Liens as of the Petition Date); and (C) the Maple-Hudson Obligations constitute legal and valid obligations of Hudson Hospital Opco, LLC, enforceable in accordance with the terms of the Maple-Hudson Loan Documents (subject to the Maple-Hudson Subordination Agreement).

(g)    *Prepetition Maple Subordination Agreement*. Prior to the Petition Date:

(i)    Debtor HUMC Opco, LLC, Maple Lender and the Senior HUMC Agent entered into that certain Subordination Agreement, dated as of August 8, 2019 (as amended, supplemented or otherwise modified from time to time, the "Maple-HUMC Subordination Agreement"), providing for the subordination of the Maple-HUMC Obligations and any liens securing the same to the Senior HUMC Obligations and the Senior HUMC Liens.

(ii)    Debtor Hudson Hospital Opco, LLC, certain of its affiliates, the Maple-Hudson Secured Parties and the Senior Hudson Agent entered into that certain Subordination and Intercreditor Agreement, dated as of November 4, 2022 (as amended, supplemented or otherwise modified from time to time, the "Maple-Hudson Subordination Agreement" and, together with the Maple-HUMC Subordination Agreement, the "Maple Subordination Agreements"), providing for the subordination of the Maple-Hudson Obligations and the Maple Liens on the Senior Hudson Collateral to the Senior Hudson Obligations and the Senior Hudson Liens on the Senior Hudson Collateral.

(h)    *No Control (Senior Secured Parties)*.  None of the Senior HUMC Agent, the Senior Hudson Agent or the Senior Holdco Agent (collectively with the Senior HUMC Agent and the Senior Hudson Agent, the "Senior Agents"), or any of the other Senior HUMC Secured Parties, Senior Hudson Secured Parties or Senior Holdco Secured Parties (collectively with the Senior HUMC Secured Parties and Senior Hudson Secured Parties, the "Senior Secured Parties") are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Senior HUMC Facility, the Senior Hudson Facility, the Senior Holdco Facility (collectively with the Senior HUMC Facility and the Senior Hudson Facility, the "Senior Facilities"), the Senior HUMC Loans, the Senior Hudson Loans, the Senior Holdco Loans (collectively with the Senior HUMC Loans and the Senior Hudson Loans, the "Senior Loans"), the Senior HUMC Loan Documents, the Senior Hudson Loan Documents or the Senior Holdco Loan Documents (collectively with the Senior HUMC Loan Documents and the Senior Hudson Loan Documents, the "Senior Loan Documents").

(i)    *No Control (Maple)*.  None of the Maple-Hudson Secured Parties or the Maple Lender are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Maple-Hudson Facility, the Maple-HUMC Demand Notes, the Maple-Hudson Loans or the Maple-Hudson Loan Documents.

(j)    *No Claims or Causes of Action (Senior Secured Parties)*.  As of the date hereof,

there exist no claims or causes of action against any of the Senior Secured Parties with respect to, in connection with, related to, or arising from the Senior Loans, the Senior HUMC Obligations, the Senior Hudson Obligations, the Senior Holdco Obligations (collectively with the Senior HUMC Obligations and the Senior Hudson Obligations, the "Senior Secured Obligations"), the Senior Loan Documents or any of the Senior Facilities that may be asserted by the Debtors or, to the Debtors' knowledge, any other person or entity.

(k)     *Cash Collateral*.  All of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Senior HUMC Collateral, Senior Hudson Collateral or Senior Holdco Collateral (collectively with the Senior HUMC Collateral and the Senior Hudson Collateral, the "Senior Collateral"), constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and is Senior Collateral of the Senior Secured Parties.

(l)     *Senior Release*.  The Debtors, on behalf of themselves and their respective estates, forever and irrevocably release, discharge, and acquit all former, current and future Senior Secured Parties, all holders of participation interests under the Senior Loan Documents, and each of the former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest of each Senior Secured Party and of each of their respective affiliates, in each case in its respective capacity as such (collectively, the "Senior Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including (without limitation) all legal and equitable theories of recovery, arising under common law, equity, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Senior Secured Obligations, the Senior Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Senior Secured Parties.  The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction of the payment of any of the Senior Secured Obligations that the Debtors now have or may claim to have against the Senior Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Interim Order.

G.     *No Credit Available on More Favorable Terms*.  The Debtor Borrowers are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a

superpriority administrative expense, junior liens on encumbered property of the Debtor Borrowers' estates, or liens on property of the Debtor Borrowers' estates not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtor Borrowers have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Loan Documents.

H.        *Best Interests of Estates*.  It is in the best interest of the Debtors' estates and creditors that the Debtor Borrowers be allowed to enter into the DIP Facility to obtain postpetition secured financing from the DIP Lender under the terms and conditions set forth herein and in the DIP Loan Documents, as such financing is necessary to avoid immediate and irreparable harm to the Debtors' estates and for the continued operation of their business.

I.        *Good Faith*.  The extension of credit and financial accommodations under the DIP Loan Documents pursuant to this Interim Order are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

J.        *Good Cause*. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and estates, as its implementation will, among other things, provide the Debtor Borrowers with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and ongoing operations for the benefit of their patients and creditors, (2) preserve and maximize the value of the Debtors' estates for the benefit of the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their business, patients, employees, and assets.

K.        *Necessity of DIP Facility Terms*.  The terms of the DIP Loan Documents and the liens and the various claims, superpriority claims, and other protections granted in this Interim Order are

necessary in order to induce the DIP Lender to provide postpetition financing to the Debtor Borrowers.

L.      *Need for Post-Petition Financing*.  The Debtor Borrowers do not have sufficient available sources of working capital, including cash collateral, to continue to operate their business in the ordinary course without the financing requested in the Motion. The Debtor Borrowers' ability to maintain business relationships with their vendors and suppliers, to pay their employees, to provide care to their patients, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of their assets through a reorganization process. The ability of the Debtor Borrowers to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangement with the DIP Lender as set forth in this Interim Order and the DIP Loan Documents is vital to the preservation and maintenance of the going concern value of the Debtors.  The Debtors will not have sufficient sources of working capital to operate the Debtor Borrowers' businesses in the ordinary course without access to the DIP Facility. Accordingly, the Debtor Borrowers have an immediate need to obtain the DIP Facility.

M.      *Need to Use Cash Collateral*.  The Debtors' cash and cash equivalents, including cash in deposit accounts, security deposits or otherwise, wherever located and whenever acquired, whether in the form of cash, profits or accounts receivable or otherwise, now in the possession, custody or control of the Debtors or persons in privity with the Debtors, or in which the Debtors have or will obtain an interest during the pendency of these Chapter 11 Cases, constitute cash collateral in which the Senior Secured Parties, the Maple-Hudson Secured Parties, or any other prepetition lender has asserted or may assert a security interest in or lien on for purposes of and within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").  The Debtors (specifically excluding Debtor IJKG Opco, LLC) require the use of all such Cash Collateral (other

than the Cash Collateral of IJKG Opco, LLC) in order to, among other things, preserve, maintain and maximize the value of their assets and business.  The ability of the Debtors to maintain liquidity through the use of Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets.

