**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| CarePoint Health Systems, Inc., d/b/a Just Health | : | Case No. 24-12534 |
| Foundation, et al., | : |  |
|  | : | Joint Administration Requested |
| Debtors[1]. | : |  |
|  | | **Re D.I. 11, 87** |

**INTERIM ORDER (A) AUTHORIZING IJKG OPCO, LLC AND IJKG, LLC TO OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (D) MODIFYING THE AUTOMATIC STAY, (E) AUTHORIZING DEBTORS TO ENTER INTO AGREEMENTS WITH BAYONNE MEDICAL CENTER OPCO, LLC, (F) GRANTING ADEQUATE PROTECTION, (G) SCHEDULING A FINAL HEARING AND (H) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**"[2]), dated November 3, 2024, of IJKG Opco LLC d/b/a CarePoint Health – Bayonne Medical Center ("**IJKG Opco**") and IJKG, LLC ("**IJKG**" and, collectively with IJKG Opco, the "**Bayonne Debtors**"), as two of the debtors and debtors-in-possession (the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Cases**"), pursuant to Sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of Title 11 of the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

[2] Unless otherwise specified, capitalized terms not defined herein shall have the meaning set forth in the Motion.

United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-3 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "**Court**") (the "**Local Bankruptcy Rules**"), seeking, among other things:

(1)    authorization for the Bayonne Debtors to obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing (as defined below) from Bayonne Medical Center Opco, LLC ("**Bayonne DIP Lender**") pursuant to that certain Debtor In Possession Loan and Security Agreement (as modified following the filing, the "**DIP Loan Agreement**")[3], a copy of which is annexed to the Motion as Exhibit B and is incorporated herein, and in accordance with this order (hereinafter referred to as the "Order" or "Interim Order"), secured by security interests in and liens upon all of the DIP Collateral (as defined herein) pursuant to Sections 364(c)(1), (c)(2), (c)(3), and (d)(1) of the Bankruptcy Code;

(2)    modification of the automatic stay to the extent hereinafter set forth;

(3)    the grant to Bayonne DIP Lender of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code;

(4)    the granting of adequate protection; and

(5)    the setting of a final hearing on the Motion;

The initial hearings on the Motion having been held by this Court on November 6, 2024 and November 8, 2024 (the "**Interim Hearings**"); it appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearings (the "**Notice**") was served by the Bayonne Debtors in accordance with Bankruptcy Rule 4001(c) on (i) Bayonne DIP Lender, (ii) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), (iii) the holders of thirty (30) largest unsecured claims against the Bayonne Debtors' estates (the "**30 Largest Unsecured Creditors**"), and (iv) certain other parties identified in the certificate of service filed

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the DIP Loan Agreement.

with the Court, including, without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Bayonne Debtors' assets (collectively, the "**Noticed Parties**"); upon the record made by the Bayonne Debtors at the Interim Hearings, including the Motion, and the filings and pleadings in the Cases, and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    Petition. On November 3, 2024 (the "**Petition Date**"), three creditors of IJKG Opco filed an involuntary petition against that Debtor, and IJKG, LLC filed a voluntary petition for relief (collectively, the "**Petition**") under Chapter 11 of the Bankruptcy Code and on the Petition Date, IJKG Opco consented to the relief requested in the Petition.

B.    Debtors in Possession. Bayonne Debtors are continuing in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, subject to that certain Surrender Agreement referenced in the Motion.

C.    Jurisdiction and Venue. The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Notice. The Notice given by the Bayonne Debtors of the Motion, the Interim Hearings and the relief granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

E.        Bayonne Debtors' Acknowledgments and Agreements. Subject to Section 17 herein, the Bayonne Debtors admit, stipulate, acknowledge, and agree that:

(i)        Prior to the commencement of the Cases, the Bayonne Debtors entered into certain agreements, the Bayonne Debtors' assets are subject to certain perfected liens, and the Bayonne Debtors are subject to certain liabilities as set forth on Schedule 2 herein.

(ii)        *Purchase of Capitala Debt*.  On or about October 21, 2024, Bayonne DIP Lender purchased all of Capitala's rights to, inter alia, the Capitala Pre-Petition Liabilities, Capitala Loan Documents, Capitala Liens, and the Capitala Collateral.  Bayonne DIP Lender is, therefore, entitled to all rights of Capitala as to *inter alia* the Capitala Pre-Petition Liabilities, Capitala Loan Documents, Capitala Liens, and the Capitala Collateral.  In its capacity as holder of Capitala's Pre-Petition claims, liens, and collateral, Bayonne DIP Lender is referenced herein as "Senior Secured Lender", with "Senior Pre-Petition Liabilities" secured by "Senior Liens" on "Senior Collateral".

(iii)        *No Control*. Neither Landlord, the Maple Secured Parties, Senior Secured Lender, nor the Bayonne DIP Lender are persons or insiders of Bayonne Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from their respective loans or loan documents.

(iv)        *Cash Collateral*. All of the Bayonne Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of Landlord Pre-Petition Collateral Maple Collateral, or Senior Collateral ("Cash Collateral") constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and is Landlord Collateral, Maple Collateral, or Senior Secured Lender Collateral, as the case may be.

(v)     _Need to Use Cash Collateral_.    The Bayonne Debtors' cash and cash equivalents, including cash in deposit accounts, security deposits or otherwise, wherever located and whenever acquired, whether in the form of cash, profits or accounts receivable or otherwise, now in the possession, custody or control of Bayonne Debtors or persons in privity with Bayonne Debtors, or in which Bayonne Debtors have or will obtain an interest during the pendency of Bayonne Debtors' Cases, constitute cash collateral in which the Landlord, Maple Secured Parties, Senior Secured Lender, or any other pre-petition lender has asserted or may assert a security interest in or lien on for purposes of and within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").  The Bayonne Debtors require the use of all such Cash Collateral in order to, among other things, preserve, maintain and maximize the value of their assets and business.  The ability of Bayonne Debtors to maintain liquidity through the use of Cash Collateral is vital to Bayonne Debtors and their efforts to maximize the value of their assets.

