**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CarePoint Health Systems Inc. d/b/a Just Health Foundation, et al.,[1] | Case No. 24-12534 (JKS) |
| | *Jointly Administered* |
| Debtors. | **Re: D.I. 132** |

**ORDER GRANTING APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY ANKURA CONSULTING GROUP, LLC AS FINANCIAL ADVISORS, EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

This matter coming before this Court on the application (the "Application"),[2] filed by the above-captioned debtors (the "Debtors") for entry of an order (this "Order"), (i) authorizing the Debtors to retain and employ Ankura Consulting Group, LLC ("Ankura") as financial advisors, effective as of the Petition Date and (ii) granting related relief; all as further described in the Application; and upon consideration of the First Day Declaration, the Robichaux Declaration, and the First Supplemental Robichaux Declaration; the Court having found that (i) this Court has jurisdiction over the Debtors, their estates, property of their estates and to consider the Application

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center. The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

[2] Capitalized terms not otherwise defined in this Order have the meanings given to them in the Application.



#124721316v2

and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) this is a core proceeding under 28 U.S.C. § 157(b), (iii) venue of this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409, and (iv) notice of this Application and any hearing on the Application was appropriate under the circumstances and (v) no further or other notice of the Application is required under the circumstances; and this Court having reviewed the Application and having heard the statements in support of the relief requested in the Application at any hearing before this Court; and (vi) Ankura is a "disinterested person," as defined in Section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code in that (A) Ankura has no connection with the Debtors, their creditors, the United States Trustee for the District of Delaware, any person employed by the Office of the United States Trustee for the District of Delaware or any party with an actual or potential interest in these Chapter 11 Cases or their respective attorneys or accountants, except as set forth in the Robichaux Declaration and the First Supplemental Robichaux Declaration, (B) Ankura is not a creditor, equity security holder or insider of the Debtors, (C) Ankura is not and was not, within two years of the Petition Date, a director, officer or employee of the Debtors, and (D) Ankura neither has nor represents an interest adverse to the interests of the estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason; and the Court having determined that the legal and factual bases set forth in the Application, the First Day Declaration, the Robichaux Declaration, the First Supplemental Robichaux Declaration, and any hearing on the Application, establish just cause for the relief granted in this Order, and this Court having found and determined that the relief sought in the

Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is GRANTED, as set forth in this Order.

2. The Debtors are authorized to retain and employ Ankura Consulting, LLP ("Ankura") as their financial advisors in these Chapter 11 Cases, pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, on the terms and conditions set forth in the Application, effective as of the Petition Date.

3. Ankura shall apply for and may be compensated for its services and reimbursed for any related expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders or procedures of this Court.

4. To the extent that this Order is inconsistent with the Application or the Engagement Letter, the terms of this Order shall govern.

5. Notwithstanding anything in the Application, the Robichaux Declaration, the First Supplemental Robichaux Declaration, or the Engagement Letter to the contrary, Ankura shall, to the extent that Ankura uses the services of independent contractors or subcontractors (collectively, the "Contractors") in these Chapter 11 Cases, (a) pass through the cost of such Contractors to the Debtors at the same rate that Ankura pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflicts checks as required for Ankura; and (d) file with this Court disclosures pertaining to such use required by Bankruptcy Rule 2014.

6. Notwithstanding anything in the Application, the Robichaux Declaration, the First Supplemental Robichaux Declaration, or the Engagement Letter to the contrary, Local Rule 2016-

2(e)(iii) governs the cost of photocopying in connection with Ankura's services pursuant to the Application and this Order.

7. Notwithstanding anything in the Application, the Robichaux Declaration, the First Supplemental Robichaux Declaration, or the Engagement Letter to the contrary, the portions of the Engagement Letter and its attached terms and conditions relating to Conflicts of Interest and Arbitration of Disputes have no force or effect for Ankura's services pursuant to the Application and this Order.

8. To the extent that this Order is inconsistent with the Application or the Engagement Letter, the terms of this Order shall govern.

9. The Indemnification Provisions set forth in the Engagement Letter are approved, subject to the following modifications:

(a) Ankura and any other "Indemnified Party" under the Engagement Letter shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter with respect to any claims (as discussed in the Engagement Letter) unless the indemnification, contribution, or reimbursement is approved by this Court;

(b) Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any Indemnified Party, or provide contribution or reimbursement to any Indemnified Party, for any claim or expense to the extent it is: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from the Indemnified Party's gross negligence, willful misconduct, or bad faith; (ii) for a contractual dispute in which the Debtor(s) allege

breach of an Indemnified Party's contractual obligations, unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Company*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof, to be a claim or expense for which the Indemnitee should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, an Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation, the advancement of defense costs, the Indemnified Party must file an application therefore in this Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by any Indemnified Party for indemnification, contribution, and/or reimbursement, and is not a provision limiting the

duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the Indemnified Party. All parties in interest, including without limitation the United States Trustee and the Official Committee of Unsecured Creditors, shall retain the right to object to any demand by any Indemnified Party for indemnification, contribution, and/or reimbursement.

(d) Notwithstanding anything to the contrary in the Engagement Letter, any exculpation and limitations on liability of or any amounts to be contributed by Ankura, including without limitation, the Limitation of Liability, Exculpation, and Limitations on Actions paragraphs in sections 11, 18(b) or 18(f), as applicable, of the Engagement Letter, shall not apply.

10. No Indemnified Party shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for any claim arising from services other than the Services provided under the Engagement Letter, unless such Services and the indemnification, contribution, or reimbursement are approved by the Court.

11. Ankura shall provide ten (10) business days' notice to the Debtors and the U.S. Trustee in connection with any increase of the hourly rates listed in the Application. The U.S. Trustee and the Debtors retain all rights to object to any rate increase on all grounds, including, but not limited to, the reasonableness standard provided in section 330 of the Bankruptcy Code, and the Court retains the right to review any increase pursuant to section 330 of the Bankruptcy Code.

12. Ankura seeks to first apply its Retainer to all prepetition invoices and to hold the retainer under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement. Following the

conclusion of these chapter 11 cases, any unpaid balance of the Retainer, if any, shall be returned to the Debtors' estates.

13. Notwithstanding anything to the contrary in the Engagement Agreement, Ankura shall not seek reimbursement for costs and fees it incurs in defending its fee applications. In the event that Ankura seeks reimbursement for attorneys' fees and/or expenses during the pendency of these chapter 11 cases, the invoices and supporting time records from such attorneys shall be included in Ankura's fee applications and such invoices and time records shall comply with Local Rule 2016-2(f) and shall be subject to approval of this Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

14. Notwithstanding anything to the contrary in the Application, the Engagement Agreement, the Robichaux Declaration, or the First Supplemental Robichaux Declaration, during the course of these chapter 11 cases, Ankura will have whatever fiduciary duties (if any) are imposed on it under applicable law.

15. Any provision in the Engagement Agreement whereby the Debtors waive any conflicts of interest that Ankura has or may have shall have no force or effect during the course of these chapter 11 cases.

16. Ankura shall not unilaterally terminate its engagement under the Engagement Agreement absent prior approval of this Court.

17. Any provision of the Engagement Letter requiring the payment of a percentage of fees as an expense reimbursement shall have no force of effect during the pendency of these chapter 11 cases.

18. To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and the express terms of this Order, the express terms of this Order shall govern.

19. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

**Dated: December 9th, 2024**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**



#124721316v2