# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>CAREPOINT HEALTH SYSTEMS, INC.,<br>*et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12534 (JKS)<br><br>(Jointly Administered)<br><br>Hearing Date: January 7, 2025, at 9:30 a.m.<br>Objection Deadline: December 27, 2024 at 4:00 p.m. |

**MOTION OF ACCESS INFORMATION MANAGEMENT CORPORATION (I) TO COMPEL (A) DEBTORS' ASSUMPTION OF EXECUTORY CONTRACTS, OR ALTERNATIVELY, (B) DEBTORS TO PROVIDE DIRECTION AS REQUIRED BY THE CONTRACTS AND APPLICABLE LAW WITH RESPECT TO THE CONTINUED STORAGE, TRANSFER, DESTRUCTION OR OTHER DISPOSITION OF THE HEALTH CARE RELATED DOCUMENTS AND INFORMATION SUBJECT TO THE CONTRACTS, (II) FOR RELIEF FROM THE AUTOMATIC STAY, AND (III) FOR SUCH OTHER RELIEF AS IS NECESSARY UNDER THE CIRCUMSTANCES**

Access Information Management Corporation and certain affiliates as identified on **Exhibit A**[2] attached hereto (collectively, "**Access**"), respectfully requests pursuant to sections 105 and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**") that the Court enter an order compelling Debtors to: (A) assume or reject the executory contracts identified in **Exhibit A** (collectively, the "**Document Storage Contracts**") and the executory contract in **Exhibit B** (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint HealthHoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii)Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint HealthBayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

[2] Exhibit A is a summary of amounts owed pursuant to the contracts between Access and the relevant Debtor. The contracts are not attached hereto because they are voluminous and confidential. The contracts can be made available upon the request of a party in interest.

53399268.5 12/17/2024

"**Document Archive Contract**") pursuant to which Access (i) stores documents and information which Access submits, on information and belief, relates to Debtors' health care operations and includes health care records and information with respect to which Debtors have retention obligations under applicable state and federal health care laws and regulations (the "**Health Care Information**"), and (ii) provides archiving software to the Debtors, (B) pay all post-bankruptcy obligations to Access under the Document Storage Contracts and the Document Archive Contract, and (C) provide proper direction to Access with respect to the continued storage, transfer, destruction or other disposition of the Health Care Information in the event that Debtors decide either to assume or to reject the Document Storage Contracts and the Document Archive Contract. In addition, Access requests that the Court terminate the automatic stay so that Access may act upon proper direction with respect to the Health Care Information upon Debtors' decision to assume or reject and provision of proper direction to Access under the Document Storage Contracts and applicable law with respect to the continued storage, transfer, destruction or other disposition of the Health Care Information.

In support, Access respectfully represents as follows:

### I.     BACKGROUND

1. On November 3, 2024 (the "**Petition Date**") the Debtors commenced these bankruptcy cases, which are being jointly administered under the above case caption, by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. Debtors operate three hospitals and related neighborhood health centers located in Hudson County, New Jersey—Bayonne Medical Center, Christ Hospital in Jersey City and Hoboken University Medical Center. *See Declaration of Shamiq Syed in Support of First Day Pleadings* [Docket No. 23] (the "**First Day Declaration**") at ¶ 6.

3.  As set forth on **Exhibit A**, the Debtors are parties to over thirty executory contracts originally contracted with Allstate Business Archives, L.L.C ("**Allstate**").  In 2021, Access acquired Allstate's assets and became the successor in interest to the Document Storage Contracts and the Document Archive Contract.  Generally, the Document Storage Contracts require Access to store the Health Care Information and such other information as Debtors may request relating to the operation of the Debtors' health care businesses.

4.  On March 13, 2003, certain of the Document Storage Contracts were amended to, among other things, require, for each, that "this Agreement shall become effective as of the Effective Date and remain in effect until all of the PHI[3] provided by the [Debtors] to [Access] is returned or destroyed."  Other Document Storage Contracts contain similar language in paragraph 1.11 stating "Upon termination of an Underlying Agreement for any reason. [Access] will return or destroy (as agreed to with [the Debtors]) all of [the Debtors'] PHI."

