# EXHIBIT A

[Preliminary Plan Term Sheet]

## CAREPOINT HEALTH SYSTEMS, INC. D/B/A JUST HEALTH FOUNDATION

### Preliminary Plan Term Sheet

### Subject to Further Diligence and Investigation

This preliminary term sheet (the "Plan Term Sheet") sets forth certain material terms to be included in a chapter 11 plan (the "Plan") of CarePoint Health Systems, Inc. d/b/a Just Health Foundation and certain of its affiliates and subsidiaries as debtors and debtors-in-possession (collectively, the "Debtors") in the chapter 11 cases (the "Chapter 11 Cases"), filed on November 3, 2024 (the "Petition Date") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), pending before the Honorable J. Kate Stickles in the United States Bankruptcy Court for the District of Delaware (the "Court") and jointly administered under Case No. 24-12534 (JKS).  This Plan Term Sheet is based upon a proposed negotiated resolution of issues in the Chapter 11 Cases mediated by Chief United States Bankruptcy Judge Michael Kaplan and the transactions contemplated hereby shall be subject to Court approval.

**THIS PLAN TERM SHEET DOES NOT CONSTITUTE A SOLICITATION OF VOTES FOR A CHAPTER 11 PLAN FOR PURPOSES OF BANKRUPTCY CODE SECTIONS 1125 AND 1126. SUCH SOLICITATION MAY ONLY BE MADE IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND AFTER DELIVERY OF THE PLAN AND DISCLOSURE STATEMENT IN ACCORDANCE WITH APPLICABLE ORDERS OF THE COURT. THIS PLAN TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.  NOTHING CONTAINED IN THIS PLAN TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY. THIS PLAN TERM SHEET CONTAINS CERTAIN FUNDAMENTAL TERMS OF THE PROPOSED TRANSACTIONS SUBJECT TO COURT APPROVAL BUT DOES NOT ADDRESS ALL TERMS THAT WOULD BE REQUIRED IN CONNECTION WITH THE PROPOSED TRANSACTION OR THAT WILL BE SET FORTH IN DEFINITIVE DOCUMENTATION.**

| Transaction Overview | |
|---|---|
| **Plan and Disclosure Statement** | The Debtors and the Official Committee of Unsecured Creditors (the "Committee"), as joint Plan proponents, shall draft and file a combined disclosure statement (the "Disclosure Statement") and Plan that implements the terms set forth in this Plan Term Sheet. The Plan proponents will seek a combined hearing on final approval of the Disclosure Statement and confirmation of the Plan and Committee and Debtors shall support this Plan Term Sheet and all transactions hereunder in all respects. |
| | The final versions of the Disclosure Statement, Plan, and order confirming the Plan (the "Confirmation Order"), and all related Plan documents, schedules, and Plan exhibits, including the Plan supplement(s), shall be in form and substance reasonably acceptable to |

|  | (i) the Debtors, (ii) the Committee, and (iii) Hudson Regional Hospitals, LLC and Bayonne Medical Center Opco, LLC (collectively, "HRH") (the Debtors, the Committee and HRH shall be collectively referred to as the "Parties"). |
|---|---|
|  | The Parties shall use best efforts to have the Plan confirmed by February 19, 2025, time being of the essence and subject to the availability of the Court. The Plan will provide for the contemplated transactions with HRH (*i.e.*, collateral transfer with regard to Bayonne under the Collateral Surrender and Operations Transfer Agreement (the "CSA"), the Hospital Facilities Management Services Agreement (the "HFMA") with regard to HUMC and Christ Hospital, and the Management Services Agreement (the "MSA") with respect to the proposed four hospital system). |
|  | The Plan will have an alternative transaction concept to allow a third party to overbid the proposed HRH transactions. There will be a period for consideration of an alternative transaction for the purchase of Bayonne Medical Center and long-term management of HUMC and Christ Hospital (as contemplated in the above-referenced agreements) through and including the date that is twenty-one (21) calendar days after conditional approval of the Disclosure Statement, with time being of the essence such that no bids received after the expiration of such period may be considered, except as otherwise ordered by the Bankruptcy Court.[1] If the Debtors receive a qualified bid before the expiration of the aforementioned period as aforesaid, the Debtors shall immediately forward the same to the Debtors' independent Reorganization Committee (the "Reorganization Committee"), the Committee and HRH. Upon timely receipt of a qualified bid, the Reorganization Committee will consider whether the alternative transaction in such qualified bid is higher or better and will make a recommendation to the Debtors regarding any such alternative transaction within seven (7) calendar days of the timely submission of any qualified bid. Any alternative transaction must be proposed by a qualified bidder and shall be in an amount at least $1 million higher than HRH's credit bid to take into consideration the payment of a $1 million break-up fee, due and payable to HRH, in the event of a closing of a transaction regarding Bayonne to an alternative bidder. Additional bid increments shall be determined by the Debtors' Reorganization Committee, as ordered by the Court. A qualified bidder shall be determined by the Reorganization Committee and shall be a person demonstrating: (i) the financial wherewithal to consummate any proposed transaction, (ii) its ability to achieve and secure regulatory approvals and comply with the New Jersey Department of Health certificate of need and licensure statutes and |

