## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

CarePoint Health Systems Inc. d/b/a Just Health
Foundation, et al., 1

      Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - x

Chapter 11
Case No. 24-12534 (JKS)

(Jointly Administered)

**Objection Deadline: December 31, 2024 at 4:00 p.m. (EST)**
**Hearing: January 7, 2025 at 9:30 a.m. (EST)**

**Re: D.I. 320**

## DEBTORS' OBJECTION TO ACCESS INFORMATION MANAGEMENT CORPORATION'S MOTION (I) TO COMPEL (A) DEBTORS' ASSUMPTION OF EXECUTORY CONTRACTS, OR ALTERNATIVELY (B) DEBTORS TO PROVIDE DIRECTION AS REQUIRED BY THE CONTRACTS AND APPLICABLE LAW WITH RESPECT TO THE CONTINUED STORAGE, TRANSFER, DESTRUCTION OR OTHER DISPOSITION OF THE HEALTH CARE RELATED DOCUMENTS AND INFORMATION SUBJECT TO THE CONTRACTS, (II) FOR RELIEF FROM THE AUTOMATIC STAY, AND (III) FOR SUCH OTHER RELIEF AS NECESSARY UNDER THE CIRCUMSTANCES

The above-captioned debtors (the "Debtors") in these chapter 11 cases (the "Chapter 11

Cases"), by and through their counsel, Dilworth Paxson LLP, hereby submit this objection (the

"Objection") to the *Motion of Access Information Management Corporation (I) To Compel (A)*

*Debtors' Assumption of Executory Contracts, or Alternatively (B) Debtors to Provide Direction*

*as Required by the Contracts and Applicable Law with Respect to the Continued Storage, Transfer,*

---

1 The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center.  The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

*Destruction or Other Disposition of the Health Care Related Documents and Information Subject to the Contracts, (II) For Relief from the Automatic Stay, and (III) For Such Other Relief as Necessary under the Circumstances* (the "Motion").  In support of this Objection, the Debtors respectfully state as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      In the Motion, Access Information Management Corporation ("Access") asks the Court to fix a deadline for the Debtors to assume or reject the Document Storage Contracts and the Document Archive Contract (the "Access Contracts") and grant Access relief from the automatic stay to take action with respect to the information stored pursuant to the Document Storage Contracts upon Debtors' direction.

2.      Access also asserts that it is entitled to an administrative expense claim for post-petition services rendered pursuant to the Access Contracts.  The Debtors do not object to payment of an administrative expense claim on a current basis.

3.      The Debtors object to Access' attempt to force the Debtors to immediately reject or assume the Access Contracts because these Chapter 11 Cases are still in the early stages.

4.      The Debtors are in the process of evaluating each and every executory contract, including the Access Contracts, to determine whether assumption or rejection of such executory contract is in the best interests of the Estates.

5.      Forcing the Debtors to determine whether to accept or reject the Access Contracts immediately, less than two months after the Petition Date, is not justified.

6.      Accordingly, for the reasons that follow, the Debtors file the Objection.

#124743475v2

## JURISDICTION AND VENUE

7.      The Court has jurisdiction to consider the Motion and Objection pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013–1(f), Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

9.      On November 3, 2024 (the "Petition Date") all Debtors except IJKG Opco, LLC ("IJKG Opco") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

10.      On the Petition Date, three creditors of IJKG Opco, 29 E 29 Street Holdings, LLC, Bayonne Medical Center Opco, LLC, and Peter Wong, MD, filed an involuntary petition against IJKG Opco under Chapter 11 of the Bankruptcy Code.  On the Petition Date, IJKG Opco filed an answer consenting to the relief requested in the involuntary petition.

11.      On November 6, 2024, the Court entered an order authorizing the joint administration of the Chapter 11 Cases of each Debtor.  [D.I. 80].

12.      On November 6, 2024, the Court entered an Order for Relief with respect to IJKG Opco, LLC. [IJKG Opco, LLC D.I. 9].

13.      The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and

3

1108 of the Bankruptcy Code, subject to that certain Collateral Surrender and Operations Transfer Agreement.

14.     A description of the Debtors' recent history and reasons for commencing the Chapter 11 Cases is set forth in the First Day Declaration.  [D.I. 23].

## The Motion

15.     On December 17, 2024, Access filed the Motion.  [D.I. 320].

16.     Access asserts that certain of the Debtors and Access are parties to over thirty contracts originally contracted between certain of the Debtors and (a) Allstate Business Archives, LLC and (b) Triyam, Inc .  [D.I. 320, ¶¶ 1-5].

17.     Pursuant to the Access Contracts, Access stores documents and information related to Debtors' health care operations.  [D.I. 320, ¶ 1].

## RELIEF REQUESTED

18.     By this Objection, and in order to preserve and maximize the value of their estates, the Debtors request that the Court deny the Motion in that it seeks to accelerate the deadline to assume or reject executory contracts and terminate the automatic stay.

## BASIS FOR RELIEF

### I.     Accelerating the Time Period to Assume or Reject Executory Contracts is Not Justified.

19.     Section 365(d)(2) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession may assume or reject an executory contract at any time before the confirmation of a plan, while permitting the Court, on request from a party to an executory contract, to set a deadline before the confirmation of a plan.  11 U.S.C. § 365(d)(2).

20.     It is vitally important to all interested parties that a debtor make a prudent decision in assuming or rejecting a contract.  *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D.

