**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------X

|  |  |
|---|---|
| In re: | :  Chapter 11 |
|  | : |
|  | :  Case No. 24-12534 (JKS) |
| CarePoint Health Systems Inc. d/b/a Just Health | : |
| Foundation, et al., | :  (Jointly Administered) |
|  | :  **Related to Docket No. 417** |
| Debtors. | :  **Obj. Deadline:  1/15/25 by 10:00 a.m.** |
|  | :  **Hearing Date:  1/17/25 at 10:00 a.m.** |

---------------------------------------------------------------X

**BMC HOSPITAL, LLC'S OBJECTION TO
MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ENTRY OF AN ORDER (I) APPROVING THE DISCLOSURE
STATEMENT ON AN INTERIM BASIS; (II) SCHEDULING A COMBINED HEARING
ON FINAL APPROVAL OF THE DISCLOCURE STATEMENT, PLAN
CONFIRMATION AND DEADLINES RELATED THERETO; (III) APPROVING THE
SOLICITATION, NOTICE AND TABULATION PROCEDURES AND FORMS
RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

BMC Hospital, LLC ("***BMC Hospital***"), by its undersigned counsel, submits this objection

(the "***Objection***") to the relief sought by the above-captioned debtors and debtors-in-possession

(the "***Debtors***") and the Official Committee of Unsecured Creditors (the "***Committee***"; together

with the Debtors, collectively hereinafter referred to as the "***Plan Proponents***") in the *Motion of*

*the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order (I)*

*Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on*

*Final Approval of the Disclosure Statement, Plan, Confirmation and Deadlines Related*

*Thereto;(III) Approving the Solicitation, Notice and Tabulation Procedures and Forms Related*

*hereto; and (IV) Granting Related Relief* [D.I. 417] (the "***Motion***") [1] and respectfully states as follows:

## PRELIMINARY STATEMENT

From the outset of these cases, the Debtors and Hudson Regional Hospital (together with its affiliates, "***HRH***") have attempted to short-circuit notice requirements and other chapter 11 conventions in an effort to achieve results that benefit HRH and the Debtors' leadership at the expense of the Debtors' creditors and other stakeholders.  The Motion is their latest attempt to shorten already expedited timelines, preclude a realistic process for submission and consideration of competitive alternative bids, and deprive creditors of adequate information necessary to make an informed decision regarding the proposed *Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* filed on January 8, 2025 [D.I. 412] (the "***Combined Disclosure Statement and Plan***" or the "***Plan***", and the disclosures contained therein, the "***Disclosure Statement***").

The Court should deny the Motion because, among other things, these cases and the Plan do not warrant consideration of a combined disclosure statement and plan under Local Rule 3017-2.  The Combined Disclosure Statement and Plan lack important disclosures and adequate information and therefore solicitation should not be approved under section 1125 of the Bankruptcy Code.  As detailed below, the Alternative Transaction Procedures are half-baked and will not result in a value-maximizing transaction(s).  Furthermore, conflicts of interest taint the Plan and the procedures, which are calculated to benefit the Debtors' CEO, Achintya Moulick, MD ("***Dr. Moulick***"), and HRH.

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Motion.

FIRM:66713541v7

BMC Hospital is interested in participating in a competitive, fair sale process. But that requires changing the proposed procedures to provide a level playing field designed to achieve an unbiased, conflict-free and transparent process that will maximize the value of the Debtors' assets.

## FACTUAL BACKGROUND

1.      BMC Hospital is a special purpose entity formed for the express purpose of purchasing the assets of IJKG Opco LLC ("***IJKG Opco***"), the entity that owns and operates Bayonne Medical Center. BMC Hospital has been engaged in efforts to purchase Bayonne Medical Center assets for years. BMC Hospital owns 9.9% of the membership interests in IJKG Opco.

2.      In furtherance of BMC Hospital's transactions with IJKG Opco, IJKG Opco expressly agreed that neither IJKG Opco nor any CarePoint affiliates could undertake certain actions without first obtaining BMC Hospital's consent, including the sale of all or substantially all the assets of IJKG Opco to HRH or an affiliate thereof, or the consolidation, merger or taking of any similar action as to IJKG Opco or any of its subsidiaries with HRH. In addition, IJKG Opco's Operating Agreement (as amended by the First Amendment), was amended to grant BMC Hospital a right of first refusal with respect to any sale of IJKG Opco's assets. The proposed Plan ignores these governing agreements.

