IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CarePoint Health Systems Inc., d/b/a, | : | Case No. 24-12534 (JKS) |
| Just Health Foundation, *et al.*,[1] | : | |
| | : | Obj. Deadline: January 15, 2025 at 10:00 a.m. |
| Debtors. | : | Hearing Date: January 17, 2025 at 10:00 a.m. |

**OBJECTION OF U.S. TRUSTEE TO MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT ON AN INTERIM BASIS; (II) SCHEDULING A COMBINED HEARING ON FINAL APPROVAL OF THE DISCLOSURE STATEMENT, PLAN CONFIRMATION AND DEADLINES RELATED THERETO; (III) APPROVING THE SOLICITATION, NOTICE AND TABULATION PROCEDURES AND FORMS RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), through his undersigned counsel, hereby objects (the "Objection") to: (i) approval on an interim basis of the disclosures in the *Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* [D.I. 412] ("Combined Plan and Disclosure Statement") and (ii) *Motion of the*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

*Debtors and the Official Committee of Unsecured Creditors for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement, Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 417] (the "<u>Procedures Motion</u>"),[2] and in support of this Objection respectfully states:

## PRELIMINARY STATEMENT

1. The Combined Plan and Disclosure Statement fails to provide adequate disclosure because it does not attach a liquidation analysis. The U.S. Trustee also objects to the Procedures Motion because the Debtors seek approval to provide bid protections in circumstances that are unlikely to provide a benefit to the estate, *i.e.*, closing of an alternative transaction where the stalking horse purchaser submits a credit bid. As set forth in further detail below, the proposed form of order should be modified in several respects.

2. Accordingly, and for the reasons set forth in more detail herein, the U.S. Trustee respectfully requests that the Court enter an order or orders: (a) denying interim approval of the disclosures in the Combined Plan and Disclosure Statement; and (b) denying approval of the Procedures Motion.

## JURISDICTION AND STANDING

3. This Court has jurisdiction to hear and determine the Procedures Motion, approval of the Disclosure Statement and this Objection pursuant to: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement and the Procedures Motion, as applicable.

4.       Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

5.       The U.S. Trustee has standing to be heard on the Procedures Motion and approval of the Disclosure Statement pursuant to 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

### The Chapter 11 Cases

6.       On November 3, 2024 (the "Petition Date"), all Debtors except IJKG Opco, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.       On the Petition Date, three creditors of IJKG Opco, 29 E 29 Street Holdings, LLC, Bayonne Medical Center Opco, LLC, and Peter Wong, MD, filed an involuntary petition against IJKG Opco under Chapter 11 of the Bankruptcy Code. On the Petition Date, IJKG Opco filed an answer consenting to the relief requested in the involuntary petition. On November 6, 2024, the Court entered an order for relief with respect to Debtor IJKG Opco LLC.

8.       On November 19, 2024, the Court entered an amended order authorizing joint administration of the chapter 11 cases of all Debtors including IJKG Opco LLC. [D.I. 147].

9.       On November 19, 2024, the U.S. Trustee appointed a statutory committee of unsecured creditors (the "Committee") in this case.

10.      On December 9, 2024, the U.S. Trustee filed his *Motion for Entry of an Order*

3

*Directing the Appointment of a Chapter 11 Trustee, or, in the Alternative, Converting the Cases to Chapter 7 Cases* (the "Trustee Motion") [D.I. 267]. The Trustee Motion has been adjourned to the February 19, 2025 hearing date.

**The Procedures Motion**

11. On January 8, 2025, the Debtors filed the Procedures Motion, along with a request for shortened notice. On January 8, 2025, the Court entered an order scheduling the Procedures Motion for hearing on January 17, 2025 [D.I. 419].

12. In the Procedures Motion, the Debtors request interim approval of the disclosures in the Combined Plan and Disclosure Statement and approval of procedures for the solicitation and tabulation of votes on the Combined Plan and Disclosure Statement.

13. The Combined Plan and Disclosure Statement effectuates a reorganization of the Debtors and establishes a Litigation Trust to distribute net proceeds of Litigation Trust Assets for the benefit of unsecured creditors.

**ARGUMENT**

I. **THE COMBINED PLAN AND DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION REGARDING AMOUNTS CREDITORS WOULD RECEIVE IN A CHAPTER 7 LIQUIDATION.**

14. The disclosure statement requirement of Bankruptcy Code section 1125 is "crucial to the effective functioning of the federal bankruptcy system" and, consequently, "the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (*citing Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414, 417-18 (3d Cir. 1988)). "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). The "adequate information" requirement is designed to help creditors in their negotiations with debtors

4

over the plan. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 100 (3d Cir. 1988). Further, section 1129(a)(2) of the Bankruptcy Code conditions confirmation upon compliance with applicable Code provisions. The adequate disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. § 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

15. The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, *that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan*[.]

*See* 11 U.S.C. § 1125(a)(1) (emphasis added); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

16. To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives so that they can intelligently accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

17.     Section 1125 of the Bankruptcy Code is geared towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove*, 860 F.2d at 100).

