IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> CarePoint Health Systems Inc. d/b/a Just Health Foundation, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 24-12534 (JKS) <br><br> (Jointly Administered) |

**RESPONSE OF THE NEW JERSEY DEPARTMENT OF HEALTH TO
THE PLAN PROPONENTS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
DISCLOSURE STATEMENT ON AN INTERIM BASIS; (II) SCHEDULING
COMBINED HEARING ON FINAL APPROVAL OF DISCLOSURE STATEMENT,
PLAN CONFIRMATION AND DEADLINES RELATED THERETO; (III) APPROVING
SOLICITATION, NOTICE AND TABULATION PROCEDURES AND FORMS
RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

The New Jersey Department of Health ("NJDOH"), by and through its undersigned counsel, hereby submits this response (the "Response") to the *Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement, Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 417] (the "Motion") jointly filed by the Debtors, CarePoint Health Systems Inc. d/b/a Just Health Foundation, *et al.* (collectively, the "Debtors"), and the Official Committee

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center. The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

1

of Unsecured Creditors (the "Committee," and together with the Debtors, the "Plan Proponents"). In support of this Response, NJDOH respectfully states as follows:

## PRELIMINARY STATEMENT[2]

NJDOH's primary objective in these cases is to ensure the continuation of the healthcare services to the residents in and around Hudson County, New Jersey at the Debtors' three acute care hospitals, Bayonne Medical Center ("Bayonne Hospital"), Christ Hospital, and Hoboken University Medical Center ("HUMC"). In light of this objective, NJDOH is generally supportive of the Debtors' reorganization efforts.

As part of the Debtors' reorganization efforts, on January 8, 2025, the Plan Proponents filed a *Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* [D.I. 412] (the "Disclosure Statement"). That same day, the Plan Proponents filed the Motion, along with a *Motion to Shorten Notice and Schedule Expedited Hearing* [D.I. 418] (the "Motion to Shorten Time") with respect to the Motion. The Court granted the Motion to Shorten Time that same day [D.I. 419], scheduling a hearing on the Motion for January 17, 2025.

To be clear, NJDOH fully supports the Debtors' reorganization efforts. However, the Disclosure Statement contains inaccurate statements regarding the State of New Jersey and NJDOH's prepetition efforts to support the Debtors and neglects to reflect a loan by NJDOH to the Debtors in the amount of $10,625,000, thereby requiring NJDOH to file this Response simply to correct the record.

For these reasons, while NJDOH generally supports the Motion, NJDOH respectfully requests that the Court require the Plan Proponents to modify the Disclosure Statement so that it includes reference to the Emergency Loans provided to the Debtors by the State.

---

[2] Capitalized terms not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them herein.

**RELEVANT BACKGROUND**

**A. The Debtors' Prepetition Financial Instability and NJDOH's Prepetition Monitor and Emergency Loans**

1. NJDOH is vested with the responsibility of carrying out the provisions of the Health Care Facilities Planning Act, N.J.S.A 26:2H-1 to -27. Pursuant to N.J.S.A. 26:2H-5, NJDOH is authorized to license and inspect acute care hospitals and enforce licensure standards. As part of NJDOH's oversight, NJDOH monitors the financial stability of New Jersey licensed acute care hospitals.

2. On February 4, 2020, NJDOH determined that Christ Hospital was in financial distress and appointed an independent financial monitor over the hospital (the "Monitor"), pursuant to N.J.S.A. 26:2H-5 and N.J.S.A. 26:2H-5.1a.

3. Thereafter, on January 10, 2024, NJDOH determined that all three hospitals operated by the Debtors were in financial distress and extended the appointment of the financial monitor to the operations of all three hospitals. Since his appointment, the Monitor has provided NJDOH with data indicating, among other things, that the Debtors were in serious financial distress.

4. As a result of the Debtors' financial distress, NJDOH made a series of emergency loans to the Debtors, totaling approximately $10,625,000 (collectively, the "Emergency Loans"), which provided emergency support for payroll and other critical expenses, and also included funding for a Corporate Restructuring Officer.[3]

---

[3] The Emergency Loans are memorialized and supported by loan documentation. In due course, NJDOH will file a proof of claim in the Debtors' bankruptcy cases attaching relevant documentation to reflect and support the Emergency Loans.

