IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>CarePoint Health Systems Inc. d/b/a Just Health Foundation, *et al.*,[1]<br><br>                 Debtors. | Chapter 11<br><br>Case No. 24-12534 (JKS)<br><br>(Jointly Administered) |

**NOTICE OF (A) INTERIM APPROVAL OF THE DISCLOSURE STATEMENT AND (B) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN AND THE OBJECTION DEADLINE RELATED THERETO**

1. **Filing of the Disclosure Statement and Plan.** On January 24, 2025, the above-captioned debtors (the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee", and together with the Debtors, the "Plan Proponents") filed the *Fourth Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "Combined Disclosure Statement and Plan" or the "Plan",[2] and the disclosures contained therein, the "Disclosure Statement"), dated January 24, 2025 [D.I. 551].

2. **Interim Bankruptcy Court Approval of the Disclosure Statement and the Notice Procedures.** On January 24, 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. 555] (the "Interim Approval and Procedures Order") approving, among other things, the Disclosure Statement on an interim basis, pursuant to Local Rule 3017-2, and authorizing the Plan Proponents to provide notice of their intent to seek confirmation of the Plan pursuant to certain procedures set forth therein, including the solicitation of votes to accept or reject the Plan. The Bankruptcy Court's interim approval of the Disclosure Statement does not indicate approval of the Plan by the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); and (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

1

Bankruptcy Court.

3. **The Combined Hearing.** A combined hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing") will commence on **March 11, 2025 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable J. Kate Stickles, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 5th Floor, Courtroom No. 6, Wilmington, DE 19801. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Plan Proponents without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on parties entitled to notice under Bankruptcy Rule 2002 and the Local Rules or otherwise. In accordance with the Plan, the Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing by further action of the Plan Proponents and without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

4. **Objections to Final Approval of the Disclosure Statement and Confirmation of the Plan.** The Bankruptcy Court has established **February 28, 2025 at 4:00 p.m. (prevailing Eastern Time)**, as the last date and time for filing and serving objections to the adequacy of the information in the Disclosure Statement and to confirmation of the Plan (the "Objection Deadline"). Any objection to the final approval of the Disclosure Statement and confirmation of the Plan must (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such Entity, (d) state with particularity the basis and nature of any objection to the Disclosure Statement, the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed with the Clerk of the Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801, and served on the following: (i) counsel to the Debtors, Dilworth Paxton LLP, 1650 Market St., Suite 1200, Philadelphia, PA 19103, Attn: Peter C. Hughes, Esq. (phughes@dilworthlaw.com) and Lawrence G. McMichael, Esq. (lmcmichael@dilworthlaw.com) (ii) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com) and James E. O'Neill, Esq. (joneill@pszjlaw.com), and Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, Attn: Andrew H. Sherman, Esq. (asherman@sillscummis.com) and Boris Mankovetskiy, Esq. (bmankovetskiy@sillscummis.com); (iii) counsel to the DIP Lender, Mandelbaum Barrett PC, 3 Becker Farm Road, Roseland, NJ 07068, Attn: Mohamed H. Nabulsi, Esq. (mnabulsi@mblawfirm.com) and Vincent J. Roldan, Esq. (vroldan@mblawfirm.com); and (iv) the Office of The United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy, Esq. (Jane.M.Leamy@usdoj.gov), with proof of service of such objection filed when and as required under the Local Rules of the Bankruptcy Court.

5. The following chart summarizes the classification and treatment of Claims and Interests under the Plan:

| Class | Claim / Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | HRH Claims | Impaired | Entitled to Vote |

#124767087v7

| Class | Claim / Interest | Status | Voting Rights |
|---|---|---|---|
| 2 | Capitala Claims | Impaired | Entitled to Vote |
| 3 | Capitala Specialty Lending Claims | Impaired | Deemed to Reject |
| 4 | Maple Secured Claims | Impaired | Entitled to Vote |
| 5 | Maple Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Insured Claims | Impaired | Entitled to Vote |
| 9 | Prior Owner Claims | Impaired | Entitled to Vote |
| 10 | Intercompany Claims | Impaired | Deemed to Reject |
| 11 | Bayonne Interests | Impaired | Deemed to Reject |
| 12 | Other Interests | Unimpaired | Deemed to Accept |
| 13 | NJDOH Secured Claims | Impaired | Entitled to Vote |
| 14 | Strategic Ventures Secured Claims | Impaired | Entitled to Vote |

6. **Voting Procedures**. Holders of Claims in Class 1 (HRH Claims), Class 2 (Capitala Claims), Class 4 (Maple Secured Claims), Class 5 (Maple Unsecured Claims), Class 7 (General Unsecured Claims) Class 8 (Insured Claims), Class 9 (Prior Owner Claims), Class 13 (NJDOH Secured Claims) and Class 14 (Strategic Ventures Secured Claims) as of **January 23, 2025** (the "Record Date") are entitled to vote to accept or reject the Plan. If you hold such a Claim, you will receive a solicitation package which shall include, among other things, a copy of (i) this Notice, (ii) the Combined Disclosure Statement and Plan, and (iii) a ballot. Please review the ballot and the instructions included therein for how to vote on the Plan. Failure to follow the voting instructions may disqualify your vote. Please be advised that the Holders of Claims in Classes 1, 2, 4, 5, 7, 8, 9, 13, and 14 are the only holders of Claims or Interests that are entitled to vote on the Plan.

