**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CarePoint Health Systems Inc. d/b/a Just Health Foundation, et al. [1] | : | Case No. 24-12534 (JKS) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | **Ref. Docket No. 434** |

---------------------------------------------------------------x

**OBJECTION OF SENIOR SECURED AGENTS TO
MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR ENTRY OF AN ORDER REGARDING THE CHALLENGE DEADLINE**

Capitala Private Advisors, LLC and Capitala Specialty Lending Corp., in their capacities as administrative agents and collateral agents under certain of the Debtors' prepetition senior secured credit facilities (in such capacities, the "Senior Secured Agents"), by their undersigned counsel, hereby submit this objection (this "Objection") to the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Regarding the Challenge Deadline* [D.I. 434] (the "Motion").[2] In support of this Objection, the Senior Secured Agents respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings provided to such terms in the Motion.

32838732.1

**OBJECTION**

I. **The Challenge Deadline is Effective.**

1. The Committee concedes that the Court established a deadline of seventy-five (75) days from entry of the Interim DIP Orders for the Committee to challenge the Debtors' stipulations and releases contained therein (the "Challenge Deadline"). *See* Motion at ¶ 13; Hoboken/Christ Interim DIP Order at ¶ 21; Bayonne Interim DIP Order at ¶ 16. Notwithstanding this concession, however, the Committee points to certain language in the Subsequent Interim DIP Orders[3] (that "all provisions of the Interim DIP Orders are subject to entry of final orders") and attempts to argue that this language modified the relief in the Interim DIP Orders, rendering *all* provisions of the Interim DIP Orders, including the Challenge Deadline, ineffective until entry of final orders. Motion at ¶ 23 (quoting the Subsequent Interim DIP Orders at ¶ 2). Among other issues, the Committee's interpretation of this language:

   a. wrongly conflates interim relief with ineffectiveness; and

   b. is inconsistent with how the parties have proceeded in these Chapter 11 Cases in reliance on other provisions of the Interim DIP Orders.

   A. <u>The Motion wrongly conflates interim relief with ineffectiveness</u>.

2. It is common practice (and contemplated by the Local Rules) for the Court to enter interim orders approving first-day motions, including first-day financing and cash collateral motions, with an expectation that parties can and will rely on those interim orders pending entry of a final order. It is also common practice for the Court to make clear at first-day hearings that any interim relief is granted without prejudice to the rights of any subsequently appointed official committee of unsecured creditors to object to the Court granting such relief on a final basis. That

---

[3] As used herein, "Subsequent Interim DIP Orders" means, collectively, the December 10 Interim DIP Order, the December 26 Interim DIP Order, and the January 8 Interim DIP Order.

32838732.1

interim orders are non-prejudicial to committees for purposes of objecting to final relief, however, does not render interim relief ineffective—otherwise parties could not act in reliance on interim relief, and first-day orders would serve little purpose. Rather, interim relief is (and must be) effective, while also preserving the right of committees and other interested parties to oppose the relief on a final basis.

3. The plain language of the Interim DIP Orders in these Chapter 11 Cases also reflect an intent and expectation that the interim relief granted therein is binding and effective upon entry. For example, the "Binding Effect" in paragraph 29 of the Hoboken/Christ Interim DIP Order expressly provides that the order is "binding on all creditors and parties in interest in the Chapter 11 Cases…". Hoboken/Christ Interim DIP Order at ¶ 29. The Hoboken/Christ Interim DIP Order also states that "[t]he terms and conditions of this Interim Order shall be effective and immediately enforceable upon its entry by the Clerk of Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise." *Id*. at ¶ 37. Analogous provisions are also found in the Bayonne Interim DIP Order. *See, e.g.,* Bayonne Interim DIP Order at ¶¶ 20, 26.

4. The Motion asserts that certain language in the Subsequent Interim DIP Orders (that "all provisions of the Interim DIP Orders are subject to entry of final orders") somehow unwinds or terminates the effectiveness of the relief granted in the Interim DIP Orders. However, that language from the Subsequent Interim DIP Orders is a truism—it simply enunciates and confirms the existing right of interested parties to oppose the granted relief on a final basis. It does not unwind or otherwise terminate the effectiveness of interim relief upon which the Senior Secured Parties (among others, as discussed in Section I.B. *infra*) have relied.

B.     <u>The Motion's flawed interpretation is inconsistent with how parties (including the Committee) have proceeded in these Chapter 11 Cases in reliance on other provisions of the Interim DIP Orders.</u>

5.     Numerous parties, including the Debtors, the Committee and their professionals, have taken action in these Chapter 11 Cases in reliance on the effectiveness of the interim relief provided by the Interim DIP Orders. For example, the Debtor Borrowers incurred Ten Million Dollars ($10,000,000.00) of postpetition financing from the DIP Lender in reliance on the Hoboken/Christ Interim DIP Order. *See* Hoboken/Christ Interim DIP Order at ¶ 4. The Debtors and the Committee have also relied on the effectiveness and protection of the Carve-Outs under the Interim DIP Orders to retain and pay for the fees and expenses of their professionals. *See Id.* at ¶ 15; *Bayonne Interim DIP Order* at ¶ 9. If the Motion's flawed interpretation is correct (which it is not), the Borrower Debtors should not have been permitted obtain financing, the DIP Lender should not have the benefit of the DIP Superiority Claims or DIP Liens, and the Carve-Out is not in effect—in each case because a final order has not yet been entered (and apparently will not be entered until confirmation of a chapter 11 plan in these cases, which may never occur given the fundamental infirmities of the proposed Plan and significant creditor opposition). In light of these key constituencies' reliance on the effectiveness of relief under the Interim DIP Orders (including the Committee and its counsel), it is clear that neither the Court nor any of these parties have proceeded in a manner consistent with the Motion's interpretation of the Interim DIP Orders. The relief granted under the Interim DIP Orders, including the Challenge Deadline, is clearly valid and effective.

