IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| CAREPOINT HEALTH SYSTEMS, INC., *et al.*,[1] | ) Case No. 24-12534 (JKS) |
| Debtors. | ) (Jointly Administered) |
| | ) Hearing Date: February 12, 2025, at 10:00 a.m. |
| | ) Related to Docket Nos. 320 and 381 |

**ACCESS INFORMATION MANAGEMENT CORPORATION'S
REPLY IN RESPONSE TO DEBTORS' OBJECTION TO AND IN FURTHER
SUPPORT OF ITS MOTION TO COMPEL AND FOR RELATED RELIEF**

Access[2] respectfully submits this Reply in response to the Debtor's objection [Docket No. 381] (the "**Debtors' Objection**") to *Access Information Management Corporation's Motion (I) To Compel (A) Debtors' Assumption Of Executory Contracts, Or Alternatively, (B) Debtors To Provide Direction As Required By The Contracts And Applicable Law With Respect To The Continued Storage, Transfer, Destruction Or Other Disposition Of The Health Care Related Documents And Information Subject To The Contracts, (II) For Relief From The Automatic Stay, And (III) For Such Other Relief As Is Necessary Under The Circumstances* [Docket No. 320] (the "**Motion to Compel**"). In support, Access respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint HealthHoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii)Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint HealthBayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

[2] Capitalized terms not defined herein have the meanings given to them in the Motion to Compel (as defined herein).

1. Debtors' Objection does not dispute either that (i) the Document Storage Contracts and the Document Archive Contract (collectively, the "**Access Contracts**") are executory contracts that must be assumed or rejected by Debtors in these cases, or (ii) included among the Debtors' Health Care Information stored by Access pursuant to the Access Contracts is information and documents relating to patient identity and care, which is defined as "PHI" in the Access Contracts.[3]

2. Debtors are obligated under state and federal law to retain PHI for extended periods of time:

- New Jersey Hospital licensing regulations, NJAC 8:43G-15.2, refer to New Jersey statute NJSA 26:8-5, which requires hospitals to maintain records for 10 years.

- N.J.S.A. 26:8-5 requires hospitals to retain medical records of minors for the longer of 10 years following discharge, or the patient turning 23 years old whichever is longer.

- N.J.S.A. 26:8-5 also requires retention of discharge summary sheets for hospitalized patients for 20 years following discharge.

- New Jersey Board of Medical Examiners regulation NJAC 13:35-6.5 requires physicians to maintain records for 7 years.

- Medicare Conditions of Participation require hospitals to maintain records for at least 5 years (42 CFR 482.24(b)(1)).

---

[3] As explained in the Motion to Compel, PHI is defined under the Document Storage Contracts as "any information relating to the healthcare of an individual who is or has been a patient or client of [the Debtors] that contains information that identifies or can reasonably be linked to the identity of such an individual." *See* Motion to Compel at ¶ 4.

2

- Medicare guidance (see attached Exhibit 1) states that Medicare managed care program providers must maintain records for 10 years.

3. Because Debtors had not been communicating with Access prior to the filing of the bankruptcy cases and had not responded substantively to inquiries from counsel regarding their intentions with respect to Access, the Access Contracts and the continued storage or transfer or destruction of the Health Care Information being stored pursuant to the Access Contracts, *see* Motion to Compel at ¶¶ 8-9, 18, Access filed the Motion to Compel on December 17, 2024.

4. Debtors' Objection (filed on December 31, 2024) requested denial of the Motion to Compel based on Debtors' position that they should not be required to decide "immediately" whether to assume or reject "because these Chapter 11 Cases are still in the early stages," *see* Debtors' Objection at ¶ 3; and because Access assertedly would not be prejudiced by deferral because Debtors intended to pay Access on a post-petition basis for its storage services, *see* Debtors' Objection at ¶ 2 ("Access also asserts that it is entitled to an administrative expense claim for post- petition services rendered pursuant to the Access Contracts. The Debtors do not object to payment of an administrative expense claim on a current basis.").

5. The hearing on the Motion to Compel was adjourned to February 12, 2025, providing the parties with an opportunity to exchange information with respect to post-petition amounts due and owing under and other information with respect to the Access Contracts (which Access has provided to the Debtors).

6. Since the filing of Debtors' Objection, events have progressed rapidly in these cases including, inter alia:

- On January 8, 2025, Debtors filed a combined disclosure statement and plan of reorganization [Docket No. 412] and thereafter filed four amended versions,

3

with the solicitation version thereof filed on January 24, 2025 [Docket Nos. 497, 522, 538 and 551].

