**EXHIBIT A**

(Form of the Litigation Trust Agreement)

# LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement ("Litigation Trust Agreement" or "Agreement"), dated as of March [•], 2025, by and among CarePoint Health Systems Inc. d/b/a Just Health Foundation  and its affiliated debtors and debtors-in-possession (the "Debtors") and Paul Navid of Province, LLC as Litigation Trustee (the "Litigation Trustee" or "Trustee") under that certain *Fifth Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization*, dated February [•], 2025 (as amended, modified, and/or supplemented, the "Plan"), is hereby being executed to facilitate the implementation of the Plan, which provides for the establishment of the Litigation Trust (as defined below) created by this Litigation Trust Agreement and the administration and disposition of the Trust Assets (as defined below), all for the benefit of the holders of certain Claims[1] as set forth in the Plan.  The Litigation Trustee's powers and duties are as set forth herein.

**WHEREAS**, on November 3, 2024 (the "Petition Date"), all Debtors – except IJKG Opco LLC – filed voluntary chapter 11 petitions, and an involuntary chapter 11 case was commenced against IJKG Opco LLC, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or "Court");

**WHEREAS**, under section 1121 of the Bankruptcy Code, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed the Plan;

**WHEREAS**, on March [•], 2025, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

**WHEREAS**, the Plan and the Confirmation Order provide for the establishment of a Litigation Trust (as defined in the Plan, the "Litigation Trust") pursuant to this Litigation Trust Agreement and the appointment of the Litigation Trustee to, among other things, administer the Litigation Trust for the benefit of the Litigation Trust Beneficiaries;

**WHEREAS**, the Plan will become effective on the Effective Date;

**WHEREAS**, Paul Navid of Province, LLC is hereby appointed Litigation Trustee;

**WHEREAS**, a Litigation Trust Oversight Committee (the "Oversight Committee") has been appointed effective as of the Effective Date to oversee the Litigation Trust and consult with the Litigation Trustee in the performance of the Litigation Trustee's duties and obligations;

**WHEREAS**, the Oversight Committee currently consists of the persons and/or entities identified on Schedule 1 attached hereto;

**WHEREAS**, the Plan provides for, *inter alia*:

---

[1] Unless otherwise defined herein, all capitalized terms contained in this Litigation Trust Agreement have the meanings ascribed to them in the Plan. To the extent that a definition of a term in the text of this Litigation Trust Agreement and the definition of such term in the Plan are inconsistent, the definition in the Plan shall control.

(a)     the transfer to the Litigation Trust, on the Effective Date, of the Debtors'
and their Estates' rights, title, and interest in all of the Litigation Trust
Assets (as used in this Litigation Trust Agreement, the "Trust Assets"),
which shall include, without limitation (i) the Litigation Trust Seed
Money, subject to the first lien of Hudson Regional Hospitals, LLC or its
designee ("HRH") to the extent of the Litigation Trust Seed Money on the
proceeds of the Litigation Claims, as set forth in Section 1.4, below ; (ii)
the Litigation Claims and proceeds therefrom, subject to the terms of the
Plan governing the allocation of such proceeds; and (iii) the
Administrative Expense Claims Reserve, free and clear of all Claims,
Liens, charges, and other encumbrances;

(b)     the distribution of Trust Assets and Litigation Trust Proceeds, in
accordance with the terms of the Plan, for the benefit of Litigation Trust
Beneficiaries (the "Beneficiaries;"[2] *provided, however*, that to the extent
any Claim is not an Allowed Claim, the Holder of such Claim shall not be
deemed a Beneficiary) with respect to such Claim; *provided, further* that if
a portion of a Claim is not an Allowed Claim, the Holder of such Claim is
a Beneficiary with respect to that portion of the Claim that is Allowed, and
is not a Beneficiary with respect to that portion of the Claim that is not
Allowed;

(c)     distributions from the Litigation Trust, if any, to Beneficiaries shall be
made solely from Trust Assets and Litigation Trust Proceeds;

(d)     the federal income tax treatment (i) of the Beneficiaries as the grantors and
owners of their respective share of the Litigation Trust Assets transferred
to the Litigation Trust (other than such Litigation Trust Assets as are
allocable to Disputed Claims) and (ii) of the transfer of the Trust Assets to
the Litigation Trust as a deemed transfer from the Debtors to the
Beneficiaries followed by a deemed transfer by the Beneficiaries to the
Litigation Trust;

(e)     the establishment of (i) the Disputed Claims Reserve, from which
payments may be made to a Holder of a Disputed Claim if such Claim
becomes an Allowed Claim; and (ii) other appropriate reserves, including
as may be reasonably necessary to pay Litigation Trust Expenses (as
defined in the Plan, "Trust Expenses") (including the reasonable fees,
costs, and expenses of the Litigation Trustee and the Litigation Trustee's
attorneys and other professionals);

(f)     the payment, in accordance with the terms of the Plan, of Allowed
Administrative Expense Claims, Allowed Priority Claims and Allowed
General Unsecured Claims; and distributions on account of Claims that

---

[2] For the avoidance of doubt, the term "Beneficiaries" in this Agreement is defined as the term "Litigation Trust
Beneficiaries" is defined in the Plan, which is "HRH and Holders of Allowed General Unsecured Claims."

were Disputed or otherwise not Allowed as of the Effective Date, if such Claims become Allowed; and

(g)    the administration of the Litigation Trust and the Trust Assets by the Litigation Trustee for the purposes and in the manner set forth in this Litigation Trust Agreement subject to the Plan; and

**WHEREAS**, the Litigation Trust is intended to be treated as a liquidating trust pursuant to United States Treasury Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and as a grantor trust subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part 1, Subpart E of the Tax Code (hereinafter defined) owned by the Beneficiaries as grantors;

**NOW**, **THEREFORE**, pursuant to the Plan and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

# ARTICLE 1

# DECLARATION OF TRUST

1.1    **Purpose of the Litigation Trust.**  The Debtors and the Litigation Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the Bankruptcy Code and applicable tax statutes, rules, and regulations, to the extent incorporated in this Agreement, hereby constitute and create a trust (*i.e.*, the Litigation Trust) for the purpose of monetizing the Trust Assets for the benefit of the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business (except to the extent reasonably necessary to carry out, and consistent with, the purpose of the Litigation Trust, provided that any such conduct will not affect the Litigation Trust's tax status as a liquidating trust).  In particular, the Litigation Trust, through the Litigation Trustee, shall (i) pending the reduction to Cash of the Trust Assets (and any non-Cash proceeds thereof), manage, and collect and obtain proceeds from the Trust Assets, with the goal of reducing the Trust Assets (and any non-Cash proceeds thereof) to Cash; (ii) make distributions pursuant to this Agreement, the Plan, and the Confirmation Order; and (iii) take such steps as are reasonably necessary to accomplish such purposes, all as more fully provided in, and subject to the terms and provisions of, the Plan, the Confirmation Order, and this Litigation Trust Agreement.  The Litigation Trust shall not have authority to engage in a trade or business, and no portions of the Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary for the prompt and orderly collection and reduction to Cash of the Trust Assets (and any non-Cash proceeds thereof), with the goal of maximizing such assets for the benefit of the Beneficiaries.

1.2    **Name of the Litigation Trust.**  The Litigation Trust established hereby shall be known as the "CarePoint Litigation Trust."  In connection with the exercise of the Litigation Trustee's powers, the Litigation Trustee may use such name or such variation thereof as the Litigation Trustee sees fit and may transact the business and affairs of the Litigation Trust in such name.

3

**1.3     Transfer of Assets to Create Litigation Trust.**  Pursuant to the Plan and the Confirmation Order, the Debtors and their Estates hereby irrevocably grant, release, assign, transfer, convey, and deliver to the Litigation Trustee, as of the Effective Date, the Trust Assets, to have and to hold by the Litigation Trustee and the Litigation Trustee's successors in trust and to be applied as specified in the Plan and this Litigation Trust Agreement.  On the Effective Date and from time to time thereafter, upon the direction of the Litigation Trustee, the Debtors shall execute and deliver (or cause to be executed and delivered) to the Litigation Trustee any and all such documents, in recordable form where necessary or appropriate, and the Debtors shall take or cause to be taken such further or other action, as the Litigation Trustee may reasonably deem appropriate, to vest or perfect in or confirm to the Litigation Trustee, title to and possession of all of the Trust Assets.  The Litigation Trustee shall be responsible for establishing and maintaining such accounts as the Litigation Trustee shall deem necessary or appropriate to carry out the provisions of this Litigation Trust Agreement, and to perform all obligations specified for the Litigation Trustee under the Plan, the Confirmation Order, and this Litigation Trust Agreement.

