IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| CAREPOINT HEALTH SYSTEMS, INC., *et al.*,[1] | ) Case No. 24-12534 (JKS) |
| Debtors. | ) (Jointly Administered) |
|  | ) Hearing Date: March 12, 2025, at 10:00 a.m.<br>) Related to Docket No. 320 |

**SUPPLEMENT TO
MOTION OF ACCESS INFORMATION MANAGEMENT CORPORATION
(I) TO COMPEL (A) DEBTORS' ASSUMPTION OF EXECUTORY CONTRACTS, OR
ALTERNATIVELY, (B) DEBTORS TO PROVIDE DIRECTION AS REQUIRED BY
THE CONTRACTS AND APPLICABLE LAW WITH RESPECT TO THE CONTINUED
STORAGE, TRANSFER, DESTRUCTION OR OTHER DISPOSITION OF THE
HEALTH CARE RELATED DOCUMENTS AND INFORMATION SUBJECT TO THE
CONTRACTS, (II) FOR RELIEF FROM THE AUTOMATIC STAY, AND (III) FOR
SUCH OTHER RELIEF AS IS NECESSARY UNDER THE CIRCUMSTANCES**

In supplementation of its *Motion Of Access Information Management Corporation (I) To Compel (A) Debtors' Assumption Of Executory Contracts, Or Alternatively, (B) Debtors To Provide Direction As Required By The Contracts And Applicable Law With Respect To The Continued Storage, Transfer, Destruction Or Other Disposition Of The Health Care Related Documents And Information Subject To The Contracts, (II) For Relief From The Automatic Stay,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint HealthHoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii)Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint HealthBayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

*And (III) For Such Other Relief As Is Necessary Under The Circumstances* [Docket No. 320] (the "**Motion**"), principally to provide (i) an update with respect to the status of the Access Contracts, and (ii) definitive amounts for the administrative expense claim sought by Access pursuant to the Motion in respect of the document and information storage services Access has provided to the Debtors since commencement of the captioned bankruptcy cases. In support, Access respectfully states as follows:

1. Access herein fully adopts and incorporates all fact allegations and argument set forth in the Motion and in its Reply in support of the Motion filed on February 7, 2025 [Docket No. 660], to the extent still applicable given the passage of time and events subsequent to the filing of such pleadings.

2. At the hearing on the Motion set for February 12, 2025, it was announced to the Court that (i) Debtors intended to reject the Access Contracts, (ii) Debtors and Access intended to engage in good faith discussion of issues attendant to such decision, including the disposition of the documents and information of the Debtors being stored by Access pursuant to the Access Contracts, which includes patient care information which Debtors have duties under state and federal law to retain (the "**Health Care Information**")[2] and Access' entitlement to an

---

[2] See generally:

- New Jersey Hospital licensing regulations, NJAC 8:43G-15.2, refer to New Jersey statute N.J.S.A. 26:8-5, which requires hospitals to maintain records for 10 years.
- N.J.S.A. 26:8-5 requires hospitals to retain medical records of minors for the longer of 10 years following discharge, or the patient turning 23 years old whichever is longer.
- N.J.S.A. 26:8-5 also requires retention of discharge summary sheets for hospitalized patients for 20 years following discharge.
- New Jersey Board of Medical Examiners regulation NJAC 13:35-6.5 requires physicians to maintain records for 7 years.
- Medicare Conditions of Participation require hospitals to maintain records for at least 5 years (42 CFR 482.24(b)(1)) and Medicare guidance states that Medicare managed care program providers must maintain records for 10 years.

2

administrative expense claim, and (iii) an agreed form of order would be presented to the Court if agreement could be reached. The hearing on the Motion was adjourned to the March 12, 2025, hearing date to the extent issues remained that could not be resolved by agreement.

3. Since the February 12th hearing, and despite Access' attempts, there has been no discussion with respect to the topics set forth in paragraph 2(ii) above or otherwise. Debtors have provided no direction to Access with respect to disposition of the documents and information still being stored by Access for the Debtors under and pursuant to the Access Contracts. Most recently, on February 19, 2025, by e-mail to Debtors' counsel (*see* **Exhibit A** attached hereto), Access again requested discussion with respect to such issues, which communication has been ignored.[3]

4. On February 18, 2025, Debtors filed their motion [Docket No. 708] (the "**Rejection Motion**") seeking to reject 29 separate contracts between Debtors and Access (the "**Access Contracts**"). Debtors request an "effective date" of rejection as of February 18, 2025 – the date the Rejection Motion was filed. The hearing on the Rejection Motion is scheduled for March 12, 2025.

5. Attached as **Exhibit B** hereto is a summary of the charges under the Access Contracts with respect to the storage of the Debtors' property – inclusive pf patient identification, care and treatment records – for the post-bankruptcy period through February 28, 2025, in the

---

[3] Debtors' uncommunicative attitude with respect to Access is not a recent phenomenon. Prior to filing the Motion to Compel, Access through counsel twice attempted to engage Debtors' counsel in discussion with respect to Debtors' intentions with respect to Access, its contracts with Debtors and the Health Care Information. No substantive response was received from the Debtors prior to the initially scheduled January 7, 2025, hearing on the Motion. In the period between then and the hearing on February 12, 2025, to which the Motion to Compel was adjourned, there was limited business-level communications between Access and the Debtors in the nature of diligence investigation by the Debtors but no communications about issues involved with, or any direction from, the Debtors with respect to the disposition of the stored documents and information including the Health Care Information.

3

amount of $303,254.32 (the "**Administrative Claim**"). The invoices for the post-bankruptcy period grouped by contract are attached hereto as **Exhibit C**.[4]

6. The rates being charged by Access under the Access Contracts are consistent with the rates Access charges to other medical services providers that are its customers and otherwise in line with market rates for such services.

7. The post-bankruptcy storage of Debtors' property by Access pursuant to the Access Contracts provided a benefit to Debtors and their estates. Such services provided by Access were necessary for Debtor's ongoing patient care, treatment and operations, and in service of the Debtors' record retention obligations; and constitute actual and necessary costs of preserving the Debtor's estates.

8. The Administrative Claim must be allowed and paid pursuant to 11 U.S.C. § 503(b)(1) including as a condition to confirmation of the Debtors' *Fourth Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* [Docket No. 551] (the "Plan") as required by 11 U.S.C. § 1129(a)(9)(A).

9. The amount of Access' Administrative Claim will continue to increase with the passage of time beyond February 2025 absent resolution of the issues involved in connection with disposition of the documents and information that Access continues to store for the Debtors. Access fully reserves its rights to supplement and increase the Administrative Claim and/or to seek additional administrative expense claims for time periods beyond February 2025.

10. Access also fully reserves its right to seek administrative expense claim treatment for any costs it incurs in connection with any disposition of documents and information that Access

---

[4] On January 10 and 14, 2025, Access provided to the Debtors a similar summary and the invoices for the months November and December 2024 and January 2025 (billing is monthly, in advance).

4

continues to store for the Debtors, whether at the direction of the Debtors, any non-debtor third parties, or otherwise in accordance with the Access Contracts and/or applicable law.

WHEREFORE, Access respectfully requests that the Court enter an order granting relief for Access as requested in the Motion as supplemented herein and for such other relief to which Access is or may be entitled under the circumstances.

Dated: February 28, 2025

**SAUL EWING LLP**

By: */s/ John D. Demmy*
John D. Demmy (Bar No. 2802)
Nicholas Smargiassi (Bar No. 7265)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Email: john.demmy@saul.com
        nicholas.smargiassi@saul.com

*Attorneys for Access Information Management Corporation*