IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| CAREPOINT HEALTH SYSTEMS, INC., *et al.*,[1] | ) Case No. 24-12534 (JKS) |
|  | ) (Jointly Administered) |
| Debtors. | ) Hearing Date: March 12, 2025, at 10:00 a.m.<br>) Objection Deadline: March 4, 2025 at 4:00 p.m.<br>) Related to Docket No. 708 |

**OBJECTION AND RESERVATION OF RIGHTS OF ACCESS INFORMATION MANAGEMENT CORPORATION TO DEBTORS' SECOND OMNIBUS MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a) AND 365(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Access Information Management Corporation ("**Access**"), respectfully objects to *Debtors' Second Omnibus Motion For Entry Of An Order Pursuant To Sections 105(a) And 365(a) Of The Bankruptcy Code Authorizing The Debtors To Reject Certain Executory Contracts And Unexpired Leases* [Docket No. 708] (the "**Motion to Reject**"), as follows:

### BACKGROUND

1. As set forth on <u>Exhibit 1</u> to the Motion to Reject, Debtors and Access are parties to numerous executory contracts (the "**Access Contracts**"), which Debtors identify therein as relating to Christ Hospital and Hoboken University Medical Center.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint HealthHoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii)Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint HealthBayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

2. Generally, the Access Contracts provide for the storage by Access of various kinds of documents and information of the Debtors including documents and information containing information relating to patients and to patient care ("**PHI**"). Access submits that the PHI it stores for the Debtors is of the type for which Debtors have long-term retention obligations under state and federal law.[2]

3. On December 17, 2024, Access filed its motion [Docket No. 320] (the "**Motion to Compel**") requesting a deadline for the Debtors to either assume or reject the Access Contracts and to provide valid and proper direction to Access with respect to the disposition (including, possibly, destruction and/or transfer) of the Debtors' property including PHI.

4. By their objection filed on December 31, 2024 [Docket No. 361], Debtors objected to being compelled to decide whether to assume or reject "so early" in the case and suggested that Access would not be harmed by denial of the Motion to Compel because they would be paying post-petition amounts due to Access (which has not happened). Debtors did not in their objection provide any, or hint at any possible, decision with respect to disposition of their property being stored by Access. To the contrary, they were (and have remained) silent on such.

---

[2] See generally:
- New Jersey Hospital licensing regulations, NJAC 8:43G-15.2, refer to New Jersey statute N.J.S.A. 26:8-5, which requires hospitals to maintain records for 10 years.
- N.J.S.A. 26:8-5 requires hospitals to retain medical records of minors for the longer of 10 years following discharge, or the patient turning 23 years old whichever is longer.
- N.J.S.A. 26:8-5 also requires retention of discharge summary sheets for hospitalized patients for 20 years following discharge.
- New Jersey Board of Medical Examiners regulation NJAC 13:35-6.5 requires physicians to maintain records for 7 years.
- Medicare Conditions of Participation require hospitals to maintain records for at least 5 years (42 CFR 482.24(b)(1)) and Medicare guidance states that Medicare managed care program providers must maintain records for 10 years.

5.      The hearing on the Motion to Compel, originally scheduled for January 7, 2025, was adjourned to February 12, 2025. At the February 12, 2025, hearing it was announced to the Court that (i) Debtors intended to reject the Access Contracts, (ii) Debtors and Access intended to engage in good faith discussion of issues attendant to such decision, including the disposition of the documents and information of the Debtors being stored by Access pursuant to the Access Contracts, which includes patient care information which Debtors have duties under state and federal law to retain, and Access' entitlement to an administrative expense claim, and (iii) an agreed form of order would be presented to the Court if agreement could be reached. The hearing on the Motion to Compel was adjourned to the March 12, 2025, hearing date to the extent issues remained that could not be resolved by agreement.

