## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CarePoint Health Systems Inc. d/b/a Just Health Foundation, *et al.*[1] | Case No. 24-12534 (JKS) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF THE HONORABLE KEVIN GROSS (RET.)
## IN SUPPORT OF THE PROPOSED PLAN

I, Kevin Gross, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1.      I am a former United States Bankruptcy Judge. I served a fourteen-year term as a judge of this Court, including three years as Chief Judge. During my tenure as a bankruptcy judge, I presided over some of the highest-profile reorganizations in the country. I am currently Of Counsel at Richards, Layton & Finger, P.A., where I assists the firm's restructuring clients in all aspects of chapter 11 matters, ranging from advising debtors, representing creditors' committees, and assisting on bankruptcy litigations. I also serve as a mediator to help resolve complex chapter 11 cases, including plan mediations and other complex and high-stakes

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030

mediations. I have mediated many cases pending in this Court, the Delaware District Court, and Delaware state courts.

2.      On December 13, 2025, I was appointed to serve as a director of CarePoint Health Systems, Inc. ("CarePoint") and as a member of CarePoint's reorganization committee (the "Reorganization Committee"), along with Hon. Judith Fitzgerald (Ret.) and Clifford A. Zucker, a Senior Managing Director with FTI Consulting.  The Reorganization Committee was formed by the Debtors for the purpose of overseeing and controlling the Debtors' restructuring process and to evaluate the proposed transactions with HRH, as well as any proposed Alternative Transaction. A copy of the board resolution is attached hereto as Exhibit A.

3.      I am authorized to submit this Declaration on behalf of the Reorganization Committee.

4.      The Reorganization Committee was closely involved in discussions with CarePoint's board, management and bankruptcy counsel regarding the negotiation and development of the *Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* (as the same has been amended from time to time, the "Plan")[2] proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Committee"). The Reorganization Committee reviewed, had an opportunity to comment on, and unanimously approved the Plan prior to it being filed with the Court.

5.      The Reorganization Committee understands that the essential contours of the Plan are the product of a multi-day mediation before Hon. Michael B. Kaplan, Chief Judge of the United States Bankruptcy Court for the District of New Jersey, in which the Debtors, the

---

[2] Capitalized terms not defined herein shall have the meanings given to them in the Plan.

Committee, HRH and other significant stakeholders participated, and which resulted in the Plan Term Sheet amongst the Debtors, the Committee, HRH, and the DIP Lender.

6.  The Reorganization Committee further understands that the Plan provides, among other things, for (i) the refinance and rolling forward of the Debtors' DIP financing and senior secured financing facilities into exit facilities to be repaid over time, (ii) the preservation and continuation of the Debtors' hospital operations that are critical to servicing the healthcare needs of the citizens of Hudson County, New Jersey, (iii) distributions to general unsecured creditors that would not be available in the absence of the agreements with HRH and Capitala that are embodied in the Plan, and (iv) the Debtors' emergence from bankruptcy in an expedited fashion.

7.  The Plan also provides for a value maximizing Alternative Transaction process, subject to the oversight of the Reorganization Committee, in which any interested party could submit a bid to acquire any or all assets of any or all of the Debtors, in whatever form desired, and the Debtors (by and through the Reorganization Committee), in consultation with the Committee, would select the highest or best bid. However, no bids constituting a proposed Alternative Transition were submitted by the Bid Deadline.

8.  The Reorganization Committee understands that without Capitala and HRH supporting the Plan and agreeing to roll forward their respective secured debt facilities into the Capitala Exit Facility and the HRH Exit Facility as provided by the Plan, the Debtors would likely be forced to liquidate in the near term and would not be able to continue to deliver critical acute healthcare services to the Hudson County community.

9.  The Reorganization Committee is advised that pursuant to the Debtors' agreements with HRH and the terms of the Plan, HRH will create a coordinated four-hospital healthcare system (Hudson Health System) in Hudson County managed jointly by HRH and

CarePoint.  The Reorganization Committee is optimistic that this healthcare system, with the financial backing of HRH, will thrive and be in a stable position to serve the needs of Hudson County residents for many years to come.

10.     The Reorganization Committee believes that the Plan was proposed in good faith as a result of the mediation with Judge Kaplan and arms' length negotiations between the Committee, HRH, the Debtors and, subsequently, Capitala, and that confirmation of the Plan is in the best interests of the Debtors' estates and creditors, as well as the residents of Hudson County.

11.     Since the filing of the Plan, the Debtors and the Committee have worked hard and fast to resolve multiple issues with many parties in interest. These efforts have resulted in plan amendments and stipulations filed of record. The Reorganization Committee has been informed and contributed to many of these resolutions.

12.     For instance, the Reorganization Committee concluded that it was appropriate to classify claims of the former owners separately because their claims arose for the most part when they were in control of the company and are materially different in nature than ordinary non-insider trade claims. But the Reorganization Committee also concluded that any unsecured claims of these former owners, to the extent ultimately allowed, must be treated the same as the class of general unsecured creditors. The Plan has been amended to reflect this input.

13.     The Reorganization Committee reviewed the limited substantive consolidation for voting and distribution only proposed by the plan and concluded that it was the only practical solution because of the many inter-company transfers and inter-company claims that there are in this case and the difficulty in parsing the recoveries from litigation assets that the trust will prosecute.

4

14.    The Reorganization Committee also considered the releases provided to HRH as part of this transaction. Releases are customary for a DIP and exit lender.  HRH is an essential DIP lender, providing millions of dollars of desperately needed capital to these debtors. While HRH has other roles which the Reorganization Committee considered and discussed, the Reorganization Committee's view is that the eventual value of any claims against HRH was completely speculative and did not outweigh the need for immediate DIP and exit funding to keep the hospitals alive for the communities that they serve.

15.    The Reorganization Committee has concluded that this plan is the only path forward for the Debtors and its confirmation is essential to preserve essential health care availability for the Hudson County community.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 7, 2025

/s/*Kevin Gross*
Kevin Gross