# Exhibit A

**Response to Plan Objections**

**In re CarePoint Health Systems Inc., d/b/a Just Health Foundation, *et al*., Case No. 24-12534 (JKS)**
**Summary of Objections and Responses[1]**

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| 1. | The United States Trustee for Regions 3 and 9 ("U.S. Trustee") [Docket No. 795] | • The Debtors failed to file monthly operating reports for December and January. | • The Debtors are working on the monthly operating reports and will file them as soon as practicable. |
| | | • The Plan improperly enjoins parties from obtaining books and records maintained by the Debtors which would improperly prohibit parties from obtaining discovery needed in litigation pending against parties other than the Debtors. This provision also violates HIPAA. | • Article XIV.E of the Plan has been revised to address this objection. |
| | | • The Plan, in its entirety, is impermissibly deemed to be a Rule 9019 settlement as Art. XIV.A purports to treat the Combined Plan and Disclosure Statement itself as if it were a Rule 9019 "settlement." Further, it appears Art. XIV.A is not limited to settling claims belonging to the Debtors or the estates which makes this too broad and exceeds the scope of section 1123(b)(3)(A). | • This language is typical for Chapter 11 plans in cases of this complexity and size in this District. The references to Rule 9019 are not intended to modify the governing standards for plan confirmation under section 1129 of the Bankruptcy Code. |
| | | • The Combined Plan and Disclosure Statement fails to provide for proper payment of required post-effective date quarterly fees. | • Article XVII of the Plan has been revised to address this objection. |

---

[1] Cure objections, to the extent not resolved, will not go forward at the confirmation hearing and will be scheduled for separate hearings. Capitalized terms not defined herein have the meanings given to such terms in the Combined Disclosure Statement and Plan or the Objections, as applicable.

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| 2. | Maple [Docket No. 819] | • Maple alleges that the Plan was not proposed in good faith. | • The Plan was proposed in good faith and with the goal of maximizing stakeholder recoveries and allowing the Debtors' healthcare operations to continue for the benefit of Hudson County residents (a goal consistent with the objectives and purposes of the Bankruptcy Code). The Plan is the product of extensive, arms'-length negotiations with key case constituencies – including a multi-day mediation before the Honorable Michael B. Kaplan, Chief Judge of the United States Bankruptcy Court for the District of New Jersey. *See* Confirmation Declaration. In addition, the Plan has been subject to the oversight, comment, and approval of the Debtors' independent Reorganization Committee. |
| | | • Maple alleges that the Plan improperly classifies the Maple Secured Claims and Maple Unsecured Claims in an effort to gerrymander an impaired accepting class. | • The Plan's classification scheme is consistent with the requirements of section 1122 of the Bankruptcy Code, does not constitute impermissible gerrymandering, and is reasonable and proper as set forth in section I.A of the Confirmation Brief. The Plan has numerous impaired accepting classes. Moreover, section 1122 of the Bankruptcy Code does not require the separate classification of each Maple Secured Claim. Maple Secured Claims are treated in accordance with Bankruptcy Code 1129(b)(2). In addition, the Plan now provides that, notwithstanding anything in the Plan to the contrary, the transfer of the Litigation Claims that are subject to the Collateral Sharing Agreement to the Litigation Trust shall be without prejudice to the right of Maple to continue to assert a security interest in such Litigation Claims. *See* Plan Art. IX.C. Thus, Maple retains whatever security interest it may have in Litigation Claims under the Collateral Sharing |

2

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | | Agreement, without prejudice to the rights of the Litigation Trustee to challenge, object to or otherwise contest any such security interest. |
| | | • Maple alleges the Plan violates section 1123(a)(4). | • As explained in the Confirmation Brief, the Plan does not violate section 1123(a)(4). The Plan provides the same treatment for each claim or interest in a particular class. |
| | | • Maple alleges the Plan does not satisfy the best interest test of section 1129(a)(7) of the Bankruptcy Code. | • The Plan Proponents have satisfied the best interest test as explained in section VII of the Confirmation Brief. |
| | | • Maple alleges the Plan is not feasible as required by section 1129(a)(11) because the alleged claims against the Prior Owners have no merit. | • The Plan is feasible as explained in section XI of the Confirmation Brief. |
| | | • Maple alleges that the Plan is not "fair and equitable" as to Maple Secured Claims. | • The Plan is fair and equitable as to the Maple Secured Claims as explained in section XV.B of the Confirmation Brief. The Plan provides Maple treatment consistent with section 1129(b)(2)(A). In addition, the Plan now provides that, notwithstanding anything in the Plan to the contrary, the transfer of the Litigation Claims that are subject to the Collateral Sharing Agreement to the Litigation Trust shall be without prejudice to the right of Maple to continue to assert a security interest in such Litigation Claims. *See* Plan Art. IX.C. Thus, Maple retains whatever security interest it may have in Litigation Claims under the Collateral Sharing Agreement, without prejudice to the rights of the |

