IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CarePoint Health Systems Inc., et al.,<br><br><br>Debtors. | Chapter 11<br>Case No. 24-12534<br>(Jointly Administered) |

### DECLARATION OF ANGELA MURDOCK-RIDLEY

I, Angela Murdock-Ridley, hereby declare (this "Declaration") under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1. I am the Vice President of Finance ("VP-Finance") of Hudson Regional Hospitals, LLC ("HRH"). I am familiar with HRH's business, financial affairs, day-to-day operations and transactions with CarePoint Health Systems Inc., et al (the "Debtors"). I am also familiar with the HRH Claims, as that term is used in that certain Fourth Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization filed in the Debtors' bankruptcy case (as may be subsequently amended, the "Plan") .

2. The HRH Claims consist of several components: (i) DIP financing provided by Bayonne Medical Center Opco, LLC ("DIP Lender"); (ii) supplies provided to HRH or its affiliates post-petition; (iii) unpaid post-petition fees under that certain Collateral Surrender Agreement ("CSA") (defined below); (iv) unpaid post-petition fees under that certain Hospital Facilities Management Agreement ("HFMA"); (v) the pre-petition senior secured claims of Capitala Private Advisors LLC ("Capitala") against IJKG Opco ("Bayonne") that had been purchased by the DIP

1

Lender, and (vi) pre-petition amounts owing to 29 E 29th Street Holdings LLC ("Bayonne Landlord") pursuant to that certain Outstanding Judgment.[1]

3. An earlier version of the Plan contemplated confirmation in the middle of February 2025, and used the following chart to estimate the HRH Claims as of February 21, 2025:

| | Bayonne | Christ/ HUMC | TOTAL | Notes |
|---|---|---|---|---|
| DIP | $13,232,097.17 | $ 28,146,000.00 | | Approximately as of Feb 19 + funding thru week end 2/21/25 |
| Supplies outside DIP | $ 126,190.95 | $ 224,860.66 | $ 351,051.61 | Through Jan 17, 2025 |
| Unpaid CSA fees | $ 5,200,000.00 | | $ 5,200,000.00 | $1.3m / month since Petition Date- Feb 28 |
| Unpaid HFMA fees | | $ 5,250,000.00 | $ 5,250,000.00 | $1.75m/ month since Dec 1- Feb 28 |
| Unpaid MSO fees | $ 600,000.00 | $ 1,200,000.00 | $ 1,800,000.00 | $150k/ hosp/ month Nov 1- Feb 28 |
| Capitala (pre-petition) | $ 7,000,000.00 | | $ 7,000,000.00 | Appx |
| Outstanding Judgment | $35,573,903.00 | | $ 35,573,903.00 | $32mm plus $1.2m/ month Jan, Feb.  Bayonne paid Nov Dec base rent |
| | $61,732,191.12 | $ 34,820,860.66 | $ 96,553,051.78 | |

4. The following chart attached as Exhibit A estimates the HRH Claims as of March 11, 2025. These components are further described below.

<u>DIP Financing Claims (new money funded)</u>

5. The DIP Lender has funded $12.5 million to Bayonne, and forecasts another $1.9 million through March 14, 2025. The DIP Lender has funded $24.6 million to HUMC and Christ Hospital ("Christ"), and forecasts another $5.1 million through March 14, 2025, for a total of $44.2 million in DIP financing from the Petition Date through March 14, 2025.

<u>Supplies</u>

6. In addition to DIP financing, HRH or its affiliates have provided supplies to the Debtors, after the Petition Date. HRH has provided approximately $201,000 in supplies to Bayonne and forecasts another $150,000. HRH has provided approximately $297,000 to HUMC and Christ and forecasts another $200,000, for a total of about $858,000 in supplies provided through March 14, 2025.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed in the Plan.

Capital Improvements.

7. HRH has incurred about $416,000 in capital improvement expenses for Bayonne and about $625,000 in capital improvement expenses for HUMC/ Christ, for a total of approximately $1.04 million.

Unpaid CSA Fees

8. On January 17 2025, the Court entered that certain Order Approving Stipulation Regarding Collateral Surrender Motion, Joint Venture MSA Motion, and Facilities MSA Motion [Dkt. 513] (the "Operations Order"). The Operations Order authorized HRH retroactively to operate and provide items and services to IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center ("Bayonne"), HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center ("HUMC"), and Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital ("Christ") in accordance with (i) Sections 2.06(a) and (b) of the CSA, (ii) the MSA (through a Manager as that term is defined in the same),[2] and (iii) the HFMA, on an interim basis ((i), (ii), and (iii) are collectively defined herein as "Interim Services").

9. HRH's fees under the CSA are $325,000 per week From the Petition Date through March 08, 2025 – 18 weeks, HRH's fees under the CSA are $5.85 million for services provided to Bayonne. There are no fees under the CSA for any services provided to HUMC or Christ.

