UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 11 |
| | . Case No. 24-12534 (JKS) |
| | . |
| CAREPOINT HEALTH SYSTEMS INC. | . (Jointly Administered) |
| d/b/a JUST HEALTH FOUNDATION, | . |
| *et al.*, | . |
| | . Courtroom No. 6 |
| | . 824 North Market Street |
| Debtors. | . Wilmington, Delaware 19801 |
| | . |
| | . Friday, April 11, 2025 |
| . . . . . . . . . . . . . . . | . 1:03 p.m. |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES</u>:

| | |
|---|---|
| For the Debtors: | Peter C. Hughes, Esquire |
| | DILWORTH PAXSON, LLP |
| | 800 North King Street |
| | Suite 202 |
| | Wilmington, Delaware 19801 |
| | |
| | Lawrence G. McMichael, Esquire |
| | 1500 Market Street |
| | Suite 3500E |
| | Philadelphia, Pennsylvania 19102 |

(APPEARANCES CONTINUED)

| | |
|---|---|
| Audio Operator: | Sean Moran, ECRO |
| | |
| Transcription Company: | Reliable |
| | The Nemours Building |
| | 1007 N. Orange Street, Suite 110 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302)654-8080 |
| | Email:  <u>gmatthews@reliable-co.com</u> |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (CONTINUED):

For CarePoint Health
Captive Assurance
Company, LLC:              Matthew B. Harvey, Esquire
                          MORRIS NICHOLS ARSHT & TUNNELL, LLP
                          1201 North Market Street
                          Suite 1600
                          Wilmington, Delaware 19899

For the Official
Committee of
Unsecured Creditors:      James E. O'Neill, Esquire
                          PACHULSKI STANG ZIEHL & JONES, LLP
                          919 North Market Street
                          17th Floor
                          Wilmington, Delaware 19801

                          -and-

                          Andrew H. Sherman, Esquire
                          SILLS CUMMIS & GROSS, P.C.
                          One Riverfront Plaza
                          Newark, New Jersey 07102

For Maple
Healthcare, LLC:          George J. Spathis, Esquire
                          LEVENFELD PEARLSTEIN, LLC
                          120 South Riverside Plaza
                          Suite 1800
                          Chicago, Illinois 60606

1                                INDEX

2    <u>MOTIONS</u>:                                                    <u>PAGE</u>

3     Agenda
      Item 1:     Decision regarding Plan Proponents' request        4
4                 for confirmation of the Seventh Amended
                  Combined Disclosure Statement and Joint
5                 Chapter 11 Plan of Reorganization
                  [Filed: 04/09/2025; D.I. 1131].
6
                  Court's Ruling:                                    4
7

8

9    Transcriptionists' Certificate                                 37

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commence at 1:03 p.m.)

2              THE COURT:  Good afternoon, everyone.  This is

3   Judge Stickles.  We're on the record in CarePoint Health

4   Systems, Case Number 24-12534.

5              This is the Court's ruling on the plan proponents'

6   request for confirmation of the seventh amended combined

7   disclosure statement and Chapter 11 plan of reorganization.

8              Before I begin, I just want to make sure that

9   someone -- I see parties available from the debtor.  I just

10  want to make sure that the Committee and the objectors are

11  present.  I see Mr. O'Neill.

12             You don't need to leave your camera on; I just

13  want to make sure that everyone is available.

14             And I see Mr. Harvey.

15             MR. O'NEILL:  Yes, Your Honor.

16             THE COURT:  And I hear --

17             MR. SPATHIS:  Maple -- yeah, Maple is represented,

18  Your Honor.  Thank you.

19             THE COURT:  Okay.  Thank you very much.

20             And I don't know if the U.S. Trustee is on this

21  afternoon.

22        (No verbal response)

23             THE COURT:  Okay.  On April 1, following a three-

24  day contested confirmation hearing, the Court ruled that

25  three issued precluded confirmation of the fifth amended

1   plan:  HRH's recovery under the plan, Maple's diminution in

2   value claim, and equity retaining its interest in violation

3   of the absolute priority rule.  The confirmation hearing

4   record was held open to allow the parties the opportunity to

5   address these issues.

6           On April 2, the debtors filed a sixth amended

7   plan.  Several objections were filed to the plan.  At

8   yesterday's continued confirmation hearing, the only

9   unresolved objections were the supplemental objections of

10  Maple Healthcare at Docket 1125; CarePoint Health Captive

11  Assurance Company's objection at 1126; and the joinder of the

12  three whole entities at Docket 1127.  In addition, the plan

13  proponents and Strategic Ventures filed replies at Docket

14  1134 and 1136, respectively, as well as the seventh amended

15  plan.

16          In conjunction with the continued confirmation

17  hearing, the Court reviewed the supplemental Young voting

18  declaration at Docket 1087 and the supplemental Syed

19  declaration in further support of confirmation at Docket

20  1086, heard additional testimony from Mr. Syed, and reviewed

21  the Syed deposition designation, as well as various other

22  exhibits that were admitted into evidence.

23          The Court finds that with the amendments to the

24  plan, the plan proponents have met their burden and the

25  seventh amended plan satisfies the requirements of the

1  Bankruptcy Code.

2          First, with respect to the HRH recovery under the

3  plan, the Court ruled HRH could not recover more than 100

4  percent of its claim, that its $32.7 million credit bid must

5  be reconciled against its allowed claim, and that HRH could

6  not continue to receive litigation trust proceeds after its

7  reconciled, allowed secured claim is paid in full.

