# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>CarePoint Health Systems, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12534 (JKS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 1273 & 1299** |

## REPLY TO DEBTORS' OBJECTION TO VIVEK GARIPALLI'S REQUEST FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Vivek Garipalli (the "Movant"), a creditor of the above-captioned debtors (collectively, the "Debtors"), by and through his undersigned counsel, hereby files this reply (this "Reply") to the *Debtors' Objection to Motions of Vivek Garipalli and James Lawler Requesting Allowance and Payment of Administrative Expense Claim* [Docket No. 1299] (the "Objection").[2] In support of this Reply, Movant respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

[2] Capitalized terms used herein but otherwise not defined shall have the meaning ascribed to such terms in the Objection or *Vivek Garipalli's Request for Allowance and Payment of Administrative Expense Claim* [Docket No. 1273] (the "Request").

## REPLY

1.     There can be no dispute that, for the duration of the Debtors' chapter 11 cases, Movant's actions in the RWJB Litigation - a key asset of the Debtors' estates - have assisted the Debtors in pursuit of claims in such litigation and therefore, maximization of the value of the Debtors' estates.  Moreover, there can be no dispute that the Debtors intentionally offered Movant's efforts as a justification for a stay of the Debtors' own obligations in such litigation.  The fact that the reimbursement could also be based on a prepetition contract should not impact the Court's analysis because there was (and still is) an ongoing post-petition transaction with the Debtors that benefits the estate.  Finally, fundamental fairness directs that Movant be compensated for work that benefits the estate and that was largely required due to the Debtors' own decision to avoid their obligations and instead focus on these chapter 11 cases.

   **A. Movant has Established a Post-Petition Transaction with the Debtors and Benefit to the Estate**

2.     The Debtors' continued pursuit of their affirmative claims in the RWJB Litigation on a post-petition basis and their specific avoidance of their own obligations by offering Movant as a discovery target is sufficient to give rise to a post-petition transaction, notwithstanding that the Donation Agreement was entered into prepetition and Movant has conferred a benefit to the estate, entitling him to the Administrative Claim.

3.     The Debtors assert that *Goody's* is inapplicable because the movant there sought the payment of stub rent from the debtor, and the debtor's occupation and use of the property constituted a knowing acceptance of post-petition consideration. Objection at ¶ 34 (citing *In re Goody's Fam. Clothing, Inc.*, 401 B.R. 656, 671 (D. Del. 2009), *aff'd sub nom. In re Goody's Fam. Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010)).  While the facts here do not involve the Debtors' use and occupation of a leased space, the principles from *Goody's* are readily applicable.  Indeed, the

court in *Goody's* explained that "[t]o be eligible for administrative expense priority, a post-petition transaction need not involve the exchange of money or formation of a contract…Indeed, a claimant's performance of a pre-petition contract, and a debtor's acceptance of that performance, can establish a post-petition transaction. *Id.* (citing *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir. 1987) (including the provision of consideration within the definition of a post-petition transaction)).

4.  Here, the Debtors have knowingly accepted – and proactively offered – Movant's efforts in the RWJB Litigation as a stand-in for their own lack of production. Indeed, their statements to the New Jersey Court demonstrate that the Debtors were aware of such acceptance. *See* Exhibit G to Request, (requesting that the New Jersey Court reinstate a discovery stay and suggesting that the New Jersey Court may do so "limited to CarePoint" because "there are plenty of other discovery tasks that [RWJB] can focus on"—implicitly suggesting that RWJB should focus on non-parties such as Movant while the Debtors remained unburdened).

5.  Even if this Court were to determine that there was no discrete post-petition transaction with the Debtors (which, Movant asserts that there was), the Court can still award the Administrative Claim by finding that there was a benefit conferred on the Debtors' estates. Unlike the cases the Debtors cite, which decided that indemnification claims are more "typically" prepetition claims, the facts here dictate a different result because the Debtors are the plaintiffs in the litigation, and Movant's efforts have assisted the Debtors' pursuit of such claims and maintenance of a major asset of the Debtors' estates, which otherwise may have been lost due to the Debtors' failure to prosecute during these cases. For example, in *In re Pinnacle Brands, Inc.*, the court denied, as an administrative expense claim, a claim for indemnification asserted by the creditor for a claim that a third party may have asserted, as a pre-petition claim, against the debtors.

