**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

CarePoint Health Systems Inc. d/b/a Just Health
Foundation, et al., 1

       Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - x

Chapter 11
Case No. 24-12534 (JKS)

(Jointly Administered)

**Hearing Date : TBD**

**OBJECTION OF THE DEBTORS TO MOTION OF ACCESS INFORMATION
MANAGEMENT CORPORATION FOR ALLOWANCE AND PAYMENT OF
<u>ADMINISTRATIVE EXPENSE CLAIMS</u>**

      The above-captioned debtors (the "Debtors") in these chapter 11 cases (the "Chapter 11

Cases"), by and through their counsel, Dilworth Paxson LLP, hereby submit this objection (the

"<u>Objection</u>") to the *Motion of Access Information Management Corporation for Allowance and*

*Payment of Administrative Expense Claims* (the "<u>Motion</u>")[D.I. 1346].    In support of the

Objection, the Debtors respectfully state as follows:

---

1 The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification
number are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill
CarePoint, LLC (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint
Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just
Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix)
Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken
Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC
d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a
CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC
(1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality
Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-
Bayonne Medical Center.  The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

## <u>PRELIMINARY STATEMENT</u>

1.      In the Motion, Access Information Management Corporation ("<u>Access</u>") asks the Court to allow an administrative expense claim for costs associated with the storage and eventual destruction of records.

2.      The vast majority of the records which Access holds are of no value and no use whatsoever to the Debtors, being paper records which the Debtors (a) have not accessed in years and (b) are no longer required to retain.

3.      Access has failed to meet the heavy burden required to be entitled to an administrative expense claim.

4.      First, Access has failed to show the existence of any post-petition contracts with the Debtors.  Access relies solely on the provisions of pre-petition contracts as the basis of its administrative expense claim and fails to adequately demonstrate any knowing acceptance by the Debtors of the benefits of the pre-petition contracts after the Petition Date.

5.      Second, Access has failed to show any benefit conferred upon the Debtors through its services which justify an administrative expense claim.  The vast majority of records that Access stores are outdated records which the Debtors have not tried to access in years because the Debtors developed a more secure and cost-effective records storage system internally.

6.      Third, Access has failed to demonstrate that its administrative expense claim is reasonable.  Access is seeking priority payment of $1,776,893.76 based upon a "contract rate" derived from a contract that is not attached or even identified in the Motion.  The basis of the calculations leading up to this staggering sum are not explained by Access.  Access has failed to demonstrate that the rates it attempts to charge are reasonable rates.

7.      Accordingly, the Motion should be denied.

**JURISDICTION AND VENUE**

8.      The Court has jurisdiction to consider the Motion and Objection pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013–1(f), Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

A.  **The Access Contracts**

10.      Between 1996 and 2010, the Debtors entered into multiple contracts for the storage of records.  Access has provided approximately 29 separate contracts to the Debtors.

11.      Starting in 2015, the Debtors began to digitally store medical records internally because internal storage of these records was more secure and cost-effective.

12.      On information and belief, the Debtors last sent any records to be stored by Access in 2012, approximately 13 years ago.[1]

13.      Similarly, the Debtors have rarely retrieved any records from Access over a period of many years.

---

[1] Because of the lapse of time since 2012 and employee turnover during that period, the Debtors are still working to identify the facts regarding access to the records, and may need to determine such information in discovery which will be issued to Access.

#125074713v2

**B. <u>Events During the Bankruptcy Cases</u>**

14.     On February 18, 2024, the Debtors filed the *Debtors' Second Omnibus Motion for Entry of an Order Pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code Authorizing the Debtors to Reject Certain Executory Contracts and Unexpired Leases*.  [D.I. 708] (the Rejection Motion").

15.     The Rejection Motion identified 29 executory contracts with Access which were to be rejected.  [D.I. 708-1].

16.     On February 28, 2025, Access filed the *Objection and Reservation of Rights of Access Information Management Corporation to Debtors' Second Omnibus Motion for Entry of an Order Pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code Authorizing the Debtors to Reject Certain Executory Contracts and Unexpired Leases*.  [D.I. 783] (the "Objection").