N.      *Adequate Protection for Prepetition Secured Parties*.  The Senior Agents, the other Senior Secured Parties and the Maple-Hudson Secured Parties (collectively, the "Prepetition Secured Parties") have negotiated in good faith regarding the Debtor Borrowers' use of Senior Collateral (including Cash Collateral) to fund the administration of the Debtors' estates, continued operation of their businesses, and the marketing and consummation of the sale process, in accordance with the terms hereof and the Budget, subject to the Permitted Variance.  The Prepetition Secured Parties have agreed to permit the Debtors (specifically excluding Debtor IJKG Opco, LLC) to use Senior Collateral (including Cash Collateral) in accordance with the terms hereof, subject to the terms and conditions set forth in this Interim Order.  The Prepetition Secured Parties are entitled to adequate protection as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code (including the protections afforded parties acting in "good faith" under section 363(m) of the Bankruptcy Code).  Based on the Motion and on the record presented to the Court at the Interim Hearings, the terms of the proposed adequate protection arrangements and of the use of Senior Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent thereto; provided that nothing in this Interim Order shall (i) be construed as an acknowledgement or stipulation by any Prepetition Secured Party that its respective interest in the Senior Collateral is adequately protected pursuant to this Interim Order or otherwise, or a consent by any Prepetition Secured Party that it would be

adequately protected in the event any debtor-in-possession financing is provided or a consent to the terms of any use of Cash Collateral, including the consent to any lien encumbering any of the Senior Collateral (whether senior or junior) pursuant to any use of Cash Collateral, in each case, except under the terms hereof, or (ii) prejudice, limit, or otherwise impair the rights of any Prepetition Secured Party to seek new, different, or additional adequate protection under any circumstances after the date hereof.  The Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral is expressly conditioned upon entry of this Interim Order, and does not and shall not constitute consent other than pursuant to this Interim Order and the terms set forth herein.

O.      *Sections 506(c) and 552(b)*.  The Debtors have agreed that, as a condition to the use of Cash Collateral and as a material inducement to the  Prepetition Secured Parties' consent to the use of Cash Collateral as provided herein, and in exchange for (i) the Prepetition Secured Parties' agreement to subordinate their respective prepetition liens (and their Adequate Protection Liens) to the Carve-Out, (ii) the agreement of the Senior HUMC Secured Parties and the Senior Hudson Secured Parties (collectively, the "Senior DIP-Consenting Parties") to make their Senior Liens (and their Senior Adequate Protection Liens) pari passu to the DIP Liens, and (iii) the consensual use of Cash Collateral consistent with the Budget and the terms of this Interim Order, (x) the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply to any of the Prepetition Secured Parties with respect to the proceeds, products, rent, issues, or profits of any of the Senior Collateral, and no expenses of administration of these bankruptcy cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, products, offspring, or profits from any of the Senior Collateral or Maple Collateral under

section 552(b) of the Bankruptcy Code, (y) subject to the entry of the Final Order, the DIP Lender and the Prepetition Secured Parties are entitled to receive a waiver of the provisions of section 506(c) of the Bankruptcy Code, and, subject to the Carve-Out, there shall be no surcharge of any costs or expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Lender or the Prepetition Secured Parties upon, the DIP Collateral, Senior Collateral or Maple Collateral, and (z) subject to and effective upon entry of the Final Order, none of the DIP Lender or Prepetition Secured Parties shall be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the Senior Collateral or the Maple Collateral.

P.      *No Liability to Third Parties*.  The Debtors stipulate and this Court finds that in permitting the Debtors to use the Senior Collateral, including Cash Collateral, as and to the extent provided herein, in accepting the initial Budget and any future Budget or in taking any other actions permitted by this Interim Order, none of the Senior Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

Q.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

R.      *Interim Funding Order.*  On November 7, 2024, the Court entered an Interim Order authorizing a $2,000,000 lien from the DIP Lender to the Debtor Borrowers to cover immediate payroll funding needs. [D.I. 87].

Based upon the foregoing,

**IT IS HEREBY ORDERED** that:

#124676776v4

1.      <u>Recitals Incorporated</u>.  The above recitals and findings of this Interim Order are incorporated herein by reference as if fully set forth herein.

2.      <u>Disposition</u>.  The Motion is granted on an interim basis to the extent set forth herein, effective as of the date hereof.  Any objections to the interim relief requested in the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

3.      <u>DIP Facility Approval</u>.  Subject to the terms and conditions contained in this Interim Order, the Debtor Borrowers are hereby expressly authorized, pursuant to section 364 of the Bankruptcy Code, to enter into and borrow under the DIP Facility, execute and deliver to the DIP Lender the DIP Loan Documents, and such additional documents, instruments, and agreements as may be reasonably required by the DIP Lender to implement the terms, and effectuate the purposes, of this Interim Order.  The Debtor Borrowers are authorized and directed to comply with and perform all of the terms and conditions of the DIP Loan Documents.  The failure to reference or discuss any particular provision of the DIP Loan Documents in this Interim Order shall not affect the validity or enforceability of any such provision.

4.      <u>Authorization to Borrow</u>.  The Debtor Borrowers hereby are authorized, pursuant to sections 364(c) and (d) of the Bankruptcy Code, to obtain post-petition financing from the DIP Lender through the DIP Facility in accordance with the terms of this Interim Order, the DIP Loan Documents and the Budget in an aggregate principal amount of up to $10,000,000 (less any fees, expenses, or capitalized interest pursuant to the DIP Credit Agreement, subject to the Budget) (the "<u>Interim Availability Amount</u>") on an interim basis pending entry of an order granting the relief requested in the Motion on a final basis (the "<u>Final Hearing</u>"); *provided, however,* that the Interim Availability Amount is subject to the $2,000,000 disbursement from the DIP Lender to the Debtor

Borrowers on November 7, 2024 lent on an interim basis to cover immediate payroll funding needs [D.I. 87].

5.     <u>Conditions Precedent</u>.  The obligations of the DIP Lender under the DIP Loan Documents, including but not limited to any obligation(s) of the DIP Lender to provide any borrowing availability, shall not become effective until the date on which each condition to effectiveness set forth in the DIP Loan Documents has been satisfied or waived by the DIP Lender. For the avoidance of doubt, any obligations of the DIP Lender in respect of any borrowing in excess of the Interim Availability Amount is subject to entry of a final order on the Motion in a form acceptable to the DIP Lender and the Senior Agents in their sole discretion (a "<u>Final Order</u>").