(vi)     _Adequate Protection_.    Landlord, Senior Secured Lender and the Maple Secured Parties (collectively, the "**Pre-Petition Secured Parties**") have negotiated in good faith regarding the Bayonne Debtors' use of their respective collateral (including Cash Collateral) (collectively, the "**Pre-Petition Secured Parties Collateral**") to fund the administration of the Bayonne Debtors' estates and continued operation of their businesses, in accordance with the terms hereof and the Budget (as defined herein).  The Pre-Petition Secured Parties have agreed to permit the Bayonne Debtors to use the Pre-Petition Secured Parties Collateral in accordance with the terms hereof, subject to the terms and conditions set forth in this Interim Order. The Pre-Petition Secured Parties are entitled to adequate protection as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code (including the protections afforded parties

acting in "good faith" under section 363(m) of the Bankruptcy Code). Based on the Motion and on the record presented to the Court at the Interim Hearings, the terms of the proposed adequate protection arrangements and of the use of the Pre-Petition Secured Parties Collateral are fair and reasonable, reflect the Bayonne Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the Pre-Petition Secured Parties consent thereto; provided that nothing in this Interim Order shall: (i) be construed as an acknowledgement or stipulation by any Pre-Petition Secured Party that its respective interest in the Pre-Petition Secured Parties Collateral is adequately protected pursuant to this Interim Order or otherwise, or a consent by any Pre-Petition Secured Party that it would be adequately protected in the event any debtor-in-possession financing is provided or a consent to the terms of any use of Cash Collateral, including the consent to any lien encumbering any of the Pre-Petition Secured Parties Collateral (whether senior or junior) pursuant to any use of Cash Collateral, in each case, except under the terms hereof; or (ii) prejudice, limit, or otherwise impair the rights of any Pre-Petition Secured Party to seek new, different, or additional adequate protection under any circumstances after the date hereof.  The Pre-Petition Secured Parties' consent to the Bayonne Debtors' use of Cash Collateral is expressly conditioned upon entry of this Interim Order and does not and shall not constitute consent other than pursuant to this Interim Order and the terms set forth herein.

(vii)     _Sections 506(c) and 552(b)_.  Bayonne Debtors have agreed that, as a condition to the use of Cash Collateral and as a material inducement to the Pre-Petition Secured Parties' consent to the use of Cash Collateral as provided herein, and in exchange for (i) the Pre-Petition Secured Parties' agreement to subordinate their respective pre-petition liens (and their Adequate Protection Liens) (as defined herein) to the Carve Out (as defined herein), and (ii) the

consensual use of Cash Collateral consistent with the Budget and the terms of this Interim Order, (x) the Pre-Petition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of the final order, the "equities of the case" exception shall not apply to any of the Pre-Petition Secured Parties with respect to the proceeds, products, rent, issues, or profits of any of the Pre-Petition Secured Parties Collateral, and no expenses of administration of Bayonne Debtors' bankruptcy cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, products, offspring, or profits from any of the Pre-Petition Secured Parties Collateral under section 552(b) of the Bankruptcy Code, (y) subject to the entry of the final order, the Pre-Petition Secured Parties are entitled to receive a waiver of the provisions of section 506(c) of the Bankruptcy Code, and, subject to the Carve Out, there shall be no surcharge of any costs or expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the Pre-Petition Secured Parties upon, the Pre-Petition Secured Parties Collateral, and (z) subject to and effective upon entry of the final order, none of the Pre-Petition Secured Parties shall be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Pre-Petition Secured Parties Collateral.

(viii)  _No Liability to Third Parties_.  Bayonne Debtors stipulate and this Court finds that in permitting Bayonne Debtors to use the Pre-Petition Secured Parties Collateral, including Cash Collateral, as and to the extent provided herein, in accepting the initial Budget and any future Budget or in taking any other actions permitted by this Interim Order, Pre-Petition Secured Parties and Bayonne DIP Lender shall not be deemed to be in control of the operations of

Bayonne Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of Bayonne Debtors.

(ix)    *Proof of Claim.*

a.   The acknowledgment by Bayonne Debtors of (i) the Landlord Pre-Petition Liabilities, Maple Liabilities, and Senior Pre-Petition Liabilities (collectively, the "**Pre-Petition Liabilities**") and the liens, rights, priorities and protections granted to or in favor of the Pre-Petition Secured Parties as set forth herein and in the Consent Judgment, Landlord Documents, Maple Loan Documents, and Capitala Loan Documents and (ii) of Bayonne DIP Lender's purchase of Capitala's rights to the Capitala Loan Documents, Capitala Liens, and Capitala Collateral, shall be deemed a timely filed proof of claim on behalf of the Pre-Petition Secured Parties with respect to their respective claims in these Cases.

F.    Findings Regarding the Postpetition Financing.

(i)    *Postpetition Financing.* The Bayonne Debtors have requested from Bayonne DIP Lender, and Bayonne DIP Lender is willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth in this Order and the DIP Loan Agreement.

(ii)    *Need for Post-Petition Financing.* The Bayonne Debtors do not have sufficient available sources of working capital, including cash collateral, to operate their business in the ordinary course without the financing requested under the Motion. IJKG Opco's ability to service its patients, maintain business relationships with its referral sources, vendors and suppliers, to pay its employees, and to otherwise fund its operations is essential to the Bayonne Debtors' continued viability as the Bayonne Debtors seek to maximize the value of the assets of the Estates (as defined below) for the benefit of all creditors of the Bayonne Debtors. The ability of the Bayonne Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing

arrangements with Bayonne DIP Lender as set forth in this Order and the DIP Loan Agreement is vital to the preservation and maintenance of the going concern value of the Bayonne Debtors. Accordingly, the Bayonne Debtors have an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their business, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the bankruptcy estates (as defined under Section 541 of the Bankruptcy Code, the "**Estates**") in order to maximize the recovery to all creditors of the Estates.

(iii)    *No Credit Available on More Favorable Terms*. The Bayonne Debtors are unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, secured by a lien on property of the estates that is not otherwise subject to a lien pursuant to 364(c)(2) of the Bankruptcy Code, or secured by a junior lien on property of the estate that is subject to a lien pursuant to 364(c)(3) of the Bankruptcy Code, without the grant of liens on assets under section 364(d)(1) of the Bankruptcy Code. The Bayonne Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by Bayonne DIP Lender pursuant to the DIP Loan Agreement.