5.  On April 19, 2021, the Debtors entered into the Document Archive Contract with Triyam, Inc. ("**Triyam**"), for archiving and storage of documents software.  On March 11, 2024, Access acquired Triyam and became Tryiam's successor in interest under the Document Archive Contract.

6.  Pursuant to paragraph 6 of the Document Archive Contract, upon the termination of the Document Archive Contract, the Debtors must either (i) authorize Access to destroy the documents or (ii) instruct Access to return the documents to the Debtors.  Critically, this decision must be made "at the time of termination."

---

[3] Under the Document Storage Contracts, PHI is defined as "any information relating to the healthcare of an individual who is or has been a patient or client of [the Debtors] that contains information that identifies or can reasonably be linked to the identity of such an individual."

3

7. In 2020, the Debtors purported to commence a process that would lead to termination of the Document Storage Contracts as set forth on **Exhibit C** (the "**Termination Commencement Notice**"). Although Access assumed it may have been intended to apply to all of the Document Storage Contracts, the Termination Commencement Notice omitted some of the Document Storage Contracts. However, Debtors have not clarified their intent in such regard.

8. Furthermore, the Debtors have not provided any direction to Access with respect to the transfer, destruction or other disposition of the Health Care Information or any other of the documents and information being stored by Access pursuant to and as specifically required by both the Document Storage Contracts and the Document Archive Contract. Access requested such from the Debtors but no direction has been provided.

9. Access provided the Debtors with price quotes in respect of either a destruction or transfer of the material being stored but the Debtors have never acted on such.

10. Upon information and belief, Access submits that the Debtors by their actions and inaction abandoned the termination process.

11. Access further submits, on information and belief, that Debtors have obligations to retain the Health Care Information that is being stored by Access pursuant to the Document Storage Contracts, notwithstanding the commencement of these bankruptcy cases.

12. The Debtors are in default of their obligations to Access under all of the Document Storage Contracts and the Document Archive Contract, having not made any payments to Access as required since 2021. The Debtors ceased all payments under the Document Storage Contracts in 2021 after sending the Termination Commencement Notice.

13. As of the Petition Date, the Debtors owed Access $1,796,295.00 on account of services performed under the Document Storage Contracts and the Document Archive Contract.

14. The Debtors have not made any post-petition payments to Access under or in connection with the Document Storage Contracts or the Document Archive Contract. The Debtors owe Access $59,451.61 for services rendered pursuant to the Document Storage Contracts after the Petition Date.

15. Access estimates that it has approximately 70,000 boxes of documents and over 200,000 individual files of the Debtors.

16. Access rents the space at which it stores the Debtors' documents and information. Access is obligated to pay for the space it rents to house Debtors' documents regardless of whether it receives payment from the Debtors under the Document Storage Contracts and Document Archive Contact.

17. Access was not included in the pre-petition discussions and negotiations toward "a comprehensive solution to the financial issues confronting CarePoint" generally described in the First Day Declaration. *See* First Day Declaration at ¶¶ 7-10.

18. Prior to filing this motion Access through counsel twice attempted to engage Debtors' counsel in discussion with respect to Debtors' intentions with respect to Access, its contracts with Debtors and the Health Care Information. No substantive response was received from the Debtors.

## II.    RELIEF REQUESTED

19. Access seeks the entry of an order compelling the Debtors to: (A) assume or reject the Document Storage Contracts and the Document Archive Contract; (B) pay all post-petition outstanding amounts owed pursuant to section 503(b)(1) of the Bankruptcy Code; and (C) provide proper direction to Access with respect to the continued storage, transfer, destruction or other disposition of the Health Care Information in the event that Debtors decide either to assume or to reject the Document Storage Contracts and the Document Archive Contract. In addition, Access

requests that the Court terminate the automatic stay so that Access may act upon proper direction with respect to the Health Care Information upon Debtors' decision to assume or reject and provision of proper direction to Access under the Document Storage Contracts and applicable law with respect to the continued storage, transfer, destruction or other disposition of the Health Care Information.