---

[1] The Parties will work towards having the Disclosure Statement conditionally approved on or around January 13, 2025, subject to the Court's availability and permission.

2

12825244

| | |
|---|---|
| | regulations, including the transfer of ownership requirements, as well as the Community Health Care Asset Protection Act, (iii) its ability to secure all contractual approvals to which the Debtors/their successors are subject, and (iv) its agreement and wherewithal to either assume or pay off, at closing, all overpayments owed by Bayonne Medical Center to Medicare, Medicaid and their MCOs/HMOs and other government health care programs. |
| | HRH will have the right to credit bid with regard to the Bayonne transaction and shall have the right to contest or otherwise challenge the determination of qualified bid, if any. Such credit bid may include: (i) the prepetition first lien debt (approx. $8 million, plus interest) acquired from Capitala, (ii) amounts advanced under the Bayonne DIP (approximated to be $21 million through February 1, 2025, plus interest), (iii) any amounts actually paid or advanced for supplies, equipment, personnel and other items and services, and (iv) operations/management fees in a minimum approximate amount of $3,741,612; and (v) lease arrears such that the total of (i) – (v) above shall approximate a credit bid of $32,741,612, it being understood and agreed the foregoing amounts will be updated at the time the need for a credit bid becomes ripe.  If there is competitive bidding, HRH has the right to seek to augment its credit bid by the "Outstanding Judgment" (as defined in the CSA), outstanding operations/management fees, all amounts incurred, advanced, assumed or paid for or on behalf of the Debtors and other amounts or consideration, and neither the Debtors nor the Committee will oppose HRH's augmented credit bid. Nothing herein shall prejudice or otherwise waive the rights of any person not a Party hereto to object to any terms of the Plan or alternative process described herein. |
| | The Plan (or an amendment to the CSA) shall provide that Section 2.05(a) of the CSA is stricken from the CSA and the "Transaction Consideration" under the CSA shall be the credit bid of HRH described above. |
| **Proposed Treatment of Claims and Interests** | |

Holders of Allowed[2] claims against the Debtors shall receive the following treatment in full and final satisfaction of such Allowed claims, which shall be released and discharged under the Plan.

| Class No. | Type of Claim | Treatment | Impairment / Voting |
|---|---|---|---|
| | | | |

---

[2] "Allowed" means, with respect to any Claim (as defined in Bankruptcy Code section 101(5)), such Claim or portion thereof against any Debtor is allowed under the Plan, under the Bankruptcy Code, or by a final order.