4

Del. 2001) (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 385, 388 (Bankr. W.D. Pa.

1985). Accordingly, "[p]ermitting the debtor to make its decision as late as the plan confirmation

date enables the debtor to carefully evaluate the possible benefits and burdens of an executory

contract." *Id.* (internal citation omitted).

21.     Upon a request to shorten the deadline to assume or reject an executory contract,

bankruptcy courts routinely hold that a debtor must be afforded a reasonable time to determine

whether assumption or rejection of the executory contract would be beneficial to a successful

reorganization. *See, e.g.*, *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 104 (2d Cir. 1982).

22.     In determining whether the deadline to assume or reject an executory contract

should be shortened, Third Circuit courts consider a number of factors, including: the nature of

the interests at stake; the balance of the hurt to the parties; the good to be achieved; the safeguards

afforded to the parties; and, above all, the successful rehabilitation of the debtors. *In re Monroe

Well Service, Inc.*, 83 B.R. 317, 323 (Bankr. E.D. Pa. 1988) (quoting *Matter of Dunes Casino

Hotel*, 63 B.R. 939, 949 (D.N.J. 1986)).

23.     Courts typically provide debtors with more than two months to determine whether

to assume or reject a contract, especially when the debtors are in financial distress. Here, Access

asks this Court to require the Debtors to assume or reject the Access Contracts approximately

two months after the Petition Date, without providing sufficient justification for such extreme

relief. *See In re Physician Health Corp.*, 262 B.R. at 295 (emphasizing that debtors'

reorganization case was only five months old when denying creditor's motion to accelerate

deadline).

24.     Further, Access fails to address the potential harm to the Debtors, who are

currently evaluating all executory contracts, by accelerating the deadline. *See In re St. Mary*

5

*Hosp.*, 89 B.R. 503, 513-14 (Bankr. E.D. Pa. 1988) (holding that fixing a deadline to assume or reject an executory contract was not warranted because debtor is in "a period of cashflow crisis" and needed time to determine efficacy of executory contracts).

25.     The Debtors will work with Access to address all post-petition obligations and pay the post-petition amounts due.  Accordingly, the potential harm to Access in maintaining the status quo and denying the Motion is low.  *See In re Republic Techs. Int'l, LLC*, 267 B.R. 548, 554 (Bankr. N.D. Ohio 2001) (denying a creditor's motion to accelerate the deadline because the creditor's potential harm "in waiting for an assumption or rejection decision is no greater than [that of] any other creditor").

26.     When weighing all factors, including and above all, the successful rehabilitation of the Debtors, the relief sought in the Motion is unwarranted.  The Debtors should be permitted as much time as possible to evaluate the possible benefits and burdens of all executory contracts, including the Access Contracts.

27.     Accordingly, the Debtors respectfully submit that Access has not met its burden in demonstrating that the deadline to assume or reject the Access Contracts should be accelerated.

**II.     Access is Not Entitled to Relief from Stay to Terminate the Contract.**

28.     "The automatic stay is one of the most fundamental protections provided to the debtor under the Bankruptcy Code."  *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).  One main purpose of the automatic stay is to avoid interference with the orderly rehabilitation of the debtor.  *Id.* (citing *St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)).

29.     Section 362(d)(1) provides that relief from the automatic stay may be granted upon the showing of cause.  11 U.S.C. 362(d)(1).

#124743475v2

30.     Except for lack of adequate protection, cause is not defined by section 362(d)(1). *In re Trump Entmt. Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015). "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *Id.* (quoting *In re The SCO Grp., Inc.*, 359 B.R. 852, 856 (Bankr. D. Del. 2007)).

31.     Courts consider the importance of the contract to a debtor's successful reorganization when determining whether cause exists to lift the automatic stay to allow for termination of a contract. *See In re Elder-Beerman Stores Corp.*, 195 B.R. 1012, 1018 (Bankr. S.D. Ohio 1996) (noting that "continuation of the contract is necessary to the reorganization of [debtor]" in denying creditor's motion for stay relief to terminate a contract).

32.     Access seeks a termination of the automatic stay so that it can take control of the Debtors' stored information upon direction from the Debtors.

33.     This relief is unwarranted at this time because the Debtors do not need to make a decision regarding the storage of the stored information until the Access Contracts are assumed or rejected.

34.     Accordingly, the Debtors respectfully submit that Access has not met its burden in demonstrating that it is entitled to relief from stay.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order denying the Motion as to Access' request to accelerate the deadline to assume or reject the Access Contracts and terminate the automatic stay.

7

#124743475v2

Dated: December 31, 2024

**DILWORTH PAXSON LLP**

/s/ Peter C. Hughes
_____
Peter C. Hughes (DE 4180)
800 N. King Street, Suite 202
Wilmington, DE 19801
Telephone:     302-571-9800
Facsimile:     302-571-8875
Email:           phughes@dilworthlaw.com

and

/s/ Peter C. Hughes
_____
Lawrence G. McMichael (Admitted *pro hac vice*)
Peter C. Hughes (DE 4180)
Anne M. Aaronson (Admitted *pro hac* vice)
Jack Small (Admitted *pro hac vice*)
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:     (215) 575-7000
Facsimile:     (215) 754-4603
Email:           lmcmichael@dilworthlaw.com
Email:           phughes@dilworthlaw.com
Email:           aaaronson@dilworthlaw.com
Email:           jsmall@dilworthlaw.com

*Counsel for the Debtors*

#124743475v2