3.      Since at least January 2024, if not longer, the Debtors and HRH have colluded to implement a scheme in violation of the Debtors' agreements with BMC Hospital, including IJKG Opco's involuntary bankruptcy proceeding, to benefit the Debtors' leadership and HRH at the expense of BMC Hospital, the Debtors' creditors, and the public.

4.      Among other issues, the Combined Disclosure Statement and Plan gives effect to the transactions contemplated by the Collateral Surrender Agreement. The Collateral Surrender Agreement memorializes a scheme apparent from documents and communications which demonstrate that HRH, the Bayonne Debtors, and 29 E 29 Street Holdings orchestrated the entry

of a default judgment (the "***Default Judgment***") in favor of 29 E 29 Street Holding in that certain civil litigation captioned *29 E. 29 Street Holdings, LLC; NJMHMC LLC d/b/a Hudson Regional Hospital, and NJBMCH, Inc. v. IJKG Opco, LLC and IJKG, LLC*, Case No. 2020-0480-KSJM (the "***Delaware Action***"), and entry into the Stipulation and Order Entering Judgment (the "***Consent Order***") to resolve the Delaware Action. Declaration of James P. Flynn ("***Flynn Decl.***"), which is being filed concurrently herewith, Ex. A (Consent Order).  All done specifically to accomplish the surrender to HRH of, among other assets, IJKG Opco's assets and the transfer of ownership of Bayonne Medical Center to HRH in direct contravention of the negotiated constraints in IJKG Opco's Operating Agreement and its agreements with BMC Hospital.

5.    The following, undeniably, all occurred within ninety (90) days of the Petition Date.

a. On September 23, 2024, the Court of Chancery for the State of Delaware entered the Default Judgment in favor of 29 E 29 Street Holdings, LLC, and affiliate of HRH (the "***Bayonne Landlord***") with respect to litigation with the Bayonne Debtors in the Delaware Action. Flynn Decl., Ex. B (Default Judgment).

b. On October 9, 2024, the Bayonne Landlord and the Bayonne Debtors entered into the Consent Order related to the Delaware Action. As part of the Consent Order, and in anticipation of these bankruptcy proceedings, the Bayonne Debtors provided for the termination of the real property lease for the Bayonne Medical Center premises (the "***Bayonne Lease***") and consented to a judgment in favor of the Bayonne Landlord in the amount of $24,000,000 to $32,000,000.

c. On October 18, 2024, the Court of Chancery for the State of Delaware entered the Consent Order purportedly terminating the Bayonne Lease and transferring all of the assets, including the license to operate to HRH, subject to regulatory approvals, and fixing the damages in a range with a much higher ceiling than the $24.2 million dollars HRH initially sought.

6.      The Bayonne Debtors and HRH agreed to the Consent Order, even though discovery in the Delaware Action demonstrated that HRH's alleged "damages" were wildly inflated and unsupported. HRH's inflated damages calculation included millions of dollars in attorneys' fees for a different litigation matter in which HRH had not prevailed, fees for public relations firms and fees for consultants hired to assist with transferring IJKG Opco's Certificate of Need. Flynn Decl., Ex. C (Grywalski Dep pp. 80-101) and D (Kifaieh Dep pp 64-76).

7.      If that were not sufficiently egregious, HRH's inflated damages included allocations of 20% of the salaries of its CEO and CFO and 100% of the salary of its Chief Transition officer and even more fees charged by the limited liability companies owned and operated by HRH's CEO and CFO. *Id*.

8.      HRH's own Chief Financial Officer admitted that many of the amounts that HRH was seeking as damages in the Consent Order were speculative and/or unsupported. Flynn Decl., Ex. C (Grywalski Dep pp. 98-101).

9.      After the bankruptcy was commenced, Debtors' counsel represented to the Court that IJKG Opco had not paid rent under the Bayonne Lease for approximately eight (8) months. Yet, through September 2024, IJKG Opco had satisfied the rent by drawing down on a letter of credit. Flynn Decl., Ex. F (Kifaieh Dep pp. 17-18); Ex. E (discovery document CP42269).