18.     Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement if the information is accurate, and its inclusion is not misleading. *See id.* The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

19.     The Combined Plan and Disclosure Statement does not provide sufficient disclosures appropriate to the circumstances of these chapter 11 case because it does not attach a separate liquidation analysis. As a result, the Combined Plan and Disclosure Statement does not contain adequate information to allow a creditor to make an informed judgment as to whether such creditor would receive at least as much as it would receive in a chapter 7 liquidation. The Combined Plan and Disclosure Statement provides only general statements that recoveries expected under the Combined Plan and Disclosure Statement will likely be greater than a chapter 7 liquidation, where "a trustee would be appointed to promptly liquidate the assets of the Debtors. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the Litigation Truste Beneficiaries." Combined Plan and Disclosure Statement, p. 65. The Combined Plan and Disclosure Statement does not provide any estimate of the cost if the Debtors' remaining

assets were liquidated by a chapter 7 trustee.

20. The application of the best interest test involves a hypothetical application of chapter 7 to a chapter 11 plan. See *In re Stone & Webster, Inc.*, 286 B.R. 532 (Bankr. D. Del. 2002). If the plan fails the section 1129(a)(7) test, then the creditors are better off in a chapter 7 liquidation. Here, the creditors are essentially being asked to accept a general statement from the Debtors without any comparative analysis demonstrating what they would receive in a hypothetical chapter 7 liquidation.

21. Accordingly, the Combined Plan and Disclosure Statement fails to provide sufficient information for creditors and parties in interest to make an informed decision regarding whether to vote in favor of or to reject the Plan.

## II. MISCELLANEOUS OBJECTIONS TO THE PROPOSED SOLICITATION PROCEDURES ORDER

### A. The Proposed Bid Protections are Unlikely to Provide an Actual Benefit to the Estate and Should Not be Approved.

29. The Combined Plan and Disclosure Statement provides for procedures for submission of overbids for the proposed HRH Transactions between the Debtors and Hudson Regional Hospitals, LLC ("HRH"). Procedures Motion, ¶ 46. The Debtors have agreed to pay a break-up fee of $1 million in the event of the closing of an Alternative Transaction regarding the HRH Transactions. The Procedures Motion does not specify the purchase price for the HRH Transactions but provides that HRH will submit a credit bid. *Id*.

30. Bid protections, if sought, must be analyzed under section 503(b) of the Bankruptcy Code. *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") *(citing In re O'Brien Envt'l Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999)). Section 105(a) is not a basis to award an administrative expense. *See In re Women First Healthcare, Inc.*, 332 B.R. 115, 120-21 (Bankr. D. Del. 2005).

7

31. The analysis of bid protections under Section 503(b) "must be made in reference to general administrative expense jurisprudence. In other words, the allowability of bid protections, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien,* 181 F.3d at 535; *see In re Energy Future Holdings Corp. ("EFH I"),* 904 F.3d 298, 313 (3d Cir. 2018) ("[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]").

32. An administrative expense's benefit to the estate "must be actual, not hypothetical." *In re Energy Future Holdings Corp.,* 990 F.3d 728, 742 (3d Cir. Mar. 15, 2021) (emphasis in original) (*citing In re Continental Airlines, Inc.*, 146 B.R. 520, 526 (Bankr. D. Del. 1992)).

33. A break-up fee may provide a benefit to the estate where (1) assurance of the break-up fee promotes more competitive bidding, such as by inducing a bid that otherwise wouldn't have been made, (2) availability of the break-up fee induces a buyer to perform diligence and set a floor price. *See EFH I*, 904 F.3d at 313-14 (*citing O'Brien*, 181 F.3d at 537).

34. Even if a break-up fee would benefit the estate, the Court is not required to approve it. *See EFH I*, 904 F.3d at 313-14 ("We have never held that bankruptcy courts must allow fees whenever they find that [a break-up fee confers a benefit on the estate.]"). A court must determine, based upon the totality of the circumstances of the case, "whether the proposed fee's potential benefits to the estate outweigh any potential harms, such that the fee is actually necessary to preserve the value of the estate." *Id.* (*citing O'Brien*, 181 F.3d at 535) (quotation marks omitted).

35. Here, the proposed break-up fee is excessive because there is no cash component of the purchase price and, therefore, does not represent the "actual, necessary" cost of preserving the Debtors' estate. *See id.*

**B. Additional Issues**

36. The U.S. Trustee has the following additional issues concerning the proposed Procedures Motion:

- The proposed form of order should provide that no creditor may change or withdraw their vote on the plan without Court approval. See Fed. R. Bankr. P. 3018(a).

- Certain deadlines should be modified to provide for additional time, such as the deadline to object to claims for voting purposes, so that parties have sufficient time to file Rule 3018 motions, as well as the proposed deadline to object to confirmation of the Plan.

## RESERVATION OF RIGHTS

37. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Objection and reservation of rights, assert any objection, file any appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order or orders: (i) denying interim approval of the disclosures in the Combined Plan and Disclosure Statement; (ii) denying the Procedures Motion; and (iii) granting such other and further relief as the Court deems just and equitable.

        Respectfully submitted,

        **ANDREW R. VARA**
        **UNITED STATES TRUSTEE**
        **REGIONS 3 AND 9**

**By:**   */s/ Jane M. Leamy*
        Jane M. Leamy (DE Bar #4113)
        Trial Attorney
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        Jane.M.Leamy@usdoj.gov

Dated: January 15, 2025