B. **The Debtors' Bankruptcy Cases**

5. On November 3, 2024 (the "Petition Date"), the Debtors, excluding IJKG Opco, LLC ("IJKG Opco"), filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, §§ 101– 1532 (the "Bankruptcy Code"), thereby commencing their chapter 11 cases.

6. On the Petition Date, three creditors of IJKG Opco – 29 E 29 Street Holdings, LLC, Bayonne Medical Center Opco, LLC, and Peter Wong, MD – filed an involuntary petition against IJKG Opco under chapter 11 of the Bankruptcy Code. That same day, IJKG Opco consented to the relief requested in the involuntary petition.

7. On November 4, 2024, the Debtors filed the *Declaration of Shamiq Syed in Support of First Day Pleadings* [D.I. 23].

8. On November 19, 2024, the UST appointed the Committee, a seven-member committee of unsecured creditors, pursuant to its notice of appointment of committee of unsecured creditors [D.I. 157].

C. **Global Mediation Efforts and the Plan Proponents' Combined Disclosure Statement and Plan**

9. The Debtors, the Committee, Hudson Regional Hospital, Insight Management and Consulting Services, Inc., and BMC Hospital, LLC a/k/a Surgicore (collectively, the "Mediation Parties") ultimately sought and obtained entry of an order appointing a mediator to facilitate an attempt to reach a global resolution of various legal and factual issues related to several of the Debtors' first day motions. See D.I. 235. The Mediation Parties agreed to allow NJDOH to participate at the mediation in an effort to allow NJDOH to attempt to facilitate a resolution among the Mediation Parties.

10. The Mediation Parties, along with NJDOH, participated in the mediation which commenced on December 18, 2024. Upon information and belief, on December 19, 2024, certain

of the Mediation Parties reached an agreement which was memorialized in a term sheet which called for the Plan Proponents to file a disclosure statement and plan of reorganization and seek confirmation of that plan in short order.

11. On January 8, 2025, the Plan Proponents filed the Disclosure Statement.

### D. Inaccuracies in the Disclosure Statement

12. In the Disclosure Statement, the Plan Proponents assert various inaccurate statements regarding funding (or alleged lack of funding) provided to the Debtors by the State of New Jersey. The Plan Proponents represent that such funding "has been woefully inadequate to sustain operations given the patient mix of the Hospitals" and that since the COVID-19 pandemic, "CarePoint has sought, unsuccessfully, assistance from the State of New Jersey in the form of additional funding." See Disclosure Statement at 28-29, 36.

13. However, contrary to the Plan Proponents' representations in the Disclosure Statement, NJDOH has repeatedly advanced charity care payments to the Debtors based on their financial distress to assist with payroll shortfalls.

14. Additionally, pursuant to the New Jersey County Option Hospital Fee Program, established by N.J.S.A. § 30:4D-7t and administered by the State of New Jersey, the Debtors are receiving payments exceeding $9 million per quarter, despite having failed to pay the $5 million quarterly fee required for receipt of such payments since fiscal year 2024.[4] In effect, the State of New Jersey has fronted these payments to the Debtors.

---

[4] These payments are subject to a tentative settlement with the County of Hudson, which is subject to approval by the State of New Jersey. Ultimately, if the State of New Jersey approves that tentative settlement, the Debtors will presumably seek the Court's approval of the settlement.

15. Finally, as discussed in detail above, NJDOH extended the Emergency Loans to the Debtors, which exceeded $10.6 million and were advanced prepetition to support the Debtors' operations.

16. In view of the foregoing, clearly, the State of New Jersey has provided substantial financial assistance to the Debtors.

17. As a result, NJDOH submits that the Disclosure Statement is inaccurate and misleading, and should at the very least be modified to include reference to the Emergency Loans provided by the State.

## **RESPONSE**

### I. THE DISCLOSURE STATEMENT DOES NOT PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE

18. Given the inaccuracies listed above, NJDOH submits that the Disclosure Statement fails to provide adequate information within the meaning of section 1125(b) of the Bankruptcy Code and, therefore, should not be approved. Section 1125(b) of the Bankruptcy Code prohibits the solicitation of votes in respect of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted . . . a written disclosure statement . . . containing adequate information." See 11 U.S.C. § 1125(b). Adequate information is defined in section 1125(a) of the Bankruptcy Code as "information of a kind, and in sufficient detail . . . that would enable [] a hypothetical investor . . . to make an informed judgment about the plan." Id. at § 1125(a)(1).