7. **Voting Deadline**. The deadline to vote on the Plan is **March 3, 2025 at 4:00 pm (prevailing Eastern Time)** (the "Voting Deadline"). The Debtors' notice, claims and balloting agent, Epiq Corporate Restructuring, LLC (the "Balloting Agent" or "Epiq"), must receive any ballot with an original signature by the Voting Deadline, otherwise the vote will not be counted. In order for a ballot to count, a claimant must (1) properly complete, date, and execute the ballot and (2) deliver the ballot by (a) first class mail, in the return envelope provided with each ballot; (b) overnight courier; (c) hand-delivery, or (d) electronic online transmission solely through the customized online balloting portal (the "Balloting Portal") that will be available through a balloting link on the Debtors' case website, https://dm.epiq11.com/case/carepoint/info, so that such ballot is actually received by the Balloting Agent on or before the Voting Deadline.

8. **Directions to Obtain the Plan Documents and Make Inquiries.** If you have not received copies of the Combined Disclosure Statement and Plan and the Interim Approval and Procedures Order (the "Plan Documents") and wish to obtain copies of the same, you may do so by: (i) writing to Carepoint Health Systems, Inc. d/b/a Just Health Foundation, c/o Epiq Ballot Processing, 10300 SW Allen Blvd., Beaverton, OR 97005; and/or (ii) sending an email request to CarePointInfo@epiqglobal.com; (iii) visiting https://dm.epiq11.com/carepoint; or (iv) visiting (for a fee) PACER through a link available at the Bankruptcy Court's website, http://www.deb.uscourts.gov. Additionally, if you have any questions regarding this Notice, any of the Plan Documents, or any matters related thereto, including, without limitation,

3

#124767087v7

the procedures for objecting to the Plan, please contact the Balloting Agent at (888) 884-7843 (Toll-Free) or +1 (503) 610-4421 (International). Please be advised that the Balloting Agent cannot provide you with legal advice, and you should consult with an attorney to provide any legal advice you may need.

9. **Alternative Transactions Procedures**. Please be advised that Article IX.E of the Plan, as proposed, contains the following procedures for submission of bids by any party that seeks to overbid the proposed HRH Transactions:

> In accordance with the terms hereof, a third party may seek to overbid the proposed HRH Transactions (an "<u>Alternative Transaction</u>"). Any bid for a proposed Alternative Transaction must be submitted no later than the date that is twenty-one (21) calendar days after conditional approval of the Disclosure Statement (the "<u>Bid Deadline</u>"), with time being of the essence, such that no bids received after the Bid Deadline may be considered, except as otherwise ordered by the Court.
>
> If the Debtors receive a qualified bid before the Bid Deadline, the Debtors shall immediately forward such bid to the Reorganization Committee, the UCC and HRH. Any bidder may reach out directly to the Reorganization Committee to discuss any potential bid. Upon timely receipt of a qualified bid, the Reorganization Committee, in consultation with the UCC, will consider the proposed Alternative Transaction. Nothing herein prohibits the consideration of any and all bids for any or all asset of any or all of the Debtors, in whatever form. The Reorganization Committee and the Debtors, in consultation with the UCC, will consider any and all such bids, consistent with their fiduciary duties. When determining whether a bid is higher or better, the Reorganization Committee shall consider, among other things, the qualifications of the bidder (as set forth herein), the impact on employees, the number or percentage of employees to be retained post-closing, employee claims against Debtors, the ability of the bidder to continue to own/operate Bayonne, Christ Hospital, and HUMC as part of the same system, and collective bargaining agreements.
>
> Any proposed Alternative Transaction must be proposed by a qualified bidder and shall be in an amount at least $1 million higher than HRH's credit bid (discussed below) to take into consideration the payment of a $1 million break-up fee, due and payable to HRH, subject to Court approval, in the event of a closing of an Alternative Transaction regarding Bayonne to an alternative bidder. Additional bid increments shall be determined by the Reorganization Committee, as ordered by the Court. A qualified bidder shall be determined by the Reorganization Committee, in consultation with the UCC,[3] and shall be a person demonstrating: (i) the financial wherewithal to consummate any proposed transaction, (ii) its ability to achieve and secure regulatory approvals and comply with the NJDOH certificate of need and licensure statutes and regulations, including the transfer of ownership requirements, as well as the Community Health Care Asset Protection Act, (iii) its ability to secure all contractual approvals to which the Debtors/their successors are subject, (iv) its agreement and wherewithal to either assume or pay off, at closing, all overpayments

---

[3] At the Confirmation Hearing, HRH shall have the right to contest or otherwise challenge the determination of a qualified bid, if any.