II.     **Cause Does Not Exist to Extend the Challenge Deadline.**

6.     As noted by counsel for the Senior Secured Agents at the January 17, 2025 status conference on the Motion, within hours of first being advised of the Committee's flawed interpretation of the Interim DIP Orders, the Senior Secured Agents attempted to negotiate in good

32838732.1

faith with the Committee regarding a reasonable extension of the Challenge Deadline. However, rather than engage in such negotiations, the Committee elected to file the Motion[4] seeking an indefinite extension of the Challenge Deadline.

7. Specifically, the Committee seeks an extension of the Challenge Deadline until the earlier of (a) the date(s) set forth in final orders entered by the Court with respect to the DIP Financing Motions and (b) the date set forth in an order confirming the Plan. However, none of these dates are discernable. No hearing has been scheduled for the Court to consider approval of the DIP Financing Motions on a final basis. And, although a hearing on Plan confirmation has been scheduled, confirmation is far from certain (as noted above). Moreover, it remains unknown what date(s) final orders entered by the Court with respect to the DIP Financing Motions or an order confirming the Plan would set for the Challenge Deadline, as proposed forms of such orders have neither been shared with the Senior Secured Agents nor filed with the Court. As such, the Committee's requested extension, if granted, would have the effect of extending out the Challenge Deadline indefinitely. The Senior Secured Agents respectfully submit that the proposed indefinite extension is unreasonable, and there is simply no cause to approve such an extension under the facts and circumstances of these Chapter 11 Cases.

8. The Senior Secured Agents are not seeking, as the Committee alleges, to impose a Challenge Deadline after the fact. *See* Motion at ¶ 30. The Challenge Deadline was imposed upon entry of the Interim DIP Orders, nearly ninety (90) days ago. The Committee was appointed on November 19, 2024, and counsel for the Committee has been involved in these Cases since November 20, 2024, nearly eighty (80) days ago. Thus, after taking into account the bridge order

---

[4] The Committee initially filed the Motion on an emergency basis, which the Court denied at the January 17, 2025 hearing. *See Official Committee of Unsecured Creditors' Motion to Shorten Notice of Motion Regarding the Challenge Deadline* [D.I. 435], Transcript of January 17, 2025 Hearing, pg. 20 line 7 through pg. 24 line 8.

32838732.1

that the Senior Secured Agents offered the Committee with respect to the Challenge Deadline pending this Court's ruling on the Motion,[5] the Committee will have had nearly ninety (90) days after retaining counsel to investigate potential claims against the Senior Secured Parties—which far exceeds the amount of time Local Rule 4001-2(a)(i)(Q) affords the Committee.[6]

9.  As the Committee correctly notes, these Chapter 11 Cases are (for better or for worse) speeding to their conclusion. While the Senior Secured Agents appreciate and commend the Committee's significant efforts to date to bring order to the often-chaotic nature of these Chapter 11 Cases, these efforts simply do not justify further extension of an already prolonged investigation period. The Senior Secured Agents should be afforded the certainty of the Challenge Deadline that was approved in connection with the stipulations and releases in the Hoboken/Christ Interim DIP Order. That deadline, especially as extended through application of the bridge order, is both reasonable and consistent with the Local Rules.

*Remainder of page intentionally left blank*

---

[5] The Senior Secured Agents offered to extend the Challenge Deadline solely for the Committee to seven (7) days after the Court rules on the Motion.

[6] Prior to the application of the bridge order, the Challenge Deadline, consistent with Local Rule 4001-2(a)(i)(Q), was January 22, 2025. Therefore, pursuant to the Local Rules, the Committee had sixty-three (63) days from retaining counsel to conduct its investigation. With the application of the bridge order, the Committee will have until at least February 19, 2025 (seven (7) days after the hearing on the Motion), which is ninety-one (91) days after the Committee retained counsel.

32838732.1

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Senior Secured Agents request that the Court deny the Motion and grant such other and further relief as is just and appropriate.

Dated: February 4, 2025         Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *Robert F. Poppiti, Jr.*
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
           rpoppiti@ycst.com

-and-

**MOORE & VAN ALLEN PLLC**
Alan W. Pope (admitted *pro hac*)
Zachary H. Smith (admitted *pro hac*)
Gabriel L. Mathless (admitted *pro hac*)
Matthew K. Taylor (admitted *pro hac*)
Moore & Van Allen PLLC
100 North Tyron St, Suite 4700
Charlotte, NC 28202-4003
Telephone: (704) 331-1000
Email: alanpope@mvalaw.com
           zacharysmith@mvalaw.com
           gabrielmathless@mvalaw.com
           matthewtaylor@mvalaw.com

*Counsel to Capitala Private Advisors, LLC and Capitala Specialty Lending Corp.*

32838732.1