- To accommodate Debtors' representations that they lack sufficient liquidity to remain in bankruptcy for an extended period, a March 11, 2025, hearing has been set for confirmation.

- The confirmation schedule established by the Court's order of January 24, 2025 [Docket No. 555], inter alia, requires Debtors to file a plan supplement inclusive of lists of contracts to be assumed and rejected by the Debtors in connection with confirmation by February 20, 2025.

- On January 10 and 14, 2025, Access provided invoices and a claim summary to Debtors evidencing post-petition amounts due in connection with the Access Contracts for November and December 2024 and January 2025, in the aggregate amount of $231,451.26 (which amount, of course, must be increased for February 2025 amounts due in the approximate amount of $77,000).

- On January 27, 2025, Access provided reports to Debtors with respect to the volume and characteristics of the Health Care Information being stored by Access pursuant to the Access Contracts inclusive of whether children's records were included in the various categories.

7. Debtors have not since the filing of Debtors' Objection made any payments to Access nor have they offered or otherwise made any effort to pay anything.

8. Access and Debtors have been engaged in business-level discussion with respect to the Health Care Information being stored by Access pursuant to the Access Contracts but Access has received no direction from Debtors with respect to the continued storage, transfer or destruction thereof.

4

**Debtors Can and Should Make Their Intentions With Respect to the Access Contracts Known and Give Valid Direction to Access With Respect to the Continued Storage or the Transfer or Destruction of the Health Care Information**

9. Access submits that Debtors have had sufficient time to make a determination with respect to assumption or rejection of the Access Contracts. As of the February 12 hearing on the Motion to Compel, over eight weeks will have elapsed since the Motion to Compel was filed (and nearly three months since Access began asking Debtors about the Access Contracts). Only one week will remain after the February 12 hearing until Debtors are required by Court order to file their lists of assumed and rejected contracts.

10. It is not reasonable at this point for Debtors to assert either that they have not had sufficient time to decide what to do with respect to the Access Contracts or with respect to the Health Care Information being stored pursuant to the Access Contracts, which Debtors have a legal duty to maintain.

11. That Debtors must deal responsibly with their Health Care Information cannot come as a surprise given the state and federal record retention obligations reference above. Even if Debtors are not inclined to assume the Access Contracts the Health Care Information being stored must either be transferred or, if no longer subject to retention requirements, destroyed, each in responsible manners to maintain patient privacy. Such is not anticipated to be either a quick or simple process and due care must be given by Access, the Debtors and any acquiror of the Debtors' assets or business operations to ensure proper retention, transfer and/or destruction of the information. The sooner the process starts the better for all concerned.

**Access is Being Prejudiced by Debtors Failure to Comply With Their Post-Petition Payment Obligations Under the Access Contracts**

12. Notwithstanding the promise made in Debtors' Objection to avoid being compelled to make assumption/rejection decisions and otherwise to provide clear and valid direction to

Access with respect to the continued storage, transfer or destruction of the Health Care Information, Debtors have paid nothing to Access for its post-petition services, turning Access, in effect, into an involuntary post-petition lender. The quid pro quo for continued time for Debtors to decide whether to assume or reject was, and must be, Debtors' promise to pay Access on a post-petition basis, which has gone unfulfilled

13.     Without payment and without direction with respect to the Health Care Information, Access is held in limbo and is suffering on-going prejudice to its interests. Debtors must be compelled to pay post-petition amounts due to Access under the Access Contracts, including the $231,451.26 accrued since the filing of the bankruptcy through January 2025 and then monthly on a current basis thereafter.

14.     At minimum, Access must be allowed an administrative claim for the post-petition amounts due under the Access Contracts through January 31, 2025, in the amount of $231,451.26, subject to and without prejudice to Access seeking allowance of additional claims for services provided under the Access Contracts for periods after January 31, 2025.

WHEREFORE, Access respectfully requests that the Court enter an order granting relief for Access as requested by the Motion to Compel and such other relief to which Access is or may be entitled under the circumstances.

Dated: February 7, 2025                **SAUL EWING LLP**

By:     */s/ John D. Demmy*
        John D. Demmy (Bar No. 2802)
        Nicholas Smargiassi (Bar No. 7265)
        1201 N. Market Street, Suite 2300
        P.O. Box 1266
        Wilmington, DE 19899
        Telephone: (302) 421-6848
        Email: john.demmy@saul.com
               nicholas.smargiassi@saul.com

*Attorneys for Access Information Management Corporation*