**1.4     Litigation Trust Seed Money**. The Litigation Trust is funded with Litigation Trust Seed Money in the amount of $3,500,000, in accordance with the Plan, secured by a first lien in favor of HRH to the extent of the Litigation Trust Seed Money on the proceeds of the Litigation Claims. For the avoidance of doubt, it is acknowledged that the Trust is hereby granting HRH a first lien on the proceeds of the Litigation Claims to secure HRH's right to repayment and collection of the Litigation Trust Seed Money from such proceeds. The Litigation Trustee shall have the sole and absolute discretion to determine whether to require the transfer of the Litigation Seed Trust Money at inception of the Litigation Trust or to allow a line of credit to access the Litigation Trust Seed Money.  HRH's claim against the Litigation Trust in the amount of any actually advanced Litigation Trust Seed Money shall bear interest at the rate of eighteen percent (18%) per annum compounded annually. The Litigation Trust Seed Money shall constitute HRH's sole monetary obligation to the Litigation Trust. The Litigation Trust Seed Money, or any portion thereof, may be repaid to HRH by the Litigation Trustee at any time without payment of any penalty or premium of any kind.

**1.5     Litigation Claims**. Subject to the provisions of and authority and limitations set forth in the Plan, including Article IX.D, the Litigation Trust shall have the exclusive right and authority to investigate, commence, pursue and/or settle any Litigation Claims, with the net proceeds of such Litigation Claims to be distributed in accordance with the Plan and this Litigation Trust Agreement. The net proceeds of Litigation Claims (excluding Avoidance Action proceeds) shall first be paid to HRH until the Litigation Trust Seed Money is repaid to HRH, together with accrued interest as provided above. Thereafter, an amount equal to 100% of the net proceeds of Litigation Claims (excluding Avoidance Action proceeds) will belong to the Litigation Trust, until sufficient funds are available to provide a 10% recovery to holders of Allowed General Unsecured Claims, *provided*, *however*, that such net recovery shall not exceed $15 million. Thereafter, the next $5 million of net proceeds of Litigation Claims (excluding Avoidance Action proceeds) shall be paid to HRH. Thereafter, all remaining net proceeds of Litigation Claims (excluding Avoidance Action proceeds) shall be subject to a 65%-35% sharing arrangement between the holders of Allowed General Unsecured Claims, on the one hand, and HRH, on the other hand, until such time as all obligations under the HRH Exit Facility (including the Outstanding Judgment) are satisfied in full; *provided*, *however,* and notwithstanding anything to the contrary herein or in the Plan, that if there is a *bona fide* dispute as to whether the

4

obligations under the HRH Exit Facility are satisfied in full through allocation of net proceeds of Litigation Claims, the amount of the Allowed HRH Claim shall be determined by agreement of HRH, the Reorganized Debtors, and the Litigation Trustee, or, in the event the parties cannot reach a consensual agreement, by Order of the Court. Thereafter, all net proceeds of Litigation Claims (excluding Avoidance Action proceeds) shall be paid to the Litigation Trust, until all Allowed General Unsecured Claims are paid in full. For the avoidance of doubt, "net proceeds" shall exclude any professional fees/costs incurred and paid by the Litigation Trust in connection with the prosecution of any Litigation Claims, but shall include such professional fees/costs as may be awarded as part of the applicable judgment to be paid by a defendant or other third party. Notwithstanding anything herein to the contrary and to avoid doubt, all proceeds of Avoidance Action actions shall belong to the Litigation Trust to be distributed to holders of Allowed General Unsecured Claims; *provided*, *however*, that if and when holders of Allowed General Unsecured Claims obtain a total forty percent (40%) recovery on account of Allowed General Unsecured Claims, then thereafter, all remaining net proceeds of Litigation Claims (specifically including Avoidance Action proceeds) shall be subject to a 65%-35% sharing arrangement between the holders of Allowed General Unsecured Claims, on the one hand, and HRH on the other hand.

**1.6     Acceptance by Litigation Trustee.**  The Litigation Trustee hereby accepts: (i) the appointment to serve as Litigation Trustee; (ii) the transfer of the Trust Assets on behalf of the Litigation Trust; and (iii) the trust imposed on the Litigation Trustee by this Litigation Trust Agreement.  The Litigation Trustee agrees to receive, hold, administer, and distribute the Trust Assets and the income or other proceeds derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order, and this Litigation Trust Agreement.  The Litigation Trustee agrees to perform all activities reasonably necessary to ensure the transfer of the Trust Assets to the Litigation Trustee on behalf of the Litigation Trust.

**ARTICLE 2**

**LITIGATION TRUSTEE - GENERALLY**

**2.1     Appointment.**  The initial Litigation Trustee shall be Paul Navid of Province, LLC.

**2.2     Term of Service**.  The Litigation Trustee shall serve until (i) the termination of the Litigation Trust in accordance with Article 9 of this Litigation Trust Agreement, or (ii) the Litigation Trustee's resignation, death, or removal, all in accordance with the provisions of this Litigation Trust Agreement.

**2.3     Services**.  The Litigation Trustee (solely in his, her, or its individual capacity) shall be entitled to engage in such other activities unrelated to the administration of the Litigation Trust as the Litigation Trustee deems appropriate and which are not in conflict with the Plan, the Confirmation Order, this Litigation Trust Agreement, or the interests of the Beneficiaries resulting from this Litigation Agreement.  The Litigation Trustee shall devote such time as is necessary to fulfill all the Litigation Trustee's duties as Litigation Trustee.

5

**2.4     Resignation, Death, or Removal of Litigation Trustee.**  The Litigation Trustee may resign at any time upon ninety (90) days' written notice to the Oversight Committee.  Such resignation may become effective prior to the expiration of such ninety (90) day notice period upon the appointment of a successor Litigation Trustee by the Litigation Trustee, in consultation with the Oversight Committee, and subject to the consent of HRH, such consent not to be unreasonably withheld.  Such appointment of a successor Litigation Trustee shall not require application to or further order of the Bankruptcy Court, but such successor Litigation Trustee shall be required to execute an instrument accepting such appointment and file such acceptance in the Litigation Trust records; *provided, however*, that the Litigation Trustee may seek Bankruptcy Court approval of such successor Litigation Trustee's appointment in the Litigation Trustee's sole discretion.  The Litigation Trustee may only be removed upon a Final Order by the Bankruptcy Court upon application for good cause shown based upon gross negligence or willful misconduct.  In the event the Litigation Trustee position becomes vacant, the vacancy shall be filled as determined (x) by the Oversight Committee, subject to the consent of HRH, such consent not to be unreasonably withheld, or (y) if the Oversight Committee does not identify a successor Litigation Trustee (or, if the proposed successor Litigation Trustee identified by the Oversight Committee is not reasonably acceptable to HRH), by the Bankruptcy Court upon submissions from any interested party or parties.  Upon appointment pursuant to this Section 2.4, any successor Litigation Trustee, without any further act, shall become fully vested with all the rights, powers, duties, and obligations of such successor Litigation Trustee's predecessor.

**2.5     Trust Continuance.**  The death, incapacity, resignation, or removal of the Litigation Trustee shall not terminate the Litigation Trust or revoke any existing agency (other than any agency of such Litigation Trustee as Litigation Trustee) created pursuant to this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee, and the successor Litigation Trustee appointed in such event agrees that the provisions of this Litigation Trust Agreement shall be binding upon and inure to the benefit of such successor Litigation Trustee and all such successor Litigation Trustee's heirs and legal and personal representatives, successors, or assigns.

**2.6     Compensation and Expenses of Litigation Trustee.**  The Litigation Trustee shall receive (i) reimbursement of reasonable, actual, and necessary costs, fees (including attorneys' fees and other professional fees), and expenses incurred by the Litigation Trustee in connection with the performance of the Litigation Trustee's duties hereunder, and (ii) fair and reasonable compensation for the Litigation Trustee's services as Litigation Trustee as set forth on Schedule 2 attached hereto.  All such reimbursements and compensation shall be paid (or reserved for, as applicable) from the Trust Assets prior to any distribution to the Beneficiaries.  Nothing in the Plan, the Confirmation Order, or this Litigation Trust Agreement shall prohibit the Litigation Trustee from seeking approval of a fee enhancement for extraordinary performance.

**2.7     Retention of Professionals.**  The Litigation Trustee may, without the necessity for application to or approval of the Bankruptcy Court, retain and engage such attorneys, accountants, and other professionals and Persons as may be necessary to carry out the Litigation Trustee's duties under this Agreement on such terms as the Litigation Trustee deems appropriate in the Litigation Trustee's sole discretion, including any law, accounting, or financial advisory

6

firm of which the Litigation Trustee is a partner or otherwise affiliated from time to time and any law, accounting, or financial advisory firm that was retained as a professional in the Debtors' bankruptcy cases. The Litigation Trustee may also award a fee enhancement for extraordinary performance to professionals retained consistent with this Section 2.7. The fees and expenses of all professionals retained consistent with this Section 2.7 shall be borne exclusively by the Litigation Trust, and such professionals may be compensated monthly upon submission of invoices to the Litigation Trustee without review or approval of the Bankruptcy Court or any other party, except as provided in Section 2.8. All fees and expenses of administration of the Litigation Trust and the Litigation Trustee, including pursuant to Section 2.6 and this Section 2.7, shall be paid from the Litigation Trust, and the Litigation Trustee may establish one or more reserves for this purpose.