6.      Since the February 12th hearing the Debtors have maintained their inscrutability. Despite Access' attempts, and notwithstanding the Debtors' commitments stated both before (between counsel) and at the February 12, 2025, hearing (at which Debtors' intent to reject the Access Contracts was announced), Debtors have not provided any direction to Access with respect to the disposition of the PHI or any other of the documents and information being stored by Access pursuant to the Access Contracts. Most recently, on February 19, 2025, by e-mail to Debtors' counsel (*see* **Exhibit A** attached hereto), Access again requested discussion with respect to such issues, which communication has been ignored.[3]

---

[3]    Debtors' uncommunicative attitude with respect to Access is not a recent phenomenon. Prior to filing the Motion to Compel, Access through counsel twice attempted to engage Debtors' counsel in discussion with respect to Debtors' intentions with respect to Access, its contracts with Debtors and the Health Care Information. No substantive response was received from the Debtors prior to the initially scheduled January 7, 2025, hearing on the Motion. In the period between then and the hearing on February 12, 2025, to which the Motion to Compel was adjourned, there was limited business-level communications between Access and the Debtors in the nature of diligence investigation by the Debtors but no communications about issues involved with, or any direction from, the Debtors with respect to the disposition of the stored documents and information including the Health Care Information.

7. The Access Contracts include terms recognizing that the PHI must be dealt with appropriately. Certain of the Access Contracts provide that they shall "remain in effect until all of the PHI . . . is returned or destroyed." Other of the Access Contracts contain similar language, stating that "[u]pon termination of an Underlying Agreement for any reason. [Access] will return or destroy (as agreed to with [the Debtors]) all of [the Debtors'] PHI." The Access Contracts also provide standard charges for any such destruction or return actions taken by Access.[4]

8. On February 28, 2025, Access filed its supplement to its Motion to Compel [Docket No. 781], pursuant to which it has calculated its administrative expense claim for post-petition storage of the Access Material at $303,254.32 through the end of February (subject to increase to the extent Access continues to store such material for the Debtors thereafter).

9. Access estimates that it has approximately 70,000 boxes of documents and over 200,000 individual files of material, all property of the Debtors. The disposition, whether by destruction and/or transfer of such material, upon proper direction from Debtors, will cause Access to incur additional non-storage related expenses that Access submits also will be administrative expense claims in these cases.

## OBJECTIONS AND RESERVATION OF RIGHTS

10. Access objects to the Motion to Reject to the extent that Debtors seek either to (i) avoid their obligations to deal appropriately with the documents and information being stored by Access including the PHI (the "**Access Material**"), and specifically, their obligation to provide for a proper disposition of such material, (ii) absolve themselves of state and federal record retention obligations with respect to the Access Material, or (iii) to avoid accrual of administrative

---

[4] On April 19, 2021, the Debtors entered into the Document Archive Contract with Triyam, Inc. ("**Triyam**"). On March 11, 2024, Access acquired Triyam, becoming Tryiam's successor in interest under the Document Archive Contract. Paragraph 6 of the Document Archive Contract provides that upon its termination the Debtors must at such time either (i) authorize Access to destroy the documents or (ii) instruct Access to return the documents to the Debtors

4

expense claims for Access with respect to the continued storage of the Access Material and the disposition of the Access Material notwithstanding any purported "effective date" of rejection.

11. Access submits that as a condition to imposition of any "effective date" of rejection in connection with the Access Contracts that Debtors be required to provide the valid and proper direction to Access required by the Access Contracts with respect to disposition of the Access Material.

12. In addition, the Access Material is property of the Debtors and their estates and must be dealt with by Debtors in these cases. Requiring Debtors to make adequate arrangements with respect to such property should be a condition to rejection of the Access Contracts.

13. Access further objects to the Motion to Reject to the extent that it does not cover all contracts that Access has with Debtors. Access assumes that by the Motion to Reject Debtors intend to reject all the contracts to which it is a party with Access. Access submits that language should be added to the order to make such clear and to effect a rejection, subject to the objections and reservations included herein, of all contracts to which Debtors and Access are parties.

14. Access expressly reserves any and all rights to supplement or amend this objection and make any other requests or objections to further relief sought by the Debtors.

15. Access further reserves the right to file any and all administrative expense claims against the Debtors for obligations owed under the Access Contracts and in connection with any disposition of the Access Material.

WHEREFORE, Access respectfully requests that the Court enter an order granting relief for Access as requested herein and such other relief to which Access is or may be entitled under the circumstances.

Dated: February 28, 2025 **SAUL EWING LLP**

By: */s/ John D. Demmy*
John D. Demmy (Bar No. 2802)
Nicholas Smargiassi (Bar No. 7265)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6848
Email: john.demmy@saul.com
nicholas.smargiassi@saul.com

*Attorneys for Access Information Management Corporation*