3

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | | Litigation Trustee to challenge, object to or otherwise contest any such security interest. |
| | | • Maple alleges that the Plan unfairly discriminates against the Maple Unsecured Claims. | • The Plan's treatment of Class 5 (Maple Unsecured Claims) is not unfairly discriminatory as explained in the Confirmation Brief. Holders of Allowed Class 5 Claims are entitled to the same treatment as Holders of Allowed Claims in Class 7. |
| | | • Maple alleges that the proposed limited substantive consolidation is inappropriate and the Debtors cannot satisfy the alleged "per Debtor" confirmation standards of section 1129(a)(10) of the Bankruptcy Code. | • The proposed limited substantive consolidation is warranted and necessary for the reasons explained in the Confirmation Brief ("The Propriety of Substantive Consolidation").<br><br>• Any "per debtor" requirement of section 1129(a)(10) of the Bankruptcy Code does not apply due to the proposed limited substantive consolidation as explained in the Confirmation Brief. |
| | | • Maple alleges that the proposed Debtor Releases are inappropriate. | • The proposed Debtor Releases, including the release of HRH, is a critical component of an arms'-length, multi-party, mediated settlement before the Honorable Michael B. Kaplan, Chief Judge of the United States Bankruptcy Court for the District of New Jersey, which settlement enables the continuation of critical acute healthcare services for the benefit of the Hudson County Community.<br><br>• The Debtor Releases are a vital component of the Plan, a sound exercise of the Debtors' business judgment, and should be approved. The release provisions are narrowly tailored and do not include so-called "third-party" or |

4

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
|  |  |  | "non-debtor" releases that would release anyone from claims that could not be asserted on behalf of the Debtors or their Estates. The Plan also does not currently provide releases for the Debtors' Current D&Os. The Debtors Releases are justified for the reasons stated in the Confirmation Brief. |
| 3. | Lawler Entities [Docket No. 823] | • The Lawler Entities allege that the Plan improperly separately classifies Prior Owner claims from General Unsecured Claims to gerrymander an impaired consenting class. | • The Plan's classification scheme is consistent with the requirements of section 1122 of the Bankruptcy Code, does not constitute impermissible gerrymandering, and is reasonable and proper as set forth in section I.A of the Confirmation Brief. The Plan has numerous impaired accepting classes. |
|  |  | • The Lawler Entities allege that the Plan unfairly discriminates against Prior Owner Claims because such claims are receiving no recovery, while other unsecured creditors receive a distribution. | • The Plan's treatment of Class 9 (Prior Owner Claims) is not unfairly discriminatory as explained in the Confirmation Brief. Holders of Allowed Class 9 Claims are entitled to the same treatment as Holders of Allowed Claims in Class 7. |
| 4. | Freehold Entities [Docket No. 824]. | • The Freehold Entities allege that the plan improperly classifies the Prior Owner Claims, in an effort to gerrymander an impaired consenting class. | • The Plan's classification scheme is consistent with the requirements of section 1122 of the Bankruptcy Code, does not constitute impermissible gerrymandering, and is reasonable and proper as set forth in section I.A of the Confirmation Brief. The Plan has numerous impaired accepting classes. |