HFMA Fees

10. The Operations Order also approved HRH's Interim Services to Christ and HUMC under the HFMA.

---

[2] The HRH Claims, as calculated herein, do not include fees earned by the Manager pursuant to that certain Management Services Agreement attached as Exhibit C of the Joint Venture MSA Motion.

11. HRH's fees under the HFMA are $1.7 million per month. From December 1, 2024 through March 31, 2025, HRHs fees under the HFMA are $7,000,000 for services provided to Christ and HUMC. There are no fees under the HFMA for any services provided to Bayonne.

Capitala (pre-petition)

12. Prior to the Petition Date, the DIP Lender purchased the debt owed, and took assignment of the security interests in the Bayonne Debtors' assets originally granted, to Capitala. As of the Petition Date, Bayonne owes the DIP Lender $7 million relating to the Capitala debt purchased by the DIP Lender.

Outstanding Judgment

13. The motion to approve the Bayonne DIP Facility [Dkt. 11] and interim order granting same [Dkt. 128] describes the perfected liens and claims of the Bayonne Landlord. The Outstanding Judgment as referenced in the Plan is the amount of a consent judgment owing to the Bayonne Landlord prior to the Petition Date, in the amount of 24.0 million to $32.0 million, which amount shall increase by $1.2 million per month.[3]

14. HRH calculates the Outstanding Judgment to be $32 million plus unpaid January February, and March rent for a total of $35,573903.

---

[3] As described in footnote 15 of the Plan,
> For the avoidance of any doubt, the Outstanding Judgment shall include, without limitation, all amounts and categories of amounts the Landlord has or could have claimed/prayed for in the Delaware Action, including, without limitation, arrears/defaults in the Base Rent, Additional Charges, default, escalated or holdover rent, Impositions, insurance premiums, expenses, taxes, insurance, water, utilities, landscape, maintenance, HVAC, trash removal, fees, and other expenses, interest, penalties, and other amounts, including attorneys' fees, owed by IJKG Opco and its Affiliates under any Lease Document, as of the date on which the Interim Orders Contingency has occurred.

4

HRH's Exit Facility

15. The Plan provides that HRH receive the HRH Exit Facility on account of its HRH Claims. The Plan further provides that HRH shall will provide "new money" sufficient to satisfy administrative expense and priority claims in connection with, and pursuant to, the Plan, and working capital of the borrowers thereunder following approval of the Plan.

16. The amount of funding for administrative expense and priority claims is still to be determined. The Debtors estimate however that the Debtors' accounts payable obligations are about $14 million, and these amounts will be paid in the ordinary course (not necessarily on the Effective Date of the Plan). The Debtors have requested that HUMC and Christ reserve sufficient funds to pay 6 months of operating expenses, or about $15 million.

Total of HRH Claims

17. Thus, after adding all the forgeoing amounts, the total of HRH Claims to be rolled into the HRH Exit Facility (under the Plan) is about $131 million.

18. To be clear, HRH is <u>not</u> recovering more than the amount of the HRH Claims under the Plan.

19. The Plan does provide that Bayonne assets (other than litigation claims) are to be transferred to HRH under the CSA, with no offset to the HRH Claims. See Plan article IX.B. The Plan (Article IX.Q) and the CSA (section 2.04) provide that HRH assume all of Bayonne's Medicare Liability, which is estimated at $7 million. This assumed liability is not a component of the HRH Claims, nor is it being rolled into the Exit Facility. I understand that the Bayonne assets were heavily marketed prior to the Petition Date, and were also subject to an "alternative transaction" process under the Plan. I also understand that no other buyer bid for the Bayonne

assets. Thus, I submit that this assumption of the Medicare Liability is sufficient consideration for the Bayonne assets.

20. The Plan provides that HRH shall manage Christ and HUMC under the HFMA. See Plan article IX.B. I submit that there is no offset to the HRH Claims because the HRH Claims are intended to calculate unpaid fees as of the Petition Date. HRH shall provide new services after the Petition Date, and will have earned fees in accordance with the HFMA.

21. The Plan also provides a mechanism for HRH to share in the proceeds of the Litigation Trust, in accordance with Article IX.C of the Plan. This structure was heavily negotiated as part of a compromise overseen by a court-appointed mediator with respect to, among other things, the extent of the DIP Lender's liens on avoidance actions. The Plan (Article IX.C) makes clear that HRH's recovery with respect to litigation proceeds is only "until such time as all obligations under the HRH Exit Facility (including the Outstanding Judgment) are satisfied in full". Thus, these litigation proceeds will not enable HRH to receive more than the amount of the HRH Claims.

HRH's Ability to Fund

22. HRH has sufficient funds to fund the "new money" portion of the Exit Facility as well as the $3.5 million "Litigation Trust Seed Money" that is required by Article IX.B of the Plan.

I declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 7, 2025

By: Angela Murdock-Ridley
Vice President of Finance
Hudson Regional Hospital

6

4929-1133-8532, v. 2

4929-1133-8532, v. 2