8          Article 9(c) and (d) of the plan provide that HRH

9  cannot recover more than 100 percent of its claim; it's $32.7

10  million credit bid must be reconciled against its allowed

11  claim and the plan further clarifies that HRH's entitlement

12  to share the proceeds of the litigation claims is consistent

13  with the negotiated settlement and this Court's ruling.  So,

14  based on these modifications to the plan, the absolute

15  priority rule objections to HRH's claims are overruled.

16          Second, with respect to Maple's diminution in

17  value claim, the amended plan provides for payment in full of

18  Maple's diminution in value claim on the effective date of

19  the plan.  This provision is compliant with Section

20  1129(a)(9) and the objection is overruled.  And we are

21  address scheduling of Maple's diminution motion no the

22  context of a proposed order.

23          Third, the Court found that the fifth amended plan

24  violated Section 1129(b)(2)(B)(ii), because the holders of

25  equity in the practice groups retained their equity interest

1   without the consent of the practice group creditors or

2   payment in full of the claims of the practice group

3   creditors.  To resolve this issue, the plan proponents

4   amended the plan to exclude the two practice groups, Garden

5   State and New Jersey Medical.  This amendment resolves the

6   absolute priority rule objection and this treatment complies

7   with Section 1129(b)(2)(B)(ii).

8           The objectors argue the amendment, specifically,

9   the removal of the practice groups as confirming debtors

10  under the plan, creates several new issues that preclude

11  confirmation of the plan.  First, the objectors argue that an

12  independent fiduciary is necessary to represent the practice

13  groups.  The objectors raise a lot of potential what ifs,

14  with respect to connections between the confirming debtors

15  and the practice group, but no evidence of an actual conflict

16  was presented; rather, the evidence shows that the debtors'

17  interests are aligned both, the confirming debtors and the

18  practice groups.  The objection is overruled.  To be clear,

19  no party is precluded from seeking future relief related to

20  an independent fiduciary.

21          Captive also argues that potential issues related

22  to cure amounts and/or company claims and causes of action

23  prejudiced the rights of the practice groups.  The plan

24  addresses all claims by expressly preserving any claims the

25  practice groups might have; more specifically, the plan

1  provides, quote:

2            "For the avoidance of doubt, any and all rights,

3  claims, and causes of action of Garden State Healthcare

4  Associates, LLC and New Jersey Medical & Health Associates

5  LLC against any of the debtors are expressly reserved and

6  preserved."

7            The plan should also expressly preserve issues

8  related to cure amounts.  With that clarifying revision, the

9  objection is overruled.

10            Captive also challenges approval and effectiveness

11  of the releases pending an independent fiduciary.  The

12  confirming debtors are not receiving releases.  The debtor

13  releases contained in the plan release nondebtor third

14  parties, not the debtors or their current officers and

15  directors.

16            The definition of exculpated parties in the plan

17  does not include the debtors.  The practice groups' right to

18  bring actions are reserved under the plan.  This is

19  consistent with the language in Footnote 6 and 25 of the

20  plan, which expressly reserve and preserve any and all

21  rights, claims, and causes of action of the practice groups

22  against any of the debtors and/or any of the debtors against

23  the practice groups.

24            Moreover, Mr. McMichael clarified that the

25  practice groups are carved out of the exculpation provision

1  and that the practice groups give up nothing.  The provision

2  should also be included in the plan, clarifying that the

3  exculpation provision does not apply to the practice groups

4  and causes of action are preserved.

5           With respect to professional fees, the debtors

6  have represented that they do not intend to allocate

7  professional fees to the practice groups and there is a

8  process in place to assert objection to professional fee

9  claims, so this objection is overruled.

10          Finally, in its objection, Captive argues the

11  practice groups are administratively insolvent and should be

12  converted to Chapter 7 cases.  The evidence shows the

13  practice groups are meeting their obligations as they become

14  due and will remain debtors-in-possession with their assets

15  preserved; moreover, no motion to convert is currently

16  pending before the Court, so this objection is overruled.

17          Captive argues that re-solicitation is required

18  because, (A), the plan materially and adversely modifies the

19  treatment of Class 7, general unsecured claims, by expanding

20  the claims pool and the practice groups and their creditors

21  are receiving a materially different treatment under the

22  plan.  The Court finds that re-solicitation is not required

23  and the objection is overruled.

24          Based on the Syed declaration, holders in Class 7

25  are not adversely affected by the removal of the practice

1  groups from the plan.  According to Mr. Syed, quote:

2       "Removing the practice groups from the plan

3  removes two entities that operate at a loss and which do not

4  financially contribute to the confirming debtors."

5       While the objectors argue that Quality Care

6  Associates' schedule at Exhibit 198 lists Garden State as a

7  creditor with a $36.7 million unsecured claim, the

8  calculation fails to consider the uncontroverted evidence

9  that the confirming debtors contribute $50 million annually

10  to the practice groups and that the claims pool is now

11  reduced by $19 million due to the removal of the claims

12  against the practice groups; as a result, the estimated

13  recovery to the general unsecured creditors, under the

14  seventh amended plan is no worse.