259 B.R. 46, 52 (Bankr. D. Del. 2001) (explaining that, "[t]o the extent that [the creditor] satisfies the claim of [a third party], it would be satisfying a pre-petition claim which [the third party] holds against the Debtors. This is not conferring a substantial benefit on the estate but is merely substituting one pre-petition creditor for another."). Further, in *In re Trans World Airlines, Inc.*, the creditor asserted an administrative expense claim for indemnification for its costs in defending *itself* in a state court action from claims asserted by the purchaser of the debtor's assets, based on a prepetition agreement that provided indemnification for the creditor. 275 B.R. 712, 721 (Bankr. D. Del. 2002). The court held without explaining that such claims are prepetition claims. *Id*. These cases are inapplicable to these facts, however, because Movant is assisting the Debtors' active pursuit of a valuable claim in the New Jersey Court during the pendency of the chapter 11 cases and has relied on Movant's efforts to do so.

6. The facts here also support a different result than the cases the Debtors cite because the Debtors affirmatively decided to continue their efforts in the RWJB Litigation on a post-petition basis and offered Movant's efforts as a justification for the Debtors' inaction. *See Sure–Snap Corp. v. Vermont*, 983 F.2d 1015, 1018 (11th Cir. 1993) (addressing the issue of whether a reorganized debtor was responsible for attorney fees arising from post-confirmation litigation regarding the validity of a mortgage which the debtor appealed and lost, and for which the lender sought attorney's fees under the prepetition mortgage, awarding the fees and holding that "[b]y choosing to appeal the validity of the [mortgage] after confirmation, [the debtor] did so at the risk of incurring post-confirmation costs involved in its acts.").

7. Moreover, Movant's services substantially contributed to, and enhanced the progress of the reorganization by aiding the Debtors' efforts in preserving one of the Debtors' most valuable assets and therefore, Movant has provided a benefit to the estate. *Lebron v. Mechem Fin.*

4

*Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (quoting *Consol. Bancshares, Inc.*, 785 F.2d 1249 at 1253 (quoting *In re Richton Int'l Corp.*, 15 B.R. 854, 855 (Bankr. S.D.N.Y. 1981) (other citation omitted))) ("[S]ervices which substantially contribute to a case are those which foster and enhance ... the progress of reorganization."). For instance, Movant has produced close to 20,000 pages of discovery and made significant efforts to log over 2,500 documents in a privilege log to preserve the Debtors' privileges. Moreover, if the Debtors had been actively engaging in discovery, Movant's efforts may have been minimized as the Debtors' own productions may have sufficed.

8. Finally, the Debtors assert that Movant is presumed to have acted in his best interests and therefore could not have provided a benefit to the estate. *See* Objection, ¶ 46. However, "[m]ost activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement." *Lebron*, 27 F.3d at 944. Further, the test for an administrative claim does not consider whether a creditor would have an independent obligation to comply with, for example, subpoenas under the Federal Rules of Civil Procedure. *See* Objection ¶¶ 45-46. Rather, the test only looks to whether there was a substantial benefit to the estate, which there was. Without Movant's help in responding to discovery requests, the Debtors would have (a) been forced to produce the discovery themselves, incurring additional expense in doing so and distracting them from other reorganizational issues, and (b) jeopardized the value of the RWB Litigation to the Debtors' estates. Preservation of the RWJB Litigation during the pendency of these chapter 11 cases has enabled the Debtors to focus on other reorganizational tasks and maintain one of their "most valuable" assets in their estates, which can inure to the benefit of their creditors and other stakeholders.

**B. Fairness Dictates that Movant Should be Entitled to an Administrative Claim**

9. Fundamental fairness requires that Movant – who has suffered loss and incurred costs due to the Debtors' proactive post-petition pursuit of litigation against RWJB and evasion of obligations under the Donation Agreement – be granted the Administrative Claim and the fundamental fairness doctrine under *Reading v. Brown* continues to apply. *Reading v. Brown*, 391 U.S. 471 (1968).