17.     Through its Objection and in written communications with the Debtors, Access demanded direction as to the disposition of thousands of boxes of records that it held and argued that the Debtors could not reject the Contracts absent direction of the disposition of the records.

18.     The process of attempting to specifically identify which of the thousands of boxes of records was time-consuming and caused delay in the process of rejection. During communications between counsel for the Debtors and Access, the Debtors effectively continued the Rejection Motion as to Access by removing Access from the list of executory contracts to be rejected through the Rejection Motion.

19.     On April 7, 2025, the Court entered an order approving the Rejection Motion as to certain leases and contracts, not including the Access Contracts.  [D.I. 1092].

20.     On April 15, 2025, the Debtors and the Official Committee of Unsecured Creditors filed the Seventh Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization as Modified as of April 15, 2025 (the "Plan").  [D.I. 1154].

21.     On April 17, 2025, the Court entered the Findings of Fact, Conclusions of Law, and Order Confirming Seventh Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization as Modified as of April 15, 2025.  [D.I. 1168].

22.     On May 22, 2025, the Effective Date of the Plan occurred.  [D.I. 1285].

23.     During the course of the Debtors' bankruptcy cases, the Debtors have had various communications with Access regarding the transfer and/or destruction of the Access Records.  The Debtors have identified a small portion of the Access Records which they wish to retain (those on the "Retained Records List") and notified Access that they wish to retain them.   The vast majority of the Access Records (those on the "Dest List"), however, are of no value to the Debtors and the Debtors have no obligation to retain them.

24.     On June 13, 2025, Access filed the Motion.  [D.I. 1346].  In the Motion, Access asserts that:

     a.  Access is storing approximately 100,000 cubes of the Debtors' records [D.I. 1346, ¶ 6];

     b.  Monthly storage fees under the Access Contracts run at the rate of approximately $77,000 [D.I. 1346, ¶ 11];

     c.  The cost of storing the Access records since the Petition Date totals $624,208.34 [D.I. 1346 ¶ 30];

     d.  The cost of transferring and destroying the Access Records are $46,166.67 and $1,106,518.75, respectively [D.I. 1346, ¶ 31];

25.     Access asserts that it holds a post-petition administrative expense claim in the aggregate amount of $1,776,893.76.  [D.I. 1346, ¶ 31].

26.     Access argues that it is entitled to an administrative expense claim at the contract rate, yet Access fails to ever point to a contract or even state what that contract rate is, and fails to explain how it arrives at the amounts demanded.  [D.I. 1346, ¶ 37].

## RELIEF REQUESTED

27.     By this Objection, and in order to preserve and maximize the value of their estates, the Debtors request that the Court deny the Motion to the extent it seeks payment of claims which are not entitled to priority as administrative claims.

## BASIS FOR RELIEF

### I.     Access Has Failed to Demonstrate that It Entered into a Post-Petition Transaction with the Debtors.

28.     Section 503(b)(1)(A)(i) provides, in pertinent part, that there shall be allowed administrative expenses, including wages, salaries, and commissions for services rendered after the commencement of the case.  11 U.S.C. § 503(b)(1)(A)(i).

29.     Section 503(b) is narrowly construed to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate.  *In re ID Liquid. One, LLC*, 503 B.R. 392, 399 (Bankr. D. Del. 2013) (quoting *In re Bernard Tech., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006)).

30.     "To establish administrative expense priority the burden is on the claimant to demonstrate that the obligation claimed as an administrative expense (1) arose out of a post-petition transaction with the debtor in possession and (2) directly and substantially benefitted the estate."  *In re Valley Media, Inc.*, 279 B.R. 105, 140-41 (Bankr. D. Del. 2002) (citing *in re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 523-33 (3d Cir. 1999)).