6.     <u>DIP Facility Obligations</u>.  The DIP Loan Documents shall constitute and evidence the valid and binding effect of the Debtors' obligations under the DIP Facility which shall be legal, valid, and binding obligations of the Debtors and enforceable against the Debtor Borrowers, their estates, and any successors thereto. The Debtor Borrowers and their successors shall be jointly and severally liable for repayment of any funds advanced pursuant to the DIP Loan Documents, including the funds advanced on November 7, 2024 to finance payroll obligations [D.I. 87], together with interest thereon, together with all fees, charges and expenses provided for under the DIP Loan Documents, at the times and in the amounts set forth in the DIP Loan Documents, and all other Obligations as defined and provided for in the DIP Loan Documents (collectively, the "<u>DIP Obligations</u>").

7.     <u>Use of Proceeds</u>.  Except as otherwise provided herein or further order of this Court or approved by the DIP Lender and the Senior Agents, from and after the entry of this Interim Order, borrowings under the DIP Facility (the "<u>DIP Loans</u>") shall be used solely for working capital and other costs of operations and administration of the Chapter 11 Cases of the Debtors,

but not of Debtor IJKG Opco LLC, and not for the working capital or other costs of operations of that certain hospital facility located in Bayonne, New Jersey owned or operated by IJKG Opco LLC, and not for family, personal, agricultural or household use, and only in compliance with the Budget, subject to Permitted Variance, including for payment of the Carve-Out (defined below). As used herein, "Permitted Variance" means a variance of no more than ten percent (10%) between a projected line item expense set forth in a Budget and the actual expense.  Notwithstanding any other provision of this Order, no funds or deposit in any account in the name of Garden State Healthcare Associates, LLC shall be transferred, directly or indirectly, to or for the benefit of any other Debtor or any non-debtor affiliate of any of the Debtors. Further, notwithstanding any other provision of this Order, the Debtor Borrowers will not use an funds in the Debtor Borrower's accounts at IDB Bank or its affiliates ("IDB Bank"), including those identified in the Cash Management Motion [D.I. 7] as follows: Letters of Credit Accounts *4358, *4331, *4323 (the "IDB Bank Accounts"), and *4315 for any purpose other than to reimburse IDB Bank for draws under letters of credit.

8.    Payment of DIP Fees and Expenses.  The fees set forth in the DIP Loan Documents and Motion are hereby approved as set forth on the record at the Interim Hearings, and the Debtor Borrowers are hereby authorized and directed to pay such fees if and to the extent due under the terms set forth in the DIP Loan Documents upon entry of and in accordance with this Interim Order and the DIP Loan Documents and the Budget.

9.    Use of Cash Collateral.  The Debtors (specifically excluding Debtor IJKG Opco, LLC) are authorized to use all Cash Collateral in accordance with and subject to the terms of the DIP Loan Documents and this Interim Order and the Budget.

10.    <u>DIP Superpriority Claims</u>.  In accordance with section 364(c)(1) and 507(b) of the Bankruptcy Code and subject to the DIP Intercreditor Agreement (as defined below), the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtor Borrowers and their estates (the "<u>DIP Superpriority Claims</u>") (and without the need for the DIP Lender to file a proof of claim or take any further action) with priority in payment over any and all other obligations, liabilities, and indebtedness against the Debtor Borrowers and their estates, including any and all administrative expenses, adequate protection claims, and all other claims at any time existing or arising, of any kind or nature whatsoever, including, without limitation, the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code or otherwise, including those resulting from the conversion of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, whether now in existence or hereafter incurred by the Debtor Borrowers, and shall at all times be senior to the rights of the Debtor Borrowers, the Debtor Borrowers' estates and any successor trustee, estate representative, or any creditor, in the Chapter 11 Cases or any subsequent cases or proceedings under the Bankruptcy Code, payable by the Debtor Borrowers on a joint and several basis; <u>provided</u>, <u>however</u>, that the DIP Superpriority Claims shall be subject to and subordinate to the Carve-Out.  Subject to the DIP Intercreditor Agreement, the DIP Superpriority Claims shall have recourse to and be payable from all prepetition and post-petition assets of the Debtor Borrowers and the bankruptcy estates, including, but not limited to, the DIP Collateral (as defined below and in the DIP Credit Agreement), but excluding in all cases the Excluded Prepetition Collateral (as defined below).

11.     <u>DIP Liens</u>.  Effective as of the entry of the Interim Order, as security for the DIP

Obligations, the DIP Lender is granted first priority, continuing, valid, binding, enforceable, non-

avoidable, and automatically and properly perfected security interests in and liens pursuant to

section 364(d)(1) of the Bankruptcy Code (collectively, the "<u>DIP Liens</u>") on all assets of the Debtor

Borrowers, whether now owned by or owing to, or hereafter acquired by, or arising in favor of,

the Debtor Borrowers, and regardless of where held, before or after the Petition Date, as collateral

security for the prompt and complete performance and payment when due (whether at the Maturity

Date, by acceleration, or otherwise) of the DIP Obligations (as such collateral is further set forth

in and defined as "Collateral" in the DIP Credit Agreement, the "<u>DIP Collateral</u>"); *provided,*

*however*, that the relative priorities and rights of the DIP Lender and the Senior DIP-Consenting

Parties as to the DIP Collateral that (i) was subject as of the Petition Date to a Senior Lien of the

Senior DIP-Consenting Parties (to the extent not successfully challenged in accordance with the

terms hereof) or (ii) is subject to a Senior Adequate Protection Lien of any Senior DIP-Consenting

Parties (collectively, the "<u>Allowed Senior Liens</u>"), shall be *pari passu* as further set forth in that

certain Intercreditor Agreement, dated as of even date with the DIP Credit Agreement, by and

among the Debtor Borrowers, the Senior HUMC Agent, the Senior Hudson Agent, and the DIP

Lender (the "<u>DIP Intercreditor Agreement</u>"); *provided, further*, the DIP Collateral does not include

(and expressly excludes) any and all rights and interests of any Debtor Borrower in and to the

Excluded Prepetition Collateral; *provided further*, that any lien on property and/or proceeds

recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to

Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code (the "<u>Avoidance</u>

<u>Actions</u>") shall be subject to the entry of the Final Order; *provided, further*, that the DIP Collateral

does not include any property subject to existing equipment liens and the cash collateral liens of