(iv)    *Budget*. The Bayonne Debtors have prepared and delivered to Bayonne DIP Lender the budget attached hereto (the "**Budget**").  DIP Lender is relying upon the Debtors' compliance with the Budget in accordance with DIP Loan Agreement and this Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the DIP Loan Agreement and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Bayonne Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Loan Agreement and this Order have been negotiated in good faith and at arms' length by and among the Bayonne Debtors, on one hand, and Bayonne DIP Lender, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, by Bayonne DIP Lender.

(vi)    *Good Cause.* The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Bayonne Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Bayonne Debtors with the necessary liquidity to (a) minimize disruption to the Bayonne Debtors' business and on-going operations, (b) preserve and maximize the value of the Bayonne Debtors' Estates for the benefit of all the Bayonne Debtors' creditors, and (c) avoid immediate and irreparable harm to the Bayonne Debtors, their patients, creditors, business, employees, and assets.

(vii)    *Immediate Entry.* Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2). No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

G.    <u>Interim Funding Order.</u>

(i)     On November 7, 2024, the Court entered an Interim Order approving a $1,000,000 lien from the Bayonne DIP Lender to the Bayonne Debtors to cover immediate payroll funding needs. [D.I. 87].

Based upon the foregoing, and after due consideration and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section I.     Authorization and Conditions to Financing.

1.     Motion Granted. The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order. This Order shall hereinafter be referred to as the "**Interim Order**." The recitals above are hereby incorporated in this Interim Order and are made a part hereof by this reference.

2.     Authorization to Borrow and Use Loan Proceeds. Bayonne Debtors are hereby authorized and empowered to immediately borrow and obtain DIP Loans and to incur indebtedness and obligations owing to Bayonne DIP Lender pursuant to the terms and conditions of this Interim Order and the DIP Loan Agreement, during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Order (the "**Interim Financing Period**"), in such amounts as may be made available to Bayonne Debtors by Bayonne DIP Lender in accordance with all of the terms and conditions set forth in the DIP Loan Agreement, and in accordance with the Budget. Subject to the terms and conditions contained in this Interim Order and the DIP Loan Agreement, Bayonne Debtors shall use the proceeds of the DIP Loans and any other credit accommodations provided to Bayonne Debtors pursuant to this Interim Order and the DIP Loan Agreement for the payment of the expense items

specified in the Budget, including the fees of the U.S. Trustee, the Clerk of this Court and, subject to Section 9 of this Interim Order, and the Professional Fee Carve Out.  Any amount borrowed during the Interim Financing Period is subject to the $1,000,000 disbursement from the Bayonne DIP Lender to the Bayonne Debtors on November 7, 2024 lent on an interim basis to cover immediate payroll funding needs [D.I. 87].  Notwithstanding any other provision of this Order, no funds or deposit in any account in the name of Garden State Healthcare Associates, LLC shall be transferred, directly or indirectly, to or for the benefit of any other Debtor or any non-debtor affiliate of any of the Debtors.  Further, notwithstanding any other provision of this Order, the Bayonne Debtors will not use any funds in the Bayonne Debtors' accounts at IDB Bank or its affiliates ("**IDB Bank**"), including those identified in the Cash Management Motion [D.I. 7] as follows: Letters of Credit Accounts *4358, *4331, *4323 (the "**IDB Bank Accounts**"), and *4315 for any purpose other than to reimburse IDB Bank for draws under letters of credit.

3.      DIP Loan Agreement

a.      Authorization. Bayonne Debtors are hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Loan Agreement and all other agreements, documents and instruments executed or delivered in connection with or related to the DIP Loan Agreement or this Interim Order.

b.      Amendment. Subject to the terms and conditions of the DIP Loan Agreement, Bayonne Debtors and Bayonne DIP Lender may amend, modify, supplement or waive any provision of the DIP Loan Agreement (an "**Amendment**") without further approval or order of the Court so long as (i) such Amendment is not material and is undertaken in good faith by Bayonne DIP Lender and Bayonne Debtors; (ii) the Bayonne Debtors provide prior written notice of the Amendment (the

"**Amendment Notice**") to (x) the U.S. Trustee, (y) counsel for the Maple Secured Parties, and (z) counsel to any official committee appointed in the Cases under Section 1102 of the Bankruptcy Code (collectively, the "**Committee(s)**"), or in the event no such Committee is appointed at the time of such Amendment, the 30 Largest Unsecured Creditors; (iii) the Bayonne Debtors file the Amendment Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within two (2) business days from the later of the date the Amendment Notice is served or the date the Amendment Notice is filed with the Court in accordance with this Section. Any material Amendment to the DIP Loan Agreement must be approved by the Court to be effective.

4.     <u>Payment of Pre-Petition Debt</u>. The Bayonne Debtors are authorized to pay Bayonne DIP Lender in respect of all Landlord Pre-Petition Liabilities and Senior Pre-Petition Liabilities in accordance with the DIP Loan Agreement and <u>Section 5 and 6</u> of this Interim Order.

5.     <u>Payments and Application of Payments</u>. The Bayonne Debtors are authorized to make all payments and transfers of Estate property to Bayonne DIP Lender as provided, permitted and/or required under the DIP Loan Agreement, which payments and transfers, subject to <u>Section 17</u> hereof, shall not be avoidable or recoverable from Bayonne DIP Lender under Section 547, 548, 549, 550, 553 or any other section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. All proceeds of the DIP Collateral received by Bayonne DIP Lender, and any other amounts or payments received by Bayonne DIP Lender in respect of the obligations under the DIP Loan Agreement, shall be applied or deemed to be applied by Bayonne DIP Lender in accordance with the DIP Loan Agreement. Without limiting the generality of the foregoing, the Bayonne Debtors are authorized, without further order of this Court, to pay or reimburse Bayonne DIP Lender for all