### III.    BASIS FOR RELIEF REQUESTED

**A.    Cause Exists to Compel the Debtors to Assume or Reject the Contracts**

20. Section 365 of the Bankruptcy Code authorizes the debtor-in-possession, with court approval, to assume or reject any executory contract of the estate. 11 U.S.C. § 365(a). If the debtor has defaulted, the contract may only be assumed if the debtor cures such defaults or provides adequate assurance that such defaults will be promptly cured, together with compensation for any actual pecuniary losses resulting from any defaults, and adequate assurances of future performance under the contract. 11 U.S.C. § 365(b).

21. Section 365(d)(2) of the Bankruptcy Code generally allows a debtor-in-possession to defer assumption or rejection of an executory contract until confirmation of a plan of reorganization. Section 365(d)(2) provides that a court may, on the request of a non-debtor party to such a contract, shorten the time period within which the debtor must decide to assume or reject the contract. 11 U.S.C. § 365(d)(2).

22. The legislative history of Section 365(d) indicates that the purpose of this section is to "prevent parties in contractual or lease relationships with a debtor from being left in doubt concerning their status vis-à-vis the estate." H. Rep. No. 95-595, 95th Cong. 1st Sess. at 348 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. at 59 (1978); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1078-79 (3d Cir. 1992).

23. Additionally, section 105 confers on this Court the authority to enter an order compelling a debtor to assume or reject executory contracts by a certain date. *See* 11 U.S.C. § 105(d)(2)(A) (permitting courts to issue various orders on request of a party in interest including fixing the date by which the trustee must assume or reject an executory contract).

24. A determination of whether it is appropriate to accelerate the deadline regarding assumption or rejection of an executory contract involves the consideration of, among other factors: (i) the relative importance and significance of the contract to the debtor's business; (ii) whether the debtor has had time to intelligently appraise its financial situation and the potential value of its assets; (iii) whether the creditor continues to receive the payment required in the contract or the debtor has failed to satisfy post-petition obligations; (iv) whether the creditor will be damaged beyond the compensation available under the Bankruptcy Code due to the delay; (v) the balance of harm to the litigants; (vi) the safeguards afforded to the parties; and (vii) whether the debtor has failed or is unable to formulate a plan. *See Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982*); In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006); *In re G-I Holdings, Inc.*, 308 B.R. 196, 213 (Bankr. D.N.J. 2004); *In re Monroe Well Service, Inc.*, 83 B.R. 317, 323 (Bankr. E.D. Pa. 1988); *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J. 1986).

25. In exercising its discretion to compel assumption or rejection, a court must balance the interests of the non-debtor party to the contract against the bankruptcy estate's interest. *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001).

26. All of the relevant factors weigh in granting the relief requested in this Motion. If the Debtors are allowed to delay their decision to assume or reject the Document Storage Contracts and the Document Archive Contract, Access will be left in the position of being compelled against its will and against all notions of fairness and equity to continue to provide valuable services post-petition without any payment for those services.

27. As previously stated, the Debtors have not paid Access as required under the Document Storage Contracts and the Document Archive Contract since 2021. Access' losses will only continue to compound the longer the Debtors take to determine whether to assume or reject the contract.

28. Access has no safeguards and must continue to perform until further instructed. In contrast, the Debtors currently have no incentive to decide what to do with their documents and are not paying for the storage of their documents. Furthermore, despite numerous requests, Access does not know their status with the Debtors.

29. For the foregoing reasons, the Court should (i) compel the Debtors to decide whether to reject or assume the Document Storage Contracts and the Document Archive Contract and (ii) compel the Debtors to instruct Access to either store, destroy, transfer or otherwise dispose of all documents and information stored by Access under and pursuant to the Document Storage Contracts and Document Archive Contract within seven (7) days from the date of an order granting the relief is entered by the Court.