| | | | |
|---|---|---|---|
| **N/A** | **Administrative Expense Claims** | Unless a holder agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (including all Professional Fee Claims) shall be paid in full in cash on the later of (a) the Effective Date, or (b) the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon as reasonably practicable thereafter.  Alternatively, all Allowed Administrative Expense Claims, excluding Professional Fee Claims, may be assumed by the Reorganized Debtors and paid in the ordinary course. | N/A |
| **N/A** | **Priority Tax Claims** | Unless a holder agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive treatment consistent with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code. Any unpaid payroll taxes shall be paid from ongoing operations by each respective hospital. | N/A |
| **N/A** | **Priority Non-Tax Claims** | On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Priority Non-Tax Claim shall receive, on account of, in exchange for, and in full satisfaction of such Allowed Priority Non-Tax Claim, (i) cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim, or (ii) such other treatment as to which such Holder and the Debtors or the Litigation Trustee, as applicable, shall have agreed upon in writing.<br><br>The Plan will provide for the payment (or non-impairment) of claims of certain employees for amounts in excess of the priority cap as identified in a Schedule to be agreed upon by the Parties. | N/A |
| **Class 1** | **Allowed HRH Secured Claims** | On, or as soon as reasonably practicable after the Effective Date, HRH shall receive on account of its Allowed HRH Secured Claims reinstatement of the obligations of the Debtors as of the confirmation date pursuant to the Exit Facility Documents, it being understood and agreed that no estate assets shall be used to pay the Allowed HRH Secured Claims (other than certain proceeds of Litigation Rights as set forth below), which claims will be treated as an Exit Facility and amounts will be paid from the future operations. Any and all unsecured claims of HRH shall be repaid by and in accordance | <u>Impaired</u><br><br>*Entitled to vote* |

| | | with the Exit Facility. The Parties understand and agree that HRH shall receive no distributions under the Plan, other than the right to receive certain proceeds of Litigation Rights as set forth below and except as otherwise provided in any Exit Facility.<br><br>HRH DIP Loan claims (HUMC/Christ) and Administrative Expense Claims[3] shall be (i) converted to exit loans pursuant to the Exit Facility Documents and shall not be payable by the estates; or (ii) in the event of an alternative bidder, shall be paid in full upon the closing of the alternative transaction.<br><br>HRH DIP Loan claims (Bayonne) and Administrative Expense Claims shall be (i) satisfied in exchange for the transfer of assets to HRH in accordance with the CSA or (ii) in the event the Debtors sell Bayonne to an alternative bidder, shall be paid in full upon the closing of the alternative transaction.<br><br>For the avoidance of doubt, the amounts sought by HRH pursuant to the Outstanding Judgment are Class 1 Claims (i) to be addressed in an Exit Facility, but not from estate assets (other than the proceeds of Litigation Rights); (ii) in the event of an alternative bidder, shall be paid in full upon the closing of the alternative transaction. | |
|---|---|---|---|
| Class 2 | **Allowed Capitala Claims** | On, or as soon as reasonably practicable after the Effective Date, any Allowed Capitala Claims shall receive treatment in accordance with Section 1129 of the Bankruptcy Code. | <u>TBD</u> |
| Class 3 | **Allowed Maple Health Claims** | On, or as soon as reasonably practicable after the Effective Date, any Allowed Maple Health Claims shall receive treatment in accordance with Section 1129 of the Bankruptcy Code. | <u>TBD</u> |
| Class 4 | **Other Secured Claims** | On, or as soon as reasonably practicable after, the Effective Date, to the extent not otherwise paid pursuant to another Court order, each holder of an Allowed Other Secured Claim shall receive, on account of, in exchange for, and in full and final | <u>Unimpaired</u><br>*Deemed to Accept* |

---

[3] For the avoidance of doubt, such Administrative Expense Claims shall include liabilities incurred by HRH in managing/operating Bayonne, HUMC or Christ Hospital, including in the form of equipment and other lease/acquisitions or service/maintenance agreements.