## OBJECTIONS

**I.      THE COURT SHOULD DENY THE REQUEST TO APPROVE THE DISCLOSURE STATEMENT ON AN INTERIM BASIS AND SCHEDULE A COMBINED HEARING ON FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND PLAN CONFIRMATION BECAUSE THE REQUEST, WITHOUT GOOD CAUSE, ABANDONS COMPLIANCE WITH APPLICABLE RULES AND NOTICE REQUIREMENTS**

10.      In the Motion, the Plan Proponents are requesting that the Court approve the Disclosure Statement on an interim basis at the hearing to be held in these cases on January 17,

FIRM:66713541v7

2025, which is only seven (7) business days after the Plan Proponents filed the Motion and the Combined Disclosure Statement and Plan.  In addition, the Plan Proponents are requesting that the Court schedule a combined hearing to approve the Disclosure Statement on a final basis and to consider confirmation of the Plan (the "***Combined Hearing***").  The Plan Proponents seek to schedule the Combined Hearing for February 19, 2025, which is a mere forty-two (42) days after the filing of the Motion and the Combined Disclosure Statement and Plan.  The Plan Proponents state in the Motion that all their shortened notice requests are necessary to effectuate the settlement that the Plan Proponents reached with HRH at the mediation that occurred between those parties.[2] *See* Motion ¶ 9, at 4.

11.    However, the Plan Proponents should not be permitted to avoid all of the procedural requirements set forth in the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***") simply because doing so benefits them and HRH, and because they need the requested shortened notice in order to implement their settlement with HRH.  BMC Hospital submits that the applicable rules and procedures that are set forth in both the Bankruptcy Rules and the Local Rules were each developed for many good reasons, and in these cases in particular, they should be upheld and followed by all parties.  Doing so should help not only maximize value for the Debtors' creditors, but also help the Debtors' creditors become informed as to what they are voting on and the consequences of their votes.

12.    Rule 3017 of the Bankruptcy Rules provides that a hearing on a disclosure statement cannot be held without first providing creditors at least twenty-eight (28) days' notice

---

[2] BMC Hospital signed on to be a mediation party and did participate in one day of mediation before being excluded from the mediation and the negotiation of the Term Sheet that became the basis for the Plan.  Despite BMC Hospital's requests, information regarding the negotiations and the terms of the Term Sheet were not shared until the Term Sheet was finalized and filed.

of such hearing.  Local Rule 3017-1(a) further provides that a hearing on a disclosure statement shall be held at least thirty-five (35) days following service of the disclosure statement, with an objection deadline at least twenty-eight (28) days following service of the disclosure statement. After a disclosure statement has been approved and mailed to creditors, Bankruptcy Rules 3017 and 2002(b) provide that creditors must be provided with 28 days' notice before objections are due to confirmation of the plan.

13.     Local Rule 3017-2 does contain certain modifications to the foregoing Bankruptcy Rules for certain types of cases.  However, BMC Hospital submits that the Plan Proponents should not be able to take advantage of any of the modifications set forth in Local Rule 3017-2 because Local Rule 3017-2 on its face does not apply to these cases, the Disclosure Statement, or the Plan.

14.     More specifically, Local Rule 3017-2 provides that parties may seek to have a shortened notice, combined hearing on a disclosure statement and plan in certain circumstances, examples of which are set forth in Local Rule 3017-2(a).[3]  For example, the combined hearing procedures set forth in Local Rule 3017-2 can be used by parties when (i) the plan proposes to treat as unimpaired all unsecured claims and all interest holders, (ii) the debtor has less than 50 unsecured creditors, there are no non-consensual releases/injunctions being granted to non-debtor third parties, and certain other conditions exist, (iii) the proposed plan is a liquidating plan, general unsecured creditors are deemed to reject the plan, and certain other conditions exist, or (iv) the proposed plan is a liquidating plan, there are no non-consensual releases/injunctions being granted to non-debtor third parties, and the debtor's combined assets are worth less than $25 million.

---

[3] Local Rule 3017-2(a) states that the list of examples set forth therein is non-exclusive.  However, as set forth in more detail below, BMC Hospital submits that the Combined Disclosure Statement and Plan not only do not fit within any of the examples provided in Local Rule 3017-2(a), but also should not qualify under any non-listed examples of a case that should be entitled to the shortened notice, combined procedures addressed by Local Rule 3017-2.

FIRM:66713541v7

15.     None of the foregoing examples are applicable to these cases.  Here, the Plan involves impaired classes of Claims and Interests, releases of non-debtor parties, assets worth more than $25 million, general unsecured creditors entitled to vote on the Plan, and other factors that make an abbreviated process with less notice inequitable.  In addition, as discussed below, the deficiencies in the Combined Disclosure Statement and Plan evidence the need for time periods consistent with Bankruptcy Rules 3017 and 2002(b). Finally, from a fairness perspective these cases and the Combined Disclosure Statement and Plan should not be entitled to the shortened noticed and combined hearing procedures that are approved by Local Rule 3017-2(a).