19. The primary purpose of a disclosure statement is to give creditors adequate information necessary to make an informed decision about a plan of reorganization. See 11 U.S.C. § 1125(a)(1). Indeed, the Third Circuit has underscored the importance of adequate disclosure in connection with proposed chapter 11 plans, stating that, given the reliance creditors and bankruptcy courts place on disclosure statements, "we cannot overemphasize the debtor's obligation to provide

6

sufficient data to satisfy the Code['s] standard of 'adequate information.'" Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988); see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 321 (3d Cir. 2003) (citing 11 U.S.C. § 1125(a)(1) and observing that the proponent of the proposed plan has "an affirmative duty to provide creditors with a disclosure statement containing 'adequate information' to 'enable a creditor to make "an informed judgment" about the [p]lan.'"). To be approved, a disclosure statement must provide enough information for creditors to understand the financial ramifications of the outcome of plan approval, see In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987), and courts determine the adequacy of information in a disclosure statement based on the facts and circumstances of each case. See Abel v. Shugrue (In re Ionosphere Clubs, Inc.), 179 B.R. 24, 29 (S.D.N.Y. 1995); see also In re Ashley River Consulting, LLC, Nos. 14-13406 (MG), 14-13407 (MG), 2015 Bankr. LEXIS 3819, at *24 (Bankr. S.D.N.Y. Nov. 6, 2015) ("Congress purposely left vague the standard for judging what constitutes adequate information to allow the Court to make a case-by-case determination."); In re Fullmer, No. 09-50086-RLJ-11, 2009 Bankr. LEXIS 2428, at *6 (Bankr. N.D. Tex. Sep. 1, 2009) ("The determination of whether the disclosure statement contains adequate information is made on a case-by-case basis"). Importantly, a disclosure statement should <u>not</u> be approved where the required disclosures are incomplete or inaccurate. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996) ("[D]isclosure requirements are crucial to the effective functioning of the federal bankruptcy system.").

20.     Here, the Disclosure Statement falls short of the standard of adequacy required by the Bankruptcy Code by containing inaccurate, incomplete, and misleading statements regarding

7

the prepetition efforts of the State of New Jersey and NJDOH to support the Debtors financially, and most importantly falls short by failing to make any reference to the Emergency Loans.

21. Based on the foregoing, NJDOH requests that the Court require the Plan Proponents to modify the Disclosure Statement, as set forth herein to include the Emergency Loans.

## **RESERVATION OF RIGHTS**

22. NJDOH continues to review the Disclosure Statement and proposed plan of reorganization and reserves all rights in connection with any revised disclosure statement or proposed plan of reorganization the Plan Proponents may file. NJDOH submits this Response without prejudice to, and with a full reservation of, NJDOH's rights to supplement or amend this Response in advance of, or in connection with, the hearing to approve the Disclosure Statement and/or confirmation of the Plan Proponents' proposed plan of reorganization. Nothing herein is intended to be a waiver by NJDOH of any right, objection, argument, claim or defense with respect to any matter, including matters involving the Disclosure Statement or the Plan Proponents' proposed plan of reorganization, all of which are hereby expressly reserved.

[*Remainder of the page intentionally left blank*]

## **CONCLUSION**

**WHEREFORE**, for all the foregoing reasons, NJDOH respectfully requests that the Court require the Plan Proponents to address the deficiencies in the Disclosure Statement identified herein, and grant NJDOH such other and further relief as the Court may deem just and proper.

January 15, 2025  
Wilmington, Delaware

**BAYARD, P.A.**

By: /s/ *Ericka F. Johnson*
Ericka F. Johnson (DE Bar No. 5024)
Ashly L. Riches (DE Bar No. 7256)
600 North King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Email:  ejohnson@bayardlaw.com
        ariches@bayardlaw.com

-and-

**RIKER DANZIG LLP**
Joseph L. Schwartz (admitted *pro hac vice*)
Tara J. Schellhorn (admitted *pro hac vice*)
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: (973) 538-0800
Email:  jschwartz@riker.com
        tschellhorn@riker.com

*Counsel to New Jersey Department of Health*