#124767087v7

owed by Bayonne Medical Center to Medicare, Medicaid and their MCOs/HMOs and other government health care programs, and (v) to the extent any assets to be acquired are subject to an existing dispute or litigation, its source of litigation funding, funding of these Chapter 11 Cases necessary to consummate the contemplated Alternative Transaction, and a reasonable likelihood of success on the merits in such litigation. In addition, each bid must state the bidder's intent regarding the treatment and retention of employees of the Debtors, the treatment of the Debtor's collective bargaining agreements with its various labor unions, including the Committee of Interns and Residents, including whether the bidder will provide for the assumption of those collective bargaining agreements and all attendant obligations.

For the avoidance of doubt, HRH shall be deemed a qualified bidder. If one or more additional qualified bids are received by the Bid Deadline, the Plan Proponents shall: (i) within two days, file with the Court a notice summarizing the qualified bids received; and (ii) conduct an auction, which shall take place six days after Bid Deadline, at the offices of co-Counsel to the UCC, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801. At the conclusion of the auction, the Debtors (by and through the Reorganization Committee), in consultation with the UCC, will select the highest or best bid for some or all of the Debtors' assets and will file a notice of successful bidder no later than the first Business Day following the conclusion of the auction. The Plan Proponents will seek approval of such proposed transaction at the Confirmation Hearing, pursuant to an amended Plan if necessary.

HRH will have the right to credit bid with regard to the Bayonne transaction. Such credit bid may include: (i) the prepetition first lien debt (approximated to be $8 million, plus interest) acquired from Capitala, (ii) amounts advanced under the Bayonne DIP (approximated to be $21 million through February 1, 2025, plus interest), (iii) any amounts actually paid or advanced for supplies, equipment, personnel and other items and services, (iv) operations/management fees in a minimum approximate amount of $3,741,612; and (v) lease arrears such that the total of (i) – (v) above shall approximate a credit bid of $32,741,612 as of December 18, 2024, it being understood and agreed the foregoing amounts will be updated at the time the need for a credit bid becomes ripe.

If there is competitive bidding, HRH has the right to seek to augment its credit bid by the Outstanding Judgment, outstanding operations/management fees, all amounts incurred, advanced, assumed or paid for or on behalf of the Debtors and other amounts or consideration, and neither the Debtors nor the UCC will oppose HRH's augmented credit bid. Nothing herein shall prejudice or otherwise waive the legal rights of any person not a Party hereto to object to any terms of the Plan or alternative process described herein. Further, nothing herein shall impede or impair the Debtors' ability to perform their fiduciary obligations.

For the avoidance of doubt, Section 2.05(a) of the Collateral Surrender Agreement is stricken from the Collateral Surrender Agreement and the "Transaction Consideration" under the Collateral Surrender Agreement shall be the credit bid of HRH described above.

10. **Release, Exculpation, and Injunction Language in the Plan.** Please be advised that Article XIV of the Plan, as proposed, contains the following release, exculpation and injunction provisions:

**Debtor Releases**

**Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, their Estates, and the Debtors' current Affiliates, successors and assigns, including any successor to the Debtors or any Estate representative appointed or selected pursuant to Bankruptcy Code section 1123(b)(3), including the Litigation Trustee, shall be deemed to forever release, waive, and discharge each of the Released Parties from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy, liability, action, proceeding, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, or right to payment, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, for any act or omission in connection with, relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' operations, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, or the Combined Disclosure Statement and Plan, and the administration, formulation, preparation, dissemination, solicitation, negotiation, consummation, and implementation of any of the foregoing or any contract, instrument, release, or other agreement, understanding, accord, course of dealing, or document created or entered into in connection with or evidencing any of the foregoing, whether or not accrued, arising or having occurred, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, mixed, or otherwise, that may be based in whole or part on any act, omission, transaction, agreement, understanding, course of dealing, event or other occurrence or omission taking place on or prior to the Effective Date. For the avoidance of doubt, nothing herein shall constitute or be deemed a release by any Prior Owner.**

**Counsel for the Debtors has been involved in all restructuring efforts for at least two years prior to the Petition Date and is aware of no claims against any Current D&Os. Nevertheless, the Plan contemplates that the UCC and/or Litigation Trustee will conduct an investigation to determine if any such claims exist. The results of the investigation will be presented to the Reorganization Committee, which will evaluate the findings and recommendations presented and make a written determination as to whether any such alleged claims should be brought. The decision of the Reorganization Committee is final and binding as to the Debtors, HRH and the UCC, but is not binding on any other party in interest. Any party-in-interest may object to the Reorganization Committee's D&O Report in accordance with and subject to Article IX.D hereof.**

**Counsel for the UCC has not conducted an investigation of claims against any of the Released Parties, but the proposed releases were a critical component of the mediated**

resolution that undergirds the Plan, including the release of potential Avoidance Actions with respect to the Outstanding Judgment and the termination of the Bayonne Lease.