**2.8    No Court Approval Needed for Payment.** Neither the Litigation Trustee nor any professional retained by the Litigation Trustee is required to seek Bankruptcy Court authorization before the payment of any fees, or expenses, of the Litigation Trustee or any professional retained by the Litigation Trustee. In addition, the Litigation Trustee may pay Professionals in the ordinary course of business for any work authorized by the Litigation Trustee performed on and after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to, or order of, the Bankruptcy Court. Any invoices of the Litigation Trustee and his professionals will be provided to the Oversight Committee and HRH for review and approval. If the Oversight Committee or HRH object to any fees or expenses, any such objection must be made in writing within seven (7) calendar days after receiving the pertinent invoice(s) and identify the time entries subject to the objection and the grounds therefor. The parties will engage in good faith discussions to resolve the objection. If the objection is not resolved, the undisputed portion of the fees and expenses will be promptly paid and the party seeking payment shall have the right to seek approval of any disputed portion from the Bankruptcy Court. Failure to timely object to requested fees and/or expenses shall be deemed a waiver of any such objection and the Oversight Committee's and HRH's consent to the payment of such fees and expenses.

**2.9    Preservation of Privileges**. In connection with the rights, claims and causes of action that constitute Trust Assets, any attorney-client privilege, work-product doctrine, or other privilege or immunity attaching to any documents or communications (whether written, electronic, or oral) transferred to, or otherwise acquired by, the Litigation Trust pursuant to the terms of the Plan or otherwise, shall vest in the Litigation Trustee and the representatives of the Litigation Trust, and the Litigation Trustee is authorized to take any actions to the extent necessary to effectuate the transfer of such privileges and rights attendant thereto. The Litigation Trustee's receipt of all such privileges shall not operate as a waiver of any other privileges or immunities possessed or retained by the Debtors. The Litigation Trustee's disclosure of any privileged documents, communications or information to the members of the Oversight Committee or any *ex-officio* members of the Oversight Committee in connection with their duties under the Plan or hereunder shall not result in any waiver of such privileged documents, communications or information.

## ARTICLE 3

## POWERS AND LIMITATIONS OF LITIGATION TRUSTEE

**3.1    General Powers of Litigation Trustee.** Subject to the provisions of and authority and limitations set forth in the Plan, including Article IX.D, in connection with the administration of the Litigation Trust, except as otherwise set forth herein, the Litigation Trustee shall be a representative of the Debtors and their Estates in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, in addition to any rights and powers granted by law or conferred to it by any provision of the Plan.  Enumeration of any specific rights and powers herein shall not be considered in any way to limit or control the power and authority of the Litigation Trustee to act as specifically authorized by any provision of the Plan and/or any applicable law, and to act in such manner as the Litigation Trustee may deem necessary or appropriate, including, without limitation, to discharge all obligations assumed by the Litigation Trustee, to conserve and protect the Litigation Trust and the Trust Assets, or to confer on the Beneficiaries the benefits intended to be conferred upon them by the Plan.  The Litigation Trustee shall have the power and authority to make all decisions with respect to the Trust Assets and perform those acts necessary or desirable to accomplish the purposes of the Litigation Trust.  The Litigation Trust shall succeed to all the rights of the Debtors and their Estates as to the Trust Assets with authority to protect, conserve, and liquidate the Trust Assets as quickly as reasonably practicable consistent with the purposes of the Litigation Trust.  Subject to the limitations set forth in this Litigation Trust Agreement, the Plan, and the Confirmation Order, and in addition to any powers and authority conferred by law, by the Plan, and by the Confirmation Order, or by any other section or provision of this Litigation Trust Agreement, the Litigation Trustee may exercise all powers granted to the Litigation Trustee hereunder related to, or in connection with, the administration and monetization of Trust Assets and distribution of Cash and other net proceeds derived therefrom in accordance with this Litigation Trust Agreement, the Plan, and the Confirmation Order.  Without limitation, the Litigation Trustee shall be expressly authorized, without need of further approval of the Bankruptcy Court, but notwithstanding anything contained herein and subject to the terms of the Plan, to:

(a)    receive, manage, invest, supervise and protect the Trust Assets;

(b)    make all decisions with respect to the Trust Assets;

(c)    effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and this Litigation Trust Agreement, including to exercise any powers necessary or incidental thereto;

(d)    pay taxes or other obligations incurred by the Litigation Trust and issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms;

(e)    exercise all power and authority that may be exercised, to investigate, commence, pursue, abandon, and/or settle all proceedings related to the Retained Causes of Action or pending in the Chapter 11 Cases (including the power to continue any actions and

8

proceedings that may have been commenced by the Debtors or the Committee prior to the Effective Date to the extent such actions and proceedings relate to Trust Assets), subject to the terms of the Plan;

   (f) take all actions as may be necessary or appropriate to pursue and consummate the HRH Transactions;

   (g) make distributions to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Litigation Trust;

   (h) use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Trust Assets for the purpose of making distributions, and fully consummating the Plan;

   (i) take all steps necessary to wind-up and close the Litigation Trust;

   (j) prosecute objections to Claims, including, but not limited to, Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise); *provided*, *however*, that settlement of any Disputed Claim where the amount in dispute is or is otherwise reasonably valued at or equal to or greater than $1,000,000 shall require HRH's consent, such consent not to be unreasonably withheld;[3]

   (k) investigate and prosecute any and all Causes of Action (including, but not limited to, Litigation Claims, D&O Claims and Avoidance Actions) and compromise, settle, waive, and/or litigate any Causes of Action (including, but not limited to, Litigation Claims, D&O Claims and Avoidance Actions); *provided*, *however*, that decisions regarding the prosecution, compromise, defense of counterclaims, third-party claims or cross-claims, abandonment and/or settlement of any Cause of Action that seeks recovery (or defense – but not including general unsecured claims) of or is otherwise reasonably valued at, equal to, or greater than $1,000,000 or settlement of any Disputed Claim where the amount in dispute is equal to or greater than $1,000,000 shall require HRH's consent, such consent not to be unreasonably withheld; *provided*, *further*, that, to the extent that any proposed settlement may bind, or affect the continued operations of the Debtors or their assets, HRH shall have approval rights to address such issues or concerns, such approval not to be unreasonably withheld;

   (l) prepare and file tax returns for the Litigation Trust to the extent required by law;

   (m) employ and compensate any and all such professionals and agents as the Litigation Trustee, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan, without further order of the Bankruptcy Court;

   (n) establish reserves for, satisfy and pay all Trust Expenses;

---

[3] Notwithstanding anything to the contrary herein, to the extent of any dispute regarding HRH's consent rights as set forth in this Litigation Trust Agreement or in the Plan, such dispute shall be determined by the Court (or the Mediator, if the parties then agree in writing to the extent applicable).

12949189

        (o)     obtain, renew, replace, or supplement insurance policies and to pay any associated obligations, including the payment of associated premiums, and to exercise any other power or authority necessary or incidental thereto;

        (p)     participate in or File any post-Effective Date motion(s) to amend or modify the Plan or this Litigation Trust Agreement, or any appeal(s) of the Confirmation Order;

        (q)     participate in or File any action to enforce or interpret the Plan;

        (r)     subject to HRH's rights as set forth in Section 3.1(k), bind the Litigation Trust; and

        (s)     take all other actions not inconsistent with the provisions of this Litigation Trust Agreement, the Plan, and the Confirmation Order that the Litigation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan and this Agreement, including (without limitation) the following, irrespective of whether the authority to take such actions is expressly enumerated in the Plan so long as such action is not inconsistent with the Plan:

        (i)     filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases;

        (ii)     subject to HRH's rights as set forth in Section 3.1(k), settling disputes as to any amounts owed to the Litigation Trust or the Estates;

        (iii)     overseeing, implementing, and performing under any agreement on behalf of the Litigation Trust;

        (iv)     seeking an estimation of contingent or unliquidated Claims pursuant to 11 U.S.C. § 502(c);

        (v)     opening and maintaining bank accounts on behalf of or in the name of the Litigation Trust, calculating and making distributions, and taking other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Litigation Trust;

        (vi)     receiving, conserving, and managing the Trust Assets;