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | • The Freehold Entities allege that the Plan violates section 1123(a)(4). | • As set forth in the Confirmation Brief, the Plan complies with section 1123(a)(4) of the Bankruptcy Code. All holders of Class 9 Claims receive the same treatment as other creditors in such Class. Moreover, although not required by section 1123(a)(4) of the Bankruptcy Code, all Holders of Allowed Class 9 Claims also receive the same treatment as Holders of Allowed Class 7 Claims. |
| | | • The Freehold Entities allege that the Plan is not fair and equitable and cannot be crammed down pursuant to section 1129(b) of the Bankruptcy Code. | • As explained in the Confirmation Brief, the Plan is fair and equitable and does not discriminate unfairly against Class 9. Holders of Allowed Class 9 Claims receive the same treatment as Holders of Allowed Class 7 Claims. |
| | | • The Freehold Entities allege that the Plan deprives the Freehold Entities of bargained-for indemnification rights under the Donation Agreement and Assignment Agreement and contemplates claims and causes of action against the Prior Owners, which is allegedly inconsistent with the Donation Agreement, the Assignment Agreement and Article X.II.C of the Plan. | • Article III.B.1 of the Plan expressly provides that: "All of the parties' rights, remedies and defenses related to the conduct of the Prior Owners and any Affiliates thereof are expressly reserved and preserved, including, without limitation, any rights of the Prior Owners to seek indemnification." |
| | | • The Freehold Entities allege that the Disclosure Statement lacks any discussion of the "non-enablement" clauses in the Donation Agreement and Assignment Agreement, which allegedly prevent the Debtors from commencing actions against the Objectors. | • Article III.B.1 of the Plan provides that: "In 2022, certain of the Prior Owners donated their interests in certain of the Debtors and were granted releases and indemnification rights in connection therewith. The Plan Proponents may investigate these actions, and claims and Causes of Action may be asserted under applicable state and federal law." |
| | | | • Article III.B.1 of the Plan further provides that: "All of the parties' rights, remedies and defenses related to the conduct of the Prior Owners and any Affiliates thereof |

6

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | | are expressly reserved and preserved, including, without limitation, any rights of the Prior Owners to seek indemnification." |
| | | • The Freehold Entities allege the Disclosure Statement does not contain adequate information regarding the process by which the Reorganization Committee will evaluate potential claims against the Current D&Os because "creditors do not know what releases will be given." | • The Disclosure Statement contains adequate information regarding the Reorganization Committee's evaluation of potential claims against Current D&Os. Among other things, the Disclosure Statement expressly provides that: "D&O Claims against the Debtors' Current D&Os shall be evaluated by the independent Reorganization Committee based upon information provided by all interested parties, including the UCC, the Litigation Trustee (which will conduct an investigation after the Effective Date to determine if any such claims exist and present the results of such investigation to the Reorganization Committee), and management. Upon their receipt of all relevant information, the Reorganization Committee shall give all such parties an opportunity to be heard to discuss whether viable claims exist and should be pursued against the Current D&Os. No later than one hundred twenty (120) days after the Effective Date, the Reorganization Committee shall file with the Court a written determination (the "D&O Report"), consistent with the Debtors' fiduciary duties to their creditors, whether any such claims exist and should be pursued, and identifying the factual and legal predicates for the Reorganization Committee's decisions. Any party-in-interest may object to or otherwise challenge the D&O Report." See Plan Art. IX.D. |

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| 5. | Captive Assurance [Docket No. 822] | • Captive Assurance alleges that the Plan Proponents cannot carry their burden to approve the release of the HRH Released Parties. | • The Debtors' release of HRH is a vital component of an arms'-length, multi-party, mediated settlement before the Honorable Michael B. Kaplan, Chief Judge of the United States Bankruptcy Court for the District of New Jersey, which settlement enables the continuation of critical acute healthcare services for the benefit of the Hudson County Community. As further explained in the Confirmation Brief, the Debtors' release of HRH reflects a sound exercise of the Debtors' business judgment and should be approved. The release does not include so-called "third-party" or "non-debtor" releases. Absent the mediated resolutions set forth in the Plan, Holders of unsecured claims would likely receive no recovery in these Chapter 11 Cases because all distributable value would go towards repaying the secured claims of HRH and Capitala, and other secured claims, to the extent allowed. Under the Plan, in contrast: (i) the secured debt of HRH and Capitala will be "rolled" into new exit financing facilities (which will not be paid from Estate assets); and (ii) HRH has agreed to provide $3,500,000 to the Litigation Trust, to investigate, prosecute and monetize the Litigation Claims, the proceeds of which will be used to fund the recoveries of Holders of Allowed Claims in Class 5 (Maple Unsecured Claims), Class 7 (General Unsecured Claims), and Class 9 (Prior Owner Claims). |
| | | • Captive Assurance alleges the Plan violates the absolute priority rule by providing HRH with recoveries exceeding 100 percent of its Allowed Claims. | • The Plan is fair and equitable and does not violate the absolute priority rule as explained in the Confirmation Brief. |