15       Further, the plan supplemental voting declaration

16  of Ms. Young at Docket 1087 reflects that the plan is

17  amended, has the requisite acceptances.  Also, as the plan

18  proponents note, even if the creditors of the practice group

19  may ultimately receive worse recoveries from the practice

20  groups than were offered under the fifth amended plan,

21  creditors of the practice group are not eligible to vote on

22  the seventh amended plan.

23       And, finally, modifying plan provisions in the

24  context of a confirmation to address or resolve issues raised

25  by parties is not uncommon; in fact, Rule 3019(a)

1  contemplates such modifications.  Here, the proposed

2  modifications do not adversely change the treatment and

3  therefore, it does not require re-solicitation.

4          As to substantive consolidation, Mr. Syed

5  testified that he incorporates his testimony from the initial

6  confirmation hearing with respect to substantive

7  consolidation.  Nothing in the seventh amended plan changes

8  the interrelatedness of the 19 confirming debtors, the

9  massive undertaking to unscramble their assets and liability,

10 the lack of funding and resources to pursue such an endeavor,

11 and the harm to all creditors remains.

12          With respect to Strategic Ventures, the Court is

13 not being asked to prove the Strategic Ventures' term sheet.

14 A sentence must be added to the confirmation order making

15 clear that the Court is not approving the Strategic Ventures'

16 settlement or the term sheet and is not retaining

17 jurisdiction over any dispute related to the settlement.

18          Finally, with respect to feasibility, Mr. Syed

19 received as to the future projection under the plan and the

20 likelihood of success.  The supplemental Syed declaration at

21 Docket 1086, paragraph 8, supports a finding that the

22 approval of the practice groups does not adversely affect

23 feasibility of the plan; in addition, paragraph 13 provides

24 that removal of the practice groups will not affect the

25 confirming debtors because the operations won't be affected

1    and the debtors will continue providing services to the

2    confirming debtors -- excuse me -- the doctors will continue

3    to provide services to the confirming debtors.

4           Again, the practice groups will remain debtors-in-

5    possession in these Chapter 11 cases after the effective date

6    and all of their assets will be preserved as the physicians

7    continue providing services to the confirming debtors.  No

8    evidence or competing projections have been provided that

9    shows otherwise.  Based on this evidence, the plan offers a

10   reasonable assurance of success.  The Court finds the plan is

11   feasible and satisfies the requirements of 1129(a)(11).

12          In conclusion, based on the record in these cases,

13   the evidence and arguments presented, I find the plan

14   proponents have met their burden under the applicable

15   sections of the Bankruptcy Code to confirm the seventh

16   amended plan for the reasons stated on the record today and

17   at the confirmation ruling on April 1.

18          The Court will require certain modifications to

19   the proposed form of order.  Also, to ensure the record is

20   clear, and for the reasons previously stated, the Court also

21   finds the voting declaration demonstrates the debtors have

22   satisfied the provisions of Section 1125 and 1126 of the

23   Bankruptcy Code, as applicable; in addition, the disclosure

24   statement satisfies the disclosure requirements of Section

25   1126(b)(2) of the Bankruptcy Code by providing adequate

1  information, as defined in Section 1125(a).

2          So, with that ruling, are the parties prepared to

3  review a form of order.

4          MR. MCMICHAEL:  The debtors are prepared, Your

5  Honor.  Mr. Hughes has control of the form of order and we

6  can make whatever changes the Court requires.

7          Before we do that, can I just clarify the three

8  changes that the Court has indicated it needs in the plan,

9  just so we get that right and we get it done right away?

10          THE COURT:  Bear with me, I have to search.

11      (Pause)

12          THE COURT:  A provision should be included in the

13  plan clarifying that the exculpation provision does not apply

14  to the practice groups and their causes of action are

15  preserved.

16          MR. MCMICHAEL:  Right.  Got that.

17          Preserved cure amount issues.

18          THE COURT:  Yeah.  I was going to do this after

19  the hearing for myself, so...

20          MR. MCMICHAEL:  I think cure amount issues for the

21  practice groups, which are preserved for all creditors,

22  actually, the cure amounts are determined in the plan;

23  they're subject to --

24          THE COURT:  Right.

25          MR. MCMICHAEL:  We'll provide in the plan,

1  explicitly that in Footnote 6 and Footnote 25 that the

2  reservation includes cure amounts.

3          THE COURT:  We're going to address Maple's

4  scheduling.

5          MR. MCMICHAEL:  Maple's scheduling and you wanted

6  the sentence --

7          THE COURT:  Bear with me.

8          MR. MCMICHAEL:  -- I guess in the confirmation

9  order, indicating no approval of the Strategic Ventures'

10  settlement and no retention --

11          THE COURT:  Right.

12          MR. MCMICHAEL:  -- of jurisdiction, which is all

13  fine.

14          THE COURT:  And I believe --

15          MR. MCMICHAEL:  Yeah, the debtors will make both

16  of those changes.

17          THE COURT:  I believe that's everything, with

18  respect to my oral ruling.

19          MR. MCMICHAEL:  Okay.  Thank you, Your Honor.

20          THE COURT:  Certainly.

21          MR. HUGHES:  Your Honor, may I ask for a further

22  clarification?  I thought I heard the Court say that you need

23  revisions to the plan.

24          Can we accomplish those just by providing in the

25  confirmation order something along the lines of, the plan is

1  deemed modified as to X, Y, and Z, or do we need to actually

2  submit a further revised plan?