10. *Reading* applies even if there is "'no discernible benefit to the debtor estate' if 'fundamental fairness' requires that the claimant's right take precedence over others." *In re Women First Healthcare, Inc.,* 332 B.R. 115, 123 (Bankr. D. Del. 2005) (citing *In re Hemingway Transp., Inc*., 993 F.2d 915, 929 n. 17 (1st Cir. 1993) (holding that CERCLA claim of purchaser of property from debtor was entitled to administrative claim priority); *In re Charlesbank Laundry, Inc*., 755 F.2d 200, 202 (1st Cir. 1985) (finding that fees awarded against debtor for violating zoning regulations was entitled to administrative priority under section 503(b))). The fact that the Donation Agreement was entered into prepetition does not impact the fundamental fairness analysis because the actions giving rise to Movant's entitlement to the Administrative Claim continued post-petition and benefitted the estate. *C.f. In re Hemingway Transp., Inc*., 954 F.2d 1, 7 (1st Cir. 1992) (denying and administrative expense claim but explaining that the movant's request could not qualify under *Reading* because "its attorney fees were incurred in resisting the trustee's third party action for CERCLA contribution based on [the movant's] prepetition ownership of the Property, which had nothing whatever to do with any postpetition operation of the [debtor's] business").

11. While certain cases applying *Reading* have involved post-petition tort claims, a tort is not required for a court to consider fundamental fairness, and most courts have noted that the

principles generally apply whenever a party suffers damages as a result of the operation of a debtor's business. *See In re Cont'l Airlines*, 146 B.R. at 526 (discussing equitable principals of unjust enrichment in awarding administrative expense claims); *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 773 (7th Cir. 2004)). Here, Movant has incurred significant costs as a result of the Debtors' business decisions as to how to handle their litigation assets. Movant's efforts have directly benefited the Debtors' post-petition business operations by permitting the Debtors to focus on the chapter 11 cases, while Movant undertook significant discovery. Moreover, such efforts have assisted with the Debtors' overall reorganizational efforts and the benefit is tangible: by evading costs and shifting the burdens of discovery to Movant, the Debtors were able to preserve an asset that will be transferred to the Litigation Trust. The availability of this asset undoubtedly aided in the Debtors' global negotiations and strategy in creating the Litigation Trust, which is an integral part of the Confirmed Plan. *See Park Nat'l Bank v. Univ. Ctr. Hotel, Inc*., 2007 U.S. Dist. LEXIS 12237 (N.D. Fla. Feb. 22, 2007) ("[t]he focus when deciding whether to allow an administrative expense claim is on preventing unjust enrichment of the debtor, and not compensating a creditor for its loss.").

12. It would be fundamentally unfair to permit the Debtors to preserve the value of the RWJB Litigation, which will be transferred to the Litigation Trust, on the back of the Movant without recognizing the cost of such decisions. Therefore, fairness dictates that Movant be entitled to the Administrative Claim in connection with the RWJB Litigation.

## **RESERVATION OF RIGHTS**

13. The filing of this Reply shall not be construed as a waiver or release of any of Movant's claims rights, or remedies, including for the avoidance of doubt any claims related to any purported rejection of the Donation Agreement. Movant reserves the right to supplement or

amend the Request or this Reply in any manner and for any purpose including without limitation to assert additional administrative expenses for any period. Movant further reserves the right to seek reimbursement through other sources, including without limitation, any available insurance programs of the Debtors.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, and the reasons stated in the Request, Movant respectfully requests that the Court (a) overrule the Objection, (b) enter the proposed order attached to the Request as Exhibit A, and (c) grant such other and further relief as is just and proper under the circumstances.

Dated: June 6, 2025　　　　　　　**WILSON SONSINI GOODRICH & ROSATI, P.C.**
　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　*/s/ Heather P. Lambert*
　　　　　　　　　　　　　　　　Erin. R. Fay (No. 5268)
　　　　　　　　　　　　　　　　Heather P. Lambert (No. 6923)
　　　　　　　　　　　　　　　　222 Delaware Avenue, Suite 800
　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　Telephone: (302) 304-7600
　　　　　　　　　　　　　　　　E-mail: efay@wsgr.com
　　　　　　　　　　　　　　　　　　　　hlambert@wsgr.com

　　　　　　　　　　　　　　　　*Counsel to the Movant*