31.     Administrative expense claims must be reasonable.  *In re Energy Future Holdings Corp.*, 990 F.3d 728, 742 (3d Cir. 2021).  Accordingly, to ensure an administrative expense claim is reasonable, an analysis as to whether a particular action benefitted an estate must weigh the costs to the estate against the alleged benefits.  *Id.*; *see also In re Continental Airlines, Inc.*, 146 B.R. 520, 523-24 (Bankr. D. Del. 1992) (limiting a creditor's administrative expense claim to the reasonable rent for use of an aircraft because the claim is valued on use, not the lease or contract terms).  The burden of demonstrating that an administrative expense claim is reasonable is on the movant.  *In re Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991); *see also In re Express One Int., Inc.*, 217 B.R. 207, 211 (Bankr. E.D. Tex. 1998) ("In order to establish that the expenses involved were both actual and necessary, the claimant must demonstrate that the charge is a reasonable one for the value or benefit bestowed upon the bankruptcy estate.").

32.     Access has not met the heavy burden of demonstrating that: a post-petition transaction between Access and the Debtors exists; Access provided or will provide any benefit to the Debtors; and its sought administrative expense claim is reasonable.

> ### a. Access' Storage Services Did Not Provide a Benefit to the Debtors' Estates, Do Not Represent Post-Bankruptcy Transactions, And Are Not at Reasonable Rates.

33.     Access bears the heavy burden of demonstrating its entitlement to an administrative claim, including the $642,208.34 sought for storage fees and expenses.

34.     Access alleges that it has continued to provide services to the Debtors through the storage of records pursuant to the Access Contracts.  [D.I. 1346, ¶¶ 38-43].

35.     Access further alleges that its storage of records provided a benefit to the Debtors' estates by giving the Debtors the time to assess its record retention obligations.  [D.I. 1346, ¶ 39].

36.     Access is wrong on both points.

#125074713v2

37.    Certain of the Debtors entered into the Access Contracts between 1996 and 2010, well before the Petition Date.

38.    Further, Access has failed to demonstrate that there is any obligation which "arose out of a post-petition transaction with the debtor in possession." *In re Valley Media, Inc.*, 279 B.R. at 140-41; *see also In Lyondell Chem. Co.*, 542 Fed.Appx. 41, 42-43 (2d Cir. 2013) (affirming the denial of an administrative claim because the agreements at issue were entered into pre-petition while noting that the "fact that some of the costs were incurred post-petition does not change this") (citing *In re Manville Forest*, 209 F.3d 125, 129 (2d Cir. 2000)).

39.    Access cites to inapposite cases to support its position.  For example, *In re Goody's Family Clothing*, 401 B.R. 656 (D. Del. 2009) involved a debtor knowingly accepting the benefit of a pre-petition lease by occupying leased premises post-petition.  Here, the Debtors have not knowingly accepted any benefit from Access because the storage of old, unneeded medical records provides no actual benefit to the Debtors.

40.    Access also cites to *In re Patient Educ. Media*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) for the proposition that Access is entitled to an administrative expense claim.  [D.I. 1346, ¶ 42].  However, in that case, the debtor knowingly accepted the continued storage of a sound stage because the debtor thought it was necessary for the liquidation process. *Id.* at 102-103.  The court emphasized that the debtor did nothing to discourage the creditor's performance and "did not simply possess the right to use the sound stage, it actually used it." *Id.*  Here, the opposite is true.  The Debtors have not deposited any records with Access postpetition and have not retrieved any records from Access in years. *Patient Education*, an out-of-circuit case that is more than 25 years old and inapposite to the facts at issue, cannot form the legal basis of an administrative claim for Access.

#125074713v2

41.    Finally, Access cites to *In re IMG Healthcare LLC*, No. 06-11059, 2008 WL 2695638 (Bankr. E.D. La. July 8, 2008) for the proposition that it participated in post-bankruptcy transactions with the Debtors and conferred benefits upon the Debtors and their estates.  [D.I. 1346, ¶ 43].  The basis for Access' reliance on an unpublished, out-of-circuit opinion that is more than 15 years old is a single sentence stating that the court had previously approved an administrative expense for a creditor's services in destroying, storing, and transferring medical records.  *Id.* at *2.  Access concedes, as it must, that the administrative expense claim was not an issue related to the Court's holding in the case.  There are no details regarding that administrative claim, including the reasoning behind the court's decision to grant an administrative expense claim for storage fees or whether the debtor even objected to the claim.  Again, such a case cannot serve as the basis for an administrative claim of this magnitude.