IDB Bank or its affiliates including, without limitation, their liens on any of the Debtors' accounts identified in the Debtors' cash management motion [D.I. 7] (collectively, the "IDB Collateral"). As used herein, "Excluded Prepetition Collateral" means any and all rights and interests of the Debtors and their affiliates in and to the IDB Collateral and, to the extent subject to the Senior Liens or Maple Liens as of the Petition Date: (x) the claims, causes of action and other items identified on Schedule 1 hereto under the heading "Litigation Collateral", (y) that certain deposit account of CarePoint Health Management Associates, LLC maintained with PNC Bank, National Association and bearing an account number ending in 3212 to the extent containing solely proceeds of items set forth in clause (x), and (z) any and all proceeds of the foregoing clauses (x)-(z); provided, for the avoidance of doubt, it is understood and agreed that accounts receivable forming the basis of the claims and causes of action referenced in clause (x) are also Excluded Prepetition Collateral; provided, further, that no accounts receivable less than 365 days old shall be included.  For the avoidance of doubt, the DIP Collateral shall include, without limitation and as further described in the DIP Credit Agreement, all of the Debtor Borrowers' cash and cash equivalents, all deposit accounts and all funds, cash and other property deposited therein or credited thereto from time to time, all accounts and other receivables including government accounts and receivables, all contracts and contract rights, all real property and leasehold interests, and all general intangibles, including all payment intangibles, all of the Debtor Borrowers' books and records relating to the DIP Collateral, and all products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor Borrowers from time to time with respect to any of the foregoing (but in no event will the DIP Collateral include the Excluded Prepetition Collateral).  Nothing

#124676776v4

included in this Order including, but not limited to, the DIP Liens granted to the DIP Lender, shall in any way attach to, impact, impair, encumber, prime, or otherwise affect (i) any equipment or other property leased by Med One Capital Funding, LLC ("Med One") or Mazuma Capital Corp. ("Mazuma") to the Debtors or any affiliate of the Debtors, or (ii) any equipment or other property of the Debtors, or any affiliate of the Debtors, in which Med One or Mazuma has a valid and properly perfected security interest in and/or lien on such property.  Except as otherwise expressly set forth herein, Med One and Mazuma reserve all respective rights under sections 361, 362, 363, and 364 including, but not limited to, any objections presented by counsel for Med One and Mazuma at or in connection with the Interim Hearings.  Further, nothing in this Order, including, but not limited to, the DIP Liens granted to the DIP Lender, shall in any way attach to, impact, impair, encumber, prime, or otherwise affect the IDB Bank's interests in the IDB Collateral or authorize the use of cash collateral in the IDB Bank Accounts for any purpose other than to reimburse IDB Bank for draws under letters of credit.

12. Priority of DIP Liens.

(a) To secure the DIP Obligations, immediately upon and effective as of entry of this Interim Order, the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected DIP Liens in the DIP Collateral as follows, in each case subject to the Carve-Out:

(i) pursuant to section 364(d)(1) of the Bankruptcy Code and subject to the DIP Intercreditor Agreement, valid, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens on and security interests in, all DIP Collateral wherever located, which senior priming liens and security interests in favor of the DIP Lender shall be senior to any and all prepetition liens, including, for the avoidance of doubt, the security interests granted to the Maple-Hudson Secured Parties under the Maple-Hudson Loan Documents or otherwise and the security interests in favor of any other prepetition secured lender, and any judgment creditor claims; provided, however, that the DIP Liens shall be *pari passu*

with the Allowed Senior Liens of the Senior DIP-Consenting Parties pursuant to the DIP Intercreditor Agreement; and

(ii)    pursuant to section 364(c)(2) of the Bankruptcy Code and subject to the DIP Intercreditor Agreement, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code); provided, however, that the DIP Liens shall be *pari passu* with the Allowed Senior Liens of the Senior DIP-Consenting Parties pursuant to the DIP Intercreditor Agreement.

(b)    Except to the extent expressly set forth herein and in the DIP Intercreditor Agreement, the DIP Liens and the DIP Superpriority Claims shall not be made junior to or *pari passu* with any lien, security interest or claim heretofore or hereinafter granted in the Chapter 11 Cases, and shall be valid and enforceable against the applicable Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any successor case and/or upon the dismissal of the Chapter 11 Cases or any successor case.

13.    <u>Reservation of rights for Signature Investments II LLC and County of Hudson</u>.  Nothing contained in this Order including, but not limited to, the DIP Liens granted to the DIP Lender herein, shall in any way attach to, impact, impair, encumber, prime, or otherwise affect (i) any property of the Debtors purchased by Signature Investments II LLC ("<u>SIL</u>") and (ii) any property of the Debtors, or any of them, in which SIL has a valid and properly perfected security interest in and/or lien on such property. Except as otherwise expressly set forth herein, SIL reserves all their respective rights under 11 U.S.C. §§ 361, 362, 363, and 364 including, but not limited to, the right to request adequate protection equal to the diminution in value (if any) of SIL's interest in such collateral and without prejudice to the right of the Debtors or any other party in interest to contest such request; provided, however, that in connection with any such request and any determination of whether adequate protection should be awarded, SIL shall not be

#124676776v4

prejudiced by anything in this Interim Order nor shall this Interim Order prevent or otherwise prejudice SIL's rights to seek the equitable remedy of "marshalling" or any similar remedy or doctrine with respect to the DIP Collateral or the Prepetition Collateral, with the Debtors, DIP Lender and any other party in interest reserving their rights regarding same. Further, nothing contained in this Order shall in any way attach to, impact, impair, or otherwise affect any claims by the County of Hudson (the "County") regarding amounts that will be due and owing from the Debtor come due December 1, 2024. The County requested the Debtor include a line item of $4.2 million in the proposed budget due to the County by December 1, 2024. Such request was not made in connection with this Interim Order. The County hereby reserves all its respective rights to collect such payment coming due December 1, 2024 and/or compel the administrative payment if such payment is not made timely. The County shall not be prejudiced by anything in this Interim Order nor shall this Interim Order prevent or otherwise prejudice the County's right to enforce payment of the post-petition claim once it comes due. The County also hereby reserves its rights in connection with its pre-petition claim in the approximate amount of $15.9 million.

14. <u>Adequate Protection.</u> As adequate protection for the aggregate diminution in the value of the interests of the Prepetition Secured Parties in the Senior Collateral (including any Cash Collateral) from and after the Petition Date, resulting from (among other things) the use, sale or lease by the Debtors of the Senior Collateral (including the use of Cash Collateral), the subordination of the prepetition liens of the Prepetition Secured Parties to the Carve-Out, the agreement of the Senior DIP-Consenting Parties to allow their respective Senior Liens to become *pari passu* with the DIP Liens and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code (collectively, "<u>Diminution in Value</u>"), the Prepetition Secured Parties, shall receive adequate protection as follows:

(a)    The Senior DIP-Consenting Parties shall have replacement security interests in and liens on all DIP Collateral, which security interests and liens shall be *pari passu* with the DIP Liens on such DIP Collateral in accordance with the terms of the DIP Intercreditor Agreement and senior to all other security interests and liens thereon (subject to the Carve-Out) (collectively, the "Senior DIP-Consenting Adequate Protection Liens").