present and future costs and expenses, including, without limitation, all reasonable professional fees, consultant fees and legal fees and expenses paid or incurred by Bayonne DIP Lender in connection with the financing transactions as provided in this Interim Order and the DIP Loan Agreement, all of which shall be and are included as part of the principal amount of the Obligations as that term is defined in the DIP Loan Agreement ("**DIP Obligations**"), and secured by the Collateral as that term is defined in the DIP Loan Agreement ("**DIP Collateral**").  All such fees, costs and expenses shall be paid by the Bayonne Debtors within ten (10) days after delivery of a summary invoice to the Bayonne Debtors.  A copy of such invoice shall be provided by the Bayonne Debtors to the U.S. Trustee and counsel for the Official Committee (if any) within one (1) business day of the Bayonne Debtors' receipt of such invoice.  Notwithstanding the foregoing, if (x) the Debtors, the U.S. Trustee or the Official Committee (if any) objects to the reasonableness of an invoice submitted by the Bayonne DIP Lender and (y) the parties cannot resolve such objection, in each case within the ten (10) day period following the Bayonne Debtors' receipt of such invoice, the Bayonne Debtors, the U.S. Trustee or the Official Committee, as the case may be, may file with the Court and serve on Bayonne DIP Lender a fee objection.  The Bayonne Debtors are authorized to promptly pay any submitted invoice after expiration of the ten (10) day period if no fee objection has been filed with the Court and served on Bayonne DIP Lender in such ten (10) day period.  If a fee objection is timely filed and served, the Bayonne Debtors are authorized to promptly pay the undisputed amount of the invoice, and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the fee objection.  For the avoidance of doubt, no transaction fees are due under the DIP Loan and the payment of transaction fees will not be considered a DIP Obligation.  Notwithstanding anything to the foregoing in this Order, the

Debtors are not authorized to and shall not pay any management, service or other fees to Hudson Regional Manager, LLC or to Hudson Regional Hospitals LLC until the entry of a Final Order allowing such payment, and all parties reserve all rights with respect to same for the Final Hearing

6.    <u>Roll-Up</u>. No aspects of the Roll-Up Loan are approved pursuant to this Order.  All such provisions shall be determined at the Final Hearing.

Section II.    <u>Postpetition Lien; Superpriority Administrative Claim Status.</u>

7.    <u>Post-Petition Lien.</u>

a.    <u>Post-Petition Lien Granting</u>. In consideration of the Bayonne DIP Lender's making of loans and other advances under the DIP Loan Agreement and the consent to the Bayonne Debtors' use of Cash Collateral, pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, effective immediately upon the entry of this Interim Order, the Bayonne DIP Lender is hereby granted first priority senior liens on the DIP Collateral ("**<u>DIP Liens</u>**") (which liens are subject to liens permitted by section 7.02 of the DIP Loan Agreement ("**<u>Permitted Liens</u>**") and the Carve Out), which DIP Liens constitute priming, first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and liens senior and superior in priority to all other secured and unsecured creditors of the Bayonne Debtors' estates, and except as otherwise expressly provided in this Interim Order, in all of the DIP Collateral.

b.    <u>Lien Priority</u>. The liens and security interests of Bayonne DIP Lender granted under the DIP Loan Agreement and this Interim Order in the DIP Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including,

without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however, that Bayonne DIP Lender's liens on and security interests in the DIP Collateral shall be subject only to (i) the Permitted Liens, which include, for the avoidance of doubt, existing equipment liens and the cash collateral liens of IDB Bank including, without limitation, their liens on any of the Debtors' accounts identified in the Debtors' cash management motion [D.I. 7] and (ii) the Carve Out (as defined below) solely to the extent provided for in Sections 9, 10 and 11 of this Interim Order (the foregoing clauses (i) and (ii) are collectively referred to herein as the "**Permitted Liens and Claims**").  Nothing included in this Order including, but not limited to, the DIP Liens granted to the Bayonne DIP Lender, shall in any way attach to, impact, impair, encumber, prime, or otherwise affect (i) any equipment or other property leased by Med One Capital Funding, LLC ("**Med One**") or Mazuma Capital Corp. ("**Mazuma**") to the Debtors or any affiliate of the Debtors, or (ii) any equipment or other property of the Debtors, or any affiliate of the Debtors, in which Med One or Mazuma has a valid and properly perfected security interest in and/or lien on such property.  Except as otherwise expressly set forth herein, Med One and Mazuma reserve all respective rights under sections 361, 362, 363, and 364 including, but not limited to, any objections presented by counsel for Med One and Mazuma at or in connection with the Interim Hearings. Further, nothing in this Order, including, but not limited to, the DIP Liens granted to the Bayonne DIP Lender, shall in any way attach to, impact, impair, encumber, prime, or otherwise affect the IDB Bank's interests in the IDB Bank Accounts or authorize the use of cash collateral in those accounts for any purpose other than to reimburse IDB Bank for draws under letters of credit.

c.       Post-Petition Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien (a "**Perfection Act**"). Notwithstanding the foregoing, if Bayonne DIP Lender shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, Bayonne DIP Lender is authorized to perform such act, and the Bayonne Debtors are authorized to perform such act to the extent necessary or required by Bayonne DIP Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. Bayonne DIP Lender may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should Bayonne DIP Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

d.       Nullifying Pre-Petition Restrictions to Post-Petition Financing. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease,

document, note or instrument to which Bayonne Debtors are a party or under which Bayonne Debtors are obligated, any provision that restricts, limits or impairs in any way the Bayonne Debtors from granting Bayonne DIP Lender security interests in or liens upon any of the Bayonne Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which Bayonne Debtors are a party) under the DIP Loan Agreement or this Interim Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or the DIP Loan Agreement shall <u>not</u> (i) be effective and/or enforceable against any such Bayonne Debtors, Bayonne DIP Lender, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Bayonne DIP Lender pursuant to this Interim Order or the DIP Loan Agreement to the maximum extent permitted under the Bankruptcy Code and other applicable law.

8.    <u>Superpriority Administrative Expense</u>. Subject to entry of the final order, for all liabilities now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Agreement or otherwise, Bayonne DIP Lender is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Bayonne Debtors, whether now in existence or hereafter incurred by Bayonne Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "**Superpriority Claim**"), <u>provided</u>, <u>however</u>, the Superpriority Claim shall be subject only to the Permitted Liens and Claims as and to the extent expressly set forth in this Interim Order.