**B.    Access is Entitled to an Administrative Expense Claim**

30. Section 503(b)(1) of the Bankruptcy Code provides that, "there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Administrative claims are entitled to priority payment under section 507(a)(2) of the Bankruptcy Code and are required to be paid in full under a plan pursuant to section 1129(a)(9). *See id.* §§ 507(a)(2), 1129(a)(9).

31. To establish an administrative claim, the claimant must typically show that (1) there was "a post-petition transaction between the creditor and the debtor," and (2) "the estate . . . receive[d] a benefit from the transaction." *In re Garden Ridge Corp.*, 321 B.R. 669, 676 (Bankr. D. Del. 2005) (quoting *In re Waste Systems Int'l, Inc.*, 280 B.R. 824, 826 (Bankr. D. Del.

2002)); *see also In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 532–33 (3d Cir. 1999) ("For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business.").

32.     When services are being provided pursuant to a contract, the value of those services may be what is specified in the contract. *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010).

33.     Access continues to store and archive documents pursuant to the Document Storage Contracts and the Document Archive Contract post-petition triggering the Debtors' obligation to pay for those services post-petition. The Debtors are required to maintain the Health Care Information that Access is currently storing creating an actual and necessary benefit to the estate from the transaction.

34.     As such, Access is entitled to an administrative expense claim for all services rendered post-petition under the Document Storage Contracts and the Document Archive Contract. Access is entitled to an administrative expense claim of the amount agreed upon for such services in the Document Storage Contracts and the Document Archive Contract. *See Smurfit-Stone*, 425 B.R. at 741 (citing *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003).

**C.      Cause Exists for Relief from the Automatic Stay**

35.     Section 362(d) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

        (1)    for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

36. The term "cause" is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case-by-case basis and is within the sound discretion of the court. *8 E. Frederick Place, LLC v. Flinknote Co.* (*In re Flintknote Co.*), 533 B.R. 887, 894 (D. Del. 2015) (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)).

37. Access submits that it is entitled to relief from stay under Section 362(d)(1) to take action with respect to the Health Care Information and such other documents and information it is storing pursuant to the Document Storage Contracts upon Debtors' direction as to the continued storage, destruction, transfer or other disposition of such in order to properly act upon such direction, whether Debtors' decision is to assume or to reject.

38. Cause clearly would exist for relief from stay for Access to act upon proper direction from Debtors. The Health Care Information and other documents and information being stored is property of the Debtors and Access is stayed from taking control of such property without proper direction and relief from the stay in order to implement the direction provided.

39. Further, Debtors must continue to make payments for services provided under executory contracts during the post-petition period. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services"); *see also In re Mirant Corp.*, 197 F. App'x 285, 294 (5th Cir. 2006) (recognizing this principle as a "universally accepted rule").

40. The failure to make these required post-petition payments is sufficient cause to justify terminating the automatic stay. *See In re Uvaydov*, 354 B.R. 620 (Bankr. E.D.N.Y. 2006); *see also Equitable Life Assurance Soc'y v. James River Assoc.* (*In re James River Assoc.*), 148 B.R. 790,797 (E.D. Va. 1992) (holding that the failure to make monthly payments under loan documents constitutes cause for granting relief from automatic stay).

### V.    RESERVATION OF RIGHTS

41. Access expressly reserves any and all rights to supplement or amend this motion and make any other requests or objections to further relief sought by the Debtors. Access further reserves the right to file administrative claims against the Debtors for obligations owed under the Document Storage Contracts and the Document Archive Contract.

WHEREFORE, Access respectfully requests that the Court enter an order granting relief for Access as requested herein and such other relief to which Access is or may be entitled under the circumstances.

Dated: December 17, 2024        **SAUL EWING LLP**

By:    */s/ John D. Demmy*
John D. Demmy (Bar No. 2802)
Nicholas Smargiassi (Bar No. 7265)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6848
Email: john.demmy@saul.com
          nicholas.smargiassi@saul.com

*Attorneys for Access Information Management Corporation*