5

12825244

| | | | |
|---|---|---|---|
| | | satisfaction, compromise, settlement, release, and discharge of such Allowed Other Secured Claim, (i) cash equal to the unpaid portion of the Allowed Other Secured Claim, (ii) the collateral securing such Allowed Other Secured Claim, (iii) the indubitable equivalent of such Allowed Other Secured Claim, or (iv) such other treatment as to which such holder and the Debtors or the Litigation Trustee, as applicable, shall have agreed upon in writing. | |
| Class 5 | General Unsecured Claims | On or as soon as reasonably practicable after the Effective Date, except to the extent such holder and the Debtors or the Litigation Trustee, as applicable, shall have agreed upon in writing to alternative treatment, each holder of an Allowed General Unsecured Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed General Unsecured Claim, a *pro rata* beneficial interest in the Litigation Trust. | Impaired *Entitled to Vote* |
| Class 6 | Intercompany Claims | The Plan will provide for the treatment of intercompany claims to be agreed upon by the Parties. | [TBD] |
| **Other Plan Terms** | | | |
| **Means of Implementation** | | On or prior to the effective date of the Plan (the "Effective Date"), the Debtors shall enter into a litigation trust agreement (the "Litigation Trust Agreement"), in form and substance acceptable to the Committee, to establish a litigation trust (the "Litigation Trust") for the purposes of investigating, prosecuting, or settling the Litigation Rights; liquidating the Debtors' remaining litigation assets, including any causes of action and distributing the proceeds as required under the Plan and Litigation Trust Agreement. HRH shall have the right to consent to the Litigation Trust Agreement, such consent shall not be unreasonably withheld. To the extent of any dispute regarding the proposed Litigation Trust Agreement, such dispute shall be determined by the Court. | |
| | | HRH will provide a commitment for the funds necessary to confirm and consummate the Plan not later than ten (10) calendar days prior to the scheduled confirmation hearing. | |
| | | HRH shall be a beneficiary of the Litigation Trust and be entitled to the same rights, benefits and protections of each other beneficiary of the Litigation Trust. | |

6

12825244

| | |
|---|---|
| | The Litigation Trust shall be administered by the Litigation Trustee, who shall be selected by the Committee, in consultation with the Debtors and HRH, pursuant to the Litigation Trust Agreement and the Plan (the "<u>Litigation Trustee</u>"). HRH shall have the right to consent to the selection of the Litigation Trustee, such consent not to be unreasonably withheld. To the extent of any dispute regarding the selection of the Litigation Trustee, such dispute shall be determined by the Court. |
| | The Litigation Trust Agreement will provide that decisions regarding the prosecution, compromise, defense of counterclaims, 3rd party claims or cross-claims, abandonment and/or settlement of any Cause of Action that seeks recovery (or defense – but not including general unsecured claims) or is otherwise reasonably valued at, equal to, or greater than $1,000,000 or settlement of any Disputed Claim where the amount in dispute is equal to or greater than $1,000,000 shall require HRH's consent, such consent not to be unreasonably withheld.  To the extent that any proposed settlement may bind, or affect the continued operations of, the Debtors or their assets, the Litigation Trust Agreement shall provide for HRH approval rights to address such issues or concerns, not to be unreasonably withheld. To the extent of any dispute regarding HRH's consent rights as aforesaid, such dispute shall be determined by the Court (or the mediator, if the Parties then agree in writing to the extent applicable). |
| | The Litigation Trustee shall serve and shall only be removed upon a final order of the Court determining that the Litigation Trustee engaged in gross negligence or willful misconduct. |
| | The Litigation Trust shall be overseen by the Litigation Trust Oversight Committee comprised of three (3) members of the Committee. The Litigation Trust Oversight Committee shall oversee the Litigation Trust and the Litigation Trustee, as set forth herein and in the Litigation Trust Agreement. The Litigation Trustee shall report to the Litigation Trust Oversight Committee from time to time.  HRH shall have an *ex-officio* role on the Litigation Trust Oversight Committee to provide usual and customary communication and participation to be agreed upon with the Litigation Trustee to include rights to attend meetings, conferences, receive contemporaneous communications, be a part of deliberations and receive notice, subject to a recusal policy for all members of the Litigation Trust Oversight Committee. |
| | The Litigation Trust will be intended to qualify as a "liquidating trust" as described in Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, and will be treated for federal income tax purposes as a "grantor trust" under Internal Revenue Code sections 671-677. |