## II.     THE REQUESTED SOLITICATION, NOTICE AND TABULATION PROCEDURES ARE INADEQUATE

16.     If this Court decides that the Plan Proponents are entitled to take advantage of the shortened notice and combined hearing procedures that are set forth in Local Rule 3017-2, BMC Hospital submits that the relief requested in the Motion should still be denied.  The Plan Proponents are simply trying to move too fast, the result of which will be detrimental to creditors, including BMC Hospital.

17.     Among other things, the Plan Proponents have already failed to meet the requirements set forth in Local Rule 3017-2(b), should the Court find that they are entitled to proceed under Local Rule 3017-2(a).  Local Rule 3017-2(b) provides that when a party makes a request to take advantage of Local Rule 3017-2, it must file a motion that provides fourteen (14) days' notice of an objection deadline to such a motion, and if an objection is filed,[4] notice of a hearing must occur not less than seven (7) days after the objection deadline.  Local Rule 3017-2(b)(i).  In this case, creditors such as BMC Hospital have already been severely hampered by the

---

[4] The plain meaning of the wording used in this rule leads to the inescapable conclusion that objections would not likely be filed in cases proceeding under this rule.

FIRM:66713541v7

Plan Proponents' proposed process, given that creditors were given only seven (7) business days' notice of the hearing on the Motion, and not even five (5) business days' notice of the time within which to object to the Motion.

18.    Moreover, if the relief requested in the Motion is granted, the Plan Proponents will likely seek to send out solicitation packages to creditors shortly after January 17, 2025 pursuant to the proposed Solicitation Procedures.  The solicitation of votes for the Plan will be an expensive process, all of which will be borne by the Debtors' estates.  However, for all of the reasons set forth below, there are deficiencies and defects with the Combined Disclosure Statement and Plan that make the Plan patently unconfirmable.  Accordingly, for all of the foregoing reasons, at this time, solicitation of the Plan in any form and pursuant to the Plan Proponents' proposed timetable will be a waste of time and effort.  In addition, the expense associated with solicitation of the Plan in its current form simply should not be incurred by the Debtors' estates at this time.

## III.    THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION

19.    The Combined Disclosure Statement and Plan does not contain adequate information that would enable holders of claims to make an informed judgment about the Plan as required under 11 U.S.C. § 1125(a)(1).  As an overriding matter, there is not enough information to determine whether value has been maximized and whether the Plan is in the best interests of creditors.

20.    There is inadequate disclosure regarding the value of the proposed transactions with HRH.  Specifically:

    a.    With respect to Bayonne Medical Center, the Collateral Surrender Agreement contemplated a third party appraisal to determine the fair market value

("**FMV**") purchase price for the Bayonne Medical Center assets.[5]    Under the Plan, however, the FMV determination has been eliminated and the purchase consideration is HRH's credit bid of $32,741,612 without any disclosure regarding the value of the assets being sold to HRH or any representation that the credit bid meets or exceeds FMV.

      b.      With respect to HUMC and Christ Hospital, there is no disclosure regarding the value of the Hospital Facilities MSA.[6]  Nor is there any mention of the HUMC Option or the Christ Option (each as defined in the Hospital Facilities MSA, and together, the "**HRH Purchase Options**") pursuant to which HRH would have the exclusive and irrevocable right and option for approximately the next twelve (12) years to purchase all of the assets of the Debtors pertaining to the operations or business of HUMC and Christ Hospital, , as soon as the effective date of the Plan for an appraised purchase price determined by an appraiser selected by HRH – none of which would benefit the Debtors' creditors because those transactions would occur post-effective date with the reorganized debtors.  Instead, the Combined Disclosure Statement and Plan simply states in Article IX.B that "HRH shall be granted all rights under the MSA." These material omissions deprive creditors of relevant information regarding the agreement to sell HUMC and/or Christ Hospital to HRH immediately following the "reorganization" of those entities under the Plan.