**Exculpation and Limitation of Liability**

Except as otherwise specifically provided herein, the Exculpated Parties shall not have or incur, and are hereby released and exculpated from, any liability, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively in law or equity, to any Holder of a Claim or an Interest, or any other party-in-interest, or any of their respective members, directors, officers, managers, trustees, employees, advisors, attorneys, professionals, agents, partners, stockholders or Affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Combined Disclosure Statement and Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction), and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Combined Disclosure Statement and Plan. For the avoidance of doubt, nothing contained in this paragraph shall exculpate acts or omissions prior to the Petition Date or post-Effective Date.

**Injunction**

Effective as of the Effective Date, all Persons and Entities that hold, have held, or may hold a claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy, action, proceeding, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, or right to payment, or liability of any nature whatsoever, that is released, exculpated, compromised, or settled pursuant to this Combined Disclosure Statement and Plan, shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions (other than actions to enforce any rights or obligations under the Combined Disclosure Statement and Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum against or affecting the Debtors, the Litigation Trust, or any of their respective property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order against the Debtors, the Litigation Trust, or any of their respective property; (iii) creating, perfecting, or in any way enforcing in any manner, directly or indirectly, any encumbrance or Lien of any kind against the Debtors, the Litigation Trust, or any of their respective property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtors, the Litigation Trust, or any of their respective property, except with respect to any right of setoff asserted prior to the entry of the Confirmation Order, whether asserted in a Proof of Claim or otherwise, or as otherwise contemplated, impaired, or allowed by the Plan; (v) acting or

#124767087v7

proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Combined Disclosure Statement and Plan; and (vi) prosecuting or otherwise asserting (A) any Claim or Interest, including any right, claim, or Cause of Action released pursuant to the Plan, (B) any form of objection to any Claim that is Allowed by the Plan and Confirmation Order, or (C) Avoidance Actions against any Holder of a Claim that is Allowed or any Avoidance Action released by the Plan.  Additionally, unless otherwise explicitly stated in the Combined Disclosure Statement and Plan, in furtherance of the releases granted by the Plan or Confirmation Order, the injunction contemplated by this paragraph shall prohibit the assertion against the Litigation Trust and the Litigation Trustee of all Claims or Interests, if any, related to the Debtors.

Confirmation of the Plan shall further have the effect of permanently enjoining all Persons and Entities from obtaining (i) any documents or other materials from current counsel for the Debtors that are in the possession of such counsel as a result of or arising in any way out of its representation of the Debtors, *provided, however*, that the Litigation Trustee shall be entitled to obtain any such documents or other materials as are reasonably necessary to prosecute or liquidate the Litigation Trust Assets, (ii) any documents or other materials from current counsel for the UCC that are in the possession of such counsel as a result of or arising in any way out of its representation of the UCC, *provided, however*, that the Litigation Trustee shall be entitled to obtain any such documents or other materials, or (iii) Books and Records, *provided, however*, that the Litigation Trustee shall be entitled to obtain any such Books and Records as are reasonably necessary to prosecute or liquidate the Litigation Trust Assets.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASES, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: January 24, 2025

**DILWORTH PAXSON LLP**
Peter C. Hughes, Esq. (Bar No. 4180)
800 King Street – Suite 202
Wilmington, DE 19801

-and-

**DILWORTH PAXSON LLP**
Lawrence G. McMichael, Esq. (*pro hac vice*)
Peter C. Hughes, Esq.
Anne M. Aaronson, Esq. (*pro hac vice*)
Jack Small, Esq. (*pro hac vice*)
1650 Market St., Suite 1200
Philadelphia, PA 19103

*Counsel to the Debtors*

**PACHULSKI STANG ZIEHL & JONES LLP**
Bradford J. Sandler, Esq. (Bar No. 4142)
James E. O'Neill, Esq. (Bar No. 4042)
Colin R. Robinson (Bar No, 5524)
919 N. Market Street, 17th Floor
Wilmington, DE 19899-8705 (Courier 19801)

-and-

**SILLS CUMMIS & GROSS, P.C.**
Andrew Sherman, Esq. (*pro hac vice*)
Boris Mankovetskiy, Esq. (*pro hac vice*)
One Riverfront Plaza
Newark, NJ 07102

*Counsel to the Official Committee of Unsecured Creditors*