        (vii)     if the Litigation Trustee determines that any of the Beneficiaries or the Litigation Trust may, will, or has become subject to adverse tax consequences, taking such actions that the Litigation Trustee, in the Litigation Trustee's reasonable discretion, determines are intended to alleviate such adverse tax consequences, including, without limitation, dividing the Trust Assets into several trusts or other structures;

        (viii)     holding legal title to any and all Trust Assets;

        (ix)     establishing, funding, and administering the Disputed Claims Reserve and such other reserves provided for in, or otherwise not inconsistent with, the terms of

the Plan, the Confirmation Order, or this Litigation Trust Agreement, including a reserve for the payment of Trust Expenses;

        (x)     entering into contracts and other business arrangements;

        (xi)     representing the Litigation Trust before governmental and other regulatory or administrative bodies;

        (xii)     [reserved];

        (xiii)     making decisions regarding the retention or engagement of professionals, employees, and consultants by the Litigation Trust and paying, from the Litigation Trust, the fees and charges incurred by the Litigation Trust on or after the Effective Date, including fees of professionals, disbursements, expenses, or support services relating to the implementation of the Plan and this Litigation Trust Agreement, without application to the Bankruptcy Court;

        (xiv)     paying all lawful expenses, debts, charges, and liabilities of the Litigation Trust;

        (xv)     withholding from the amount distributable to any Person or Entity such amount as may be sufficient to pay any tax or other charge that the Litigation Trustee has determined, in his or her sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof; and in the exercise of the Litigation Trustee's discretion and judgment, entering into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld;

        (xvi)     entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order, or this Litigation Trust Agreement and the purposes of the Litigation Trust, and performing all obligations thereunder;

        (xvii)     after consultation with the Oversight Committee and HRH and subject to HRH's rights as set forth in Section 3.1(k), abandoning in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Litigation Trustee's choice, any assets the Litigation Trustee concludes are of no benefit to the Litigation Trust;

        (xviii)     if any performance under this Litigation Trust Agreement by the Litigation Trustee is subject to the laws of any state or other jurisdiction in which the Litigation Trustee is not qualified to act as trustee, nominating and appointing a Person or Entity duly qualified to act as trustee in such state or jurisdiction and requiring from each such trustee such security as designated by the Litigation Trustee; conferring upon such trustee any and all of the rights, powers, privileges, and duties of Litigation Trustee, subject to the conditions and limitations of this Agreement and applicable law; requiring such trustee to be answerable to the Litigation Trustee for all monies, assets, and other property that may be received in connection with the administration of all property; and removing such trustee, with or without cause, and appointing a successor trustee at any time by the execution by the Litigation Trustee of a written

instrument declaring such trustee removed from office, and specifying the effective date and time of removal;

(xix)    investing Cash as deemed appropriate by the Litigation Trustee in Cash equivalents; *provided, however*, that the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a "liquidating trust," within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; *provided further, however*, that any investment of Cash must be with institutions and in investment vehicles covered by Federal Deposit Insurance Corporation ("FDIC") insurance;

(xx)    holding title to any investment in the Litigation Trustee's name as Litigation Trustee or in a nominee's name;

(xxi)    collecting amounts due that constitute Trust Assets, or proceeds thereof and exercising all rights, remedies and privileges with respect to any Trust Assets or proceeds thereof;

(xxii)    filing, amending, and representing the Litigation Trust with respect to, and taking any other necessary actions with respect to, any Medicare and/or Medicaid cost reports or audits, similar cost reports or audits, and any entitlement to any funds relating to any of the foregoing, in each case solely to the extent such funds constitute Trust Assets;

(xxiii)    suing and being sued, subject to the provisions herein, in the Plan, and in the Confirmation Order, and participating in any proceeding with respect to any matter regarding or relating to this Litigation Trust Agreement, the Confirmation Order, the Plan, the Litigation Trust or the Estates;

(xxiv)    delegating any or all of the discretionary power and authority herein conferred at any time with respect to any portion of the Trust Assets or other powers enumerated herein to any one or more reputable individuals or recognized institutional advisors or investment managers or consultants without any liability for any action taken or omission made because of such delegation, except to the extent such delegation constituted gross negligence, willful misconduct, or fraud; and

(xxv)    taking all other actions consistent with the provisions of this Litigation Trust Agreement, the Plan, and the Confirmation Order that the Litigation Trustee deems reasonably necessary or desirable to administer the Litigation Trust.

**3.2    Limitations on the Litigation Trustee.**  Notwithstanding anything in this Litigation Trust Agreement to the contrary, the Litigation Trustee shall not do or undertake any of the following without an order of the Bankruptcy Court approving such decision or action:

(a)    take any action in contravention of the Plan, the Confirmation Order, or this Litigation Trust Agreement;

(b)      take any action that would significantly jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes;

(c)      lend any Trust Assets to the Litigation Trustee;

(d)      purchase Trust Assets from the Litigation Trust;

(e)      transfer Trust Assets to another trust with respect to which the Litigation Trustee serves as trustee;

(f)      grant liens on any of the Trust Assets other than, in accordance with the Plan, the first lien in favor of HRH to the extent of the Litigation Trust Seed Money on the proceeds of the Litigation Claims; or

(g)      guarantee any debt incurred by any third party.

**3.3     Litigation Trustee Conflicts of Interest.**  If the Litigation Trustee determines, in the exercise of the Litigation Trustee's discretion, that the Litigation Trustee has a conflict of interest with respect to any matter, the Litigation Trustee may authorize the Oversight Committee to exercise the rights and authority of the Litigation Trustee with respect to such matter or, after notice to the U.S. Trustee, request that the Bankruptcy Court approve the Litigation Trustee's choice of a designee to act on behalf of the Litigation Trust solely with respect to such matter, with the Oversight Committee's or such designee's authority to so act on behalf of the Litigation Trust to terminate upon the matter's conclusion.

## ARTICLE 4

## LIABILITY OF LITIGATION TRUSTEE

**4.1     Trustee Standard of Care; Exculpation; Limitation on Liability; Indemnification.**  The Litigation Trustee shall not be liable for any act the Litigation Trustee may do or omit to do as Litigation Trustee under the Plan and this Litigation Trust Agreement while acting in good faith and in the exercise of the Litigation Trustee's reasonable business judgment; nor will the Litigation Trustee be liable in any event except for an act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted gross negligence, willful misconduct, or fraud.  The foregoing limitation on liability also will apply to each member of the Oversight Committee (and each such member's representative(s) on the Oversight Committee) and any Person or Entity employed by the Litigation Trustee and acting on behalf of the Litigation Trustee in the fulfillment of the Litigation Trustee's duties hereunder or under the Plan.  In addition, the Litigation Trustee, each member of the Oversight Committee (and each such member's representative(s) on the Oversight Committee), and any Person or Entity employed by the Litigation Trustee and acting on behalf of the Litigation Trustee shall be entitled to indemnification and defense out of the assets of the Litigation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, or having been, a member of the Oversight Committee (or a representative of such a member on the Oversight Committee) or employed by the Litigation Trust or the Litigation Trustee or for performing any functions incidental to such service; *provided, however*, that the foregoing shall not relieve the Litigation

13

Trustee, any member of the Oversight Committee (or any such member's representative on the Oversight Committee), or any Person employed by the Litigation Trustee from liability, nor entitle any of the foregoing entities to indemnification pursuant to the Plan or this Litigation Trust Agreement, for an act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, or fraud. Persons or Entities dealing with the Litigation Trustee or any of the foregoing parties in their respective capacities as such, or seeking to assert claims against the Litigation Trustee or any of the foregoing parties in their capacities as such, shall have recourse only to the Trust Assets (excluding any fund or reserve to pay Trust Expenses) to satisfy any liability incurred by the Litigation Trustee or any of the foregoing parties in their respective capacities as such to such Persons or Entities in carrying out the terms of the Plan and this Litigation Trust Agreement. Satisfaction of any obligation of the Litigation Trust arising pursuant to the terms of this section shall be payable only from the Trust Assets, and such right to payment shall be prior and superior to any other rights to receive on behalf of any Beneficiary any distribution of Trust Assets or proceeds thereof. The Litigation Trust shall have the right to control the defense and settlement of claims as to which it is obligated to indemnify.

      **4.2**    **Bond.** The Litigation Trustee shall not be obligated to give any bond or surety for the performance of any of the Litigation Trustee's duties unless otherwise ordered by the Bankruptcy Court. If so ordered, all costs and expenses of procuring a bond or surety shall be deemed a Trust Expense and payable from the Trust Assets.

      **4.3**    **No Liability for Acts of Predecessor Litigation Trustees.** No successor Litigation Trustee shall be in any way liable for the acts or omissions of any predecessor Litigation Trustee unless a successor Litigation Trustee expressly in writing assumes such responsibility.