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | • Captive Assurance argues that the proposed limited substantive consolidation is inappropriate. | • The proposed limited substantive consolidation is warranted and necessary for the reasons explained in the Confirmation Brief ("The Propriety of Substantive Consolidation"). |
| | | • Captive Assurance alleges that the Plan Proponents have not satisfied the "best interest of creditors" test because the Liquidation Analysis is unreliable. | • The Plan Proponents have satisfied the best interest test as explained in the Confirmation Brief. The Debtors are prepared and intend to offer evidence at the confirmation hearing that the Liquidation Analysis is supported by reliable data and assumptions. |
| | | • Captive Assurance alleges that the Plan disenfranchises creditors in violation of section 1129(a)(10) of the Bankruptcy Code by collapsing voting across multiple debtors. | • Any "per debtor" requirement of section 1129(a)(10) of the Bankruptcy Code does not apply due to the proposed limited substantive consolidation as explained in the Confirmation Brief. |
| | | • Captive Assurance alleges that the process to select the Litigation Trustee and the Litigation Trust Oversight Committee members violates section 1123(a)(7) of the Bankruptcy Code because of the Committee's alleged lack of involvement. | • The Litigation Trustee and the Litigation Trust Oversight Committee Members were selected by the Committee members, after careful consideration and deliberation, at a duly commenced Committee meeting, where a quorum of Committee members and counsel were present. At such meeting, the Committee members considered, voted on, and approved the selection of the Litigation Trustee and the members of the Litigation Trust Oversight Committee. For the reasons stated in the Confirmation Brief, the selection of such individuals is consistent with the interests of Holders of Claims and Interests and public policy. |

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | • Captive Assurance alleges that the Plan is not proposed in good faith. | • The Plan was proposed in good faith and with the goal of maximizing stakeholder recoveries and allowing the Debtors' healthcare operations to continue for the benefit of Hudson County residents (a goal consistent with the objectives and purposes of the Bankruptcy Code). The Plan is the product of extensive, arms'-length negotiations with key case constituencies – including a multi-day mediation before the Honorable Michael B. Kaplan, Chief Judge of the United States Bankruptcy Court for the District of New Jersey. *See* Confirmation Declaration. In addition, the Plan has been subject to the oversight, comment, and approval of the Debtors' independent Reorganization Committee. |
| | | • Captive Assurance alleges that the Plan contains insufficient means for pursuing an "Alternative Transaction." | • The Alternative Transaction procedures were approved by the Court. All parties in interest and prospective bidders had knowledge regarding timing considerations and a full and fair opportunity to submit a bid. Ultimately, however, no one submitted a competing bid. |
| | | • The Disclosure Statement lacks adequate information about the potential claims or causes of action against HRH, which are released by the Debtors. | • The Debtors' release of HRH is a vital component of an arms'-length, multi-party, mediated settlement before the Honorable Michael B. Kaplan, Chief Judge of the United States Bankruptcy Court for the District of New Jersey, which settlement enables the continuation of critical acute healthcare services for the benefit of the Hudson County Community. As further explained in the Confirmation Brief, the Debtors' release of HRH reflects a sound exercise of the Debtors' business judgment and should be approved. The release does not include so-called "third-party" or "non-debtor" releases. |