3          THE COURT:  I'm going to ask that you file a

4  conformed plan so that what is out there, so people can see

5  what's the final form of the plan.

6          MR. HUGHES:  Okay.  We can certainly do that.

7          THE COURT:  Okay.  All right.

8          So, there were some issues raised by Captive at

9  the end of its objection with respect to the litigation

10 trust.  And I'm going to start before the order, with some

11 general comments on documents.  The litigation trust

12 agreement needs to be amended to be consistent with the plan,

13 with respect to who are the debtors and the same is true with

14 the MSA.

15         MR. SHERMAN:  Your Honor, Andrew Sherman for the

16 Committee.

17         We have control of the trust agreement and we will

18 make that change.

19         THE COURT:  Okay.  Thank you, Mr. Sherman.

20         And I have a general comment, and this has to do

21 with the word "affiliate" and I would ask the parties to

22 consider this issue.  The definition of "affiliate" is a Code

23 word, I mean, it's a Code definition.  I'm hesitant, and your

24 definition in your plan of "affiliate" is, it refers you to

25 the Code.

1        So it seems to me that there is a clearer way to

2   address the removal of the practice groups in this case, as

3   debtors; I mean, they are certainly still debtors, they're

4   just not debtors for purposes of this plan.  And so it would

5   seem to me that you could clarify Footnote 7 to say that

6   they're not debtors under this plan; they're affiliates and

7   that doesn't change.

8        MR. SHERMAN:  So, Your Honor, we can put in an

9   overwrite somewhere in the plan to say, notwithstanding

10  anything to the contrary herein, the practice groups shall

11  not be considered debtors or confirming debtors --

12       THE COURT:  Yes, something like that.

13       Yeah, and I would suggest that you work with Mr.

14  Harvey, just because I think to say, first of all, I don't

15  like the word "deemed," and you're going to hear me ask that

16  that be removed from this document, from the order.  But it

17  just seems to me that that creates an ambiguity that we don't

18  need to create.

19       MR. SHERMAN:  Correct, Your Honor.

20       MR. HARVEY:  Your Honor, for the record -- excuse

21  me -- Matthew Harvey from Morris Nichols, on behalf of

22  Captive.

23       The issue with the affiliate word is that if you

24  look at, for example, the releases in the plan --

25       THE COURT:  Right.

1          MR. HARVEY:  -- the debtor is releasing, on behalf

2  of itself and its, capital A, affiliates.  So I think that

3  was the solve the debtors and the Committee had come up with

4  to try to solve for that issue.

5          We disagree that that completely solved the issue,

6  but if Your Honor's ruling is that there needs to be a

7  general carve-out of the practice groups and their creditors

8  from any of the releases and exculpation, I think there's

9  another way we can solve for that.

10         THE COURT:  Mr. Sherman, did you want to be heard?

11  You were on mute.

12         MR. SHERMAN:  Yeah, we're happy to address these

13  issues with Mr. Harvey offline, Your Honor -- I don't want to

14  take up the Court's time -- and deal with it.  We had a

15  number of meet-and-confers that were not successful.  I hope

16  that this one will be more successful, so I look forward to

17  speaking with Mr. Harvey and we can hopefully address these

18  issues.

19         THE COURT:  Yeah, I just am hesitant to modify a

20  defined Code term, okay.

21         I want to address a concern raised with respect to

22  the practice groups' books and records.  I think that this is

23  addressed by Article 9(j) of the plan, but I want to confirm

24  with Captive, with Mr. Harvey that that adequately addresses

25  your issue.

1          MR. HARVEY:  I'm sorry, Your Honor.  You said

2    Article 9(j)?

3          THE COURT:  Yes, this is regarding preservation of

4    books and records of the practice group.

5          MR. HARVEY:  I don't have the plan in front of me,

6    but I can pull it up.

7          THE COURT:  Okay.  And, certainly, you can address

8    that offline.  I think it's just clear that the books and

9    records of the practice group needs to be preserved and I

10   don't think it was anywhere in the plan it was suggesting

11   otherwise.

12         MR. HARVEY:  Okay.  We'll take a look at that.

13         THE COURT:  Okay.

14         MR. HARVEY:  Thank you, Your Honor.

15         THE COURT:  Uh-huh.

16         I wanted to ask the parties about cancellation of

17   old securities and agreements and provision -- how to address

18   that, with respect to the practice groups, and this is

19   Article 9(h)(2).

20         MR. SHERMAN:  I think, Your Honor -- Andrew

21   Sherman for the record -- I think we can just confirm whether

22   it's an assertion of 9(h) or otherwise, that there'll be no

23   cancellation of the equity, as it relates to the practice

24   groups.

25         THE COURT:  Okay.  And I think, Mr. Sherman,

1  Section 17(b) severability, it also needs to be addressed

2  there.

3          MR. SHERMAN:  Will do, Your Honor.  Thank you.

4          THE COURT:  All right.  With respect to the

5  proposed order, okay, on page 2, I would like you to

6  reference the declaration of Angela Murdock Riddley

7  (phonetic) at Docket 884, because her declaration was relied

8  upon by this Court in its prior ruling or prior -- the

9  initial confirmation ruling.

10         And with respect to Mr. Gross, and this is, like,

11  five lines up from the bottom, it should refer to his

12  testimony; strike a reference to his declaration, because

13  it's not in evidence.