42.    Access seeks payment on its storage fees without any showing that such fees are reasonable.  Access states that it is entitled to the contract rate of its services.  [D.I. 1346, ¶ 37].  However, Access did not attach or identify the contract from which the "contract rate" is derived.  Even more, Access failed to even state what the "contract rate" is.  While Access may be entitled to a presumption in favor of the contract rate until such rate is properly rebutted, Access is not entitled to state, without any factual basis, what the contract rate is and expect the Debtors to assent.

43.    The Debtors reserve the right to challenge the reasonableness of the rates charged by Access if and when Access discloses such rates.

### b.  *Access' Transfer Services Will Not be Beneficial to the Debtors and Their Estates and are Not Reasonable.*

44.    Access bears the heavy burden of demonstrating its entitlement to an administrative claim, including the $46,166.67 sought for transfer fees and expenses.

#125074713v2

45.     Access alleges that it will confer a benefit to the Debtors' estates through the transfer of stored records.  [D.I. 1346, ¶¶ 44-46].

46.     Access again cites to *In re IMG Healthcare, LLC* for the sweeping proposition that its transfer of the Debtors' records to the Debtors confers a benefit to the Debtors and their estates.  [D.I. 1346, ¶ 46].

47.     *In re IMG Healthcare, LLC* says no such thing.  Instead, the court merely notes that it has previously approved a medical record transfer cost as an administrative expense, without any discussion as to why such an expense was approved or whether the debtor objected to that expense.  *In re IMG Healthcare LLC*, 2008 WL 2695638 at *2.  This case cannot serve as the basis for awarding an administrative expense claim for transfer fees based on a "contract rate" that Access has not provided any factual basis to support.

   c. ***Access' Destruction-Related Services Will Not be Beneficial to the Debtors and Their Estates.***

48.     Access bears the heavy burden of demonstrating its entitlement to an administrative claim, including the $1,106,518.75 sought for destruction fees and expenses.

49.     Access alleges that it will confer a benefit to the Debtors' estates through the destruction of records.  [D.I. 1346, ¶¶ 47-52].

50.     Once again, Access cites to *In re IMG Healthcare, LLC* for the unsupported statement that other courts have approved document destruction costs as administrative expense claims, without citing to a single other case that approved a similar claim.  [D.I. 1346, ¶ 52].

51.     *In re IMG Healthcare, LLC* simply says that it previously approved costs for destroying medical records as an administrative expense, without any discussion as to why such an expense was approved or whether the debtor objected to that expense.  *In re IMG Healthcare*

10

*LLC*, 2008 WL 2695638 at *2.  Access cannot rely solely on one sentence from an unpublished opinion that is more than 25 years old to justify destruction costs it seeks in this case.

52.      Further, Access still fails to state what the "contract rate" for the destruction of the records is, attach the contract from which the "contract rate" is based, or even identify the alleged contract.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order denying the Motion as to Access' request for allowance of an administrative expense claim.

Dated: July 2, 2025                **DILWORTH PAXSON LLP**

/s/ Peter C. Hughes
Peter C. Hughes (DE 4180)
800 N. King Street, Suite 202
Wilmington, DE 19801
Telephone:      302-571-9800
Facsimile:      302-571-8875
Email:          phughes@dilworthlaw.com

                        And

/s/ Peter C. Hughes
Lawrence G. McMichael (Admitted *pro hac vice*)
Peter C. Hughes (DE 4180)
Anne M. Aaronson (Admitted *pro hac* vice)
Jack Small (Admitted *pro hac vice*)
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:      (215) 575-7000
Facsimile:      (215) 754-4603
Email:          lmcmichael@dilworthlaw.com
Email:          phughes@dilworthlaw.com
Email:          aaaronson@dilworthlaw.com
Email:          jsmall@dilworthlaw.com

*Counsel for the Debtors*

11