(b)    The Senior Holdco Secured Parties shall have replacement security interests in and liens on the assets of the Debtors (excluding for the avoidance of doubt, the Debtor Borrowers and Debtor IJKG Opco, LLC) that have granted security interests or liens to such Senior Secured Parties to secure their respective Senior Holdco Obligations (such security interests and liens, collectively with the Senior DIP-Consenting Adequate Protection Liens, the "Senior Adequate Protection Liens"), in each case subject to the Carve-Out.

(c)    The Maple-Hudson Secured Parties shall have replacement security interests in and liens on (the "Maple Adequate Protection Liens" and, together with the Senior Adequate Protection Liens, the "Adequate Protection Liens") Debtor Hudson Hospital Opco, LLC's interest in the DIP Collateral, which Maple Adequate Protection Liens shall be subject and subordinate to the Senior Liens thereon, the Senior Adequate Protection Liens thereon, the DIP Liens thereon and the Carve-Out.

(d)    The Senior Agents and the other Senior Secured Parties are hereby granted a superpriority administrative expense claim, which claim shall have priority over all other administrative expense claims and unsecured claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including without limitation administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503, 507, 546, 552, 726, 113 and 114 and any other provision of the

Bankruptcy Code (the "<u>Senior Adequate Protection Superpriority Claim</u>"), provided however that such Senior Adequate Protection Superpriority Claim shall be junior only to the DIP Superpriority Claim (for the avoidance of doubt, any proceeds of DIP Collateral being subject to the DIP Intercreditor Agreement) and the Carve-Out and (ii) shall be entitled to all protections and benefits of section 507(b) of the Bankruptcy Code.  Subject to the DIP Intercreditor Agreement, the <u>Senior Adequate Protection Superpriority Claim</u> shall have recourse to and be payable from all prepetition and post-petition assets of the Debtor Borrowers and the bankruptcy estates, including, but not limited to, the DIP Collateral (as defined below and in the DIP Credit Agreement), but excluding in all cases the Excluded Prepetition Collateral (as defined below).

(e)     The Debtor Borrowers shall pay the reasonable fees, charges, expenses (including attorneys' fees and other expenses) of the Senior Secured Parties in connection with these Chapter 11 Cases or any subsequent cases or proceedings under the Bankruptcy Code, subject to the Budget.  All such fees, costs and expenses shall be paid by the Debtor Borrowers within ten (10) days after delivery of a summary invoice to the Debtor Borrowers and without the need for further application to or order of the Court.  A copy of such invoice shall be provided by the Debtor Borrowers to the U.S. Trustee, counsel for the DIP Lender and counsel for the Official Committee (if any) within one (1) business day of the Debtor Borrowers' receipt of such invoice. Notwithstanding the foregoing, if (x) the Debtors, the U.S. Trustee or the Official Committee (if any) objects to the reasonableness of an invoice submitted by the Senior Secured Parties and (y) the parties cannot resolve such objection, in each case within the ten (10) day period following the Debtor Borrowers' receipt of such invoice, the Debtor Borrowers, the U.S. Trustee or the Official Committee, as the case may be, may file with the Court and serve on the Senior Agents a fee objection (a "<u>Senior Secured Party Fee Objection</u>").  The Debtor Borrowers are authorized to

promptly pay any submitted invoice after expiration of the ten (10) day period if no Senior Secured

Party Fee Objection has been filed with the Court and served on the Senior Agent in such ten (10)

day period.  If a Senior Secured Party Fee Objection is timely filed and served, the Debtors are

authorized to promptly pay the undisputed amount of the invoice, and the Court shall have

jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve

the Senior Secured Party Fee Objection.  In all events, the payments under this section (c) shall be

subject to the rights reserved to third parties under paragraph 19, and any payments made to the

Senior Secured Parties on account of professional fees or expenses under this section (c) shall be

subject to recharacterization as payments of principal of the Senior Secured Obligations to the

extent such claims were not entitled to be paid by reason of the occurrence of a successful

challenge under paragraph 19.

(f)      In respect of any period in respect of which the Debtor Borrowers pay cash

interest to the DIP Lender (a "DIP Cash Interest Period"), the Debtor Borrowers are authorized

and directed to pay concurrent with any cash interest payment to the DIP Lender in respect of a

DIP Cash Interest Period, as adequate protection to the Senior DIP-Consenting Parties, all accrued

and unpaid post-petition interest on the outstanding amounts due and payable under the Senior

HUMC Loan Documents and the Senior Hudson Loan Documents in respect of such DIP Cash

Interest Period at the applicable non-default rate set forth in such Senior Loan Documents, and to

pay all other accrued and unpaid reasonable and documented fees, costs and disbursements owing

to the applicable Senior DIP-Consenting Parties under such Senior Loan Documents as and when

such interest, fees, costs and disbursements become due and payable (but for the commencement

of these Chapter 11 Cases) in accordance with the terms of such Senior Loan Documents; provided,

that default interest shall continue to accrue (but not be paid except pursuant to further order of the

Bankruptcy Court), and the Senior DIP-Consenting Parties reserve the right after a Termination Event to assert a claim for the payment of such additional interest without prejudice to the rights of the Debtor Borrowers or any other party in interest to contest any such claim.

(g)     The Debtors are authorized and directed to (i) deliver all notices and reporting required to be delivered by them under the Senior Loan Documents to which they are party; and (ii) deliver to the Senior Agents, for distribution to the other Senior Secured Parties, and to the Maple-Hudson Agent, for distribution to the Maple-Hudson Secured Parties, copies of all notices and reporting delivered to the DIP Lender concurrent with the delivery of such notices and reporting to the DIP Lender.

(h)     Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties hereto is without prejudice to the right of the Prepetition Secured Parties to seek modification of the grant of adequate protection granted hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors' and any other party in interest's right to contest such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties under their respective loan documents or under equity or law, and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies, whether now existing or hereafter arising under their respective loan documents and/or equity or in law in connection with all termination events, defaults and events of default under such agreements.