9.      <u>Carve Out Expenses</u>.

a.      <u>Carve Out Expenses</u>. Bayonne DIP Lender's liens, claims and security interests in the DIP Collateral and its Superpriority Claim shall be subject only to the right of payment of the following (the "**<u>Carve Out</u>**"): (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000.00; (iii)  to the extent allowed by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, a sum not to exceed the sums set forth in the Budget for all invoiced and payable allowed professional fees and expenses of the Bayonne Debtors and any Committee ("**<u>Pre-Termination Allowed Professional Fees</u>**"), (iv) all allowed professional fees incurred after written notice from the Bayonne DIP Lender of the occurrence of the Termination Date (as defined in the DIP Loan Agreement) (other than a Termination Date based on the failure of this Interim Order to be entered within 3 business days of the Petition Date), not to exceed $35,000 in the aggregate (collectively with the Pre-Petition Allowed Professional Fees, the "**<u>Professional Fee Carve Out</u>**"); and (v) all fees payable by the Bayonne Debtors to a patient ombudsman appointed under section 333(a) of the Bankruptcy Code, provided that the foregoing expenses shall not include Excluded Professional Fees (as defined below), and provided further that professional fees to be paid by Bayonne DIP Lender pursuant to this paragraph shall not at any time exceed the aggregate amount of the fees and expenses identified in the Budget for each such professional (collectively, the "**<u>Professionals</u>**") or category of professional.

b.      <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary in this Interim Order, neither the Professional Fee Carve Out nor the proceeds of any DIP Loans or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in support or furtherance of any of the following (the "**<u>Excluded Professional Fees</u>**"): (a) an assertion or joinder in (but excluding any investigation into) any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the DIP Obligations or Pre-Petition Secured Parties' or Bayonne DIP Lender's liens on and security interests in the DIP Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, Pre-Petition Secured Parties' liens on and security interests on Pre-Petition Secured Parties Collateral, the DIP Obligations, or DIP Liens and security interests in the DIP Collateral, or (iii) preventing, hindering or delaying Bayonne DIP Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any DIP Collateral in accordance with the terms and conditions of this Interim Order, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Bayonne DIP Lender in accordance with the terms and conditions of this Interim Order, (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code, other than Bayonne DIP Lender, without the prior written consent of Bayonne DIP Lender, or (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Pre-Petition Secured Parties, or Bayonne DIP Lender or any of their officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without

limitation, any attempt to recover or avoid any claim or interest from Pre-Petition Secured Parties, or Bayonne DIP Lender under Chapter 5 of the Bankruptcy Code, (e) the cost of investigation as to the perfection of any liens of the Pre-Petition Secured Parties in excess of $5,000, and (f) any act that is contrary, in a manner that is material and adverse to Pre-Petition Secured Parties, or DIP Lender, to any term or condition set forth in or acknowledged by the DIP Loan Agreement or this Interim Order and that results in the occurrence of an Event of Default under the DIP Loan Agreement or this Interim Order, provided, however, that nothing herein shall inhibit Bayonne Debtors' ability to dispute, by motion or other appropriate proceeding in the Bankruptcy Court or another court having appropriate jurisdiction, a declaration by Bayonne DIP Lender that an Event of Default has occurred.

10.    Payment of Carve Out Expenses.

a.    The Bayonne Debtors shall be permitted to pay Allowed Professional Fees of the Professionals in accordance with the Budget and any Orders entered by this Court respecting interim compensation.

b.    Payment of any Carve Out, whether by or on behalf of Bayonne DIP Lender, shall not and shall not be deemed to reduce the DIP Obligations, and shall not and shall not be deemed to subordinate any of Bayonne DIP Lender's liens and security interests in the DIP Collateral or its Superpriority Claim to any junior pre-or post-petition lien, interest or claim in favor of any other party.  Bayonne DIP Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Cases under any chapter of the Bankruptcy Code, and nothing in this Interim Order shall be construed to obligate Bayonne DIP Lender in any way, to pay compensation to or

to reimburse expenses of any Professional, or to ensure that the Bayonne Debtors have sufficient funds to pay such compensation or reimbursement.

      11.    <u>Use of Cash Collateral; Adequate Protection.</u>

      a.    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order, the DIP Loan Agreement, and in accordance with the Budget, Bayonne Debtors shall be and are hereby authorized to use, until the expiration of Bayonne DIP Lender's commitment to lend under the DIP Loan Agreement, the Cash Collateral (as defined in Section 363 of the Bankruptcy Code) in accordance with the Budget.  Funds allocated for a given category of expenses in the Budget with respect to any given week which are not used for such purpose may be used for such category of expenses in subsequent weeks.

      b.    <u>Adequate Protection</u>. As adequate protection for the aggregate diminution in the value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Secured Parties Collateral from and after the Petition Date, resulting from (among other things) the use, sale or lease by Bayonne Debtors of the Pre-Petition Secured Parties Collateral, the subordination of the Pre-Petition liens of the Pre-Petition Secured Parties to the Carve Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code, the Pre-Petition Secured Parties, shall receive adequate protection as follows:

      i.    The Pre-Petition Secured Parties shall have replacement security interests in and liens on all DIP Collateral in the same priority as those parties enjoyed prior to the Petition Date, which security interests and liens shall be junior to the DIP Liens on such DIP Collateral and senior to all other security interests and liens thereon (subject to the Carve Out) (collectively, the "<u>Adequate Protection Liens</u>").

ii.     The Bayonne Debtors are authorized and directed to (i) deliver all notices and reporting required to be delivered by them under the Senior Loan Documents to which they are party; and (ii) deliver to the Senior Secured Lenders and to Maple Agent, for distribution to the Maple Secured Parties, copies of all notices and reporting delivered to the Bayonne DIP Lender concurrent with the delivery of such notices and reporting to the Bayonne DIP Lender.

iii.     Notwithstanding any other provision hereof, the grant of adequate protection to the Pre-Petition Secured Parties hereto is without prejudice to the right of the Pre-Petition Secured Parties to seek modification of the grant of adequate protection granted hereby so as to provide different or additional adequate protection, and without prejudice to the right of Bayonne Debtors and any other party in interest's right to contest such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Pre-Petition Secured Parties under their respective loan documents or under equity or law, and the Pre-Petition Secured Parties expressly reserve all of their respective rights and remedies, whether now existing or hereafter arising under their respective loan documents and/or equity or in law in connection with all termination events, defaults and events of default under such agreements.

iv.     Section 507(b) Priority Claim. As further adequate protection for the diminution in value of its interests in the Pre-Petition Secured Parties Collateral (including Cash Collateral) on account of Debtor's use of such collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out, the Pre-Petition Secured Parties (except the Maple Secured Parties) are hereby granted as and to the extent provided by Section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in

the Cases (the "**Adequate Protection Superpriority Claim**"). The Adequate Protection Superpriority Claim shall be junior only to the Carve Out and the Permitted Liens and Claims and shall otherwise have priority over all administrative expense claims and unsecured claims against Bayonne Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

        Section III.      <u>Default; Rights and Remedies; Relief from Stay</u>.