| | |
|---|---|
| | On the Effective Date of the Plan, (i) the assets of the Bayonne Hospital (other than any Litigation Rights) shall be transferred to HRH as set forth in and pursuant to the CSA, and HRH shall be granted all rights under the CSA, (ii) HRH shall be granted the right to operate and manage Christ Hospital and HUMC as set forth in and pursuant to the HFMA, and HRH shall be granted all rights under such agreement, and (iii) HRH shall be granted all rights under the MSA. |
| | On the Effective Date of the Plan, and as set forth in the Litigation Trust Agreement, HRH shall either: (a) transfer three million five hundred thousand dollars ($3,500,000); or (b) provide line of credit to fund the Litigation Trust (the "<u>Litigation Trust Seed Money</u>"), secured by a first lien to the extent of the Litigation Trust Seed Money on the proceeds of the Litigation Rights.  The Litigation Trustee shall have the sole and absolute discretion to determine whether to require the transfer of the Litigation Seed Trust Money at inception of the Litigation Trust or to allow a line of credit to access the Litigation Trust Seed Money.  The Litigation Trust Seed Money shall bear interest at the rate of eighteen percent (18%) per annum compounded annually. The foregoing shall constitute HRH's sole monetary obligation to the Litigation Trust. |
| | In the event that HRH fails to fund any portion of the Litigation Trust Seed Money within one (1) business day after demand therefor, the Committee, the Litigation Trustee and/or any of the Parties may immediately contact the mediator, who will be authorized to assist in resolving the dispute. If the Parties are unable to resolve the dispute in mediation, the Committee, the Litigation Trustee and/or any of the Parties may seek an emergency hearing with the Court, and none of the Parties may oppose, contest, or object to the hearing of such dispute on shortened notice; *provided* that all of the Parties' rights, remedies and defenses are otherwise preserved. |
| | HRH shall be entitled to designate any third party to satisfy any portion or all of its obligations under, or allow a third party to join or grant such party participation rights with respect to, its existing or future DIP financings, as long as none of the transactions contemplated hereby are adversely affected, impeded or impaired in any manner and no estate assets are used to pay the Allowed claims of HRH or any such third party. |
| **Litigation Rights** | The Plan shall provide that the Litigation Trust shall have the exclusive right and authority to investigate, commence, pursue and/or settle any Litigation Rights, with the net proceeds of such Litigation Rights to be distributed in accordance with the Plan and the Litigation Trust Agreement. |
| | "<u>Litigation Rights</u>" shall mean any and all claims and causes of action (known or unknown) that the Debtors or their estates have or may have through the Effective Date, including, without limitation: (i) the right |

| | |
|---|---|
| | to object to, challenge or otherwise contest any claims; (ii) all claims and causes of action arising under chapter 5 of the Bankruptcy Code or similar state law claims ("Avoidance Actions"); (iii) all tort claims and D&O Claims;[4] (iv) all claims and causes of action of any kind or nature arising under state or federal law against any of the Debtors' consultants, managers, advisors, auditors or other professionals (current or past) relating to services rendered before the Petition Date; (v) all claims, causes of action, and other rights (including rights to challenge any asserted lien) of any kind or nature against any creditor asserting a secured claim in these cases other than the liens and claims of HRH or its affiliates/subsidiaries; (vi) all legal and equitable defenses against any claim or cause of action asserted against the Debtors; (vii) all claims and causes of action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice; (viii) all claims and causes of action of any kind or nature arising under state or federal law based upon the formation and capitalization of the Debtors; (ix) all claims and causes of action of any kind or nature arising from the payment and/or repayment of claims by and/or to any current or former affiliate of any Debtor herein; (x) all claims and causes of action of any kind or nature against any current or former owners and/or managers of the Debtors and their respective affiliates and related persons; (xi) claims under any insurance policies applicable to the Debtors arising on or before the Petition Date (subject to the property and casualty exclusion described below); *provided, however*, that the foregoing shall not include any cross-claims, counterclaims or third-party claims involving alleged joint tortfeasors; (xii) all claims or causes of action of any kind or nature arising under any federal and/or state antitrust laws; and (xiii) all lawsuits or causes of action against Aetna, Cigna, their respective affiliates, or other insurers, including any pending or future litigation against such parties, or other claims of similar kind or nature, arising on or before November 3, 2023 (collectively, the "Insurance Litigation"). For the avoidance of doubt, the Litigation Rights shall not include any claims or causes of action released or exculpated under the Plan. Notwithstanding the foregoing, Litigation Rights exclude: (a) all claims and causes of action relating to assumed liabilities, critical vendors, accounts receivable, health care claims, and credit card receivables; (b) claims and causes of action arising from HRH's management or operations of the facilities; (c) claims under any property or casualty insurance policies of the Debtors; (d) ordinary course claims submitted to insurance companies, independent dispute |

---

[4] "D&O Claims" means any and all rights, causes of action and claims arising under state or federal law against the Debtors' current and former directors, trustees, managers and/or officers, including, but not limited to, claims for breach of fiduciary duty, and the proceeds of any such rights and claims, including from any insurance policies associated therewith; *provided, however*, that any claims or causes of action against the Current D&Os (defined below) shall be treated as set forth below.