      21.    The Combined Disclosure Statement and Plan does not disclose the existence of Avoidance Actions against HRH, including the Default Judgment and the Consent Order resulting in the Outstanding Judgment entered in the Delaware Action during the ninety (90) day period

---

[5] The Collateral Surrender Agreement is objectionable for various reasons but at least the FMV would have been established.
[6] The Solicitation Package does not include the Hospital Facilities MSA.

prior to the Petition Date.  The lack of disclosure of the preference cause of action under section 547 of the Bankruptcy Code is compounded by the Plan's allowance of HRH's Secured Claim on account of the Outstanding Judgment and proposed payment in full of the Outstanding Judgment in the event of an Alternative Transaction, as well as the release by the Debtors and their Estates of Claims and Causes of Action against HRH.

22.     The Combined Disclosure Statement and Plan does not disclose creditors' projected recoveries.  This is undoubtedly the most relevant and important information for creditors considering their vote on the Plan.  Instead, the Plan Proponents intend to file a Plan Supplement containing this information seven (7) days before the Voting Deadline. By excluding the information in the Solicitation Package, creditors will not have adequate information to make an informed judgment about the Plan and may not have adequate time to receive the Plan Supplement and seek out counsel to assist them, if necessary, before the Voting Deadline.

23.     Similarly, the Combined Disclosure Statement and Plan does not contain adequate information regarding the justification for substantive consolidation and the impact on creditors of the respective Debtors.

24.     The Combined Disclosure Statement and Plan provides no disclosure regarding the terms of the HRH Exit Facility or the Capitala Exit Facility.  Instead, the Plan Proponents intend to file the Plan Supplement containing these documents seven (7) days before the Voting Deadline, again depriving creditors of relevant information.

## IV.     THE ALTERNATIVE TRANSACTION PROCEDURES ARE INCOMPLETE AND WILL CHILL BIDDING

25.     The Plan allows for the submission of bids for an Alternative Transaction within 21 days after interim approval of the Disclosure Statement, after which the Reorganization Committee will have seven (7) days to make a recommendation to the Debtors.  That's 28 days to

the date on which the Reorganization Committee makes a recommendation to the Debtors, yet the Motion proposes that objections to confirmation be filed within 23 days, ballots be submitted within 26 days, and a confirmation hearing be held within 35 days.  There is simply not enough time for a competitive process to be implemented within the same expedited timeline for voting and confirmation.  As a result, there will not be a full and fair opportunity for interested parties to submit bids for an Alternative Transaction.

26.     The procedures relating to a potential Alternative Transaction are incomplete and therefore do not provide predictability and a level playing field, such as:

    a.  What is the next step after the Reorganization Committee makes a recommendation to the Debtors, and when will that occur?  Given conflicts of interest with certain members of the Debtors' Board of Trustees (the "***Board***"), how will decisions on behalf of the Debtors be handled?

    b.  How and when may parties in interest seek to limit HRH's credit bid rights for cause under section 363(k) of the Bankruptcy Code?

    c.  HRH retains the right to seek to augment its credit bid; how will HRH's augmented credit bid be determined, and when?

    d.  Will there be an auction? If so, when and what procedures will govern the auction?

    e.  Will the Hospital Facilities MSA be subject to assumption and assignment in an Alternative Transaction?

    f.  If an Alternative Transaction is pursued, will the Debtors' release of HRH and its affiliates be eliminated from the Plan?

g.  If an Alternative Transaction is pursued, will the Debtors bring (or authorize another party to bring) an Avoidance Action against HRH to avoid the Outstanding Judgment and purported termination of the Bayonne Lease?

27.     There are other provisions in the Plan that will chill bidding.  For example, among the factors the Reorganization Committee will consider in determining whether a bidder is qualified is the ability of a bidder to own/operate Bayonne Medical Center, HUMC and Christ Hospital as part of the same system.  *See* Plan at Article IX.E.  Whether a competing bidder would be able to **own and operate** all three hospitals is more than HRH has committed to do.  Under the Plan, ownership of HUMC and Christ Hospital will not change.[7]  HRH will provide management and administrative services to HUMC and Christ Hospital, with no obligation to own them.

28.     Another example is the requirement that a competing bidder be able to secure all contractual approvals to which the Debtors/their successors are subject.  *See* Plan at Article IX.E. There is no disclosure regarding these contractual approvals, whether HRH has or will satisfy this requirement, and no limitation for contracts a bidder may not wish to have assumed and assigned to it.  In short, the burden on a competing bidder is greater than HRH's commitments with no objectively reasonable justification for such requirements.