      **4.4**    **Reliance by Litigation Trustee on Documents, Mistake of Fact, or Advice of Counsel.** Except as may be otherwise provided in this Litigation Trust Agreement, the Litigation Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Litigation Trustee to be genuine and to have been presented by an authorized party. The Litigation Trustee shall also not be liable if the Litigation Trustee acts in good faith based on a mistake of fact before having actual knowledge of such mistake. The Litigation Trustee shall not be liable for any action taken or suffered by the Litigation Trustee in reasonably relying upon the advice of counsel or other professionals engaged by the Litigation Trustee in accordance with this Litigation Trust Agreement.

      **4.5**    **Insurance.** The Litigation Trustee may cause the Litigation Trust to purchase errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses the Litigation Trustee may incur, including but not limited to attorneys' fees, arising out of or due to the Litigation Trustee's actions or omissions, or consequences of such actions or omissions, other than as a result of the Litigation Trustee's fraud, gross negligence, or willful misconduct, with respect to the implementation and administration of the Plan, the Litigation Trust, and this Litigation Trust Agreement.

## ARTICLE 5

## DUTIES OF LITIGATION TRUSTEE

**5.1    General.**  The Litigation Trustee shall have all the duties specified in the Plan, the Confirmation Order, and this Litigation Trust Agreement.

**5.2    Books and Records.**  The Litigation Trustee shall maintain, in respect of the Litigation Trust, books and records relating to the Trust Assets and income and proceeds realized therefrom, and the payment of expenses of and claims against or assumed by the Litigation Trust, in such detail and for such period of time as may be necessary to enable the Litigation Trustee to make full and proper reports in respect thereof.  Except as expressly provided in this Litigation Trust Agreement, the Plan, or the Confirmation Order, nothing in this Litigation Trust Agreement is intended to require the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust, or as a condition for making any payment or distribution out of the Trust Assets or proceeds therefrom.

**5.3    Establishment of Accounts and Reserves.**

(a)    On the Effective Date or as soon as practicable thereafter, the Litigation Trustee shall establish one or more accounts, which shall consist of all Cash belonging to the Litigation Trust, including all Cash transferred to the Litigation Trust pursuant to the Plan, including, without limitation, any Litigation Trust Seed Money (the "General Account"); *provided, however*, that all Cash must be deposited with institutions covered by FDIC insurance.

(b)    On the Effective Date or as soon as practicable thereafter, the Litigation Trustee shall establish a Disputed Claims Reserve from and within the General Account for the purposes of making distributions to any Holder of a Disputed Claim if such Claim becomes an Allowed Claim or, if such Disputed Claim becomes Disallowed, then to the Holders of Allowed Claims pursuant to the terms of the Plan.  The Litigation Trustee shall have sole discretion to determine the amount to be funded into the Disputed Claims Reserve, provided that such discretion is not exercised in a manner that is inconsistent with the express provisions of the Plan.  Unless otherwise provided in the Plan or this Litigation Trust Agreement, when such a Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds set aside on account of such Claim shall be released from the reserve and shall be treated as funds available for distribution in accordance with the terms of the Plan and this Litigation Trust Agreement.

(c)    The Litigation Trustee shall create, from time to time and as part of the General Account, reserves in amounts sufficient to pay (a) Trust Expenses (including compensation to the Litigation Trustee and the Litigation Trustee's professionals) and (b) all Allowed Administrative Expense Claims (excluding any Allowed Professional Fee Claims) and Allowed Priority Claims, to the extent such Claims are not assumed by the Reorganized Debtors, and Allowed General Unsecured Claims.  Consistent with the Plan, the Litigation Trustee, in the Litigation Trustee's sole discretion, on and after the Effective Date, shall have authority to increase or decrease such reserves as appropriate.

15

(d)     Except as otherwise provided in the Plan, Confirmation Order, and this Litigation Trust Agreement, the Litigation Trustee shall make distributions to Holders of Allowed Claims in accordance with the terms of the Plan in the exercise of the Litigation Trustee's sound discretion, based on, among other things, the amount of Cash on hand, the amount needed to fund any applicable reserves, including any reserves to cover the Trust Expenses, whether there remain any unpaid Allowed Administrative Expense Claims (excluding Allowed Professional Fee Claims), Allowed Priority Claims, and, the amount of Disputed Claims and Claims not yet Allowed, and the amount of General Unsecured Claims that are Allowed at the time, and the status of any pending litigation, if any, affecting such distributions.

## ARTICLE 6

## BENEFICIARIES

**6.1     Effect of Death, Incapacity, or Bankruptcy of Beneficiary.**  The death, incapacity, or bankruptcy of a Beneficiary during the term of the Litigation Trust shall not operate to terminate the Litigation Trust during the term of the Litigation Trust, nor shall it entitle the representatives or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting, or to take any action in any court or elsewhere for the distribution of the Trust Assets or for a petition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary's representatives and creditors (in such capacity) under this Litigation Trust Agreement or in the Litigation Trust.

**6.2     Standing of Beneficiary.**  Except as may be expressly provided in this Litigation Trust Agreement, the Plan, or the Confirmation Order, a Beneficiary does not have standing to direct the Litigation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Litigation Assets.

**6.3     Release of Liability by Beneficiary.**  A Beneficiary shall not have any power to relieve the Litigation Trustee from any duty, responsibility, restriction, or liability that would otherwise be imposed under this Litigation Trust Agreement unless such relief is approved by Final Order of the Bankruptcy Court.

## ARTICLE 7

## DISTRIBUTIONS

**7.1     Distributions from Trust Assets.**  All payments to be made by the Litigation Trustee to any Person or Entity shall be made only in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement, and from the Cash or Cash proceeds of Trust Assets, and only to the extent that the Litigation Trust has sufficient Cash to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Litigation Trust Agreement. The net proceeds of Litigation Claims (excluding Avoidance Action proceeds) shall first be paid to HRH until the Litigation Trust Seed Money is repaid to HRH, together with accrued interest as provided herein and in the Plan. The Litigation Trustee shall distribute to the Beneficiaries the net income of the Litigation Trust plus all net proceeds from the Trust Assets at least annually; *provided* that (i) the Litigation Trust may retain an amount of

16

net proceeds or net income reasonably necessary to maintain the value of its assets, repay HRH's funding of the Litigation Trust Seed Money, pay Allowed Claims, and fund the Disputed Claims Reserve and such other reserves provided for in, or otherwise not inconsistent with, the terms of the Plan, the Confirmation Order, or this Litigation Trust Agreement, including a reserve for the payment of Trust Expenses, and (ii) such distribution is not otherwise inconsistent with the terms of the Plan or the Confirmation Order.  Any distribution made by the Litigation Trustee in good faith shall be binding and conclusive on all interested parties, absent manifest error.

**7.2    Distributions; Withholding.**  The Litigation Trustee shall make distributions at such times, consistent with the terms of the Plan, the Confirmation Order, and this Litigation Trust Agreement, as the Litigation Trustee deems appropriate from all net Cash income and all other Cash proceeds received by the Litigation Trust; *provided, however* that the Litigation Trust may retain such amounts (i) as are reasonably necessary to meet known, anticipated and contingent liabilities and to maintain the value of the Trust Assets during the term of the Litigation Trust; (ii) to pay reasonable administrative expenses, including, without limitation, the compensation and the reimbursement of reasonable costs, fees (including attorneys' and other professional fees), and expenses of the Litigation Trustee in connection with the performance of the Litigation Trustee's duties under this Litigation Trust Agreement, the Plan, and the Confirmation Order; and (iii) to satisfy all other liabilities incurred or assumed by the Litigation Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement.  All such distributions shall be made, subject to any withholding or reserve, as provided in this Litigation Trust Agreement, the Plan, or the Confirmation Order.  Additionally, the Litigation Trustee may withhold from amounts otherwise distributable on behalf of Beneficiaries any and all amounts, determined in the Litigation Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement.  The Litigation Trustee may withhold the entire distribution to any Holder of an Allowed Claim until such time as the Holder provides the Litigation Trustee with the necessary information to comply with any withholding requirements of any governmental unit.

Notwithstanding any other provision of this Litigation Trust Agreement, (i) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution; and (ii) no distribution shall be made to or on behalf of such Holder pursuant to this Litigation Trust Agreement or the Plan unless and until such Holder has made arrangements satisfactory to the Litigation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution.  Any property to be distributed pursuant to this Litigation Trust Agreement or the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Litigation Trust Agreement or the Plan.