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | | • Absent the mediated resolutions set forth in the Plan, Holders of unsecured claims would likely receive no recovery in these Chapter 11 Cases because all distributable value would go towards repaying the secured claims of HRH and Capitala, and other secured claims, to the extent allowed. Under the Plan, in contrast: (i) the secured debt of HRH and Capitala will be "rolled" into new exit financing facilities (which will not be paid from Estate assets); and (ii) HRH has agreed to provide $3,500,000 to the Litigation Trust, to investigate, prosecute and monetize the Litigation Claims, the proceeds of which will be used to fund the recoveries of Holders of Allowed Claims in Class 5 (Maple Unsecured Claims), Class 7 (General Unsecured Claims), and Class 9 (Prior Owner Claims). |
| 6. | Strategic Ventures [Docket No. 806] | • Strategic Ventures argues that the proposed limited substantive consolidation is inappropriate. | • The proposed limited substantive consolidation is warranted and necessary for the reasons explained in the Confirmation Brief. |
| | | • Strategic Ventures argues that the Plan is unfairly discriminatory as to Class 9 (Prior Owner Claims). | • As explained in the Confirmation Brief, the Plan's treatment of Class 9 (Prior Own Claims) is not unfairly discriminatory. Holders of Allowed Class 9 Claims receive the same treatment as Holders of Allowed Class 7 Claims. |
| | | • Strategic Ventures argues that the Plan is not "fair and equitable" as to Class 14 (Strategic Ventures Secured Claims). Strategic Ventures argues the Plan violates section 1129(b)(2)(A) because it allegedly undervalues the SV Collateral. | • The Plan is fair and equitable as explained in the Confirmation Brief. Strategic Ventures Secured Claims are treated in accordance with Bankruptcy Code 1129(b)(2). The Debtors are prepared to offer evidence at the confirmation hearing as to the value of collateral. |

11

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | • Strategic Ventures argues that the Plan is not "fair and equitable" as to Class 9. | • The Plan is fair and equitable as to Class 9 and does not violate the absolute priority rule, as explained in the Confirmation Brief. |
| | | • Strategic Ventures argues that the Plan should provide for a separate liquidation trust with an independent trustee for the benefit of Garden State's creditors. | • The proposed limited substantive consolidation is warranted and necessary for the reasons explained in the Confirmation Brief ("The Propriety of Substantive Consolidation"). |
| | | • Strategic Ventures argues that the Debtor Releases are inappropriate. | • The Debtors Releases (including the proposed release of HRH) is a vital component of an arms'-length, multi-party, mediated settlement before the Honorable Michael B. Kaplan, Chief Judge of the United States Bankruptcy Court for the District of New Jersey, which settlement enables the continuation of critical acute healthcare services for the benefit of the Hudson County Community. As further explained in the Confirmation Brief, the Debtor Releases reflects a sound exercise of the Debtors' business judgment and should be approved. Absent the mediated resolutions set forth in the Plan, Holders of unsecured claims would likely receive no recovery in these Chapter 11 Cases because all distributable value would go towards repaying the secured claims of HRH and Capitala, and other secured claims, to the extent allowed. Under the Plan, in contrast: (i) the secured debt of HRH and Capitala will be "rolled" into new exit financing facilities (which will not be paid from Estate assets); and (ii) HRH has agreed to provide $3,500,000 to the Litigation Trust to investigate, prosecute and monetize the Litigation Claims, the proceeds of which will be used to fund the recoveries of Holders of Allowed |

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | | Claims in Class 5 (Maple Unsecured Claims), Class 7 (General Unsecured Claims), and Class 9 (Prior Owner Claims). The releases do not include so-called "third-party" or "non-debtor" releases. |
| | | • Strategic Ventures argues that the injunction provision is overbroad in that it purports to enjoin all parties from obtaining the Debtors' books and records. | • Article XVII of the Plan has been revised to remove any restriction from parties obtaining the Debtors' books and records. |
| | | • Strategic Ventures argues that the Plan violates Bankruptcy Code 1129(a), has not been proposed in good faith, and is forbidden by law. | • The Plan was proposed in good faith and with the goal of maximizing stakeholder recoveries and allowing the Debtors' healthcare operations to continue for the benefit of Hudson County residents (a goal consistent with the objectives and purposes of the Bankruptcy Code). The Plan is the product of extensive, arms'-length negotiations with key case constituencies – including a multi-day mediation before the Honorable Michael B. Kaplan, Chief Judge of the United States Bankruptcy Court for the District of New Jersey. *See* Confirmation Declaration. In addition, the Plan has been subject to the oversight, comment, and approval of the Debtors' independent Reorganization Committee.<br><br>• Strategic Ventures Secured Claims are treated in accordance with Bankruptcy Code 1129(b)(2).<br><br>• The Plan's classification scheme is consistent with the requirements of section 1122 of the Bankruptcy Code and is reasonable and proper as set forth in section I.A of the Confirmation Brief. |