14         With respect to the jurisdiction and venue,

15  paragraph (b), I'm going to ask you to strike the second

16  sentence; otherwise, this paragraph refers to jurisdiction,

17  venue, and core proceeding, and I think that's sufficient.

18         Okay.  Paragraph (e) and (f), so I understand, and

19  the plan supplement includes the exit facility documents,

20  those documents, I understand, are not complete, but this

21  language, I'm going to try to simplify this a little bit.

22  And (e) and (f) in 13 and 14 are kind of together, but, first

23  of all, I have no comment, with respect to (e), except you

24  should add the United States Trustee as a party in this to

25  review.  With respect to (f), I think you should strike

1  everything after the second sentence; it's unnecessary and I

2  don't have evidence for it.  Actually, I'm sorry, we should

3  strike everything after the first sentence, because I don't

4  have evidence for it.

5          Okay.  I think I'm going a little out of order

6  here.  Bear with me one second.

7      (Pause)

8          THE COURT:  My next comment is paragraph (m)(m).

9  This paragraph is a one-sentence paragraph.  It should just

10 read:  The Court retains.  Strike "may" and "will properly";

11 just say, "The Court retains jurisdiction."

12         Paragraph (n)(n), I'm going to ask (inaudible)

13 necessary here.  Paragraph --

14         MR. SPATHIS:  Your Honor, your audio cut out, at

15 least, for me.  Maybe you could repeat what you just said,

16 with respect to (n)(n).

17         THE COURT:  With respect to (n)(n), that's a

18 prospective provision.  (Inaudible.)

19         UNIDENTIFIED SPEAKER:  Now, we can hear you.

20         UNIDENTIFIED SPEAKER:  You're back.

21         THE COURT:  You can hear me now?

22         UNIDENTIFIED SPEAKER:  Yes.

23         UNIDENTIFIED SPEAKER:  Yes.

24         THE COURT:  Okay.  Well, let me know if you can't

25 hear me again; just interrupt.

1       So, I think you said (n)(n) was the last one you

2  heard?

3       MR. MCMICHAEL:  Your Honor, this is Larry

4  McMichael for the debtors.  The last thing I heard was:

5       "Paragraph (n)(n) is a prospective revision" --

6       THE COURT:  Yeah.

7       MR. MCMICHAEL:  -- and that's where you stopped

8  there.

9       THE COURT:  Okay. (N)(n) is prospective, so please

10  strike it.

11       And then (o)(o), this provision, this trustee has

12  a right under the trust agreement, so you can strike (o)(o).

13       In paragraph  (p)(p), I would ask in the second

14  line that you insert "and the plan" after "order."  So it

15  should read:

16       "The solicitation procedures order and the plan

17  set forth procedures..."

18     (Pause)

19       THE COURT:  Okay, TT, T as in Tom, T, Tom-Tom,

20  this paragraph is really not a court finding.  This is,

21  essentially, a stipulation between the parties but I think

22  that you can insert "As set forth in the record" at the

23  beginning of that paragraph.  Then at the end of that

24  paragraph I think that you should include in there "The

25  parties are not seeking Court approval of the term sheet,"

1  and "The parties are not asking the Court to retain

2  jurisdiction with respect to the Strategic Venture settlement

3  or term sheet," something to that effect.

4         I am going to jump around a little bit.  The word

5  "deemed" is used a lot in here, in a lot of different

6  contexts.  It's used in Paragraph R, its used in Paragraph

7  20, 21, 22, 56, its used in sub-headers. I don't see the need

8  for the use of the word and unless the parties feel strongly

9  about it, I would ask you to strike it.

10        MR. SHERMAN:  From the committee's perspective,

11 Your Honor, we can strike that.

12        MR. MCMICHAEL:  Fine with the debtors.

13        THE COURT:  Okay, with respect to the collateral

14 surrender agreement language that Maple requested in

15 Paragraphs 18 and 33, I received competing language that was

16 attached to Maple's markup of the confirmation order. I find

17 that language overly expansive and I am going to overrule

18 that language and leave the language as proposed in the

19 confirmation order as drafted at Docket 1133.

20        I am going to ask that the confirmation order, and

21 I think this is part of the footnote, making it clear that

22 the debtors -- with respect to this confirmation order it

23 does not include the practice groups and to clean up the

24 affiliate language.  That is Footnote 4 and, I believe,

25 Footnote 6.

1          Now, with respect to the actual order portion of

2   the order, in Paragraph 2, and this is unique to me maybe,

3   but in the third line from the bottom its saying "It being

4   the intent of the Court."  I ask that you strike that and

5   just so that it should read "Or provision, the plan, the plan

6   supplement," etc.  Just strike "It being the intent of the

7   Court."

8          Paragraph 8, I want you to add at the beginning of

9   this paragraph "To the extent allowable by applicable law."

10          Paragraph 2, line 10, delete the word "empowered."

11          I don't know why Paragraph 11 is in this order.

12   My preference would be to delete it unless someone wants to

13   be heard with respect to this paragraph.

14          MR. SHERMAN:  I think from the committee, Your

15   Honor, we can delete it.

16          THE COURT:  I just think its surplusage and I

17   don't think it has substantive modifications.