15.     <u>Carve-Out</u>.  As used in this Interim Order, the term Carve-Out means, to the extent allowed by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code and subject to the Budget: (i) all invoiced and payable allowed professional fees and expenses of the Debtor Borrowers and any Official Committee; provided that such fees and expenses incurred on

or after the receipt of written notice by any of the Debtors from the DIP Lender or any Senior Agent of the occurrence of a Termination Event shall not exceed $400,000 in the aggregate; (ii) all fees payable by the Debtor Borrowers to a patient ombudsman appointed under section 333(a) of the Bankruptcy Code, (iii) all statutory fees payable by the Debtor Borrowers to Clerk of the Court and the U.S. Trustee; and (iv) in the event of conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, $25,000 for the Chapter 7 trustee's fees and expenses;

16.    <u>Automatic Effectiveness of Liens</u>.  The DIP Liens and (subject to paragraph 19) the Adequate Protection Liens shall not be subject to a challenge and shall attach and become valid, perfected, binding, enforceable, non-avoidable (subject to paragraph 19 as it relates to the Adequate Protection Liens) and effective by operation of law as of the date of the entry of this Interim Order without any further action by the Debtor Borrowers, the DIP Lender or any Prepetition Secured Party and without the necessity of execution by the Debtor Borrowers, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions; <u>provided</u>; <u>however</u>, that at the request of the DIP Lender or any Prepetition Secured Party, the Debtor Borrowers shall execute any and all documents as may be reasonably requested to evidence, perfect, and provide public notice of such liens.  All DIP Collateral shall be free and clear of other post-petition liens, claims and encumbrances, except as provided in the DIP Loan Documents and this Interim Order.  The DIP Lender and the Prepetition Secured Parties are authorized to file or record such financing statements, security agreements, pledge agreements, control agreements, mortgages, collateral assignments, instruments, and documents in respect of the DIP Liens and Adequate Protection Liens, as applicable, in their discretion without seeking

30

modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of the entry of this Interim Order; provided; however, no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or Adequate Protection Liens.  The DIP Lender and Prepetition Secured Parties may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, notices of liens or similar statements.

17.     Budget.  Use of funds advanced under the DIP Facility shall be used solely by the Debtors (specifically excluding Debtor IJKG Opco, LLC) for the purposes expressly provided in the DIP Loan Documents, and only as set forth in the Budget, subject to the Permitted Variance of 10%.  Funds allocated for a given category of expenses with respect to any given week which are not used for such purpose may be used for such category of expenses in subsequent weeks.  The Debtor Borrowers shall provide the DIP Lender, the Senior Agents and the Maple-Hudson Agent with a new proposed Budget and Budget variance and financial reporting as provided in the DIP Credit Agreement.  Each Budget and all expenses proposed to be incurred and the payments proposed to be made by and through any such Budget shall be subject to the express written approval of the DIP Lender.  In addition to any requirements under the DIP Credit Agreement, any modifications to, or extensions of, the Budget shall require the consent of the Senior Agents (not to be unreasonably withheld or delayed).

18.     Waiver of Option.  The DIP Lender may, in its sole discretion, waive the condition to the Closing Date and any Borrowings that the Insight Option has been obtained.

19.     Termination Event. The occurrence of any of the following shall constitute a "Termination Event": (a) the occurrence of an Event of Default (as defined in section 8.1 of the

#124676776v4

DIP Credit Agreement); (b) the failure of the Debtor Borrowers to comply with the Budget (subject to the Permitted Variance) without the consent of the DIP Lender and the Senior Agents, (c) the failure by the Debtors to comply with this Interim Order or (d) the occurrence of the Maturity Date.

20.      Remedies Upon Termination Event.  Upon the occurrence of a Termination Event and following the giving of not less than five (5) calendar days' advance written notice (which may be by email) (the "Notice Period") by either the DIP Lender or any Senior Agent to counsel to the Debtors, counsel to the DIP Lender, counsel to the Senior Agents, the U.S. Trustee and counsel to any Official Committee: (a) the DIP Lender or its agent or designee may exercise all default-related rights and remedies (as set forth in the DIP Loan Documents and that exist in law or equity) against the DIP Collateral, without further order of the Bankruptcy Court, and without restriction or restraint by any stay under sections 362 of the Bankruptcy Code or otherwise; and (b) the Debtors' right to use Cash Collateral shall expire; provided, however, that during the Notice Period, the Debtors and any Official Committee have the right to seek an emergency hearing (the "Determination"); provided; however, that upon a Termination Event, the DIP Lender can immediately cease any further borrowings pending a Determination by the Bankruptcy Court.

21.      Effect of Debtors' Stipulations and Releases on Third Parties. The Debtors' Stipulations and Releases, including as to the validity, perfection, enforceability, priority, scope or extent of the Senior Liens pursuant to the Senior Loan Documents (and the DIP Lender's *pari passu* interest therein pursuant to the DIP Intercreditor Agreement and this Interim Order) and the validity, perfection, enforceability, priority, scope or extent of the Maple Liens pursuant to the Maple-Hudson Loan Documents, shall be binding upon the Debtors and any successor(s) thereto immediately upon entry of this Interim Order. The Debtors' Stipulations and Releases shall be binding upon all parties-in-interest, including, without limitation, any Official Committee, and any

#124676776v4

other person or entity seeking to act on behalf of the Debtors' estates, unless the Official Committee or such other party-in-interest obtains standing pursuant to an order of this Court and commences an action within seventy-five (75) days after entry of this Interim Order (the "Challenge Deadline") challenging such Debtors' Stipulations and Releases and obtains a final non appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such challenge; provided, however, that notwithstanding the foregoing, if any Official Committee or other party in interest files a motion seeking standing to commence any such challenge prior to the Challenge Deadline, which motion attaches a draft complaint and otherwise sets forth with specificity the basis for each such challenge, the Challenge Deadline shall be extended, solely as to (a) such Official Committee or other party in interest and (b) the challenges specifically identified in such complaint, until the earlier of (i) the date such standing motion is withdrawn, (ii) entry of an order of the Court denying such standing motion, or (iii) two (2) business days after entry of an order of the Court granting such standing motion, provided that, unless otherwise agreed by the prepetition secured parties that are the subject of such motion, such motion shall be heard on an expedited basis (subject to the Court's availability).    In the absence of any such challenge commenced by the Challenge Deadline or the filing of a motion seeking standing to commence any such challenge as provided for in the proviso clause in the immediately foregoing sentence, each of the Debtors' Stipulations and Releases shall be binding on all parties-in-interest, including, without limitation, any Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest, and the Senior Liens and Senior Loan Documents (and the DIP Lender's *pari passu* interest therein), as well as the Maple Liens and Maple-Hudson Loan Documents, shall forever be deemed to be legal, valid, binding, continuing, perfected and enforceable, as applicable, as of the Petition Date, against the

respective Debtors in the Chapter 11 Cases and any and all challenges of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against any Senior Secured Party or with respect to the Senior Liens or Senior Loan Documents (and the DIP Lender's *pari passu* interest therein), or against any Maple-Hudson Secured Party or with respect to the Maple Liens or Maple-Hudson Loan Documents, shall be deemed forever waived, released and barred. The Debtors' Stipulations and Releases shall remain binding and preclusive on any party-in-interest except and solely to the extent expressly and successfully challenged; provided, that in the event that, prior to the Challenge Deadline, (1) any of these Chapter 11 Cases is converted into a successor case or (2) a trustee is appointed, then, in each case, the Challenge Deadline shall be extended for a period of twenty (20) days solely with respect to such trustee, commencing on the occurrence of either of the events described in the foregoing clauses (1) and (2); provided, further, notwithstanding the foregoing proviso, if any chapter 7 trustee subsequently appointed in these Chapter 11 Cases is appointed prior to the Challenge Deadline, such trustee shall have until the later of (x) the Challenge Deadline and (y) twenty (20) days after such trustee is appointed in order to commence or prosecute a challenge hereunder. Nothing in this Interim Order confers on any person or entity standing or authority to pursue any challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved. Notwithstanding the foregoing paragraph, in the event that the Senior Liens are successfully challenged in accordance with the terms hereof in any respect, such challenge shall have no effect on the extent, validity, and perfection of the DIP Liens and DIP Superpriority Claims granted under this Interim Order, without any action required on the part of Debtor Borrowers or DIP Lender, and in such event the Debtor Borrowers and DIP Lender are

#124676776v4

authorized to enter into any security agreement or control agreement or other document reasonably requested by the DIP Lender consistent with the terms hereof.