        12.      <u>Events of Default</u>. The occurrence of any of the following events shall constitute an "**Event of Default**" under this Interim Order:

        a.      Either of the Bayonne Debtors' failure to perform, in any respect, any of the terms, conditions or covenants, or its obligations, under this Interim Order;

        b.      Either of the Bayonne Debtors seek authority to use Cash Collateral of the Pre-Petition Secured Parties under Section 363 of the Bankruptcy Code, except as otherwise provided in the Motion or this Order;

        c.      Either of the Bayonne Debtors obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than from Bayonne DIP Lender or as may be otherwise expressly permitted pursuant to the DIP Loan Agreement, unless such post-petition loans or other financial accommodations provide for all DIP Obligations to be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Loan Agreement, including, without limitation, all debts and obligations of Bayonne Debtors to Bayonne DIP Lender that arise or result from the obligations, loans, security interests, and liens authorized herein, on terms and conditions acceptable to Bayonne DIP Lender;

d.        Either of the Bayonne Debtors challenge the application of any payments authorized by this Interim Order pursuant to Section 506(b) of the Bankruptcy Code, or assert that the value of the Pre-Petition Secured Parties Collateral is less than the liabilities of the Pre-Petition Secured Parties;

e.        Either of the Bayonne Debtors propose, support, or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all DIP Obligations on the effective date of such plan;

f.        Either of the Bayonne Debtors seek relief under the Bankruptcy Code, including, without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the Bayonne DIP Lender as provided in this Interim Order and the DIP Loan Agreement or Bayonne DIP Lender's exercise of such rights or remedies; or

g.        An "**Event of Default**" under the DIP Loan Agreement.

13.        Rights and Remedies Upon Event of Default. If any Event of Default shall have occurred or an Event of Default is continuing, (i) the Bayonne Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order and the DIP Loan Agreement, and (ii) Bayonne DIP Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 15 below) as provided in this Interim Order or the DIP Loan Agreement, including, without limitation, declaring all DIP Obligations immediately due and payable, accelerating the DIP Obligations, ceasing to extend DIP Loans, setting off any DIP Obligations with DIP Collateral or proceeds in Bayonne DIP Lender's possession, and enforcing any and all rights with respect to the DIP Collateral. Bayonne DIP Lender shall have no obligation

to lend or advance any additional funds to or on behalf of Bayonne Debtors, or provide any other financial accommodations to Bayonne Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

14.    <u>Expiration of Commitment</u>. Upon the expiration of Bayonne Debtors' authority to borrow and obtain other credit accommodations from Bayonne DIP Lender pursuant to the terms of this Interim Order and the DIP Loan Agreement (except if such authority shall be extended with the prior written consent of Bayonne DIP Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by Bayonne DIP Lender), unless an Event of Default set forth in <u>Section 12</u> above occurs sooner and the automatic stay has been lifted or modified pursuant to <u>Section 15</u> of this Interim Order, all of the DIP Obligations shall immediately become due and payable.

15.    <u>Relief from Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Bayonne DIP Lender to perform any act authorized or permitted under or by virtue of this Interim Order or the DIP Loan Agreement, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the DIP Loan Agreement, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the DIP Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the DIP Loan Agreement,

and apply such payments to the DIP Obligations pursuant to the DIP Loan Agreement and this Interim Order. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days' prior written notice to counsel for the Bayonne Debtors, counsel for the Committee (if appointed), counsel for the Maple Secured Parties, and the U.S. Trustee, unless otherwise ordered by this Court, Bayonne DIP Lender shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Loan Agreement or applicable law as Bayonne DIP Lender may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the DIP Collateral or any other assets or properties of Bayonne Debtors' Estates upon which Bayonne DIP Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations.

Section IV.    <u>Representations; Covenants; and Waivers.</u>

16.    <u>Objections to Pre-Petition Liabilities</u>. Any action, claim or defense (hereinafter, an "**<u>Objection</u>**") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the liabilities of Pre-Petition Secured Parties, (b) the extent, legality, validity, perfection or enforceability of Pre-Petition Secured Parties' liens on their respective Pre-Petition Secured Parties Collateral shall be filed with the Court within seventy-five (75) calendar days from the date of entry of this Interim Order (the "**<u>Challenge Deadline</u>**").  If no Objection is timely filed, or if an Objection is timely filed but denied, subject to the tolling proviso in <u>Section 19</u>, (a) the claims of the Pre-Petition Secured Parties shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further

objection or challenge by any party at any time, and Pre-Petition Secured Parties' liens on their respective Pre-Petition Secured Parties Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes subject to only the Permitted Liens and Claims, (b) Landlord and Bayonne DIP Lender, their respective affiliates, subsidiaries, predecessors, successors and assigns and each of their respective present or former owners, participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of any pre-petition agreement involving the Landlord, Bayonne DIP Lender, and Bayonne Debtors, including but not limited to the BMC Lease, Landlord Security Agreement, or any related agreements, or arising out of the Senior Loan Documents or any related agreements, and shall not be subject to any further objection or challenge by any party at any time, and (c) the Maple Secured Parties and each of their participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of any pre-petition agreement involving the Maple Secured Parties and Bayonne Debtors, including but not limited to the Maple Loan Agreement and Maple Loan Documents, or any related agreements, and shall not be subject to any further objection or challenge by any party at any time.  Nothing contained in this paragraph or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Bayonne DIP Lender in connection with all DIP Loans and other financial and credit accommodations provided by Bayonne DIP Lender to Bayonne Debtors in reliance on Section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the DIP Loan Agreement.