9

12825244

| | |
|---|---|
| | resolution, litigation or arbitration proceedings against insurance companies or intermediaries, or "out of network transparency act" or "no surprises act" claims or causes actions (to the extent not inconsistent with clause (xiii) above); and (e) claims or causes of action personal to HRH or its subsidiaries, affiliates, including without limitation, 29 E. 29 Street Holdings, LLC and Bayonne Medical Center Opco, LLC. |
| | The net proceeds of Litigation Rights (excluding Avoidance Actions) shall first be paid to HRH until the Litigation Trust Seed Money is repaid to HRH, together with accrued interest as provided above. Thereafter, an amount equal to 100% of the net proceeds of Litigation Rights (excluding Avoidance Actions) will belong to the Litigation Trust, until sufficient funds are available to provide a 10% recovery to holders of Allowed General Unsecured Claims, *provided*, *however*, that such net proceeds shall not exceed $15 million. Thereafter, the next $5 million of net proceeds of Litigation Rights (excluding Avoidance Actions) shall be paid to HRH. Thereafter, all remaining net proceeds of Litigation Rights (excluding Avoidance Actions) shall be subject to a 65%-35% sharing arrangement between the Litigation Trust, on the one hand, and HRH, on the other hand, until such time as all Exit Facility obligations (including the Outstanding Judgment) are satisfied in full. Thereafter, all net proceeds of Litigation Rights (excluding Avoidance Actions) shall be paid to the Litigation Trust, until all Allowed General Unsecured Claims are paid in full. For the avoidance of doubt, "net proceeds" shall exclude any professional fees/costs incurred and paid by the Litigation Trust in connection with the prosecution of any Litigation Rights, but shall include such professional fees/costs as may be awarded as part of the applicable judgment to be paid by a defendant or other third party. Notwithstanding anything herein to the contrary and to avoid doubt, all proceeds of Avoidance Actions shall belong to the Litigation Trust to be distributed to holders of Allowed General Unsecured Claims; *provided*, *however*, that if and when holders of Allowed General Unsecured Claims obtain a total forty percent (40%) recovery on account of Allowed General Unsecured Claims, then thereafter, all remaining net proceeds of Litigation Rights (specifically including Avoidance Actions proceeds) shall be subject to a 65%-35% sharing arrangement between the holders of Allowed General Unsecured Claims on the one hand and HRH on the other hand. |
| | The Debtors and HRH shall reasonably cooperate with the Litigation Trustee in the pursuit of the Litigation Rights. |
| **Interim Management/Board Issues** | Within three (3) business days after the Parties' execution of this Plan Term Sheet, and as a condition to HRH's agreements/obligations and the Committee's and Debtors' rights hereunder, the Parties shall submit a stipulation, attached as Exhibit A, for the Court's approval. It |

|  | being understood and agreed that such interim approval shall be retroactive to the Petition Date. |
|---|---|
|  | With regard to HRH's board seats, the Committee and HRH will defer to the recommendation of the Debtors' Reorganization Committee on whether such individuals may remain as board members. The Committee hereby agrees that the Committee's objections regarding the "board seat" issue are resolved through the transactions contemplated hereby. |
| **Executory Contracts and Unexpired Leases** | All executory contracts and unexpired leases shall be rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date, unless otherwise determined to be assumed by the Debtors and identified as such in the Plan, the Plan supplement or other motion to assume. |
|  | Rejection of executory contracts shall not impact the continued existence of the Reorganization Committee after the Effective Date for purposes of evaluating claims against Current D&Os (defined below). |
| **Labor** | Confirmation of the Plan shall be subject to assumption, renegotiation and/or rejection of applicable labor agreements.  To the extent that any labor agreement is sought to be rejected, the Debtors and HRH (to the extent applicable) shall comply with section 1113 of the Bankruptcy Code. |
| **Substantive Consolidation** | The Plan will provide for substantive consolidation for voting and distribution purposes only. |
| **Conditions Precedent to Confirmation** | The occurrence of confirmation of the Plan ("Confirmation") shall be subject to the following conditions precedent:<br><br>• the Disclosure Statement, Plan, Plan supplement documents, Confirmation Order, and any other related documents (collectively, the "Definitive Documents") shall be in form and substance reasonably acceptable to the Plan proponents and HRH. Any dispute regarding the Definitive Documents shall be determined by the mediator, the Honorable Michael Kaplan (United States Bankruptcy Court, District of New Jersey);<br><br>• the professional fee escrow account shall be funded in the amount of estimated accrued but unpaid professional fees incurred during the Chapter 11 Cases;<br><br>• HRH (or its designee) will have provided a commitment for the funds necessary to confirm and consummate the Plan as set forth above; and<br><br>• the Confirmation Order shall have been entered by the Court. |