29.     Packaging the three hospitals together for purposes of an Alternative Transaction is clearly intended to discourage competing bids for the hospitals individually.  Individual bids may, in fact, yield higher or better outcomes for creditors than collective bids.  Prospective bidders should be permitted to make bids with respect to the individual hospitals and without regard to their ability to own and operate all three hospitals in one system.

---

[7] As noted herein, HRH would have post-effective date options to purchase HUMC and/or Christ Hospital.

FIRM:66713541v7

30.     In addition, the Plan does not provide for a competing bidder to obtain an assignment of the Bayonne Lease and, if necessary, the pursuit of litigation against HRH to avoid the Consent Order.

31.     If the Debtors receive a qualified bid within the specified twenty-one (21) calendar days, the Reorganization Committee is to make a recommendation to the Debtors regarding the proposed Alternative Transaction.  HRH has the right to challenge whether a competing bid is qualified.  BMC Hospital submits that the determination of a qualified bidder should be made by the Reorganization Committee, without challenge or input from HRH given HRH's conflict of interest.

32.     The Combined Disclosure Statement and Plan provides that any proposed Alternative Transaction shall be in an amount $1 million higher than HRH's credit bid to take into consideration the payment of a $1 million break-up fee due HRH, in the event of a closing of an Alternative Transaction regarding Bayonne Medical Center to an alternative bidder. The proposed break-up fee does not satisfy the Third Circuit's *O'Brien* standard as it is not necessary to preserve the value of the estate and was not a condition to HRH's consummating the sale. *See In re O'Brien Environmental Energy*, 181 F.3d 527, 535-38 (3d Cir. 1999). Nor is a break-up fee representing approximately 3% of the stalking horse purchaser's bid appropriate when that bid is entirely a credit bid with no cash component.  *See, e.g., In re iGPS Company LLC*, No. 13-11459 (Bankr. D. Del. July 3, 2013) (KG).  No break-up fee should be provided to HRH.  The Combined Disclosure Statement and Plan is also ambiguous regarding whether a break-up fee is applicable in an Alternative Transaction only with respect to Bayonne Medical Center, or whether it would apply with respect to the other hospitals as well.

FIRM:66713541v7

33.     The Combined Disclosure Statement and Plan provides for a credit bid with regard to the Bayonne transaction. It does not provide sufficient information regarding other consideration for the HRH Transactions other than HRH's entitlement to the HRH Exit Facility. The HRH Transactions grant HRH an exclusive and irrevocable HRH Purchase Options to purchase substantially all the assets of Christ Hospital and HUMC. The Combined Disclosure Statement and Plan should identify the value of the Christ Hospital and HUMC transactions so prospective bidders are able to determine a better or higher bid.

34.     Elements of HRH's credit bid on the Bayonne Medical Center transaction require further clarification and explanation to allow prospective bidders to formulate a competitive bid.

a.     With respect to the prepetition first lien debt acquired by HRH from Capitala, Debtors fail to disclose the amount of the first lien debt. Moreover, the Term Sheet, which states that the debt is approximately $8 million plus interest, is inconsistent with the Debtors' own filings and schedules of assets and liabilities, which list the debt as $6.12 million as of the Petition Date.

b.     With respect to the operations/management fees in a minimum approximate amount of $3,741,612, the Court has not approved the operations/management fees in this amount. Such amount should be consistent with the compensation the Court may approve in connection with the Debtors' motion for approval of the stipulation regarding HRH's interim management of the hospitals *See* D.I. 377.

c.     With respect to the Bayonne Lease arrears comprising the credit bid (and amounts necessary to cure any monetary defaults under the Bayonne Lease), the amounts are unknown at this time (and subject to challenge).

   d.  The inability to fully determine the amount of the credit bid will chill, rather than encourage, competitive bidding.

35.  The Combined Disclosure Statement and Plan provides that HRH has the right to augment its credit bid by the Outstanding Judgment.  This is improper and HRH should be precluded from augmenting its bid by the Outstanding Judgment.

   a.  First, the amount of the Outstanding Judgment is not fixed but rather was set as a range of $24 million to $32 million.  The lack of a fixed, final amount of the Outstanding Judgment that may be credit bid will chill, rather than encourage, competitive bidding.

   b.  Second, "cause" exists to limit HRH's credit bid under section 363(k) of the Bankruptcy Code because, among other reasons, the Outstanding Judgment constitutes an avoidable preference (at the very least such claim is subject to a bona fide dispute).