**7.3    Non-Cash Property.**  After consultation with the Oversight Committee and HRH and subject to HRH's rights as set forth in Section 3.1(k), **a**ny non-Cash property of the Litigation Trust may be sold, transferred, or abandoned by the Litigation Trustee.  If, in the Litigation Trustee's judgment, such property cannot be sold in a commercially reasonable manner, the Litigation Trustee shall have the right to abandon or otherwise dispose of such

property, including by donation of such property to a charity designated by the Litigation Trustee. Except in the case of gross negligence, willful misconduct, or fraud, no party in interest shall have a cause of action against the Debtors, any manager, partner, director, officer, trustee, employee, consultant, or professional of the Debtors; the Litigation Trust; the Litigation Trustee; or any manager, partner, director, officer, trustee, employee, consultant, or professional of the Litigation Trust or Litigation Trustee arising from or related to the disposition of non-Cash property in accordance with this section.

**7.4    Method of Cash Distributions.**  Any Cash payment to be made by the Litigation Trust pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Litigation Trustee, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.  Mailed distributions shall be sent to the address provided for the Holder of an Allowed Claim in its respective proof of claim filed with the Court or claims agent, if any, or if no proof of claim was filed, at the address provided on the Schedules or such Holder's last address known to the Debtors.  The Litigation Trustee shall not be required to locate the current address for any Holder of an Allowed Claim whose distribution is returned to the Litigation Trustee as undeliverable, in accordance with Section 7.10 hereof.

**7.5    Distributions on Non-Business Days.**  Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**7.6    Objections to Claims.**

(a)    Objection Procedures.  From and after the Effective Date, in accordance with the terms of the Plan, the Litigation Trustee shall have the exclusive authority, right, and standing (but shall not be obligated) to (i) object to and contest the allowance of any and all Claims; (ii) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further notice to any party, or action, approval, or order of the Bankruptcy Court; and (iii) litigate to final resolution objections to Claims; *provided*, *however*, that settlement of any Disputed Claim where the amount in dispute is or is otherwise reasonably valued at equal to or greater than $1,000,000 shall require HRH's consent, such consent not to be unreasonably withheld. No distribution shall be made pursuant to the Plan to a Holder of Claim, Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.  All objections to Claims shall be filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the deadline to object to Claims set forth in Article XI.L of the Plan.

(b)    Resolution of Claims.  The Litigation Trustee shall have the exclusive right to (i) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, upon agreement with the Holder of such Disputed Claim or Claim that has not otherwise been Allowed, without further Order or approval of the Bankruptcy Court; and (ii) litigate to final resolution objections to Claims, *provided*, *however*, that settlement of any Disputed Claim where the amount in dispute is or is otherwise reasonably valued at equal to or greater than $1,000,000 shall require HRH's consent, such consent not to be unreasonably withheld. In addition, to the extent that any proposed settlement may bind, or affect the continued operations of the Debtors or their assets, HRH shall have approval rights to address such issues or concerns, such approval not to be unreasonable withheld.

(c)     <u>Unliquidated and Contingent Claims</u>.  Until such time as an unliquidated Claim, contingent Claim, or a contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions.  The Holder of an unliquidated or contingent Claim will be entitled to a distribution under the Plan only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

**7.7     Minimum Distributions.**  If the amount of Cash to be distributed to the Holder of an Allowed Claim would be less than $50 on a particular distribution date or in the aggregate, no such distribution will be made to such Holder at the discretion of the Litigation Trustee.

**7.8     Rounding.**  Whenever payment or distribution of a fraction of a dollar of value whether in the form of Cash or securities would otherwise be called for, the actual payment or distribution may, at the discretion of the Litigation Trustee, reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one-half of one dollar and a rounding up of such fraction to the nearest whole dollar if the amount is one-half or more of one dollar.

**7.9     Setoff and Recoupment.**  The Litigation Trustee may, to the extent permitted under applicable law, setoff or recoup against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtors or the Litigation Trustee may hold against the Holder of such Allowed Claim that are not otherwise waived, released, or compromised in accordance with the Plan; *provided, however*, that neither such a setoff, recoupment, or failure to effect such a setoff or recoupment, nor the allowance of any Claim, shall constitute a waiver or release by the Litigation Trustee of any such claims, rights, and Causes of Action that the Debtors, the Estates or the Litigation Trustee possesses against such Holder; *provided further,* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Litigation Trustee of any such Claims, rights, or Causes of Action that the Debtors, the Estates, or the Litigation Trustee may possess against such Holder. Any Holder of an Allowed Claim subject to such setoff or recoupment reserves the right to challenge any such setoff or recoupment in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

**7.10     Undeliverable Distributions.**

If the distribution to the Holder of any Allowed Claim is returned to the Litigation Trust as undeliverable, no further distribution shall be made to such Holder, and the Litigation Trustee shall have no obligation to make any further distribution to the Holder, unless and until the Litigation Trustee is notified in writing of such Holder's then-current address.  The Litigation Trustee shall have no independent obligation to check or identify a current mailing address for any Holder of an Allowed Claim.  Subject to the terms of the Plan, undeliverable distributions shall remain in the possession of the Litigation Trustee until such time as a distribution becomes deliverable.

Any Entity that fails to claim any Cash or property within ninety (90) days from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under the Plan.  Entities that fail to claim Cash or property under the Plan shall forfeit their rights

thereto and shall have no claim whatsoever against the Debtors, the Estates, the Litigation Trust, the Litigation Trustee, or against any Holder of an Allowed Claim to whom distributions are made by the Litigation Trustee.  Undeliverable Cash or property shall not be entitled to any interest, dividends, or other accruals of any kind.  Any check that is not cashed or otherwise deposited within ninety (90) days after the check's date shall be deemed an undeliverable distribution under the Plan.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable distribution within ninety (90) days after the first attempted delivery shall have its Claim for such undeliverable distribution expunged and shall be forever barred from asserting any such Claim against the Debtors, the Estates, the Litigation Trust, the Litigation Trustee, or their respective property.  In such cases, any Cash or property held for distribution on account of such Claims shall be property of the Litigation Trust, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan.  Nothing contained in the Plan shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim. Similarly, checks or drafts issued pursuant to the Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtors, the Estates, the Litigation Trust, the Litigation Trustee, and their property. Any distribution which is deemed nonnegotiable shall re-vest in the Litigation Trust and be available for distribution consistent with the Plan.

**7.11    No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan or this Litigation Trust Agreement, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtors, the Estates or the Litigation Trust on account of a Litigation Claim, no payments or distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Court, administrative tribunal, or such other court having jurisdiction over the matter.

## ARTICLE 8

## TAXES

**8.1    Income Tax Status**.

(a)    It is intended that the Litigation Trust be classified for federal income tax purposes as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part I, Subpart E of the Tax Code that is owned by its Beneficiaries.  Accordingly, the parties hereto intend that the Beneficiaries of the Litigation Trust be treated as if they had received a distribution of the applicable assets transferred to the Litigation Trust and then contributed such assets to the Litigation Trust.  As such,

notwithstanding anything set forth herein, the transfer of assets to the Litigation Trust shall be treated for all purposes of the Tax Code as a transfer from the Estates to creditors to the extent the creditors are Beneficiaries of the Litigation Trust followed by a deemed transfer by the Beneficiaries to the Litigation Trust.  The Beneficiaries will be treated as grantors and deemed owners of the Litigation Trust.

(b)     All parties, including the Debtors, the Litigation Trustee, and all Beneficiaries of the Litigation Trust, must value all assets transferred to the Litigation Trust consistently, and those valuations must be used for all federal, state, and local income tax purposes.  The Litigation Trustee must file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).  The assets shall be valued based upon the Litigation Trustee's good faith determination of their fair market value.

(c)     Anything set forth herein to the contrary notwithstanding, the Litigation Trust shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of Trust Assets during liquidation.  All income of the Litigation Trust must be subject to tax on a current basis, including income retained in the Disputed Claims Reserve.  The taxable income of the Litigation Trust will be allocated to and among Beneficiaries who are grantors of the Litigation Trust as required by virtue of their being grantors and deemed owners of the Litigation Trust, and they shall each be responsible to report and pay taxes due on their appropriate share of Litigation Trust income.

(d)     The Litigation Trust shall be classified as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and in the event of any inconsistency between any term or provision herein, in the Plan, or in the Confirmation Order necessary for the Litigation Trust to be deemed at all times a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and any other term or provision herein, in the Plan, or in the Confirmation Order, the term(s) and provision(s) necessary for the Litigation Trust to be deemed a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 shall govern.  Similarly, anything to the contrary set forth herein, in the Plan, or in the Confirmation Order notwithstanding, to the extent any term or provision herein, in the Plan, in the Confirmation Order would result in the Litigation Trust not being classified as a liquidating trust at all times pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, such term or provision shall be ineffective and reformed to the extent necessary for the Litigation Trust to be classified at all times as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684.