13

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | | • Holders of Allowed Class 9 Claims are entitled to the same treatment as Holders of Allowed Claims in Class 7. |
| | | | • The Plan Proponents have satisfied the best interest test as explained in section VII of the Confirmation Brief. |
| | | | • Any "per debtor" requirement of section 1129(a)(10) of the Bankruptcy Code does not apply due to the proposed limited substantive consolidation as explained in the Confirmation Brief. |
| | | | • The Plan is feasible as explained in section XI of the Confirmation Brief. |
| 7. | Dr. Vijayant Singh, in his capacity as relator ("Dr. Singh") [Docket No. 834] | • The Confirmation Order should clearly and unambiguously provide that nothing in the Plan or Confirmation Order should prejudice the rights of Dr. Singh to seek relief from the stay and/or Confirmation Order, after notice and an opportunity for hearing, to have the claims against the Debtors heard by the United States District Court for the District of New Jersey. | • Dr. Singh points to no provision in the Plan or Confirmation Order that prejudices his right to seek relief from the stay and/or Confirmation Order, after notice and an opportunity for hearing, to have the claims against the Debtors heard by the United States District Court for the District of New Jersey. |
| | | • The Bankruptcy Court should not maintain jurisdiction over the claims in the *Qui Tam* action of Dr. Singh. Additionally, the Confirmation Order should provide that the Adversary Proceeding be dismissed as to Dr. Singh so that there is no question that the *Qui Tam* action can proceed as against the non-debtors without any further delay. | • Dr. Singh's objection should be overruled as he is seeking an improper litigation advantage that is not relevant to Plan confirmation. |

14

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | • The Disclosure Statement allegedly lacks adequate information regarding: (i) Dr. Singh's Q*ui Tam* action against certain Debtors; (ii) the proposed substantive consolidation; (iii) the proposed releases; and (iv) the Committee's determination that the Plan is fair, equitable and appropriate. | • Disclosure Statement contains adequate information on the requested topics and was already specifically amended to include language regarding *Qui Tam* action. |
| 8. | The County of Hudson (the "County") [Docket No. 836] | The Debtors' three hospitals are delinquent tax assessments totaling approximately $15.9 million, which sum must be paid under the New Jersey County Option Hospital Fee Program. There is a pending hearing on a 9019 motion on this issue and the County reserves its rights with respect to the Plan | • The County's rights are reserved. |
| 9. | Committee of Interns and Residents, SEIU ("CIR") [Docket No. 821] | • The Debtors cannot unilaterally modify or reject collective bargaining agreements without complying with Section 1113(e). Unless CBAs are properly rejected, they must be assumed and language should be added to confirmation order regarding cure amounts. | • The Debtors and the union are in discussions to address the union's objections. |
| 10. | Health Professionals and Allied Employees ("HPAE") [Docket No. 777] | • The Confirmation Order must be conditioned on assumption/assignment of CBAs as to Christ and Bayonne and all claims of the HPAE members must be paid and cured as a condition to assumption. | • The Debtors and the union are in discussions to address the union's objections. |

15

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| 11. | District 1199J NUHHCE FSCME AFL-CIO ("1199J") [Doc. No. 778] | • The Debtor could not unilaterally modify the CBAs without an agreement by 1199J or by a court Order pursuant to Section 1113(e).<br><br>• The Confirmation Order must be conditioned on assumption/assignment of CBAs as to Christ and HUMC and/or payment of accrued benefits to employees. | • The Debtors and the union are in discussions to address the union's objections. |
| 12. | Access Information Management Corporation ("Access") [Docket No. 782] | • The Plan does not provide for the disposition of PHI or other property being stored by Access. The Access contracts include terms that PHI must be returned or destroyed.<br><br>• Section 1123(a)(5) of the Bankruptcy Code requires a plan to adequately deal with the Debtors' property. Because the Plan makes no provision for the transfer or retention of the Debtors' Access Stored Property it is not confirmable as it does not comply with section 1123(a)(5), which violates section 1129(a)(1), is not, to such extent, proposed in good faith as required by section 1129(a)(3), and is ultimately not feasible, as it cannot validly be substantially consummated, as required by section 1129(a)(11).<br><br>• Access further objects to the Plan to the extent it does not provide for payment of Access' Administrative Expense Claims in full. | • The Debtors are working to address to concerns raised in this objection. |