18          MR. MCMICHAEL:  Fine with the debtors.

19          THE COURT:  Okay, this -- my next comment is

20   Paragraph 13.  We have already stated in the findings that

21   documents for the exit facility remain under negotiation. So,

22   I think that you can strike in the second line that documents

23   remain under negotiation.

24          Then at the top of page 25, it says "In addition,

25   the plan proponents are authorized."  It should say "to make

1  non-material modifications to the plan supplement documents."

2          MR. MCMICHAEL:  I'm sorry, where was that, Your

3  Honor?

4          THE COURT:  I'm sorry, we're on Paragraph 13, and

5  we are at the top of page 25, third line from the bottom.  I

6  guess I should ask the parties, I presume that you're pretty

7  close on the exit facility documents.  They were part of the

8  plan supplement and part of solicitation.

9          MR. SHERMAN:  Yes.

10          MR. MCMICHAEL:  I think HRH just needs to, you

11  know, go through them carefully and be sure of them.  They

12  should be nearly complete.

13          THE COURT:  Alright, so that should say "Non-

14  material modifications."

15          In Paragraph 14, I will authorize the debtors or

16  the plan proponents to enter into documents.  So, in the

17  second sentence of Paragraph 14 it should read "The Court

18  hereby authorizes entry into the Capitala exit facility."  I

19  am not going to approve those facilities because I don't have

20  a final document in front of me but I will authorize entry

21  into those.

22          My next comment is Paragraph 36, this paragraph

23  should be modified to include the language that Maple

24  proposed with respect to this paragraph.

25          In Paragraph 37, just delete the introductory

1  phrase. It should just read "The deadline for the litigation

2  trustee to assert or commence."

3        MR. SHERMAN:  Your Honor, just one change.  I just

4  want to make sure that your change to 36 doesn't impact 37

5  such that claims are preserved and nothing Maple changes in

6  36 creates a release or otherwise.

7        THE COURT:  Okay, yes, please.  Can we go off the

8  record one second, I want to grab a document that I don't

9  have with me.  Let's take a quick recess and I will be right

10  back.

11       (Recess taken at 1:40 p.m.)

12       (Proceedings resumed at 1:41 p.m.)

13        THE COURT:  Okay, we're back on the record.

14        Mr. Sherman, did you see the comment in Paragraph

15  36 that says, "Subject to Maple's rights regarding the

16  collateral sharing agreement as set forth herein?"

17        MR. SHERMAN:  Yes, Your Honor.  I think it's

18  subject to the rights and any defenses thereto.  I think just

19  a corresponding so we don't have any -- whatever rights they

20  have and defenses or otherwise. I just don't want any rights

21  to change as a result of this order.

22        THE COURT:  Understood.  Mr. Harvey, did you want

23  to be heard?

24        MR. HARVEY:  Yes, Your Honor.  On Paragraph 36, I

25  think this is modifying the plan because it says that the

1   deadline to object to claims held by Maple, the prior owners,

2   for the Captive is governed by 108 and 546 but the plan says

3   that there is a claim objection of 180 days after the -- I

4   believe after the effective date.

5           THE COURT:  Oh, you're looking at Paragraph 37.

6           MR. HARVEY:  Yeah, sorry, Your Honor, 37.  I

7   apologize.

8           MR. SHERMAN:  Your Honor, 37 is there.  So, we

9   have whatever 546 and 108 give us for causes of action.  I

10  don't see a --

11          MR. HARVEY:  It says any challenge or objection of

12  any kind to the amount or validity, and I'm paraphrasing

13  here, of any claims of the Maple, prior owners, and CarePoint

14  shall be governed, but the plan says they're governed by the

15  claim objection deadline.

16          THE COURT:  So, its --

17          MR. SHERMAN:  Yeah, so I think it's a

18  differentiation between a claim objection and an affirmative

19  cause of action.  So, I think the affirmative cause of action

20  should be 108 and 546. If it's a claim objection it should be

21  consistent with the deadline.

22          THE COURT:  Can the parties modify that and agree

23  on how to modify that to differentiate between the two.

24          MR. SHERMAN:  Yes, Your Honor.

25          THE COURT:  Okay.  Thank you, Mr. Harvey, for

1  clarifying that.

2          MR. HARVEY:  Thank you, Your Honor.

3          THE COURT:  Paragraph 57 -- oh, let me ask the

4  question first.  Is the language in 51 through 54 verbatim of

5  the plan?  If it's not they need to -- the language in both

6  need to be consistent.

7          MR. SHERMAN:  We will make them conforming, Your

8  Honor.

9          THE COURT:  And, obviously, I know there is the

10 language regarding exculpation so I am not exactly sure where

11 you are going to fit that in, but just make sure they're

12 consistent.

13         Paragraph 57, so this has to do with dissolution

14 of committee.  And does this need to be modified so that it

15 addresses all debtors and whether the effective date,

16 dismissal, conversion, whatever.

17         MR. SHERMAN:  Yes, Your Honor.  This was an

18 unintentional footfall, so we will fix it.

19         THE COURT:   Paragraph 58, this speaks to service

20 of the confirmation order and the occurrence of the effective

21 date.  Our local rules require service of orders within 48

22 hours.  So, this needs to be segregated.  I have no problem

23 with notice of effective date going out on five days but that

24 is -- these are not going to happen concurrently.  So, in

25 accordance with the local rules the confirmation order needs

1  to be served within 48 hours.

2           I don't see the need for Paragraph 59 unless

3  someone wants to argue why it needs to be in here.