      22.      <u>Limitation on Use of Proceeds</u>.

      (i)      The proceeds of the DIP Loans shall not be used to initiate, investigate, or prosecute any claims, causes of action, adversary proceedings, contested matters or other litigation or challenge against the DIP Lender or any of its officers, directors, members, managers, equity holders, employees or affiliates, or object, contest or raise in any proceeding any defense to the validity, perfection, priority, extent or enforceability of the DIP Loan Documents or the DIP Liens or take any action that would be injurious to the DIP Lender's interests.

      (j)      Neither the proceeds of the DIP Loans nor any Senior Collateral (including Cash Collateral), nor any portion of the Carve-Out, may be used to initiate, investigate, or prosecute any claims, causes of action, adversary proceedings, contested matters or other litigation or challenge against any Senior Secured Party, any Maple-Hudson Secured Party or any of their respective officers, directors, members, managers, equity holders, employees or affiliates, or object, contest or raise in any proceeding any defense to the validity, perfection, priority, extent or enforceability of the Senior Loan Documents, the Senior Liens, the Maple-Hudson Loan Documents or the Maple Liens or take any action that would be injurious to any of the Senior Secured Party's or Maple-Hudson Secured Party's interests; <u>provided</u>, proceeds from the DIP Loans and/or Cash Collateral and/or the Carve-Out in an amount not to exceed $50,000 in the aggregate may be used on account of professional fees incurred by the Official Committee in connection with the investigation of the Debtors' claims and causes of action arising under chapter 5 of the Bankruptcy Code on account of the Senior Secured Obligations and Maple-Hudson Obligations, but not the prosecution of such claims and causes of action.

#124676776v4

23.     <u>Modification of Stay</u>.  Subject to the terms set forth herein, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of this Interim Order and the DIP Loan Documents, including without limitation (a) to permit the granting of the DIP Liens and DIP Superpriority Claims, (b) to permit the DIP Lender and Debtor Borrowers to enter into and perform under the DIP Loan Documents, and (c) to permit the granting of the Adequate Protection Liens, the Senior Adequate Protection Superpriority Claim and the other adequate protection granted herein.  Court approval is required for any material modification of the automatic stay.

24.     <u>Protection Under Section 364(e) of the Bankruptcy Code</u>.  Based on the representations of the Debtor Borrowers and DIP Lender at the Interim Hearings, the DIP Lender has acted in good faith in connection with the relief granted in this Interim Order and its reliance on this Interim Order is in good faith.  The failure of this Interim Order to become a Final Order or the reversal or modification on appeal of the authorizations under section 364 of the Bankruptcy Code contained in this Interim Order does not affect the validity of any DIP Obligation or DIP Liens, or the validity and enforceability of the DIP Loan, whether or not the DIP Lender knew of the pendency of the appeal, unless such authorization and incurrence of DIP Obligations and DIP Lien and advance of the DIP Loan under 364 of the Bankruptcy Code in this Interim Order, were stayed pending appeal.

25.     <u>Government Account and Cash Management</u>. The Debtor Borrowers and DIP Lender are authorized to establish or continue any segregated government accounts established in the name of the Debtor Borrowers for the deposit of all government accounts receivable, including without limitation Medicare and Medicaid payments owing to the Debtor

Borrowers, and any segregated commercial and private pay accounts established in the name of the Debtor Borrowers for the deposit of all commercial or private pay accounts receivable, in each case subject to such deposit account control agreements or similar agreements or instructions in favor of the DIP Lender or its designee as may be reasonably required by the DIP Lender from time to time. Notwithstanding the foregoing, any such existing account control agreements or similar agreements or instructions in favor of the Senior Agents or the Maple-Hudson Agent or their respective designees with respect to the DIP Collateral shall be held and maintained by the Senior Agents or the Maple-Hudson Agent, as applicable, as agent for the benefit of the Senior Secured Parties, the DIP Lender and the Maple-Hudson Secured Parties consistent with the terms of the DIP Credit Agreement, the DIP Intercreditor Agreement, the Maple Subordination Agreements and this Interim Order, and the Senior Agents, the Maple-Hudson Agent and the Debtors are hereby authorized to take any and all actions as may be required to modify any existing control agreements or instructions to give effect to the foregoing.

26.     <u>Fees and Expenses</u>.  The Debtor Borrowers shall reimburse the DIP Lender for all costs and expenses as set forth in section 13.7 of the DIP Credit Agreement, pursuant to the terms of the DIP Credit Agreement, without the need for any further approval or order of the Bankruptcy Court.

27.     <u>Sections 506(c) and 552; Marshaling</u>.  The Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply to any of the Prepetition Secured Parties with respect to the proceeds, products, rent, issues, or profits of any of the Senior Collateral, and no expenses of administration of these bankruptcy cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings

under the Bankruptcy Code, may be charged against proceeds, products, offspring, or profits from any of the Senior Collateral or Maple Collateral under section 552(b) of the Bankruptcy Code. Subject to the entry of the Final Order, the DIP Lender and the Prepetition Secured Parties are entitled to receive a waiver of the provisions of section 506(c) of the Bankruptcy Code, and, subject to the Carve-Out, there shall be no surcharge of any costs or expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Lender or the Prepetition Secured Parties upon the DIP Collateral, the Senior Collateral or Maple Collateral. Subject to and effective upon entry of the Final Order, none of the DIP Lender or the Prepetition Secured Parties shall be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, Senior Collateral or Maple Collateral.

28.     _Preservation of Rights_.  If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification, or vacation.