17.     <u>Section 506(c) Claims</u>. Subject to entry of the final order, no costs or expenses of administration which have or may be incurred in the Cases at any time shall be charged against Bayonne DIP Lender or Pre-Petition Secured Parties, their respective claims or their respective collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Bayonne DIP Lender or Pre-Petition Secured Parties, and no such consent shall be implied from any other action, inaction or acquiescence by Bayonne DIP Lender or Pre-Petition Secured Parties

18.     <u>Collateral Rights</u>. Until all of the DIP Obligations shall have been indefeasibly paid and satisfied in full:

a.     No other party shall foreclose or otherwise seek to enforce any junior lien or claim in any DIP Collateral, subject to further order of the Court; and

b.     upon and after the occurrence of an Event of Default, and subject to Bayonne DIP Lender obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the DIP Collateral, Bayonne DIP Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Bayonne Debtors, to exercise remedies as set forth in Section 8.12 of the DIP Loan Agreement.

19.     <u>Release</u>. Subject to the Challenge Rights set forth below, in consideration of Bayonne DIP Lender making post-petition loans, advances and providing other credit and financial accommodations to the Bayonne Debtors pursuant to the provisions of the DIP Loan Agreement and this Interim Order, Bayonne Debtors, on behalf of themselves and their respective owners, officers, managers, directors, trustees, agents, representatives, successors and assigns, (collectively, the "**Releasors**"), shall forever release, discharge and acquit Bayonne DIP Lender and its affiliates,

subsidiaries, predecessors, successors and assigns, and their respective present and former owners, participants, agents, officers, directors, managers, employees, attorneys, professionals, successors, and assigns (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Bayonne Debtors, Landlord, the Landlord Pre-Petition Liabilities, the Senior Pre-Petition Liabilities, the DIP Loan Agreement and any DIP Loans or other financial accommodations made by Bayonne DIP Lender to Bayonne Debtors pursuant to the DIP Loan Agreement. In addition, upon the repayment of all DIP Obligations owed to Bayonne DIP Lender by Bayonne Debtors and termination of the rights and obligations arising under the DIP Loan Agreement, Bayonne DIP Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Loan Agreement or the applicable financing Order (including without limitation any obligation or responsibility whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve Out); provided, however, that notwithstanding the foregoing, if any Official Committee or other party in interest files a motion seeking standing to commence any such challenge prior to the Challenge Deadline, which motion attaches a draft complaint and otherwise sets forth with specificity the basis for each such challenge, the Challenge Deadline shall be extended, solely as to (a) such Official Committee or other party in interest and (b) the challenges specifically identified in such complaint, until the earlier of (i) the date such standing

motion is withdrawn, (ii) entry of an order of the Court denying such standing motion, or (iii) two (2) business days after entry of an order of the Court granting such standing motion, <u>provided</u> that, unless otherwise agreed by the prepetition secured parties that are the subject of such motion, such motion shall be heard on an expedited basis (subject to the Court's availability).  In the absence of any such challenge commenced by the Challenge Deadline or the filing of a motion seeking standing to commence any such challenge as provided for in the proviso clause in the immediately foregoing sentence, each of the Releases shall be binding on all parties-in-interest, including, without limitation, any Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest.

Section V.    <u>Other Rights and Liabilities</u>.

20.    <u>No Modification or Stay of This Interim Order</u>. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the DIP Loan Agreement or any term hereunder or thereunder, (ii) the failure to obtain a final order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of the Cases (each, a "**<u>Subject Event</u>**"), (x) the acts taken by Bayonne DIP Lender in accordance with this Interim Order, and (y) the DIP Obligations incurred or arising prior to Bayonne DIP Lender's actual receipt of written notice from Bayonne Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by Bayonne DIP Lender in accordance with this Interim Order, and the liens granted to Bayonne DIP Lender in the DIP Collateral, and all other rights, remedies, privileges, and benefits in favor of Bayonne DIP Lender pursuant to this Interim Order and the DIP Loan Agreement shall remain valid and in full force and effect pursuant to Section 364(e) of

the Bankruptcy Code. For purposes of this Interim Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

21.    <u>Power to Waive Rights; Duties to Third Parties</u>. Bayonne DIP Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of Bayonne DIP Lender (the "**<u>DIP Lender Rights</u>**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s). Any waiver by Bayonne DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject Bayonne DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Bayonne Debtors to Bayonne DIP Lender.

22.    <u>Disposition of Collateral</u>. Each of the Bayonne Debtors shall preserve and neither of the Bayonne Debtors may sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of Bayonne DIP Lender, (and no such consent shall be implied, from any other action, inaction or acquiescence by Bayonne DIP Lender) and an order of this Court, other than as permitted by the Budget or as disposed in the ordinary course of business.  Bayonne Debtors shall remit to Bayonne DIP Lender all proceeds of the DIP Collateral for application by Bayonne DIP Lender to the DIP Obligations, in such order and manner as Bayonne DIP Lender may determine in its discretion, in accordance with the terms of this Interim Order, the DIP Loan Agreement.

23.     <u>Right to Credit Bid</u>. Subject to entry of a final order and subject to section 363(k) of the Bankruptcy Code, in connection with the sale or other disposition of all or any portion of the Bayonne Debtors' assets, the Bayonne DIP Lender shall have the right to "credit bid" its claim (including the Roll-Up Loan, if such Roll-Up Loan is approved by the Final Order) as set forth in Section 2.07(b) of the DIP Loan Agreement during any sale or other disposition of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

24.     <u>Reservation of Rights</u>. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Bayonne DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Agreement or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