11

12825244

| | |
|---|---|
| **Conditions Precedent to the Effective Date** | The occurrence of the Effective Date shall be subject to the following conditions precedent:<br><br>• the orders approving the Disclosure Statement, the Plan and the Confirmation Order shall have become final orders;<br><br>• the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless the Plan proponents and HRH have provided written consent to such material amendment, alteration, or modification;<br><br>• all authorizations, consents, regulatory approvals, rulings, or documents necessary to implement and effectuate the Plan shall have been obtained;<br><br>• all Definitive Documents shall, where applicable, have been executed and remain in full force and effect;<br><br>• The Litigation Trust Seed Money shall have been provided to the Litigation Trustee or the Litigation Trustee shall have otherwise agreed to the funding of the Litigation Trust Seed Money from HRH; and<br><br>• the Litigation Trust Agreement shall have been executed and the Litigation Trustee and the Litigation Trust Oversight Committee shall have been appointed. |
| **Exculpations & Injunctions** | The Plan shall include customary exculpation and injunction provisions for post-petition conduct to the fullest extent permitted by Third Circuit law. The Plan shall include (i) customary exculpation provisions for the benefit of the the Reorganization Committee and Debtors' current trustees, officers and directors solely with respect to their post-petition conduct; (ii) releases of HRH (including its affiliates, subsidiaries, and designees, including without limitation, 29 E 29 Street Holding, LLC, Bayonne Medical Center Opco, LLC and their respective former, present and future owners, officers, directors, managers, employees, independent contractors, attorneys, agents and representatives), the Committee, its professionals and its members (only in their capacity as such), and each of their related parties; and (iii) releases of the Reorganization Committee and the Debtors' professionals whose retention was approved by the Court (collectively, the "Released Parties") to the fullest extent permitted by Third Circuit law.<br><br>D&O Claims against the Debtors' current officers and/or directors and/or trustees serving on the Effective Date (the "Current D&Os") shall be evaluated by the Debtors' independent Reorganization Committee based upon information provided by all interested parties including the Committee, the Litigation Trustee, and management. |

| | |
|---|---|
| | Upon their receipt of all relevant information, the Reorganization Committee shall give all such parties an opportunity to be heard to discuss whether viable claims exist and should be pursued against the Current D&Os. Promptly thereafter, the Reorganization Committee shall provide to all parties a written determination, consistent with the Debtors' fiduciary duties to their creditors, whether any such claims exist and should be pursued, identifying the factual and legal predicates for the Reorganization Committee's decision, which shall be final. All statutory and common law immunities, including those arising under New Jersey statutes, shall remain in full force and effect. To the extent any claims against the Current D&Os are pursued, such claims and proceeds thereof shall constitute Litigation Rights. The Reorganization Committee shall not have any liability for its evaluation and decision regarding such claims. The Reorganization Committee shall continue to exist after the Effective Date for the purpose of undertaking this evaluation and decision. |
| **Other Customary Plan Provisions** | The Plan shall provide for other standard and customary provisions, including provisions in respect of the cancellation of existing claims and interests; the vesting of assets; retention of jurisdiction; the compromise and settlement of claims; distribution mechanisms; and the resolution of disputed claims. |

12825244

# **EXHIBIT A**

## **Stipulation**

12825244