36.  "The term 'cause' is not defined in the Bankruptcy Code and is left to the courts to determine on a case-by-case basis." *In re Figueroa Mountain Brewing LLC*, Case No. 20-11208 (Bankr. C.D. Cal. July 2, 2021) at 5. "Cause" is intended to be a flexible concept enabling a court to fashion an appropriate remedy on a case-by-case basis. *See id.* (citing *In re N.J. Affordable Homes Corp.*, 2006 WL 2128624 at *16). "Intrinsically, acting 'for cause' looks to the court's equity powers that allow the court to balance the interests of the debtor, its creditors, and the other parties of interest in order to achieve the maximization of the estate and an equitable distribution to all creditors." *Id.* at 6 (citing *SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 WL 9701154, at *9, 2015 U.S. Dist. LEXIS 174856, at *29 (C.D. Cal. Oct. 13, 2015) (quoting *In re RML Dev., Inc.*, 528 B.R. 150, 155 (Bankr. W.D. Tenn. 2014)). Further, courts may deny the right to credit bid, to among other things, foster a competitive bidding environment. *See id.* at *6

FIRM:66713541v7

(citing *In re Free Lance-Star Publ'g Co.*, 512 B.R. 798, 805 (Bankr. E.D. Va. 2014) (quoting *In re Philadelphia Newspapaers, LLC*, 599 F.3d 298, 316 n.14 (3d Cir. 2010)).

37.     Courts have found "cause" to deny a secured creditor the right to credit bid where the secured creditor's claim is subject to a genuine dispute. *In re Figueroa Mountain Brewing LLC* at *8. In determining whether a genuine dispute exists, the *Figueroa Mountain Brewing* court adopted the following test: "whether there is an objective basis for either a factual or legal as to the validity of the claim." Id. at 8. In this case, a sufficient dispute exists regarding the Outstanding Judgment to limit HRH's ability to credit bid the Outstanding Judgment. As discussed above, the Consent Order is inflated and is avoidable as a preference or fraudulent transfer.

38.     This case is distinguishable from *In re Decurtis Holdings LLC*, 2023 WL 5274925 (Bankr. D. Del. Aug. 14, 2023), a case in which Your Honor addressed a motion challenging a secured creditor's right to credit bid at a sale. In that case, the movant argued that "cause" existed to limit a credit bid "to facilitate a competitive bidding environment," and that the "lack of prepetition marketing, excessive financing fees, . . . failure to commit to supporting a plan, and the lack of recovery to general unsecured creditors [were] cause to deny a credit bid." *Id*. at *15. Although the Court allowed the credit bid based on the facts of that case, the Court recognized that cause may exist where the secured creditor has engaged in inequitable conduct, where there is a dispute regarding the validity of the lien forming the basis for the credit bid, or in the interest of any policy advanced by the Bankruptcy Code. *Id.* Here, "cause" exists by virtue of the challenges to the validity of the Outstanding Judgment and inequitable conduct by HRH.

## V.     ADDITIONAL OBJECTIONS

39.     The Plan's purported reorganization of the HUMC and Christ Hospital entities is really a disguised sale to HRH without the protections and requirements for confirmation of a plan of reorganization.   Under the Plan, Interests in HUMC and Christ Hospital are unaffected.

However, general unsecured creditors of those entities (or of the substantively consolidated entities pursuant to the Plan) will not be paid in full.  Had the Plan transferred the Interests to HRH, the Plan would not satisfy the "fair and equitable" requirement of section 1129(b) of the Bankruptcy Code, i.e., the absolute priority rule.  Thus, the Plan and the HRH Purchase Options under the Hospital Facilities MSA are an attempted end-run around the Bankruptcy Code's confirmation requirements and a misuse of the bankruptcy process.

40.     The Debtors' Board includes representatives of HRH. HRH should not hold seats on the Debtors' Board at this juncture. HRH is wearing many hats in these proceedings, including DIP lender, exit facility lender, prepetition secured creditor, proposed interim manager of the hospitals, proposed purchaser of Bayonne Medical Center, and proposed manager of HUMC and Christ Hospital with options to buy these hospitals. It is improper and unrealistic to expect HRH's representatives to properly exercise fiduciary duties as trustees with respect to analyzing competitive bids and the Plan given their disparate interests, motivations, and financial incentives in this case. The Debtors have failed to remedy the HRH representatives' conflicts.

41.     Upon information and belief, Dr. Moulick, the Debtors' CEO and Chairman of the Board, has a conflict on account of his proposed post-effective date role and compensation.  To the extent Dr. Moulick will be employed by the reorganized debtor or serve as an officer or director of the debtors or a successor to the debtors, the failure to disclose same renders the Plan unconfirmable pursuant to section 1129(a)(5) of the Bankruptcy Code.

42.     Measures should be taken to ensure that decisions on behalf of the Debtors are made in good faith and not by any means forbidden by law. No such measures are evidenced by the Combined Disclosure Statement and Plan.

43.     HRH is a Released Party under the proposed Plan. HRH's release under the Plan is improper. HRH is the recipient of a preference, i.e., the Default Judgment and the Consent Order. Further, the allowance of HRH Claims including the Outstanding Judgment is improper given that the Outstanding Judgment is the subject of a bona fide dispute.  Claims against the Current D&Os, to the extent they include claims against HRH representatives, should not be released.  More broadly, any non-debtor releases must comply with applicable law.

44.     The HRH Transaction for Bayonne Medical Center violates IJKG Opco's own governance agreement because BMC Hospital has a right of first refusal with respect to any sale of IJKG Opco's assets, including those sought to be conveyed in the HRH Transaction, and BMC Hospital's consent is required before IJKG Opco may engage in transactions with its affiliates of the type provided for in the Hospital Facilities MSA and Collateral Surrender Agreement. The *In re DocAssist*, LLC, 2014 WL 3955062 (Bankr. S.D. Fla. 2014) ("***DocAssist***") case is instructive. In *DocAssist*, proposed counsel for the Debtor insisted to the court that "on a postpetition basis, the LLC governance provisions . . . simply become inapplicable." *Id*. at *3. The *DocAssist* court noted that, "[i]n this construct by proposed counsel for the Debtor, the 'Debtor' is free to exercise its business judgment notwithstanding the supermajority requirements of [the First Amended Operating Agreement], subject only to review and consent by the Court." The *DocAssist* court then stated, "This is nonsense. A Chapter 11 debtor is not free to act in a manner inconsistent with its governing documents, and the filing of a Chapter 11 Petition does not operate to nullify or void regular corporate (or LLC ) internal governance constraints." *Id*. at 3. Although the Court had before it a question of eligibility, the *DocAssist* court further stated that the "Debtor's contention that [the requirement to comply with its governing agreements] evaporates after the filing of a Chapter 11 Petition has no basis in applicable Florida law, and no provision of the Bankruptcy

FIRM:66713541v7

Code provides for a different result." *Id.* at 3. The Court in deciding to abstain from the case further recognized:

> It is clear from the Chapter 11 Small Business Plan filed by the Debtor that its (or more accurately, its Majority Members') goal is to accomplish exactly the kind of equity restructuring which the Majority Members of the LLC sought but failed to accomplish in the State Court litigation . . . the elimination of the Barberis Brothers' interests in the LLC.

*Id.* at 3. The Plan is not confirmable because the Bayonne Debtors seek through it to do exactly what they may not do under the IJKG Opco Operating Agreement namely, convey the Bayonne Medical Center assets to HRH over BMC Hospital's objection.

## CONCLUSION

45.    Given the lack of adequate notice, inadequate disclosures, incomplete procedures, and conflicts of interest, the Motion should be denied.

WHEREFORE, BMC Hospital respectfully requests that the Court deny the Motion.  BMC Hospital further requests that the Court enter such other and further relief as the Court deems just and appropriate.

Dated:  January 15, 2024

CONNOLLY GALLAGHER LLP

*/s/ Karen C. Bifferato*
Karen C. Bifferato (No.3279)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 888-6221
kbifferato@connollygallagher.com

-    and –

EPSTEIN BECKER & GREEN, P.C.
Wendy G. Marcari (admitted pro hac)
875 Third Avenue
New York, New York 10022
Telephone: (212) 351-3747
Email: wmarcari@ebglaw.com

FIRM:66713541v7

James P. Flynn (admitted pro hac)
One Gateway Center
Newark, NJ 07102
Telephone: (973) 642-1900
Email: jflynn@ebglaw.com

Ryan K. Cochran (admitted pro hac)
1222 Demonbreun Street, Suite 1400
Nashville, Tennessee 37203
Telephone: (615) 564-6051
Email: RCochran@ebglaw.com

*Counsel to BMC Hospital, LLC*

FIRM:66713541v7