(e)     As used in this Litigation Trust Agreement, the following terms shall have the following meanings:

"Tax Code" shall mean the Internal Revenue Code of 1986, 26 U.S.C. § 1 *et seq.*, as amended from time to time, and corresponding provisions of any subsequent federal revenue act. A reference to a section of the Tax Code shall include a reference to any and all Treasury Regulations interpreting, limiting or expanding such section of the Tax Code; and

21

"Treasury Regulations" shall mean regulations promulgated under the Tax Code, including, but not limited to the Procedure and Administration Regulations, as such regulations may be amended from time to time.

**8.2    Tax Returns.**  The Litigation Trustee shall prepare and provide to, or file with, the appropriate parties such notices, tax returns, information returns, and other filings as may be required by the Tax Code and may be required by applicable law of other jurisdictions.  The Litigation Trustee shall be responsible for filing all required federal, state, and local tax returns and information returns of the Litigation Trust.  The Litigation Trustee shall, when specifically requested by a Beneficiary in writing, make such tax information available to the Beneficiary for inspection and copying at the Beneficiary's expense, as is necessary for the preparation by such Beneficiary of its income tax return.

**ARTICLE 9**

**TERMINATION OF TRUST**

**9.1    Term**.  The Litigation Trust shall terminate upon the earlier of (a) the date on which all of the Trust Assets are liquidated in accordance with the Plan, the funds in the Litigation Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the order closing the Chapter 11 Cases is a Final Order or (b) five (5) years from the date of creation of the Litigation Trust, unless extended by the Bankruptcy Court as provided herein.  Notwithstanding the foregoing, multiple fixed term extensions of the Litigation Trust can be obtained so long as Court approval is obtained within six (6) months before or after the expiration of the term of the Litigation Trust and each extended term, in the discretion of the Litigation Trustee. Notwithstanding any termination of the Litigation Trust, the Litigation Trustee shall have the power to: (a) take all actions necessary to fulfill performance of all its duties and functions as set forth in the Plan or the Litigation Trust Agreement, including, without limitation, the authority, power, and responsibility to investigate, prosecute to Final Order, litigate, settle, abandon or compromise any Litigation Claims without further notice to or action, order, or approval of the Court; and (b) seek to obtain a *nunc pro tunc* extension of the term of the Litigation Trust. For the avoidance of doubt, the Litigation Claims shall survive any termination of the Litigation Trust and shall remain unaffected by any termination of the Litigation Trust and may be pursued and prosecuted through Final Order during any period of winding up the Litigation Trust.

**9.2    Full Administration of the Litigation Trust**.  At such time as the Litigation Trust has been fully administered (*i.e.*, when all things requiring action by the Litigation Trustee have been done, all Litigation Claims being resolved (or not pursued) and the Plan has been substantially consummated) and within sixty (60) days after the date of the final distribution under the Plan (the "Final Distribution Date") to the extent practicable, the Litigation Trustee may but shall not be required to file an application for approval of the Litigation Trustee's final accounting and the entry of the final decree by the Bankruptcy Court.  Upon final distribution pursuant to this Agreement, the Litigation Trustee shall retain the books, records, and files that shall have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all such records and documents may be destroyed at any time after two (2) years after

22

12949189

the Final Distribution Date.

**9.3     Event Upon Winding Up.** Upon the winding up of the Litigation Trust, the Litigation Trustee shall distribute the remaining Trust Assets (including any proceeds thereof), if any, consistent with the terms of this Agreement, the Plan, the Confirmation Order, or another order of the Bankruptcy Court.

**9.4     Winding Up and Discharge of the Litigation Trustee.** For the purposes of winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as (and shall have the full powers as set forth herein) Litigation Trustee until the Litigation Trustee's duties have been fully discharged and all Trust Assets have been administered (including, but not limited to, the Litigation Claims). After doing so, the Litigation Trustee, and the Litigation Trustee's agents, employees, and professionals, shall have no further duties or obligations hereunder, except as required by this Litigation Trust Agreement, the Plan, the Confirmation Order, or applicable law concerning the termination of a trust. Upon a motion by the Litigation Trustee, the Bankruptcy Court may enter an order discharging the Litigation Trustee, and the Litigation Trustee's agents, employees, and professionals, and relieving them of any further duties.

## ARTICLE 10

## ADMINISTRATIVE EXPENSES

**10.1     Funding.** The costs and expenses of the Litigation Trust, including, without limitation, the compensation to and the reimbursement of reasonable, actual, and necessary costs, fees (including attorneys' and other professional fees), and expenses of the Litigation Trustee in connection with the performance of the Litigation Trustee's duties in connection with the Plan and this Litigation Trust Agreement, including the Trust Expenses, shall be paid from the applicable reserves without the necessity for any approval by the Bankruptcy Court (the "Trustee's Administrative Expense Fund"). The Trustee's Administrative Expense Fund shall not be subject to charge for claims against the Litigation Trust or the Trust Assets (including any proceeds thereof), including, without limitation, any claims under Section 4.1 of this Agreement.

## ARTICLE 11

## THE OVERSIGHT COMMITTEE

**11.1     Oversight Committee Members.** The Oversight Committee shall be comprised of five (5) members, who shall be designated by the Committee. HRH shall be an *ex-officio* member on the Oversight Committee to provide usual and customary communication and participation to be agreed upon with the Litigation Trustee to include rights to attend meetings, conferences and receive contemporaneous communications, be a part of deliberations and receive notice, subject to a recusal policy for all members of the Oversight Committee. The identities of the Persons and/or Entities that will serve on the Oversight Committee as of the Effective Date are listed on Schedule 1 hereto along with the identities of the individual

representatives through whom such members intend to act.[4]  The Oversight Committee's sole function and responsibility shall be to oversee the Litigation Trust and consult with the Litigation Trustee, as set forth in the Plan and this Litigation Trust Agreement.  The duties and powers of the Oversight Committee shall terminate upon final resolution of the Trust Assets and distribution of the proceeds thereof.

To the extent any designee to the Oversight Committee resigns from the Oversight Committee, does not become a Beneficiary, ceases to be a Beneficiary, or is no longer able to serve on the Oversight Committee due to death, incapacity, or otherwise, such designee shall automatically be replaced on the Oversight Committee by the first alternate designee identified on Schedule 1 hereto (as such schedule may be amended or modified); if such alternate designee has already become a member of the Oversight Committee, resigned, failed to become a Beneficiary, ceased to be a Beneficiary, or is not able to serve on the Oversight Committee due to death, incapacity, or otherwise, such designee shall automatically be replaced on the Oversight Committee by the second alternate designee identified on Schedule 1 hereto (as such schedule may be amended or modified).  To the extent that (i) a designee to the Oversight Committee resigns from the Oversight Committee, does not become a Beneficiary, ceases to be a Beneficiary, or becomes unable to serve on the Oversight Committee due to death, incapacity, or otherwise (a "Departing Designee") and (ii) no alternate designee identified on Schedule 1 hereto is available to take the place of the Departing Designee, the Departing Designee may retract its resignation (if applicable) and continue to serve on the Oversight Committee provided that such Departing Designee did not become a Departing Designee as a result of becoming unable to serve on the Oversight Committee due to death or incapacity; if the Departing Designee does not continue to serve on the Oversight Committee, such Departing Designee shall be replaced by a Person (a "Replacement Designee") approved by the Bankruptcy Court upon application by the Litigation Trustee, with a preference (but not a requirement) for a Replacement Designee that is a Litigation Trust Beneficiary.

**11.2    Expenses.**  The members of the Oversight Committee including any *ex-officio* member shall be reimbursed for all reasonable expenses incurred in the performance of their duties under the Plan and this Litigation Trust Agreement.

**11.3    Confidentiality**. Each member of the Oversight Committee including any *ex-officio* member shall hold strictly confidential and not use for personal gain any material, non-public information that he or she becomes aware of in his or her capacity as a member or *ex-officio* member of the Oversight Committee.

**11.4    Conflicts of Interest.** If any matter may or appears to involve a conflict of interest with any member serving on the Oversight Committee, including any *ex-officio* member, the member with the potential or actual conflicting interest shall: (i) disclose to the Litigation Trustee the existence of any potential conflict of which it has knowledge and, in its discretion, provide its position with respect to the potential conflict of interest, and (ii) recuse itself from the discussion of such matter at the meeting unless, by majority vote of the other members of the

---

[4] For the avoidance of doubt, unless expressly stated otherwise in this Litigation Trust Agreement, references to members of the Oversight Committee in this Litigation Trust Agreement do not refer to or include the individual representatives through whom such members act.  Each member of the Oversight Committee may identify, remove, or replace the representative(s) through which it acts at any time upon written notice to the Litigation Trustee.

24

Oversight Committee, the member is permitted to remain at such meeting. The existence of a conflict of interest shall be determined by the affirmative vote of a majority of the Litigation Trustee and members of the Oversight Committee present at a given meeting (excluding the vote of the member(s) having the apparent conflict of interest and the vote of any other member who appears to be, in the judgment of counsel to the Litigation Trustee, subject to the same conflict of interest).

**ARTICLE 12**

**MISCELLANEOUS PROVISIONS**

**12.1    Amendments.** Subject to approval by the Oversight Committee, the Litigation Trustee may propose to the Bankruptcy Court the modification, supplementing, or amendment of this Litigation Trust Agreement so long as such modification, supplement or amendment is not inconsistent with the Plan or the Confirmation Order. Such proposed modification, supplementing, or amendment shall be in writing and filed with the Bankruptcy Court. No modification, supplementing, or amendment of this Litigation Trust Agreement shall be effective except upon a Final Order of the Bankruptcy Court. No modification, supplement or amendment shall be valid if it is inconsistent with the Plan or the Confirmation Order.

**12.2    No Waiver.** No failure by the Litigation Trustee, any member of the Oversight Committee, or any Beneficiary to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, claim, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**12.3    Cumulative Rights and Remedies.** The rights and remedies provided in this Litigation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**12.4    Irrevocability.** The Litigation Trust is irrevocable.

**12.5    Division of Trust.** Under no circumstances shall the Litigation Trustee have the right or power to divide the Litigation Trust unless authorized to do so by the Bankruptcy Court.

**12.6    Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

**12.7    Retention of Jurisdiction.** To the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Litigation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, or this Litigation Trust Agreement, or any Person or Entity's obligations incurred in connection therewith or herewith, including, without limitation, any action against the Litigation Trustee or any professional retained by the Litigation Trustee or the Litigation Trust, in each case in its capacity as such. Each party to this Litigation Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Litigation Trust

Agreement, or of any other agreement or document delivered in connection with this Litigation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret, or construe any provision of this Litigation Trust Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to reargument or reconsideration. Each party hereby irrevocably consents to the service as set forth in Section 12.10 of this Litigation Trust Agreement or such other address as such party may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret, or construe any provision of this Litigation Trust Agreement.

**12.8    Severability.**  In the event that any provision of this Litigation Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Litigation Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Litigation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**12.9    Limitation of Benefits.**  Except as otherwise specifically provided in this Litigation Trust Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Litigation Trust Agreement.

**12.10   Notices.**  All notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person, by facsimile with an electromechanical report of delivery, sent by overnight courier or by registered or certified mail with postage prepaid, return receipt requested, or sent via electronic mail to the following addresses (as applicable to the particular notice, request, demand, consent, or other communication at issue).

| If to the Debtors: | Dilworth Paxson LLP |
| --- | --- |
| | Attn: Lawrence G. McMichael |
| | Peter C. Hughes |
| | 1650 Market St., Suite 1200 |
| | Philadelphia, PA 19103 |
| | Email: lmcmichael@dilworthlaw.com |
| | phughes@dilworthlaw.com |
| | |
| If to the Litigation Trustee: | Province, LLC |
| | Attn: Paul Navid |
| | 11111 Santa Monica Blvd. Suite 525 |
| | Los Angeles, CA 90025 |
| | Email: PNavid@provincefirm.com |

26

If to the Committee:                      Sills Cummis & Gross P.C.
                                          Attn: Andrew H. Sherman
                                                  Boris I. Mankovetskiy
                                          One Riverfront Plaza
                                          Newark, NJ 07102
                                          Email: asherman@sillscummis.com
                                                  bmankovetskiy@sillscummis.com

If to HRH:                                Mandelbaum Barrett PC,
                                          Attn: Mohamed Nabulsi
                                                  Vincent Roldan
                                          3 Becker Farm Road, Suite 105
                                          Roseland, NJ 07068
                                          Email: mnabulsi@mblawfirm.com
                                                  vroldan@mblawfirm.com

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands, requests, consents, notices, and communications shall be deemed to have been given (i) at the time of actual delivery thereof if by facsimile or electronic mail; (ii) if given by certified or registered mail, five (5) Business Days after being deposited in the United States mail, postage prepaid, and properly addressed; or (iii) if given by overnight courier, the next Business Day after being sent, charges prepaid, and properly addressed.

**12.11   Further Assurances.**   From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Litigation Trust Agreement, and to consummate the transactions contemplated hereby.

**12.12   Integration.**   This Litigation Trust Agreement, the Plan, and the Confirmation Order constitute the entire agreement, by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, or in the Confirmation Order. This Litigation Trust Agreement, together with the Plan and the Confirmation Order, supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

**12.13   Successors or Assigns**.   The terms of this Litigation Trust Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**12.14   Interpretation.**   The enumeration and section headings contained in this Litigation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Litigation Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Litigation Trust Agreement, the singular shall include the plural and the plural shall include the singular, and words importing the

27

12949189

masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, corporations, limited liability partnerships, limited liability companies, and similar entities.  The words herein, hereby, and hereunder, and words with similar import, refer to this Litigation Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**12.15   Relationship to the Plan.**  The principal purpose of this Litigation Trust Agreement is to aid in the implementation of the Plan and, therefore, this Litigation Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Litigation Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**12.16   Counterparts.**  This Litigation Trust Agreement may be signed by the parties hereto in counterparts, each of which shall be deemed an original, and which, when taken together, shall constitute one and the same document.  Delivery of any executed counterpart may be in "wet ink" form, via telecopy, or via electronic transmission attaching a copy in pdf format or the like.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the parties have either executed this Agreement, or caused it to be executed on its behalf by its duly authorized officer, all as of the date first above written.

**BAYONNE INTERMEDIATE HOLDCO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

**BENEGO CAREPOINT, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

**BRIAR HILL CAREPOINT, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

**CAREPOINT HEALTH MANAGEMENT ASSOCIATES INTERMEDIATE HOLDCO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

**CAREPOINT HEALTH MANAGEMENT ASSOCIATES, LLC D/B/A CAREPOINT HEALTH**

By: _____
Shamiq Syed, Chief Financial Officer

**CAREPOINT HEALTH SYSTEMS, INC. D/B/A JUST HEALTH FOUNDATION**

By: _____
Shamiq Syed, Chief Financial Officer

12949189

**CH HUDSON HOLDCO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer


**CHRIST INTERMEDIATE HOLDCO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer


**EVERGREEN COMMUNITY ASSETS**

By: _____
Shamiq Syed, Chief Financial Officer


**GARDEN STATE HEALTHCARE ASSOCIATES, LLC**

By: _____
Shamiq Syed, Chief Financial Officer


**HOBOKEN INTERMEDIATE HOLDCO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer


**HUDSON HOSPITAL HOLDCO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer


**HUDSON HOSPITAL OPCO, LLC D/B/A CAREPOINT HEALTH-CHRIST HOSPITAL**

By: _____
Shamiq Syed, Chief Financial Officer


2

**HUMC HOLDCO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

**HUMCO OPCO, LLC D/B/A CAREPOINT HEALTH-HOBOKEN UNIVERSITY MEDICAL CENTER**

By: _____
Shamiq Syed, Chief Financial Officer

**IJKG, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

**JUST HEALTH MSO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

**NEW JERSEY MEDICAL AND HEALTH ASSOCIATES D/B/A CAREPOINT HEALTH MEDICAL GROUP**

By: _____
Shamiq Syed, Chief Financial Officer

**QUALITY CARE ASSOCIATES, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

**SEQUOIA BMC HOLDCO, LLC**

By: _____
Shamiq Syed, Chief Financial Officer

12949189

**IJKG OPCO LLC D/B/A CAREPOINT HEALTH-BAYONNE MEDICAL CENTER**

By: _____

Shamiq Syed, Chief Financial Officer

**LITIGATION TRUSTEE:**

_____

Paul Navid, in his capacity as Litigation Trustee

4

**<u>Schedule 1</u>**

**Members of the**
**Litigation Trust Oversight Committee**

| | |
|---|---|
| Designee 1: | Health Professionals & Allied Employees AFT-AFL/CIO (representative: Debbie White) |
| Designee 2: | Public Service Electric and Gas Company (representative: Alexandra Grant) |
| Designee 3: | Sierra Health Group LLC (representative: Rosann Dovgala) |
| Designee 4: | JNESO, District Council 1 IUOE AFL-CIO (representative: Doug Placa) |
| Designee 5: | Nurse Staffing, LLC, d/b/a Nurses 24/7 (representative: Adam Altus) |
| *Ex-Officio*: | Hudson Regional Hospitals, LLC (representative [TBD]) |
| Alternative Designee 1: | N/A |
| Alternative Designee 2: | N/A |

5

**Schedule 2**

**Terms of Compensation of Litigation Trustee**

For each month during the Litigation Trustee's engagement, the Litigation Trustee's compensation for services rendered shall equal the *lesser* of: (i) $10,000 per month, or (ii) actual hours billed at Mr. Navid's standard hourly rate.  In addition, the Litigation Trustee shall be entitled to reimbursement of reasonable out-of-pocket expenses actually incurred.

6