16

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| 13. | Med One Capital Funding, LLC and Mazuma Capital Corp. ("MedOne/Mazuma") [Docket No. 784] | • The Debtors do not specify whether they assume or reject MedOne/Mazuma contracts. If assuming they will need to pay the cure. If they decide to reject, they must return the medical equipment provided by the contracts. | • To the extent cure/assumption disputes are not consensually resolved, any such dispute will be addressed subsequent to the confirmation hearing in accordance with the Plan. |
| | | • The Debtors do not satisfy substantive consolidation. | • The proposed limited substantive consolidation is warranted and necessary for the reasons explained in the Confirmation Brief ("The Propriety of Substantive Consolidation"). |
| | | • The Plan cannot cut off Set Off rights. | • MedOne/Mazuma's setoff rights can be addressed in the confirmation order, with rights, remedies and defenses of the Reorganized Debtors and the Litigation Trust expressly reserved and preserved. |
| | | • The Plan cannot transfer any of the equipment subject to MedOne/Mazuma Lease Agreements. | • The Debtors do not seek to transfer property that they do not own. |
| | | • MedOne/Mazuma cannot be treated as secured creditors or, if they are, there is no adequate protection under the Plan. | • The Debtors have not taken a position on this issue at this time |
| | | • The Plan cannot give non-consensual third-party releases. | • The Plan does not include third-party releases. |
| | | • The Plan's procedure for asserting administrative claims is confusing because it is unclear whether parties need to file requests for payment of administrative expense claims on the docket or file | • The Plan provides that claims are to be filed with the Claims Agent and there is a link for creditors to do so. |

17

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | proofs of administrative claims with the claims and noticing agent. | |
| | | • The Plan's requirement to serve rejection damages claims on the Claims Agent and Debtors is unduly burdensome. | • It is not burdensome to require a creditor to file a rejection damage claim and serve it on the Debtors. |
| | | • MedOne/Mazuma assert they are lessors. But if they are determined to be secured creditors, they object to priming liens pursuant to DIP Financing. Additionally, no adequate protection has been provided by the Debtors. | • The Debtors have not taken a position on this issue at this time. |
| | | • MedOne/Mazuma own equipment that is being leased to Debtor. They do not consent to transfer of such equipment through the sale unless the agreements are assumed and the cure amounts are paid in full. | • To the extent cure/assumption disputes are not consensually resolved, any such dispute will be addressed subsequent to the confirmation hearing in accordance with the Plan. |
| 14. | VRC Companies, LLC ("VRC") [Docket No. 785] | • In the event that the Debtors assume the Master Services Agreement with VRC, they are required to pay the actual total claim amount of $583,980.65, which includes pre-petition and post-petition claim amounts. Furthermore, the Debtors are required to show adequate assurance of future performance, including payment of the Monthly Storage Cost, and, at such time as the Records will have to be destroyed, the Projected Retrieval and Logistics Charge and the Projected Document Destruction Charge. | • To the extent cure/assumption disputes are not consensually resolved, any such dispute will be addressed subsequent to the confirmation hearing in accordance with the Plan. |

18

12984516

| # | Objecting Party | Bases of Objection | Plan Proponents' Response |
|---|---|---|---|
| | | • If the Debtors choose to reject the agreement the Debtors should be responsible for payment of retrieving and destroying the records. | • If the Debtors reject the agreement, VRC may file a rejection claim. |
| | | • Debtors should not be permitted to abandon the records. | • This objection is premature. |
| | | • Any post post-petition claim should be an administrative expense claim. | • This objection is premature. |
| 15. | JNESO, District Council 1 IUOE AFL-CIO ("JNESO") [Doc. No. 788] | • The Debtor could not unilaterally modify the CBAs without an agreement by JNESO or by a court Order pursuant to Section 1113(e). If the Debtors seek to assume the JNESO CBA they must cure all existing defaults. | • The Debtors and the union are in discussions to address the union's objections |