4      (No verbal response)

5           THE COURT:  Okay, I'm going to ask that that be

6  stricken.

7           Paragraph 63, why is that in here?

8           MR. SHERMAN:  So, we were not going to get limited

9  in going effective -- we can remove that.

10          THE COURT:  Okay, Paragraph 64, and this has to do

11 with scheduling with respect to Maple's diminution in value

12 claim.  I have read both parties proposed schedule and it

13 seems to me that experts are  likely and so time for expert

14 reports need to be included in this provision.  So, I know --

15 I forget exactly how many days I calculated between the two

16 but would a May 29th hearing work for the parties?

17          MR. MCMICAHEL:  Your Honor, that would be

18 difficult. I mean, we can't go effective before May 29th.  We

19 are going to have issues.  I would have to consult with HRH

20 and figure out how this effects their ability to -- I think

21 we -- I don't want to say definitively one way or the other.

22          By the way, Your Honor has disabled my video and I

23 understand you don't want to see me but I can't put my video

24 on.

25          THE COURT:  Mr. McMichael, I promise you I did not

1  disable your video.  Can you fix that?

2      MR. MCMICHAEL:  Every time I try to turn my camera

3  on it says your host has disabled your video.  It's okay.

4      THE COURT:  Here is what I don't want, I don't

5  want to hold up a confirmation order because the parties

6  can't agree on a schedule.  And so -- but I will say I tried

7  to calculate some dates out for you.  And while I could give

8  an earlier date, I am concerned about how you are going to

9  get this done.

10      MR. SHERMAN:  Your Honor, can we request that Your

11  Honor pivot back to the escrow concept.  So we can live with

12  the May 29th date if we can go effective earlier is, sort of,

13  what Mr. McMichael is saying.  I will play tag team with him.

14  So, if the Court would impose the escrow so we meet the 1129

15  requirement on the payment of any diminution on the effective

16  date then we can have the hearing on the 29th.

17      THE COURT:  I think the concern was that there

18  wouldn't be consensus on a number.

19      MR. SHERMAN:  Hopefully, we can agree with --

20  maybe I could suggest this, Your Honor.  If we put up and,

21  obviously, discuss with HRH but let's just use the midpoint

22  of the testimony yesterday, the million-five, and then give

23  our friends at Maple the right to augment that amount upon a

24  showing by the Court, because there was no evidence yesterday

25  of anything greater then what Mr. Syed said.  So, if we give

1  them the right to try to increase it hopefully that is a fair

2  resolution.

3            MR. SPATHIS:  I really would like to avoid -- I

4  don't have a problem with the concept of escrowing.  I do

5  have a problem with the idea that we're going to have an

6  adversarial process with respect to how much should be

7  escrowed.  Again, I don't think given what the evidence

8  demonstrated yesterday what a normal collection result would

9  be through proper handling of receivables, I think we have

10  pretty much established that I believe that $5.4 million is

11  probably a fairly conservative number.  I am certainly

12  willing to live with that as an escrowed amount.

13            I don't think there is competent evidence that the

14  number is in $1 to $2 million because I think we have

15  demonstrated that that is just -- that is just a function of

16  just a debtor that lacked the resources to adequately collect

17  its receivable, the prepetition receivable.  We also have,

18  Your Honor, in the record --

19            THE COURT:  I am not going to re-argue this.

20            MR. MCMICHAEL:  Your Honor, I have a suggestion.

21  Can the Court simply order that the parties confer and

22  establish an appropriate schedule and get back to you rather

23  than trying to do  it now?

24            THE COURT:  I would much prefer that.

25            MR. MCMICHAEL:  Why don't we just do that.

1          THE COURT:  I would much prefer the parties confer

2   about a schedule and if you confer promptly I have a pretty

3   good availability in May.

4          MR. MCMICHAEL:  Okay, so we will endeavor to do

5   that. If the order just says that the parties are ordered to

6   confer -- that Maple, and the debtors, and the committee are

7   ordered to confer promptly to establish a schedule or other

8   appropriate means for determining the diminution claim. I

9   mean it's possible we could agree to it once we all look at

10  the same information.

11         THE COURT:  You can modify the order that way but,

12  you know, I will say that my concern is, and I certainly

13  think knowing the parties in this case that your skilled and

14  talented enough to come to resolution but this case has been

15  difficult for resolution.  So, I certainly didn't want to

16  hold up things for a couple of weeks while parties argued

17  over hearing dates.  But if you confer and then modify it

18  that you will confer and you will schedule separately, by

19  separate order, then reach out to my Chambers and I will have

20  availability for you.  I can tell you this, though, it won't

21  be the week of May 12th because I don't have availability

22  that week but I do have some other availability.

23         MR. MCMICHAEL:  We will do that.  That solves the

24  problems for today.

25         THE COURT:  Okay.  One general comment I had, and

1  this is just going to take a hard read of these documents, is

2  to make sure that they're consistent and that the practice

3  groups are extracted.

4        Then I had another comment that I skipped over but

5  I don't know what my comment means to myself.  Bear with me

6  one second.

7     (Pause)

8        THE COURT:  Okay, I think those are all my

9  comments.

10       MR. MCMICHAEL:  Your Honor, thank you very much.

11 We appreciate once again the amount of attention the Court

12 has given all the parties in this case.  We will get the plan

13 and the confirmation order cleaned up and try to get it to

14 the Court by the end of the day today.  I think all these

15 things can be implemented quickly.  We will get right on it.

16       THE COURT:  Bear with me one second, I think --

17 I'm sorry, I was listening, Mr. McMichael, but I'm trying to

18 look at my notes at the same time.

19       Did the parties -- we discussed Paragraph 37,

20 correct?  36, 37, yes, those -- Mr. Harvey confirmed -- okay,

21 yes, we discussed that.  So, I think we got all of my

22 comments and you heard my comments earlier that weren't

23 specifically with respect to the order.

24       So, we will look for a form of order. If it gets

25 here, you know, by the close of business today we will get it

1  entered; otherwise, it will have to be next week.

2          MR. HUGHES:  Your Honor, may I ask about that.

3  Peter Hughes for the debtors, Your Honor. I am mindful that

4  the Court has indicated that you will be out of the country

5  at a certain point.  Is it critical that it happens today.  I

6  just heard you say that it could be entered next week and I

7  just want to make sure we're all on the same page about your

8  schedule.

9          THE COURT:  Well, I am out of the country. I am

10  going to have limited connectivity because of how things work

11  but because you have Epiq's website I can look at it on the

12  website.

13          MR. MCMICHAEL:  Your Honor, there is -- yeah, as I

14  said today it immediately occurred to me its two o'clock now

15  and there is a -- I don't know if Your Honor is aware of this

16  or not but there is a funeral mass at, I think, five o'clock

17  for Judge Carey out in Bryn Mawr.  I will be out there.  So,

18  I need to leave town by around four to get to the church.

19  So, today may be difficult to get everything done.

20          MR. SPATHIS:  Your Honor, I have great respect for

21  your vacation schedule and you have earned it but I do think

22  it probably is infeasible to think that we're going to get

23  this across the finish line in the next couple of hours.  So,

24  apologies in advance.

25          THE COURT:  Look, I would rather it be correct. I

1   am just telling you that I will have connectivity issues. I

2   am not going to be in a really accessible area.  So, it may

3   take more then -- it may take a day for me to get back to

4   sign it, okay.

5          MR. MCMICHAEL:  Understood, Your Honor.

6          THE COURT:  I am just managing expectations.

7          Anything further?

8          MR. SPATHIS:  Your Honor, I'm sorry, just one last

9   clarification. It didn't come up but I just want to -- I just

10  feel compelled to ask, with respect to Paragraph X, which

11  talked about the best interest of holders as part of the

12  order and we had asked that there be a -- this is George

13  Spathis on behalf of Maple.  Added to the end of the

14  paragraph "Notwithstanding the foregoing, Maple reserves its

15  right to seek a valuation hearing with respect to its secured

16  claim against Hudson Hospital Opco LLC."  You didn't mention

17  the paragraph.

18         THE COURT:  I did.  I'm sorry, I did miss that.

19  That to me is a reservation that you should put at the end of

20  the order.  It is not a Court finding.  That is why I missed

21  it in the order.  So, I -- the parties can just put that,

22  similar to how you put settlements at the end of the order

23  just put a Maple reservation of rights.

24         MR. SPATHIS:  That's fine.  It wasn't important

25  that it be here. It was just important to Maple that it be

1 somewhere.  So, as long as that happens then I think we're

2 good.

3          THE COURT:  And let me just ask if there is any

4 issue because I don't want to create an issue when I am not

5 in a position to be able to get people on the phone.

6          MR. SHERMAN:  Your Honor, Andrew Sherman for the

7 committee.  I think we're fine with their reservation as long

8 as there's a corresponding reservation on behalf of the

9 estate.

10          THE COURT:  Right.

11          MR. SPATHIS:  I think that is -- I believe I

12 stated on the record we don't have a problem with the

13 corresponding reservation.  So, I think this one might be one

14 that we will be able to resolve quite easily.

15          THE COURT:  I'm confident that you will.

16          Okay, anything further?

17          MR. MCMICHAEL:  Nothing from the debtors, Your

18 Honor.

19          MR. SPATHIS:  Your Honor, I'm sorry.

20 Mr. McMichael, as I think about it, again, we could probably

21 shave off a couple of weeks off the schedule if we do

22 simultaneous exchange of expert reports and then during

23 deposition they can always -- okay, I see Andrew is shaking

24 his head.

25          MR. SHERMAN:  Your Honor, we can address this

1   offline.  I don't want to take up the Court's time.

2          MR. SPATHIS:  I don't either. I just wanted to

3   plant that flag but -- okay, thank you, Your Honor.  Have a

4   good trip.

5          THE COURT:  Thank you.  I appreciate everybody's

6   time throughout this process.  You all have a great weekend.

7   We stand adjourned.

8       (Proceedings concluded at 2:00 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## CERTIFICATION

2

3          We certify that the foregoing is a correct

transcript from the electronic sound recording of the

4

proceedings in the above-entitled matter to the best of our

5

knowledge and ability.

6

7

/s/ William J. Garling _____          April 11, 2025

8

William J. Garling, CET-543

9

Certified Court Transcriptionist

10

For Reliable

11

12

/s/ Mary Zajaczkowski _____          April 11, 2025

13

Mary Zajaczkowski, CET-531

14

Certified Court Transcriptionist

15

For Reliable

16

17

18

19

20

21

22

23

24

25