29.     _Binding Effect_.  This Interim Order shall be binding on all creditors and parties in interest in the Chapter 11 Cases, including, but not limited to, the Debtors and any successors thereto.  This Interim Order shall be binding upon, and inure to the benefit of, any and all successors, designees, transferees, endorsees and/or assignees of the DIP Lender and the Prepetition Secured Parties.  Subject to entry of the Final Order, the security interests and liens provided for in this Interim Order shall be and remain valid and perfected, and the claims of the DIP Lender and the Prepetition Secured Parties hereunder valid and enforceable in accordance with the terms hereof, notwithstanding any discharge that the Debtors may receive pursuant to section 1141 of the Bankruptcy Code, the conversion of the Chapter 11 Cases to a case under

chapter 7 of the Bankruptcy Code, the dismissal of the Chapter 11 Cases or any subsequent chapter 7 case or the release or transfer of any DIP Collateral from the bankruptcy estate. No claim or cause of action of any kind or nature may be asserted against the DIP Lender in its capacity as lender under the DIP Facility, or related to the liens and claims hereunder granted to the DIP Lender under or in connection with the DIP Facility.

30.       <u>Modifications of Loan Documents</u>.  The Debtor Borrowers and the DIP Lender are hereby authorized to enter into and implement, in accordance with the terms of the DIP Loan Documents, any waivers, consents, or non-material modifications of the DIP Loan Documents without further notice, motion or application to, order of or hearing before, this Court; provided that a copy of all such waivers, consents or modifications shall be provided to counsel to the Senior Agents, the Maple-Hudson Agent, the U.S. Trustee and counsel to any Official Committee.  In the event of any inconsistency among this Interim Order, the DIP Credit Agreement and/or the DIP Intercreditor Agreement, this Interim Order shall control.

31.       <u>Proofs of Claim</u>.  Notwithstanding any order entered by the Bankruptcy Court, neither the DIP Lender nor any Senior Secured Party shall be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein.

32.       <u>No Competing Liens</u>. Except as set forth herein or unless otherwise ordered by the Court, the Debtor Borrowers shall not grant liens on, or security interests in, or sell, transfer or assign, the DIP Collateral to any other party, pursuant to section 364 of the Bankruptcy Code or otherwise, without the consent of the DIP Lender or the Senior Agents (subject to the DIP Intercreditor Agreement).

33.       <u>Right to Credit Bid</u>.  Subject to entry of a final order and subject to section 363(k) of the Bankruptcy Code, in connection with the sale or other disposition of all or any portion

#124676776v4

of the Debtor Borrowers' assets, whether under Bankruptcy Code section 363, 1129 or otherwise, (a) the DIP Lender shall be entitled to credit bid up to the full amount of DIP Obligations, consistent with applicable law including Bankruptcy Code section 363(k) and subject to the DIP Intercreditor Agreement; and (b) the Senior Secured Parties shall be entitled to credit bid up to the full amount of their respective Senior Secured Obligations consistent with applicable law including Bankruptcy Code section 363(k) and subject to the DIP Intercreditor Agreement.  In the event that it is entitled to credit bid under the Maple-Hudson Subordination Agreement and, if the DIP Obligations have not been paid in full, has the consent of the DIP Lender to do so (which consent shall not be unreasonably withheld), the Maple-Hudson Secured Parties reserve their right to credit bid up to the full amount of their respective Maple-Hudson Obligations consistent with applicable law, including Bankruptcy Code section 363(k). Consent of the DIP Lender shall not be required if the DIP Obligations have been paid in full.

34.    <u>Further Relief</u>.  Nothing in this Interim Order shall preclude the DIP Lender, any Senior Secured Party or any Maple-Hudson Secured Party from seeking any other relief that it may deem appropriate, including relief from the automatic stay.

35.    <u>No Control</u>. Nothing in this Interim Order shall cause the DIP Lender, any Senior Secured Party, any Maple-Hudson Secured Party or Maple Lender to be deemed to be in control of the operations of the Debtors, or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in any Federal or state statute) with respect to the operation or management of the Debtors, notwithstanding its consent to this Interim Order, its approval of the Budget or involvement in the Budget process, its extension of financial accommodations of any type, kind, or nature under this Interim Order and the DIP

Loan Documents, or the grant of the Option Agreement by the Management Company for the Debtor Borrowers.

36.    <u>No Third-Party Beneficiaries</u>. Unless expressly provided herein or in the DIP Loan Documents, no rights are created hereunder or by the DIP Loan Documents for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

37.    <u>Immediate Effect of Order</u>.  The terms and conditions of this Interim Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise.  To the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

38.    <u>Interim Approval</u>.  Notwithstanding anything to the contrary contained in this Order, or in any agreements or other documents filed in support of the issuance of this Order, no approval is given to any provision contained in this Order or supporting agreements of other documents which is an "extraordinary provision" under Local Rule 4001-2(a)(i)(P) through 4001-2(a)(i)(X).  Moreover, this is an Interim Order having only the limited binding effect anticipated in the ordinary course of the Local Rules.  No substantial cause has been shown, nor compelling circumstances evidenced, nor reasonable notice given, to justify any "extraordinary provision" or extended binding effect of or through this Interim Order.

39.    <u>Final Hearing; Objections</u>.  The Final Hearing on the Motion shall be held before the Court on **December 10, 2024**, at **10:30 a.m.  (EST)**. Any objections shall be filed and served by no later than **December 3, 2024**, at **4:00 p.m.** (EST) on: proposed counsel for the

Debtors, Dilworth Paxson LLP, Attn: Peter C. Hughes (phughes@dilworthlaw.com), Lawrence G. McMichael (lmcmichael@dilworthlaw.com), Anne M. Aaronson (aaaronson@dilworthlaw.com), and Jack Small (jsmall@dilworthlaw.com); counsel for the DIP Lender, Mandelbaum Barrett PC, 3 Becker Farm Road, Roseland NJ 07068, Attn: Mohamed H. Nabulsi (mnabulsi@mblawfirm.com), Vincent J. Roldan (vroldan@mblawfirm.com) and Mason L. Allen (mallen@mblawfirm.com); counsel for the Senior Agents, Moore & Van Allen PLLC, 100 N. Tryon St., Ste 4700, Charlotte, NC 28202, Attn: Alan Pope (alanpope@mvalaw.com) and Gabriel Mathless (gabemathless@mvalaw.com), and counsel for the Maple-Hudson Secured Parties, Levenfeld Pearlstein, LLC, 120 S. Riverside Plaza, Suite 1800, Chicago, IL 60606, Attn: Harold Israel (hisrael@lplegal.com).

40.    <u>Notice of Final Hearing</u>.  The Debtors shall, within two (2) business days after entry of this Interim Order, provide a notice of the entry of this Interim Order, together with a notice of the Final Hearing, by electronic mail or overnight courier to:  (i) counsel to the U.S. Trustee; (ii) the New Jersey Department of Health; (iii) counsel to the DIP Lender; (iv) the duly appointed patient care ombudsman in these Chapter 11 Cases; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (ix) counsel to the Senior Agents; (x) counsel to the Maple-Hudson Secured Parties; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002.

41.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to decide all disputes arising under or related to this Interim Order and the DIP Loan Documents.

**Dated: November 8th, 2024**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**

#124676776v4