25.     <u>Reservation of rights for Signature Investments II LLC and County of Hudson</u>. Nothing contained in this Order including, but not limited to, the DIP Liens granted to the DIP Lender herein, shall in any way attach to, impact, impair, encumber, prime, or otherwise affect (i) any property of the Debtors purchased by Signature Investments II LLC ("<u>SIL</u>") and (ii) any property of the Debtors, or any of them, in which SIL has a valid and properly perfected security

interest in and/or lien on such property. Except as otherwise expressly set forth herein, SIL reserves all their respective rights under 11 U.S.C. §§ 361, 362, 363, and 364 including, but not limited to, the right to request adequate protection equal to the diminution in value (if any) of SIL's interest in such collateral and without prejudice to the right of the Debtors or any other party in interest to contest such request; provided, however, that in connection with any such request and any determination of whether adequate protection should be awarded, SIL shall not be prejudiced by anything in this Interim Order nor shall this Interim Order prevent or otherwise prejudice SIL's rights to seek the equitable remedy of "marshalling" or any similar remedy or doctrine with respect to the DIP Collateral or the Prepetition Collateral, with the Debtors, DIP Lender and any other party in interest reserving their rights regarding same.  Further, nothing contained in this Order shall in any way attach to, impact, impair, or otherwise affect any claims by the County of Hudson (the "County") regarding amounts that will be due and owing from the Debtor come due December 1, 2024. The County requested the Debtor include a line item of $4.2 million in the proposed budget due to the County by December 1, 2024. Such request was not made in connection with this Interim Order. The County hereby reserves all its respective rights to collect such payment coming due December 1, 2024 and/or compel the administrative payment if such payment is not made timely. The County shall not be prejudiced by anything in this Interim Order nor shall this Interim Order prevent or otherwise prejudice the County's right to enforce payment of the post-petition claim once it comes due. The County also hereby reserves its rights in connection with its pre-petition claim in the approximate amount of $15.9 million.

      26.   <u>Binding Effect</u>.

          a.    The provisions of this Interim Order and the DIP Loan Agreement, the DIP

Obligations, Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Bayonne DIP Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any orders that may be entered confirming any plan of reorganization, converting the Cases to any other chapter under the Bankruptcy Code, or dismissing the Cases.

b.     Any order dismissing the Cases under Section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and Bayonne DIP Lender's liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens in the DIP Collateral.

c.     In the event this Court modifies any of the provisions of this Interim Order or the DIP Loan Agreement following a Final Hearing, (a) such modifications shall not affect the rights or priorities of Bayonne DIP Lender pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations that arises or is incurred or is advanced prior to such modifications, and (b) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

d.     This Interim Order shall be binding upon Bayonne Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other

fiduciary appointed in the Cases or any subsequently converted bankruptcy case of Bayonne

Debtors. This Interim Order shall also inure to the benefit of Bayonne DIP Lender, the Pre-Petition

Secured Parties, Bayonne Debtors and their respective successors and assigns.

27.     <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>.  All

post-petition advances and other financial accommodations under the DIP Loan Agreement are

made in reliance on this Interim Order. The security interests and liens granted to or for the benefit

of Bayonne DIP Lender hereunder and the rights of Bayonne DIP Lender pursuant to this Interim

Order and the DIP Loan Agreement with respect to the DIP Obligations and the DIP Collateral are

cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of

reorganization or liquidation of Bayonne Debtors and, if Bayonne DIP Lender shall expressly

consent in writing that the DIP Obligations shall not be repaid in full upon confirmation thereof,

shall continue after confirmation and consummation of any such plan.

28.     <u>Reserved</u>.

29.     <u>Marshalling</u>. In no event shall Bayonne DIP Lender or the Pre-Petition Secured

Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to

the DIP Collateral, subject to the entry of a Final Order on the Motion. The Bayonne DIP Lender

and Pre-Petition Secured Parties shall be entitled to all of the rights and benefits of Section 552(b)

of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the

Bankruptcy Code shall not apply to Bayonne DIP Lender with respect to proceeds, products,

offspring or profits of any of the DIP Collateral, subject to the entry of a Final Order on the Motion.

30.     <u>Term; Termination</u>. Notwithstanding any provision of this Interim Order to the

contrary, the term of the financing arrangements among Bayonne Debtors, Bayonne DIP Lender

authorized by this Interim Order may be terminated pursuant to the terms of the DIP Loan Agreement.

31.    <u>Limited Effect</u>. Unless the Interim Order specifically provides otherwise, in the event of a conflict between the terms and provisions of the DIP Loan Agreement and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Loan Agreement.

32.    <u>No Control</u>.  Nothing in this Interim Order shall cause the Bayonne DIP Lender or any of the Pre-Petition Secured Parties to be deemed to be in control of the operations of  the Bayonne Debtors, or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in any Federal or state statute) with respect to the operation or management of the Bayonne Debtors, notwithstanding its consent to this Interim Order, its approval of the Budget, or involvement in the Budget process.

33.    <u>Interim Approval</u>.  Notwithstanding anything to the contrary contained in this Order, or in any agreements or other documents filed in support of the issuance of this Order, no approval is given to any provision contained in this Order or supporting agreements of other documents which is an "extraordinary provision" under Local Rule 4001-2(a)(i)(P) through 4001-2(a)(i)(X).  Moreover, this is an Interim Order having only the limited binding effect anticipated in the ordinary course of the Local Rules.  No substantial cause has been shown, nor compelling circumstances evidenced, nor reasonable notice given, to justify any "extraordinary provision" or extended binding effect of or through this Interim Order.

34.    <u>Objections Overruled</u>. All objections to the entry of this Interim Order are, to the extent not withdrawn, hereby overruled.

Section VI.    <u>Final Hearing and Response Dates.</u>

35.    The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for **December 10, 2024 at 10:00 a.m.** (Prevailing Eastern Time) before this Court (the "**<u>Final Hearing</u>**"). The Bayonne Debtors shall promptly serve copies of this Interim Order upon the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Creditors' Committee after same has been appointed, or Creditors' Committee counsel, if same shall have filed a request for notice. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Bayonne Debtors, Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia PA 19102, Attn: Lawrence McMichael (lmcmichael@dilworthlaw.com) and Peter C. Hughes (phughes@dilworthlaw.com); (b) counsel for the Bayonne DIP Lender, Mandelbaum Barrett PC, 3 Becker Farm Road, Roseland NJ 07068, Attn: Mohamed H. Nabulsi (mnabulsi@mblawfirm.com), Vincent J. Roldan (vroldan@mblawfirm.com) and Mason L. Allen (mallen@mblawfirm.com); (c) counsel to any Committee; (d) the U.S. Trustee; and (e) counsel for the Maple Secured Parties, Levenfeld Pearlstein, LLC, 120 S. Riverside Plaza, Suite 1800, Chicago, IL 60606 (hisrael@lpegal.com);  and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than **December 3, 2024, at 4:00 p.m.** (Prevailing Eastern Time).

**Dated: November 8th, 2024**
**Wilmington, Delaware**

J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE